Lalitha D. Madduri (CA Bar No. 301236)
lmadduri@elias.law
Jacob D. Shelly* (DC Bar No. 90010127)
jshelly@elias.law
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498

Tyler L. Bishop (CA Bar No. 337546)
tbishop@elias.law
Walker McKusick* (WA Bar No. 63205)
wmckusick@elias.law
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180

Omar Qureshi (CA Bar No. 323493)
omar@qureshi.law
Max Schoening (CA Bar No. 324643)
max@qureshi.law
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 600-6096
F: (213) 277-8989

*Counsel for Proposed Intervenor-
Defendants NAACP; NAACP California-
Hawaii State Conference; and Services,
Immigrant Rights and Education Network*

*\* Pro hac vice application forthcoming*

1
2

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

3

4  UNITED STATES OF AMERICA,

5        Plaintiff,

6

7        v.

8

9  SHIRLEY N. WEBER, in her official
   capacity as Secretary of State of
10  California, et al.,

11        Defendants.

Case No:  2:25-cv-09149-MWF-MAR

**NAACP; NAACP CALIFORNIA-
HAWAII STATE CONFERENCE;
AND SERVICES, IMMIGRANT
RIGHTS AND EDUCATION
NETWORK NOTICE OF MOTION
AND MOTION TO INTERVENE AS
DEFENDANTS; MEMORANDUM
OF POINTS AND AUTHORITIES**

Hearing Date: November 10, 2025

Time: 10:00 a.m.

Courtroom: 5A, 5th Floor

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NOTICE OF MOTION AND MOTION TO INTERVENE

The National Association for the Advancement of Colored People ("NAACP"), the NAACP California-Hawaii State Conference ("NAACP-CA/HI"), and Services, Immigrant Rights and Education Network ("SIREN") (together, "Proposed Intervenors") respectfully request that this Court grant them leave to intervene as defendants in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, grant them permission to intervene under Rule 24(b).

In support of their Motion, Proposed Intervenors submit and incorporate the below Memorandum of Points and Authorities, declarations by Proposed Intervenors (attached as Exhibits A, B, and C), a Proposed Answer submitted pursuant to Rule 24(c) (attached as Exhibit D), and a Proposed Order (attached as Exhibit E). Pursuant to Local Rule 7-3, counsel for Proposed Intervenors made a good-faith effort to confer with counsel for the existing parties. When counsel for Proposed Intervenors attempted to schedule a conference with Plaintiff on September 30, 2025, counsel for Plaintiff stated Plaintiff opposes the Motion and would be unable to confer further due to the "pending government shutdown." Ex. F, Decl. of Lalitha D. Madduri ¶ 5. Counsel for Defendants, following a video conference on October 2, 2025, stated that Defendants consent to the Motion. *Id.* ¶ 4.

Proposed Intervenors recognize that this action may be stayed due to the lapse in federal appropriations. *See* Mot. to Stay Case, ECF No. 6. Proposed Intervenors do not oppose the stay requested by Plaintiff. But given the time-sensitive nature of this election-law case, Proposed Intervenors respectfully request that the Court set a hearing for this Motion as soon as practicable on or after November 10, 2025.

1

Dated: October 7, 2025

Respectfully submitted,

2

*/s/ Lalitha D. Madduri*

3

Lalitha D. Madduri (CA Bar No. 301236)
Jacob D. Shelly* (DC Bar No. 90010127)

4

**ELIAS LAW GROUP LLP**

5

250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001

6

T: (202) 968-4652

7

F: (202) 968-4498
lmadduri@elias.law

8

jshelly@elias.law

9

Tyler L. Bishop (CA Bar No. 337546)

10

Walker McKusick* (WA Bar No. 63205)

**ELIAS LAW GROUP LLP**

11

1700 Seventh Avenue, Suite 2100

12

Seattle, WA 98101

T: (206) 656-0177

13

tbishop@elias.law

14

wmckusick@elias.law

15

Omar Qureshi (CA Bar No. 323493)

16

Max Schoening (CA Bar No. 324643)

**QURESHI LAW PC**

17

700 Flower Street, Suite 1000

18

Los Angeles, CA 90017

T: (213) 600-6096

19

omar@qureshi.law

20

max@qureshi.law

21

*Counsel for Proposed Intervenor-*

22

*Defendants NAACP; NAACP California-*
*Hawaii State Conference; and Services,*

23

*Immigrant Rights and Education Network*

24

25

*\* Pro hac vice application forthcoming*

26

27

28

iv
NAACP, NAACP-CA/HI, and SIREN's Motion to Intervene
Case No. 2:25-cv-09149-MWF-MAR

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ..................................................................................... vi

INTRODUCTION ................................................................................................... 1

BACKGROUND ..................................................................................................... 2

    I.     Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers. ............................. 2

    II.    DOJ has embarked on an unprecedented nationwide campaign to collect personal voter registration data held by the states. .......................... 4

    III.   DOJ sued California to obtain its complete voter registration lists. ............ 5

    IV.   Proposed Intervenors' sensitive information and voter advocacy programs are threatened by DOJ's demands. ............................................... 6

LEGAL STANDARD ............................................................................................. 10

ARGUMENT ......................................................................................................... 11

    I.     Proposed Intervenors are entitled to intervene as a matter of right. .......... 11

         A.    This motion is timely. ..................................................................... 11

         B.    Proposed Intervenors have substantial, protectable interests that are threatened by the relief sought by DOJ. ..................................... 12

         C.    Existing parties do not adequately represent Proposed Intervenors. ...................................................................................... 16

    II.    Proposed Intervenors should, alternatively, be granted permissive intervention. .................................................................................................. 19

CONCLUSION ...................................................................................................... 21

1

# <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*1789 Found. Inc. v. Fontes*,
5
    No. 24-cv-02987, 2025 WL 834919 (D. Ariz. Mar. 17, 2025) .......................20

6

*Alabama ex rel. Gallion v. Rogers*,
7
    187 F. Supp. 848 (M.D. Ala. 1960) ....................................................................6

8

*All. for Retired Americans v. Bessent*,
9
    770 F. Supp. 3d 79 (D.D.C. 2025) ...................................................................14

10

*Am. Unites for Kids v. Rousseau*,
11
    985 F.3d 1075 (9th Cir. 2021) .........................................................................16

12

*Arakaki v. Cayetano*,
13
    324 F.3d 1078 (9th Cir. 2003) .........................................................................10

14

*Arizona All. for Retired Americans v. Clean Elections USA*,
15
    638 F. Supp. 3d 1033 (D. Ariz. 2022) .............................................................14

16

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
17
    570 U.S. 1 (2013) ...............................................................................................2

18

*Barke v. Banks*,
19
    No. 8:20-cv-00358, 2020 WL 2315857 (C.D. Cal. May 7, 2020)...................18

20

*Bellitto v. Snipes*,
21
    935 F.3d 1192 (11th Cir. 2019) .......................................................................18

22

*Bellitto v. Snipes,*
23
    No. 16-cv-61474, 2016 WL 5118568 (S.D. Fla. Sept. 21, 2016)...................18

24

*Berger v. N.C. State Conf. of the NAACP*,
25
    597 U.S. 179 (2022) .........................................................................................18

26

*Brumfield v. Dodd*,
27
    749 F.3d 339 (5th Cir. 2014)............................................................................13

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

*California ex rel. Lockyer v. United States*,
  450 F.3d 436 (9th Cir. 2006)..................................................................13

*Callahan v. Brookdale Senior Living Cmtys., Inc.*,
  42 F.4th 1013 (9th Cir. 2022) ...............................................................20

*Celgard LLC v. Targray Tech. Int'l Inc.*,
  No. SAMC20-00128, 2021 WL 831030 (C.D. Cal. Feb. 10, 2021)................14

*Chiles v. Thornburgh*,
  865 F.2d 1197 (11th Cir. 1989) ..............................................................15

*Citizens for Balanced Use v. Mon. Wilderness Ass'n*,
  647 F.3d 893 (9th Cir. 2011)..................................................................13

*Clark v. Putnam County*,
  168 F.3d 458 (11th Cir. 1999) ...............................................................19

*Dinkens v. Attorney General*,
  285 F.2d 430 (5th Cir. 1961)....................................................................6

*DNC v. Hobbs*,
  948 F.3d 989 (9th Cir. 2020)..................................................................16

*DNC v. Reagan*,
  329 F. Supp. 3d 824 (D. Ariz. 2018) ......................................................16

*Foster v. Love*,
  522 U.S. 67 (1997)..................................................................................2

*Freedom from Religion Found. v. Geithner*,
  644 F.3d 836 (9th Cir. 2011)..................................................................11

*Fund for Animals, Inc. v. Norton*,
  322 F.3d 728 (D.C. Cir. 2003) ...............................................................17

*GHP Mgmt. Corp. v. City of Los Angeles*,
  339 F.R.D. 621 (C.D. Cal. 2021) ............................................................18

NAACP, NAACP-CA/HI, and SIREN's Motion to Intervene
Case No. 2:25-cv-09149-MWF-MAR

*Hoopa Valley Tribe v. U.S. Bureau of Reclamation*,
    648 F. Supp. 3d 1196 (E.D. Cal. 2022).............................................................16

*Husted v. A. Philip Randolph Inst.*,
    584 U.S. 756 (2018).............................................................................................3

*Issa v. Newsom,*
    No. 22-CV-1044, 2020 WL 3074351 (E.D. Cal. June 10, 2020)....................15

*Judicial Watch, Inc. v. Ill. State Bd. of Elections*,
    No. 24 C 1867, 2024 WL 3454706 (N.D. Ill. July 18, 2024).........................19

*Jurj v. Andersen*,
    No. 3:21-CV-00088-YY, 2022 WL 19349528 (D. Or. Sept. 16, 2022)..........14

*Kalbers v. U.S. Dep't of Just.*,
    22 F.4th 816 (9th Cir. 2021) ..........................................................................14

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962).............................................................................5

*Kleissler v. U.S. Forest Serv.*,
    157 F.3d 964 (3d Cir. 1998).............................................................................17

*La Union del Pueblo Entero v. Abbott*,
    29 F.4th 299 (5th Cir. 2022) ...........................................................................15

*League of United Latin Am. Citizens v. City of Boerne*,
    659 F.3d 421 (5th Cir. 2011)............................................................................14

*League of Women Voters of N.C. v. North Carolina*,
    No. 1:13-cv-660, 2014 WL 12770081 (M.D.N.C. Jan 27, 2014)....................20

*March for Our Lives Idaho v. McGrane*,
    697 F. Supp. 3d 1029 (D. Idaho 2023) ...........................................................16

*Mi Familia Vota v. Fontes*,
    719 F. Supp. 3d 929 (D. Ariz. 2024) ..............................................................16

*NAACP v. Alabama*,
   357 U.S. 449 (1958) ...................................................................................7

*NAACP v. Claiborne Hardware Co.*,
   458 U.S. 886 (1982) ...................................................................................7

*Or. Nat. Desert Ass'n v. McDaniel*,
   405 F. App'x 197 (9th Cir. 2010) ............................................................12

*Or. Nat. Desert Ass'n v. Shuford*,
   No. 06-cv-242, 2006 WL 2601073 (D. Or. Sept. 8, 2006) ......................12

*Paher v. Cegavske*,
   No. 3:20-cv-00243, 2020 WL 2042365 (D. Nev. Apr. 28, 2020) .............15

*Pub. Int. Legal Found., Inc. v. Bellows*,
   92 F.4th 36 (1st Cir. 2024) .........................................................................5

*Pub. Int. Legal Found., Inc. v. Winfrey*,
   463 F. Supp. 3d 795 (E.D. Mich. 2020) ..................................................20

*Relman Colfax v. Fair Housing Council*,
   No. 19-cv-8612 PSG (JCX), 2020 WL 9460652 (C.D. Cal. Apr. 20, 2020)...20

*RNC v. N.C. State Bd. Of Elections*,
   120 F.4th 390 (4th Cir. 2024) .....................................................................3

*San Jose Mercury News, Inc. v. U.S. District Court*,
   187 F.3d 1096 (9th Cir. 1999) ..................................................................11

*South Carolina v. United States*,
   585 F. Supp. 418 (D.D.C. 1984) ..............................................................11

*Sw. Ctr. for Biological Diversity v. Berg*,
   268 F.3d 810 (9th Cir. 2001) ....................................................................10

*Texas v. United States*,
   798 F.3d 1108 .............................................................................................11

*United Guar. Residential Ins. Co. v. Phila. Sav. Fund Soc.*,
  819 F.2d 473 (4th Cir. 1987).................................................................17

*W. States Trucking Ass'n v. Becerra*,
  No. 19-cv-02447, 2020 WL 1032348 (C.D. Cal. Mar. 2, 2020) ...................12

*W. Watersheds Project v. Haaland*,
  22 F.4th 828 (9th Cir. 2022) ............................................................11

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ..........................................................13

*Yniguez v. Arizona*,
  939 F.2d 727 (9th Cir. 1991)............................................................16

***Constitutional Provisions And Statutes***

U.S. Const. art. I, § 4, cl. 1 ...................................................................2

52 U.S.C. § 20501(b) .............................................................................3

52 U.S.C. § 20507(a) .............................................................................3

52 U.S.C. § 20507(g) .............................................................................3

52 U.S.C. § 20507(i) ..............................................................................5

52 U.S.C. § 21083(a) .............................................................................3

52 U.S.C. § 21111 ..................................................................................5

Cal. Const. art I, § 1 ............................................................................13

Cal. Civ. Code § 1798.1 .......................................................................13

Cal. Civ. Code § 1798.24 .....................................................................13

Cal. Elec. Code § 2194(b).......................................................................1

Cal. Elec. Code § 2266 ........................................................................13

1
2
Cal. Elec. Code § 2300(a) .......................................................................14
3
Cal. Gov. Code § 7924.000(b) .................................................................13
4
**_Federal Rules_**
5
6
Fed. R. Civ. P. 24(a) ...............................................................................2
7
Fed. R. Civ. P. 24(b) .............................................................................19
8

**_Other Authorities_**
9
10
7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909
(3d ed. 2024) ...................................................................................16
11
12
Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to
Build National Voter Roll*, N.Y. Times (Sept. 9, 2025),
https://perma.cc/8VP4-WRXD ............................................................4
13
14
15
Jonathan Shorman, *Some Republican states resist DOJ demand for private voter
data,* Stateline (Sept. 18, 2025), https://stateline.org/2025/09/18/some-
republican-states-resist-doj-demand-for-private-voter-data/ ...........................4
16
17
18
19
20
21
22
23
24
25
26
27
28

## **INTRODUCTION**

The U.S. Department of Justice recently embarked on an unprecedented nationwide campaign to compile sensitive personal information on voters in a centralized federal database. As part of this effort, DOJ sued California last week, seeking to compel the state to turn over all the voter information it has on all of its voters. This legal assault not only intrudes upon California's constitutional prerogative to maintain and protect its own voter registration list—it tramples the privacy rights of individual California voters who have serious reasons to fear their personal information being handed over to the federal government.

Accordingly, the National Association for the Advancement of Colored People ("NAACP"), the NAACP California-Hawaii State Conference ("NAACP-CA/HI"), and Services, Immigrant Rights and Education Network ("SIREN") (together, "Proposed Intervenors") move to intervene in this suit to defend against the federal government's overreach. The NAACP is the nation's oldest organization dedicated to the advancement of fundamental civil rights. NAACP-CA/HI is a state unit of the NAACP, representing nearly 60 individual branches and chapters across the State. And SIREN is an immigration rights group with offices in the Bay Area and Central Valley that empowers immigrants and refugees through community education, organizing, leadership development, and direct immigrant services. These organizations seek to intervene to preserve the privacy rights of their constituents, including members, board members, and staff, and prevent disclosure of their sensitive personal information to DOJ, as well as protect their own mission-critical efforts to empower communities worried about retaliation and scrutiny by the federal government. California law guarantees voters that any "unique identifier"—including driver's license numbers and partial social security numbers—will remain "confidential and shall not be disclosed to any person." Cal. Elec. Code § 2194(b)(1). DOJ's requested relief would run roughshod over this and other privacy protections.

Proposed Intervenors are entitled to intervene as a matter of right because they have significant interests that are at serious risk of impairment by the relief sought in this action, and the existing parties do not adequately represent those interests. *See* Fed. R. Civ. P. 24(a). Most significantly, they have an interest in ensuring that their members' and constituents sensitive and personal information is not improperly disclosed to DOJ. While California and its Secretary of State have thus far resisted disclosure, they do not adequately represent Proposed Intervenors: As governmental defendants, they must consider "broader public-policy implications" of the issues presented in this suit, while the Proposed Intervenors are solely concerned with protecting their private interests— including their members' privacy and voting rights—"full stop." *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 196 (2022) (citing *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538–39 (1972)).

Alternatively, Proposed Intervenors should be granted permissive intervention under Rule 24(b). Doing so will ensure that California voters have a voice in this litigation—which ultimately concerns the disclosure of *their* sensitive and personal information.

## **BACKGROUND**

### I.    **Federal law has long made voter list maintenance a state responsibility, consistent with the constitutional separation of powers.**

The U.S. Constitution "invests the States with responsibility for the mechanics" of federal elections, subject to any decision by Congress to "preempt state legislative choices." *Foster v. Love*, 522 U.S. 67, 69 (1997); *see also* U.S. Const. art. I, § 4, cl. 1. Accordingly, as a default matter, the Constitution assigns states the responsibility for determining voter eligibility and maintaining lists of eligible voters. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 17 (2013).

While Congress has enacted certain laws governing voter registration, these laws augment existing "state voter-registration systems," *id.* at 5, and confirm that states are

the custodians of voter registration data. In 1993, Congress enacted the National Voter Registration Act ("NVRA") to serve "two main objectives: increasing voter registration and removing ineligible persons from the States' voter registration rolls." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018); *see also* 52 U.S.C. § 20501(b). The law charges *states*—not the federal government—with the "administration of voter registration for elections for Federal office," 52 U.S.C. § 20507(a), including as to maintaining voter lists (subject to strict procedural safeguards), *id.* § 20507(c)–(g). It similarly makes *states* the custodians of voter lists. *See Husted*, 584 U.S. at 761.

In the wake of the 2000 elections, Congress enacted the Help America Vote Act ("HAVA") "to improve voting systems and voter access." *RNC v. N.C. State Bd. Of Elections*, 120 F.4th 390, 394 (4th Cir. 2024). Like the NVRA, HAVA regulates how *states* maintain their voter rolls, requiring them to create a "computerized statewide voter registration list." 52 U.S.C. § 21083(a)(1). It also requires states to "perform list maintenance" consistent with the NVRA. *Id.* § 21083(a)(2). HAVA is abundantly clear that this list is to be "defined, maintained, and administered at the *State* level." *Id.* § 21083(a)(1)(A) (emphasis added). Indeed, HAVA's legislative history stressed the importance of maintaining our decentralized electoral system to preserving liberty:

> Historically, elections in this country have been administered at the state and local level. This system has many benefits that must be preserved. The dispersal of responsibility for election administration has made it impossible for a single centrally controlled authority to dictate how elections will be run, and thereby be able to control the outcome. This leaves the power and responsibility for running elections where it should be, in the hands of the citizens of this country.

H.R. Rep. No. 107-329, at 31–32 (2001).

Consistent with that principle, neither the NVRA nor HAVA tasks the *federal government* with compiling a federal national voter registration list. Congress has traditionally "left it up to the States to maintain accurate lists of those eligible to vote in

1  federal elections," *Husted*, 584 U.S. at 761, subject only to the *specific* requirements of

2  the NVRA and HAVA, which purposefully operate through the states themselves.

3  **II.    DOJ has embarked on an unprecedented nationwide campaign to collect**

4  **personal voter registration data held by the states.**

5      This spring, DOJ launched a campaign to demand broad and unprecedented access

6  to state voter files, including personal information about each registered voter. To date,

7  DOJ has sent demands to more than thirty-five states, with plans to make similar demands

8  on all fifty.[1] It seeks to use the data to create a national voter database that will, in turn,

9  be used in an attempt to substantiate President Trump's unfounded accusations that

10  millions of non-citizens have voted illegally in recent elections. *See* Barrett & Corasaniti,

11  *supra* n.1. The vast majority of states that have received such demands—including those

12  led by Republican officeholders—have refused to comply, declining to turn over

13  sensitive personal information that is typically protected by state law.[2]

14      DOJ sent California a letter on July 10, 2025, demanding, among other things,

15  California's entire "statewide voter registration list." Compl. ¶ 34, ECF No. 1. California

16  responded on August 8, 2025, expressing concerns about privacy protections for voters

17  but offering to allow DOJ to "inspect a copy of [California's] redacted voter registration

18  database . . . by making an appointment with" the Secretary. *Id.* ¶ 37. DOJ responded by

19  reiterating its demands, specifically demanding that the State produce "all fields" from

20  its voter registration database, including "each registrant's full name, date of birth,

21  residential address, their state driver's license number, and the last four digits of their

---

[1] *See* Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://perma.cc/8VP4-WRXD.

[2] *See* Jonathan Shorman, *Some Republican states resist DOJ demand for private voter data* Stateline (Sept. 18, 2025), https://stateline.org/2025/09/18/some-republican-states-resist-doj-demand-for-private-voter-data/ (reporting only one state—Indiana—has so far given DOJ everything it sought).

1    social security number." *Id.* ¶ 38. The State has, to date, "continued to refuse to fully

2    comply with Plaintiff's requests for information." *Id.* ¶ 44.

3    **III.    DOJ sued California to obtain its complete voter registration lists.**

4          DOJ filed this suit on September 25, seeking to compel California to provide its

5    full statewide voter registration list. Compl. ¶ 3. DOJ cited three federal statutes to justify

6    its claims: the NVRA, HAVA, and the Civil Rights Act of 1960. *Id.* ¶¶ 9–31. None

7    supports DOJ's sweeping demand.

8          *First*, though the NVRA requires states to permit public inspection of certain

9    records, 52 U.S.C. § 20507(i)(1), courts have consistently held that "nothing in the text

10   of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal

11   information in" those records, such as driver's license numbers and partial social security

12   numbers. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024)

13   (collecting cases).

14         *Second*, unlike the NVRA, HAVA has no disclosure provisions at all—and DOJ's

15   Complaint and letters to California cite no case law or other authority for the radical

16   proposition that the mere existence of DOJ's authority to enforce HAVA's "uniform and

17   nondiscriminatory" requirements entitles it to unfettered access to state voter registration

18   lists upon demand. 52 U.S.C. § 21111.

19         *Third*, as a last-ditch effort, DOJ invokes Section 303 of the Civil Rights Act of

20   1960, a long-dormant Civil Rights-era law that permits DOJ to review certain voting

21   records to investigate "question[s] concerning infringement or denial of ... constitutional

22   voting rights." *Kennedy v. Lynd*, 306 F.2d 222, 228 (5th Cir. 1962). Congress enacted

23   the law to preserve "the right of all qualified citizens to vote without discrimination on

24   account of race," and specifically to facilitate "investigation[s]" authorized under the

25   Civil Rights Act of 1957, which recalcitrant local officials had frustrated through the

26   destruction of records. H.R. Rep. 86-956, at 1944 (1959). This history "leaves no doubt

27   but that [Section 303] is designed to secure a more effective protection of the right to

28

vote." *Alabama ex rel. Gallion v. Rogers,* 187 F. Supp. 848, 853 (M.D. Ala. 1960), *aff'd sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961). But DOJ admits that is not its purpose here; instead, it claims to be evaluating California's list maintenance efforts under NVRA and HAVA—statutes with their own separate disclosure rules (under the NVRA specifically) and enforcement mechanisms. *See* Compl. at 2–3 (Introduction). The Civil Rights Act is thus inapplicable here.[3]

## IV. Proposed Intervenors' sensitive information and voter advocacy programs are threatened by DOJ's demands.

Proposed Intervenors NAACP, NAACP-CA/HI, and SIREN collectively represent approximately 12,000 individual members in California—most of whom are registered voters whose sensitive personal information will be disclosed to DOJ if its lawsuit prevails—and that work to advance the fundamental civil rights of their members and other voters. *See* Ex. A, Decl. of Anthony Ashton ("Ashton Decl.") ¶¶ 5, 8–9; Ex. B, Decl. of Rick Callender ("Callender Decl.") ¶¶ 4, 6–7; Ex. C, Decl. of Huy Tran ("Tran Decl.") ¶¶ 4–6. California law guarantees to all these voters that the sensitive information they disclose when registering to vote—including their driver's license numbers, identification card numbers, social security numbers, and "any other unique identifier"— will be "confidential and shall not be disclosed to any person." Cal. Elec. Code § 2194(b)(1); *see also infra* n.6.

*NAACP.* The NAACP is the nation's oldest organization dedicated to the advancement of civil rights in the United States. Ashton Decl. ¶¶ 4. Founded in 1909 by pioneers of racial justice, the NAACP's core mission has long been to ensure the political, educational, social, and economic equality of all people. *Id.* The NAACP is a formal

---

[3] Even if Section 303 of the Civil Rights Act did apply, it does not prohibit states from redacting confidential and sensitive voter information that has nothing to do with investigating the denial of the right to vote, just as states may under the NVRA. *See Pub. Int. Legal Found.*, 92 F.4th at 56.

membership organization, with more than 200,000 members nationwide and 12,000 in California alone. *Id.* ¶ 5. In furtherance of its mission, the NAACP has worked to protect the fundamental rights of its members and others in its constituency through a unique slate of programs that provide education as well as community-based advocacy and assistance to voters seeking to make their voices heard. *Id.* ¶ 8. For example, the NAACP develops and executes programs that encourage its members and other citizens—including in California—to participate in the political process by registering them to vote and aiding voters in casting their ballots. *Id.* ¶¶ 8–9. It also provides support to its thousands of state, regional, and local branches—including NAACP-CA/HI—working to advance the organization's goals. *Id.* ¶ 5. When voters and potential voters in the NAACP's membership and constituency face government actions that make it harder to vote or discourage participation in the political process, the NAACP's efforts to advance its mission suffer. *Id.* ¶¶ 10, 15.

Over the years, the NAACP and its members have frequently been singled out by government officials who disagree with its mission, facing espionage and investigation—sometimes even physical violence—because of their advocacy efforts. *Id.* ¶ 7, 12. As a result, protecting its members and supporters from the unlawful disclosure of their personal information in response to government overreach has long been central to the NAACP's core mission and value system. *Cf. NAACP v. Alabama*, 357 U.S. 449 (1958); *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886 (1982). Especially against this backdrop, many of the NAACP's members reasonably fear retribution by the current federal administration—and they are accordingly concerned about DOJ's efforts to obtain their sensitive personal information. *Id.* ¶¶ 10–13. Indeed, many of the NAACP's members have publicly advanced political views that are strongly at odds with the views and actions of the current President and his administration. *See id.* ¶¶ 11. Unfortunately, the current administration has made clear that it is willing to use all the tools at DOJ's disposal to accomplish political goals, including by targeting individual citizens. *Id.*

7

Consequently, if DOJ succeeds in obtaining the sensitive data it seeks in this lawsuit, the NAACP will be forced to contend with a growing distrust of the government and hesitance among members and constituents to actively participate in the political process. *Id.* ¶ 15. Finally, given the information sought by DOJ includes highly sensitive personal identifying information, and the risks of identity theft and other forms of exploitation that accompany disclosures of such information, the NAACP has a direct interest in protecting the fundamental privacy rights of its individual members. *Id.* ¶¶ 10, 14.

*NAACP-CA/HI.* With more than 12,000 members in roughly 60 local branches and chapters across California, NAACP-CA/HI works in concert with the NAACP to ensure political, educational, and economic justice for Black Californians and other marginalized groups. Callender Decl. ¶¶ 3–4. Originally established in 1914 in Los Angeles, NAACP-CA/HI itself has a long history of fighting for and protecting fundamental rights and voting rights of its members and constituents—including by engaging in voter outreach, education, and activism. *Id.* ¶¶ 6–7. NAACP-CA/HI and its local branches and chapters operate and support programs that encourage members and other California voters to participate in elections and provide assistance to voters in doing so. *Id.* ¶ 7. These efforts often include, for example, events that assist previously incarcerated citizens whose civil rights have been restored with registering and casting ballots. *See id.* ¶¶ 7, 11. Additionally, some of the NAACP-CA/HI's voter registration and engagement efforts include working with naturalized immigrants and first-generation U.S. citizens—groups that have faced adverse action from the current administration. *Id.* ¶¶ 10–11. Thus, as with NAACP, DOJ's effort to obtain California's complete voter registration data threatens not only the NAACP-CA/HI's mission-critical programs, but also the fundamental privacy and voting rights of NAACP-CA/HI's members. *Id.* ¶¶ 12–13.

*SIREN.* SIREN is an advocacy and direct-services organization with offices in in San Jose and Fresno. *See* Tran Decl. ¶ 3. SIREN's mission is to empower immigrants

and refugees through community education and leadership development, organizing, policy advocacy, civic engagement, and legal services. *Id.* The group has roughly 120 members in the Bay Area and Central Valley, and its work serves a broader constituency of refugees, immigrants—including naturalized citizens—and others who share the vision of empowering and protecting citizen-immigrants. *Id.* ¶ 4. Because SIREN's work focuses on helping immigrants become agents of change, SIREN's core activities focus on encouraging and helping citizen-immigrants to participate in the political process. *Id.* ¶ 5. Voter-registration, voter-education, voter-assistance, and get-out-the-vote ("GOTV") programs are all critical components of achieving SIREN's mission. *Id.* For example, SIREN organizes and executes GOTV and voter-education efforts that combine voter education about how to register to vote and cast ballots in California with information about candidates and ballot issues that impact the communities SIREN serves. *Id.* ¶¶ 5–6. This work is well underway for the upcoming 2025 elections. *Id.* ¶ 6.

DOJ's effort to obtain sensitive personal information of all registered voters in California poses serious risks for SIREN and the immigrant communities it serves. *Id.* ¶¶ 9–14. For example, SIREN's core civic engagement efforts include assisting recently naturalized citizens with the voter registration and voting process, but the increasingly anti-immigrant rhetoric advanced by the current administration and those aligned with it has sown fear among these citizens. *Id.* ¶¶ 12, 14. Additionally, naturalized citizens who register face a greater risk of being wrongly accused of being non-citizens, often based on misguided and error-prone efforts to match personal information in different governmental databases, which appears to be part of the federal government's plan for the California data it seeks. *Id.* ¶ 13. Members of these communities will be hesitant to participate politically, and may forego participating at all, if they reasonably fear that they may be punished, scrutinized, or investigated by the federal government simply for providing their personal information to register to vote—directly undermining SIREN's mission-critical work.  *Id.* ¶¶ 13–14. These concerns are especially urgent for SIREN

9

now that it has been targeted by federal officials who disagree with its mission. *Id.* ¶ 7. The organization was among immigrant-rights groups singled out by the U.S. House Committee on Homeland Security for requests to turn over sensitive member information merely because it works with immigrant communities. *Id.* SIREN and its executive director have also been targeted with hate mail because of their advocacy. *Id.* ¶ 8. At bottom, SIREN and its members are afraid, and they do not want the federal administration to get their hands on personal information they have entrusted to the state. *Id.* ¶¶ 12–14.

## **LEGAL STANDARD**

A party may intervene pursuant to Federal Rule of Civil Procedure 24 either as a matter of right, or with permission of the Court. A party seeking to intervene as a matter of right must satisfy four requirements:

> (1) the applicant must timely move to intervene; (2) the applicant must have a significantly protectable interest relating to the property or transaction that is the subject of the action; (3) the applicant must be situated such that the disposition of the action may impair or impede the party's ability to protect that interest; and (4) the applicant's interest must not be adequately represented by existing parties.

*Arakaki v. Cayetano*, 324 F.3d 1078, 1083 (9th Cir. 2003).

The Ninth Circuit has adopted a policy of "interpret[ing] these requirements broadly in favor of intervention," guided by "practical considerations, not technical distinctions." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022) (quoting *Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011)). And courts must "take all well-pleaded, nonconclusory allegations in the motion to intervene, the proposed complaint or answer in intervention, and declarations supporting the motion as true absent sham, frivolity or other objections." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 820 (9th Cir. 2001). A party who satisfies each of these requirements must be permitted to intervene. *Arakaki*, 324 F.3d at 1083.

"A motion for permissive intervention pursuant to Rule 24(b) is directed to the sound discretion of the district court." *San Jose Mercury News, Inc. v. U.S. District Court*, 187 F.3d 1096, 1100 (9th Cir. 1999). Only two factors must be satisfied where, as here, the intervening party does not intend to assert additional "new claims" for relief: (1) the motion must be timely and (2) the applicant's claim or defense must have a question of law or fact in common with the main action. *Freedom from Religion Found. v. Geithner*, 644 F.3d 836, 841 (9th Cir. 2011).[4]

## ARGUMENT

## I.    Proposed Intervenors are entitled to intervene as a matter of right.

Proposed Intervenors satisfy the standards for intervention as a matter of right because the motion is timely, the prospect of an adverse ruling threatens to impair their and their members' fundamental privacy and voting rights—as well as each organization's mission-critical voter-engagement programs—and none of the existing government parties adequately represent their distinct, privately held interests.[5]

### A.    This motion is timely.

Proposed Intervenors' Motion is indisputably timely. To make this determination, courts in this Circuit must consider the totality of the circumstances, including "(1) the stage of the proceeding at which an applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of [any] delay." *W. Watersheds Project,* 22 F.4th at 835–36. Here, DOJ filed suit on September 25, and this motion follows soon

---

[4] Proposed Intervenors submit a Proposed Answer as required by Rule 24, *see* Ex. A, but reserve the right to file a Rule 12 motion by the deadline set by the Court or the Federal Rules of Civil Procedure.

[5] Proposed Intervenors are regularly granted intervention to protect the fundamental rights of their members as well as their mission-critical election-related work. *See, e.g.*, *South Carolina v. United States*, 585 F. Supp. 418, 419 (D.D.C. 1984) (noting intervention of NAACP as defendant); *Texas v. United States*, 798 F.3d 1108, 1111–12 2 (D.C. Cir. 2015) (noting intervention of Texas NAACP branches as defendants).

after—before any case schedule has been set, before any Defendants have answered, and before any "substantive proceedings have occurred." *Issa v. Newsom*, No. 22-CV-1044, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020).

Additionally, there is no conceivable prejudice to any existing party because allowing Proposed Intervenors to participate would not require altering any existing deadlines, and they agree to abide by any future deadlines set by the Court. *See W. States Trucking Ass'n v. Becerra*, No. 19-cv-02447, 2020 WL 1032348, at *2 (C.D. Cal. Mar. 2, 2020) (noting that a "motion to intervene is generally considered timely if it is filed soon after a complaint, prior to any substantive proceedings"); *see also, e.g.*, *Or. Nat. Desert Ass'n v. Shuford*, No. 06-cv-242, 2006 WL 2601073, at *2 (D. Or. Sept. 8, 2006) (finding no prejudice where intervenors moved promptly and agreed "to comply with the court's discovery and pretrial scheduling order"), *aff'd sub nom. Or. Nat. Desert Ass'n v. McDaniel*, 405 F. App'x 197 (9th Cir. 2010). Thus, the motion is timely.

## B.    Proposed Intervenors have substantial, protectable interests that are threatened by the relief sought by DOJ.

Proposed Intervenors also satisfy the "closely related" second and third requirements for intervention because they have significant protectable interests in this lawsuit, and the relief DOJ seeks threatens to impair those interests. *Chiles v. Thornburgh*, 865 F.2d 1197, 1214 (11th Cir. 1989); *see also, e.g.*, *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1179 (9th Cir. 2011).

Under Rule 24(a)(2), "a prospective intervenor 'has a sufficient interest for intervention purposes if it will suffer a practical impairment of its interests as a result of the pending litigation.'" *Wilderness Soc'y*, 630 F.3d at 1179 (quoting *California ex rel. Lockyer v. United States*, 450 F.3d 436, 441 (9th Cir. 2006)). Consistent with its liberal standard, "Rule 24(a)(2) does not require a specific legal or equitable interest," and "it is generally enough that the interest is protectable under some law, and that there is a relationship between the legally protected interest and the claims at issue." *Id.* (quoting

*Sierra Club v. EPA*, 995 F.2d 1478, 1484 (9th Cir. 1993)). Furthermore, "[t]he interest requirement may be judged by a more lenient standard if the case involves a public interest question or is brought by a public interest group." *Brumfield v. Dodd*, 749 F.3d 339, 344 (5th Cir. 2014) (quoting Moore's Federal Practice § 24.03[2][c] (3d ed. 2008)).

Once an applicant has shown some protectible interest, courts generally "have little difficulty concluding that the disposition of [a] case may, as a practical matter, affect" an intervenor's interests. *Lockyer*, 450 F.3d at 442. Applicants need not show that impairment is a "certainty," only that "disposition of the action 'may' practically impair a party's ability to protect their interest in the subject matter of the litigation." *Citizens for Balanced Use*, 647 F.3d at 900 (quoting Fed. R. Civ. P. 24(a)(2)). In other words, "the 'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process." *Wilderness Soc'y*, 630 F.3d at 1179 (cleaned up).

***Individual voters.*** Proposed Intervenors unquestionably satisfy the interest inquiry here. Starting with their individual members, many are registered California voters who have significant protectable interests in their personal voter registration data, which is legally safeguarded under California law.[6] Ashton Decl. ¶ 5, Callender Decl. ¶ 4, Tran Decl. ¶ 4. Their voter information is at serious risk of improper disclosure through the relief sought in this action. *See* Ashton Decl. ¶ 10, Callender Decl. ¶ 8, Tran Decl. ¶ 9; *see also* Compl. at 16 (Prayer for Relief). Many of Proposed Intervenors' members strongly oppose surrendering their personal information to the federal government, and they have legitimate concerns about the consequences of doing so. Ashton Decl. ¶¶ 11–14, Callender Decl. ¶¶ 9–12, Tran Decl. ¶ 10–14. They fear retaliation or unwarranted

---

[6] *See* Cal. Elec. Code § 2194(b)(1)–(2); Cal. Gov. Code § 7924.000(b); *see also* Cal. Const. art. I, § 1; Cal. Civ. Code §§ 1798.1, 1798.24; Cal. Elec. Code § 2266 (expressly specifying that protections of the California Information Practices Act are applicable to voter information).

scrutiny due to their political activism or civic service, Ashton Decl. ¶ 12, Callender
Decl. ¶ 10, Tran Decl. ¶ 7–11, and they fear that the data will not be properly protected
and is liable to be misused, Ashton Decl. ¶ 14, Callender Decl. ¶ 12, Tran Decl. ¶ 10.
Once their private and protected information is released to DOJ, there will be no way for
them to restore the privacy of the disclosed information. *See* Ashton Decl. ¶¶ 14–
15; Callender Decl. ¶ 13; Tran Decl. ¶¶ 13–14.

These personalized interests readily satisfy the requirements of Rule 24(a)(2). *See,
e.g.*, *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing
"straightforward" significantly protectable interest in confidentiality of non-public
documents); *Celgard LLC v. Targray Tech. Int'l Inc.*, No. SAMC20-00128, 2021 WL
831030, at *2 (C.D. Cal. Feb. 10, 2021) (recognizing that disclosure of confidential
commercial information is a "well-established interest sufficient to justify intervention
under Rule 24(a)"); *accord Jurj v. Andersen*, No. 3:21-CV-00088-YY, 2022 WL
19349528, at *4 (D. Or. Sept. 16, 2022) (similar). That this privacy interest implicates
the fundamental right to vote only bolsters Proposed Intervenors' interests here, as each
has a direct and substantial interest in preserving their fundamental "right to cast a secret
ballot free from intimidation" or other interference, Cal. Elec. Code § 2300(a)(4); *cf.
Arizona All. for Retired Americans v. Clean Elections USA*, 638 F. Supp. 3d 1033, 1040
(D. Ariz. 2022), *opinion vacated and appeal dismissed as moot*, No. 22-16689, 2023 WL
1097766 (9th Cir. Jan. 26, 2023), and in ensuring that their right to vote is not unlawfully
burdened, *see, e.g.*, *League of United Latin Am. Citizens v. City of Boerne*, 659 F.3d 421,
434–35 (5th Cir. 2011) (reversing denial of intervention and concluding interests in the
right to vote are "sufficient . . . to satisfy Rule 24(a)(2)").

***Organizations.*** The NAACP, the NAACP-CA/HI, and SIREN themselves have
significant and protectable interests in preserving the privacy rights of their hundreds of
thousands of members—many of whom are California voters. Ashton Decl. ¶¶ 4–
5; Callender Decl. ¶ 3–4; Tran Decl. ¶¶ 3–4; *cf. All. for Retired Americans v. Bessent*,

770 F. Supp. 3d 79, 101–04 (D.D.C. 2025) (holding membership organization established Article III standing to challenge disclosures of information to federal agencies based on intrusions upon privacy interests of members).

The NAACP, NAACP-CA/HI, and SIREN also have distinct and independent interests in preserving their own abilities to accomplish core missions of activating voters in their memberships and constituencies free from fears of intimidation or harassment. Ashton Decl. ¶¶ 8–9; Callender Decl. ¶ 7; Tran Decl. ¶¶ 5–6. As noted, their voter registration and engagement efforts include working with immigrants in California who are naturalized and often first-generation U.S. citizens. Tran Decl. ¶¶ 5–6; Callender Decl. ¶ 10. In view of the current administration's harsh treatment of immigrant communities, many voters in this group—even those plainly qualified to vote—may reasonably be particularly hesitant to engage in the political process if it means inviting federal scrutiny and retaliation against their families and communities. *See* Tran Decl. ¶ 12–14; Callender Decl. ¶ 11. The fear and distrust sown by DOJ's aggressive demands for personal information therefore directly frustrates the NAACP's, NAACP-CA/HI's, and SIREN's mission-critical work. Ashton Decl. ¶¶ 15; Callender Decl. ¶¶ 13; Tran Decl. ¶¶ 13–14.

Courts regularly recognize that organizations have significant protectable interests in preserving their own mission-critical organizational activities, particularly when it comes to ensuring their members and constituents' ability to vote. *See, e.g.*, *Issa*, 2020 WL 3074351, at *3; *Paher v. Cegavske*, No. 3:20-cv-00243, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020); *cf. La Union del Pueblo Entero v. Abbott*, 29 F.4th 299, 306 (5th Cir. 2022) (recognizing that a political party had a "legally protectable interest" because they "expend significant resources in the recruiting and training of volunteers").

Should there be any doubt, any one of these interests satisfy even the "more stringent" requirements for establishing an Article III injury. *Yniguez v. Arizona*, 939 F.2d 727, 735 (9th Cir. 1991); *see Chiles*, 865 F.2d at 1212–14 & n.16 (cautioning there

15

is "less reason to be as finicky" in assessing an intervenor's interests than a plaintiff's asserted injury (citation omitted)); *see also, e.g.*, *Alliance for Retired Americans v. Bessent*, 770 F. Supp. 3d at 101–03; *DNC v. Reagan*, 329 F. Supp. 3d 824, 841 (D. Ariz. 2018) (concluding organization had injury sufficient to confer standing where challenged law would require it "to retool [its] [get-out-the-vote] strategies and divert [] resources"), *rev'd on other grounds sub nom. DNC v. Hobbs,* 948 F.3d 989 (9th Cir. 2020) (en banc); *Mi Familia Vota v. Fontes*, 719 F. Supp. 3d 929, 983–87 (D. Ariz. 2024) (finding organizations had standing to protect members' voting rights), *aff'd in relevant part* 129 F.4th 691 (9th Cir. 2025); *March for Our Lives Idaho v. McGrane*, 697 F.Supp.3d 1029, 1039 (D. Idaho 2023) (similar); *cf. Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096–97 (9th Cir. 2021). That the threat to Proposed Intervenors satisfies the more demanding Article III injury standard "compels the conclusion that they have an adequate interest" for purposes of Rule 24(a)(2). *Yniguez*, 939 F.2d at 735.

**C.    Existing parties do not adequately represent Proposed Intervenors.**

Proposed Intervenors cannot be assured adequate representation of their distinct interests in this matter if they are denied intervention. "[T]he burden of making this showing is minimal" and is "satisfied if the applicant shows that representation of its interests may be inadequate." *Hoopa Valley Tribe v. U.S. Bureau of Reclamation*, 648 F. Supp. 3d 1196, 1204 (E.D. Cal. 2022) (quoting *Sagebrush Rebellion Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)); *see also Berger v. N.C. State Conf. of the NAACP*, 597 U.S. at 196 (citing *Trbovich*, 404 U.S. at 538 n.10). Courts are "liberal in finding" this requirement satisfied, recognizing that "there is good reason in most cases to suppose that the applicant is the best judge of the representation of the applicant's own interests." 7C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1909 (3d ed. 2024).

Here, DOJ naturally does not represent Proposed Intervenors' interests, as it seeks to forcibly compel production of California's unredacted state voter registration list. And

while California and the Secretary, to date, have resisted that demand, they too do not adequately represent Proposed Intervenors' distinct private interests. Federal courts have "often concluded that governmental entities do not adequately represent the interests of aspiring intervenors." *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 736 (D.C. Cir. 2003). This is because a government-official defendant's interests are "necessarily colored by [their] view of the public welfare rather than the more parochial views of a proposed intervenor whose interest is personal to it." *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 972 (3d Cir. 1998) (explaining that the burden in these circumstances is "comparatively light"). Simply put, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899 (quoting *WildEarth Guardians v. U.S. Forest Serv.*, 573 F.3d 992, 996 (10th Cir. 2009)).

The Supreme Court recently emphasized this point, explaining that public officials must "bear in mind broader public-policy implications," whereas private litigants—like Proposed Intervenors—seek to vindicate their own rights "full stop." *Berger*, 597 U.S. at 195–96 (quoting *Trbovich*, 404 U.S. at 538 n.10). Thus, the Supreme Court cautioned that courts should not conduct the adequacy of representation analysis at too "high [a] level of abstraction," and reaffirmed that, even where the parties' interests "seem[] closely aligned," the burden to demonstrate inadequate representation remains "minimal" unless those interests are "identical." *Id.* at 196 (citation omitted); *cf. United Guar. Residential Ins. Co. v. Phila. Sav. Fund Soc.*, 819 F.2d 473, 475 (4th Cir. 1987) (explaining that, under *Trbovich*, "when a party to an existing suit is obligated to serve two distinct interests, which, although related, are not identical, another with one of those interests should be entitled to intervene"). In other words, even if California and the Secretary oppose the relief that DOJ seeks at a high level of abstraction, it does not follow

that they share the same interests as private organizations committed to voter engagement and turnout. *See Berger,* 597 U.S. at 196.

State Defendants and Proposed Intervenors plainly do not share "identical" interests here. For one, the existing Defendants are obliged to enforce the requirements of the NVRA and HAVA, in addition to various state laws governing maintenance of the voter registration list. Thus, by definition, they have an obligation to weigh and carry out public duties that Proposed Intervenors do not share. *See, e.g.*, *Bellitto v. Snipes*, No. 16-cv-61474, 2016 WL 5118568, at *2 (S.D. Fla. Sept. 21, 2016) (concluding adequate representation not guaranteed where existing defendant was "an elected official" whose interpretation of the NVRA might not always be aligned with intervenors' interests); *Judicial Watch, Inc. v. Ill. State Bd. of Elections*, No. 24 C 1867, 2024 WL 3454706, at *4 (N.D. Ill. July 18, 2024) (similar). Indeed, the NVRA specifically requires State Defendants to "balance *competing* objectives"—maintaining accurate and current voter rolls while promoting access to the ballot box. *Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (emphasis added). Proposed Intervenors simply do not share these competing interests—they are focused entirely on maintaining the privacy of their sensitive personal information, voting rights, and each organization's mission-critical voter-engagement programs. *See* Ashton Decl. ¶¶ 4, 7–8, 15; Callender Decl. ¶¶ 4, 7–8, 15; Tran Decl. ¶¶ 5, 10, 13–14. Accordingly, their interests are not adequately represented. *See, e.g.*, *GHP Mgmt. Corp. v. City of Los Angeles*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (explaining that courts "have permitted intervention on the government's side in recognition that the intervenors' interests are narrower than that of the government and therefore may not be adequately represented"); *Barke v. Banks*, No. 8:20-cv-00358, 2020 WL 2315857, at *3 (C.D. Cal. May 7, 2020) (collecting cases).

Further still, government defendants—including in disputes over voter roll maintenance—sometimes choose to settle due to competing interests. Courts routinely find inadequate representation where there is a possibility that an existing defendant will

resolve a case on terms that proposed intervenors would not agree to. *E.g.*, *City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011) (explaining that a possible "conflict of interest ... when it comes to settlement possibilities" favors intervention); *Clark v. Putnam County*, 168 F.3d 458, 462 (11th Cir. 1999) (concluding government's representation of individual "voters [seeking] to intervene" inadequate in voting rights lawsuit where "proposed interveners [we]re adverse to settlement" but government might not be); *Judicial Watch*, 2024 WL 3454706, at \*5 (allowing union to intervene as defendant in voter roll maintenance case on behalf of members, noting that government defendants around the country have settled in litigation over voter lists).

At bottom, the government entities and public officials on both sides of the case do not stand in the same shoes as Proposed Intervenors and thus do not sufficiently represent their interests, which will be directly impacted by the disposition of this matter.

## II. Proposed Intervenors should, alternatively, be granted permissive intervention.

This Court should alternatively exercise its discretion to grant permissive intervention. Rule 24(b) is readily satisfied: Proposed Intervenors assert a "defense that shares with the main action a common question of law or fact," and granting intervention would not "unduly delay or prejudice the adjudication" of the matter. Fed. R. Civ. P. 24(b). Proposed Intervenors have moved promptly, *see supra* Argument § I.A, and agree to abide by any schedule set by the Court or agreed to by the original parties—meaning there will be no delay or prejudice. And Proposed Intervenors' defense requires resolution of the same factual and legal issues raised in the underlying lawsuit. *See* Ex. D (Proposed Answer).

The Ninth Circuit has also identified additional considerations the Court can consider in weighing permissive intervention requests. *See Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022). Those considerations—including the proposed intervenors' interests, the inadequacy of the representation of

those interests, and the intervenors' contribution to the factual and legal issues, *see id.*—buttress the case for intervention here.

*First*, Proposed Intervenors seek to defend deeply personal privacy interests, as well as organizational interests unique to civic organizations. *See supra* Argument § I.B. *Second*, these parochial interests are not identical to the public interests of the existing, governmental defendants, and may not be fully advanced absent their intervention. *See supra* Argument § I.C. *Finally*, the harms that vulnerable voters face and the arguments they advance will certainly contribute to the "full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)). Given that this action threatens to compel the disclosure of personal data of millions of California voters to federal officials, the letter and spirit of Rule 24 counsel strongly in favor of allowing parties who specifically represent the interests of those voters to participate. *See Relman Colfax v. Fair Housing Council*, 19-cv-8612 PSG (JCX), 2020 WL 9460652, at *1 (C.D. Cal. Apr. 20, 2020) ("If an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." (quoting Fed. R. Civ. P. 24 Advisory Committee's notes)).

For similar reasons, courts have routinely granted permissive intervention to civic organizations to ensure their voices are heard when litigation implicates the rights and privacy of all voters. *See, e.g.*, *1789 Found. Inc. v. Fontes*, No. 24-cv-02987, 2025 WL 834919, at *4 (D. Ariz. Mar. 17, 2025) (permitting advocacy organizations to intervene as defendants); *Pub. Int. Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 802 (E.D. Mich. 2020) (permitting voting rights organizations to intervene as defendants); *see also League of Women Voters of N.C. v. North Carolina*, No. 1:13-cv-660, 2014 WL 12770081, at *3 (M.D.N.C. Jan 27, 2014) (permitting individual voters to intervene).

In short, because Rule 24 is liberally construed to protect Proposed Intervenors'
rights and interests, and because Proposed Intervenors' participation will assist rather
than prejudice efficient development and resolution of this matter, the Court should grant
permissive intervention in the event it does not find that Proposed Intervenors may
intervene as a matter of right.

## CONCLUSION

Proposed Intervenors respectfully request that this Court grant intervention as a
matter of right, or, in the alternative, grant permissive intervention.

Dated: October 7, 2025                      Respectfully submitted,

*/s/ Lalitha D. Madduri*
Lalitha D. Madduri (CA Bar No. 301236)
Jacob D. Shelly* (DC Bar No. 90010127)
ELIAS LAW GROUP LLP
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498
lmadduri@elias.law
jshelly@elias.law

Tyler L. Bishop (CA Bar No. 337546)
Walker McKusick* (WA Bar No. 63205)
ELIAS LAW GROUP LLP
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
tbishop@elias.law
wmckusick@elias.law

1

2    Omar Qureshi (CA Bar No. 323493)
     omar@qureshi.law
3    Max Schoening (CA Bar No. 324643)
     **QURESHI LAW PC**
4    700 Flower Street, Suite 1000
5    Los Angeles, CA 90017
     T: (213) 600-6096
6    max@qureshi.law

7

8    *Counsel for Proposed Intervenor-
     Defendants NAACP; NAACP California-
9    Hawaii State Conference; and Services,
     and Immigrant Rights and Education
10   Network*

11

12   *\* Pro hac vice application forthcoming*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1
2
3
4

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Intervenor Defendants NAACP, NAACP-CA/HI, and SIREN certifies that this brief contains 6,569 words, which complies with the word limit of Local Rule 11-6.1.

5
6
7

Dated: October 7, 2025                    */s/ Lalitha D. Madduri*
                                          Lalitha D. Madduri