GRAYCE ZELPHIN (SBN 279112)
gzelphin@aclunc.org
ANGELICA SALCEDA (SBN 296152)
asalceda@aclunc.org
SHILPI AGRWAL (SBN 270749)
sagarwal@aclunc.org
ACLU FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493

JULIA A. GOMEZ (SBN 316270)
jgomez@aclusocal.org
PETER ELIASBERG (SBN 89110)
peliasberg@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5232

Counsel for Proposed Intervenor-Defendant

*Additional counsel listed below*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>        Plaintiff, <br>        vs. <br><br> SHIRLEY N. WEBER, in her official capacity as Secretary of State of California, and the STATE OF CALIFORNIA <br>        Defendants. | CASE NO: 2:25-cv-09149-DOC (ADSx) <br><br> **NOTICE OF MOTION AND MOTION FOR INTERVENTION OF LEAGUE OF WOMEN VOTERS OF CALIFORNIA; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR INTERVENTION OF LEAGUE OF WOMEN VOTERS OF CALIFORNIA** <br><br> DATE: November 17, 2025 <br> TIME: 9:00 AM <br> COURTROOM: 10A, 10th Floor <br> JUDGE: Hon. David O. Carter |

THERESA J. LEE (NY 5022769)*
tlee@aclu.org
SOPHIA LIN LAKIN (NY 5182076)*
slakin@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

PATRICIA J. YAN (NY 5499173)*
pyan@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800

*Application for admission pro hac vice forthcoming

## <u>NOTICE OF MOTION AND MOTION TO INTERVENE</u>

The League of Women Voters of California (the "League" or "Proposed Intervenor") respectfully moves for this Court grant them leave to intervene as defendants in this case as a matter of right under Federal Rule of Civil Procedure 24(a)(2) or, alternatively, grant them permission to intervene under Rule 24(b).

In support of their Motion, Proposed Intervenor submits and incorporates the below Memorandum of Points and Authorities, declaration of Helen Hutchison (attached as Exhibit A), a Proposed Answer submitted pursuant to Rule 24(c) (attached as Exhibit B), and a Proposed Order (attached as Exhibit C). Pursuant to Local Rule 7-3, counsel for Proposed Intervenor made a good-faith effort to confer with counsel for the existing parties. On October 16, 2025, counsel for Proposed Intervenors contacted Plaintiff's counsel requesting a call to discuss proposed intervention. On October 17, 2025, Plaintiff's counsel responded by email and stated that their division is furloughed and that Plaintiff opposes the motion. Proposed Intervenor also met and conferred with Defendants' counsel, and on October 17, 2025 counsel confirmed that the Defendants consent to Proposed Intervenor's motion.

Proposed Intervenor recognizes that Plaintiff's Motion to Stay this case due to the lapse in federal appropriations is currently pending. ECF No. 6. Proposed Intervenor does not oppose this stay request. However, the League requests that the Court set this motion for hearing on November 17, 2025, to be heard with the other pending motion to intervene. ECF No. 20. For the reasons below, the League's motion should be granted.

# **TABLE OF CONTENTS**

**NOTICE OF MOTION AND MOTION TO INTERVENE** ............................. iii

**TABLE OF CONTENTS** ................................................................. iv

**TABLE OF AUTHORITIES** ...............................................................v

**INTRODUCTION**.............................................................................1

**BACKGROUND** ...............................................................................3

**I.**    **Federal Law Entrusts States with the Responsibility to Collect, Maintain, and Protect Voter Data** ......................................... 3

**II.**   **The Department of Justice Demands Unwarranted Access to Voter Data from Jurisdictions Nationwide, Citing Questionable Rationale** ...............4

**III.**  **The League has a Vested Interest in Protecting its Members and Preserving its Legislative Advocacy**..................................................4

**ARGUMENT** ...................................................................................7

**I.**    **The League Is Entitled to Intervene as of Right Under Rule 24(a)(2)** .....7

    **A.**    **Proposed Intervenor-Defendant's Motion Is Timely**......................7

    **B.**    **The League Has a Significantly Protectable Interest that Will be Impaired if Plaintiff DOJ Prevails**........................................9

    **C.**    **The League's Interests Are Not Adequately Represented by the Existing Parties**........................................................12

**II.**   **In the Alternative, the League Should Be Granted Permissive Intervention Under Rule 24(b)**...............................................14

**CONCLUSION**...............................................................................17

iv

Memo. ISO Mot. for Intervention of the League of Women Voters of California | Case No. 2:25-cv-09149-DOC (ADSx)

1

# TABLE OF AUTHORITIES

2

**Cases**

3

*Apache Stronghold v. U.S.*,

4    2023 WL 3692937 (D. Ariz. May 29, 2023)....................................................9

5

*Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*,

6    2009 WL 5206722 (E.D. Cal. Dec. 23, 2009)................................................14

7    *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*,

8    54 F.4th 1078 (9th Cir. 2022)..........................................................................7

9    *Cal. Dump Truck Owners Ass'n v. Nichols*,

10    275 F.R.D. 303 (E.D. Cal. 2011)....................................................................13

11    *Callahan v. Brookdale Senior Living Communities, Inc.*,

12    42 F.4th 1013 (9th Cir. 2022)........................................................................15

13    *Citizens for Balanced Use v. Mont. Wilderness Ass'n*,
     647 F.3d 893 (9th Cir. 2011) ................................................................ 9, 12, 13

14

15    *Est. of Toguri v. Pierotti*,
     2023 WL 8703417 (C.D. Cal. Feb. 27, 2023)................................................8

16

17    *Freedom from Religion Found., Inc. v. Geithner*,
     644 F.3d 836 (9th Cir. 2011)........................................................................15

18

19    *GHP Mgmt. Corp. v. City of L.A.*,
     339 F.R.D. 621 (C.D. Cal. 2021) ..................................................................14

20

21    *Greene v. U.S.*,
     996 F.2d 973 (9th Cir. 1993)........................................................................10

22

23    *Husted v. A. Philip Randolph Inst.*,
     584 U.S. 756 (2018) .......................................................................................3

24    *Idaho Farm Bureau Fed'n v. Babbitt*,

25    58 F.3d 1392 (9th Cir. 1995)........................................................................12

26    *Idaho v. Freeman*,
     625 F.2d 886 (9th Cir. 1980)........................................................................12

27

28

v

Memo. ISO Mot. for Intervention of the League of Women Voters of California | Case No. 2:25-cv-09149-DOC (ADSx)

*Issa v. Newsom*,
  2020 WL 3074351 (E.D. Cal. June 10, 2020)............................................. 8, 10, 13

*Kalbers v. U.S. Dep't of Just.*,
  22 F.4th 816 (9th Cir. 2021)............................................................. 8, 9, 10

*KOR Servs., LLC v. Thomson Int'l*,
  2022 WL 18278406 (C.D. Cal. Aug. 3, 2022).............................................9

*Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*,
  2024 WL 3290349 (D. Or. July 2, 2024) ..................................................8

*Paher v. Cegavske*,
  2020 WL 2042365 (D. Nev. Apr. 28, 2020) .......................................... 11, 14

*Republican Nat'l Comm. v. Aguilar*,
  2024 WL 3409860 (D. Nev. July 12, 2024)...............................................16

*Sable Offshore Corp. v. Cnty. of Santa Barbara*,
  2025 WL 2412147 (C.D. Cal. July 25, 2025) ............................................12

*Sagebrush Rebellion, Inc. v. Watt*,
  713 F.2d 525 (9th Cir. 1983)...............................................................12

*SEC v. Navin*,
  166 F.R.D. 435 (N.D. Cal. 1995) ..........................................................11

*Sierra Club v. EPA*,
  995 F.2d 1478 (9th Cir. 1993)...............................................................7

*Smith v. L.A. Unified Sch. Dist.*,
  830 F.3d 843 (9th Cir. 2016)...............................................................8, 9

*Spangler v. Pasadena City Bd. of Educ.*,
  552 F.2d 1326 (9th Cir. 1977)..............................................................15

*Sullivan v. Ferguson*,
  2022 WL 10428165 (W.D. Wash. Oct. 18, 2022) ......................................16

*Sw. Ctr. for Biological Diversity v. Berg*,
  268 F.3d 810 (9th Cir. 2001)................................................................10

*U.S. v. Aerojet Gen. Corp.*,
  606 F.3d 1142 (9th Cir. 2010)...............................................................8

*U.S. v. City of L.A.*,
  288 F.3d 391 (9th Cir. 2002) ...........................................................................7

*U.S. v. Oregon*,
  745 F.2d 550 (9th Cir. 1984) .........................................................................15

*W. States Trucking Ass'n v. Becerra*,
  2020 WL 1032348 (C.D. Cal. Mar. 2, 2020) ..................................................8

*W. Watersheds Project v. Haaland*,
  22 F.4th 828 (9th Cir. 2022) ...........................................................................8

*Wilderness Soc'y v. U.S. Forest Serv.*,
  630 F.3d 1173 (9th Cir. 2011) ...................................................................7, 10

**Statutes**

U.S. Const. art. I, § 4, cl. 1 ..................................................................................3

52 U.S.C. § 21083(a) .......................................................................................3, 4

52 U.S.C. § 20501(b) ............................................................................................3

52 U.S.C. § 20503(a) ............................................................................................3

52 U.S.C. § 20507(a) ............................................................................................3

Cal. Elec. Code §§ 2260-2277 .............................................................................6

**Rules**

Fed. R. Civ. P. 24(a) ..................................................................................... *passim*

Fed. R. Civ. P. 24(b) ..................................................................................... *passim*

**Other Authorities**

7C Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1908 (3d ed. 1998 & Supp. 2025) .......................................................................................................................7

Devlin Barrett & Nick Corasaniti, Trump Administration Quietly Seeks to Build National Voter Roll, N.Y. Times (Sept. 9, 2025),
  https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html ...............................................................................................................2

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Center (Oct. 15, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information......................................................................1

Memo. ISO Mot. for Intervention of the League of Women Voters of California | Case No. 2:25-cv-09149-DOC (ADSx)

# INTRODUCTION

Proposed Intervenor-Defendant the League of Women Voters of California (the "League") moves to intervene in this action to protect its members from federal intrusion into the state's management of elections and prevent the United States Department of Justice ("DOJ") from collecting and misusing sensitive data California voters entrusted to the state when registering to vote. Concerned by the DOJ's attempt to use this Court's resources and authority to unlawfully extract sensitive and confidential voter data, and motivated by its mission to encourage civic participation and protect its members' privacy, the League respectfully moves to intervene pursuant to Federal Rule of Civil Procedure 24(a)(2).

This lawsuit arises from the DOJ's legally baseless demand that the State of California provide it with blanket access to unredacted state voter data. Despite the federal government's constitutionally limited role in managing federal elections, which extends only so far as Congress has specifically legislated, over the past several months the DOJ has repeatedly attempted to intrude upon states' authority to manage elections by demanding extensive voter information from at least 39 states.[1] After several states declined to comply with these sweeping requests, citing state and federal laws protecting sensitive information, the DOJ sued eight of these states in an attempt to compel unlawful productions.[2] While the DOJ asserts that it is investigating "voter registration list maintenance" here

---

[1] Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information,* Brennan Center (Oct. 15, 2025), https://www.brennancenter.org/our-work/research-reports/tracker-justice-department-requests-voter-information.

[2] *U.S. v. Maine*, No. 1:25-cv-468 (D. Me. filed Sept. 25, 2025); *U.S. v. Benson*, No. 1:25- cv-01148 (W.D. Mich. filed Sept. 25, 2025); *U.S. v. Simon*, No. 0:25-cv-03761 (D. Minn. filed Sept. 25, 2025); *U.S. v. Bd. of Elections of the State of New York*, No. 1:25-cv-01338 (N.D.N.Y. filed Sept. 25, 2025); *U.S. v. Scanlan*, No. 1:25-cv-00371 (D.N.H. filed Sept. 25, 2025); *U.S. v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. filed Sept. 25, 2025).

in California, media reports and the national reach of its voter data requests suggest that the true motive is a broader quest to create a national voter roll.[3] In any case, the DOJ does not, and cannot, articulate a basis for the expansive collection of state-held voter data it seeks. Here, as in other states, the DOJ's requests go well beyond what is authorized by federal law, and complying with them would violate state and federal laws.

The League is a non-partisan grassroots organization with thousands of members across the state. It is one of the state's preeminent pro-democracy and pro-voter organizations and works to encourage civic participation in California and to register Californians to vote. The League has led many of California's efforts to expand voter registration opportunities and to pass legislation securing the confidentiality and privacy of voter information. The League seeks to intervene to safeguard its interests in conducting voter engagement and education work, maintaining the privacy of its members and the communities it serves, and defending the pro-voter policies it has helped to pass. The League's participation will not cause any delay and will provide the Court with important context that will aid in the swift and just resolution of this case. No other party can fully represent the League's unique interests here. The League's motion for mandatory intervention under Rule 24(a)—or in the alternative, for permissive intervention under Rule 24(b)—should accordingly be granted.[4]

---

[3] Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9, 2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-data.html.

[4] The League's motion is accompanied by a proposed Answer, pursuant to Rule 24(c). If the League's motion is granted, the League reserves the right to move to dismiss the Complaint by the applicable deadline.

2

Memo. ISO Mot. for Intervention of the League of Women Voters of California | Case No. 2:25-cv-09149-DOC (ADSx)

**BACKGROUND**

## I.  Federal Law Entrusts States with the Responsibility to Collect, Maintain, and Protect Voter Data

Under the Elections Clause of the U.S. Constitution, it is the responsibility of states to regulate the "Times, Places, and Manner" of federal elections, and only Congress can enact laws to "make or alter" those regulations.  See U.S. Const. art. I, § 4, cl. 1.  The Framers intentionally delegated the power to register voters and collect and maintain voter data to the states to avoid concentrated power in a single federal body.

Even where Congress has exercised its authority to alter states' regulation of federal elections, it has made clear that it is the state's responsibility to maintain voter data.  In 1993, Congress enacted the National Voter Registration Act ("NVRA") and directed states to establish voter registration procedures to increase registration and maintain accurate voter rolls.  *See* 52 U.S.C. §§ 20501(b), 20503(a).  The NVRA's text clearly delegates "the administration of voter registration for elections for Federal office" to "each state."  *See id.* § 20507(a); *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018).  It required *states* to maintain accurate voter rolls by conducting a "general program that makes a reasonable effort" to remove voters who are deceased or have changed their address.  52 U.S.C. § 20507(a)(4).  While the NVRA created guidelines for states to follow and required states to have a program for list maintenance, the duty to safeguard voter data remained with the states, not the federal government.  *See Husted*, 584 U.S. at 761-62.

In enacting the Help America Vote Act ("HAVA") in 2002, Congress again made it clear that states are responsible for maintaining voter rolls.  HAVA directs "each State" to implement a uniform computerized voter registration list "defined, maintained, and administered at the State level."  52 U.S.C. § 21083(a)(1)(A).  Like

the NVRA, HAVA created specific requirements for *states* to follow in maintaining accurate voter information and does not give this power to the federal government. *See id.* HAVA has no requirement that voter information be publicly disclosed.

## II.    The Department of Justice Demands Unwarranted Access to Voter Data from Jurisdictions Nationwide, Citing Questionable Rationale

In recent months, the DOJ has sought access to sensitive voter information from at least 39 states across the country, claiming to be investigating states' compliance with the NVRA or HAVA.[5]  As part of these far-reaching requests, on July 10, 2025, the DOJ sent a letter to California demanding, among other things, a copy of "all fields" on California's voter registration list within 14 days. Compl. ¶ 34.  On August 8, California responded by explaining that the NVRA does not require total and unqualified access to a state's voter registration list, and that California law prohibits making available for public inspection or disclosing an entirely unredacted voter file.  Compl. ¶ 37.  California offered DOJ the opportunity to inspect a copy of its redacted voter database, noting that unique identifier numbers used by the State for purposes of voter identification would be redacted.  *Id.*  On August 13, the DOJ again demanded full, unredacted access to California's voter database, and California has refused to comply.  Compl. ¶ 38, 43.  The DOJ then sued California, naming its Secretary of State, Shirley Weber, on September 25, citing the NVRA, HAVA, and the Civil Rights Act ("CRA") of 1960 as its basis for demanding California's entire, unredacted voter database.

## III.    The League has a Vested Interest in Protecting its Members and Preserving its Legislative Advocacy

The League is the California affiliate of the League of Women Voters ("LWV"), which was founded in 1920 as an outgrowth of the struggle for voting rights for women.  Declaration of Helen Hutchison ("Hutchison Decl.") ¶ 4.  LWV

---

[5] *See* Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *supra* note 1.

has more than one million members and supporters and is organized in more than 750 communities in all 50 states and the District of Columbia. *Id.* In California, the League serves as a large non-partisan grassroots membership organization that has approximately 7,000 dues-paying members in the state across 62 local chapters. *Id.* ¶¶ 5-6. Its mission is to engage all Californians in acting on the issues that matter to them, to build political power and voice in communities historically underrepresented in the halls of government, to enact solutions to some of the biggest challenges facing the state, and to drive every eligible voter to register and to cast their ballot. *Id.* ¶ 8.

League members and volunteers work year-round in their local communities as part of an integrated voter engagement model of organizing. *Id.* ¶¶ 6, 10-11. Through and in coordination with their local chapters, the League regularly conducts voter service projects, including efforts to register voters, get out the vote, and educate the public on elections. *Id.* ¶ 12. For example, during 2024, nearly 3,000 League volunteers donated almost 35,000 hours of their time providing voter information to Californians. *Id.* These volunteer hours were applied at over 2,000 individual activities, including voter registration drives at high schools, colleges, and local community events; hosting "pros and cons" speaking events to educate the public regarding upcoming ballot measures; hosting candidate forums; and conducting get out the vote events, often in partnership with other community organizations, to educate, engage, and turn out voters in the period leading up to an election. *Id.*

The vast majority of League members and volunteers, as well as members of the communities the League serves, are registered to vote or intend to register in California. *Id.* ¶ 7. This means these individuals have already provided or plan to provide Defendant Weber and the State of California with sensitive information in order to register—including date of birth, driver's license number, nondriver

Memo. ISO Mot. for Intervention of the League of Women Voters of California | Case No. 2:25-cv-09149-DOC (ADSx)

identification card number, or the last four digits of their social security number—and they reasonably expect the State to keep this information private. *See id.*

The League also dedicates significant resources to support or oppose legislation on issues which its statewide membership has reached consensus. *Id.* ¶ 19. In this capacity, the League has supported AB 1461 (Gonzalez 2015), *id.*, California's Motor Voter law which automatically registers eligible residents to vote when they complete a Department of Motor Vehicle ("DMV") transaction unless they opt out. *See generally* Cal. Elec. Code §§ 2260-2277. The law also includes enhanced privacy safeguards such as limits on data sharing, confidential voter categories, liability protections that shield mistakenly registered voters from fraud charges unless they knowingly vote while ineligible, and criminal penalties for unauthorized disclosure or misuse of DMV voter registration information. *See id.* §§ 2265(b)(4)(c), (f) (data use and sharing limits); *id.* § 2266 (confidentiality procedures and penalties for unauthorized disclosure); *id.* § 2269 (confidential voter categories); *id.* § 2271 (protections for inadvertent registration); *see also* Hutchison Decl. ¶ 19. The League currently sits on the California Motor Voter Task Force, created by AB 796 (Berman 2021), and has sponsored bills extending the Task Force. Hutchison Decl. ¶ 19. The League has also opposed legislation, like AB 25 (DeMaio 2025), which would have required voters to provide additional identification information to cast a ballot, creating both new risks of data exposure and barriers to participation. *Id.* ¶ 20.

If the DOJ succeeds in securing its requested relief, this will harm League members by disclosing their sensitive data and stripping them of the voter privacy rights the League has fought to bolster under California law. *Id.* ¶ 22. Specifically, the DOJ could compel California to violate protections enumerated under the California Motor Voter law, dismantling the confidentiality procedures and protections from liability promised to League members and volunteers, and League

6

Memo. ISO Mot. for Intervention of the League of Women Voters of California | Case No. 2:25-cv-09149-DOC (ADSx)

voters' information would be disclosed to a third party, the U.S. Government, which may seek to target politically active members. *Id.* Additionally, the League's voter outreach and registration efforts would be harmed, as Californians concerned by the prospect of their sensitive information being shared with the federal government may become less engaged and reluctant to register to vote or participate in the political process. *Id.* ¶ 23.

## ARGUMENT

## I.    The League Is Entitled to Intervene as of Right Under Rule 24(a)(2).

Under Rule 24(a) of the Federal Rules of Civil Procedure, a "timely" motion to intervene must be granted where the movant alleges (1) a "significantly protectable interest" relating to the subject matter of the lawsuit, (2) that "disposition of the action" will "as a practical matter impair or impede its ability to protect that interest[,]" and (3) that the interest will be "inadequately represented by the parties to the action." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (quoting *Sierra Club v. EPA*, 995 F.2d 1478, 1481 (9th Cir. 1993)). Rule 24(a) must be construed "broadly in favor of proposed intervenors." *Id.* at 1179 (quoting *U.S. v. City of L.A.*, 288 F.3d 391, 397 (9th Cir. 2002)). Further, in the Ninth Circuit, intervenors "that seek the same relief sought by at least one existing party to the case need not" independently demonstrate Article III standing. *Cal. Dep't of Toxic Substances Control v. Jim Dobbas, Inc.*, 54 F.4th 1078, 1085 (9th Cir. 2022); *see also* 7C Charles Alan Wright et al., *Fed. Prac. & Proc.* § 1908 (3d ed. 1998 & Supp. 2025). Thus, a party "must" be permitted to intervene when it satisfies the requirements of Rule 24(a). Fed. R. Civ. P. 24(a). Here, the League satisfies each of the elements for intervention as of right.

## A.    Proposed Intervenor-Defendant's Motion Is Timely.

The League's motion is timely. There are three "primary factors" that courts consider in evaluating timeliness: "(1) the stage of the proceeding at which an

applicant seeks to intervene; (2) the prejudice to other parties; and (3) the reason for and length of the delay." *Kalbers v. U.S. Dep't of Just.*, 22 F.4th 816, 822 (9th Cir. 2021) (quoting *Smith v. L.A. Unified Sch. Dist.*, 830 F.3d 843, 854 (9th Cir. 2016)); *see also W. Watersheds Project v. Haaland*, 22 F.4th 828, 835-36 (9th Cir. 2022). The Ninth Circuit interprets these factors "broadly in favor of intervention." *W. Watersheds Project*, 22 F.4th at 835.

Here, the League has moved for intervention extremely early in the proceedings, just a few weeks from when the case was filed on September 25, 2025, and even before the Defendants have entered an appearance in this matter. Additionally, five days after filing this case, Plaintiff filed a motion to stay based on the lapse in federal appropriations, which is currently pending. ECF No. 6. On October 10, 2025, this case was reassigned, and the only date now set on this case's schedule is a hearing on a different motion to intervene which is scheduled for November 17, 2025. ECF No. 19; ECF 20. The League is requesting that this Motion be heard on the same date.

Courts routinely find motions to intervene timely under these circumstances. *See, e.g.*, *Kalbers*, 22 F.4th at 825 (finding that a delay of "just a few weeks" was a "short delay" that weighed "in favor of timeliness"); *U.S. v. Aerojet Gen. Corp.*, 606 F.3d 1142, 1149 (9th Cir. 2010) (motion to intervene was timely where it was filed within four months of when applicants learned of proposed consent decree); *Nw. Env't Def. Ctr. v. U.S. Army Corps of Eng'rs*, 2024 WL 3290349, at *2 (D. Or. July 2, 2024) (delay of five months constituted "minimal delay"); *Issa v. Newsom*, 2020 WL 3074351, at *2 (E.D. Cal. June 10, 2020) (finding motion timely where "no substantive proceedings ha[d] occurred"); *W. States Trucking Ass'n v. Becerra*, 2020 WL 1032348, at *2 (C.D. Cal. Mar. 2, 2020) (finding motion timely where party intervenes "soon after a complaint, prior to any substantive proceedings"); *Est. of Toguri v. Pierotti*, 2023 WL 8703417, at *6 (C.D. Cal. Feb. 27, 2023)

1  (finding delay of nearly a year was still timely because there had been no "rulings
2  on the merits and the case is in its procedural infancy").

3        Intervention at this early stage will not prejudice any of the existing parties.
4  "The only prejudice that is relevant is that which flows from a prospective
5  intervenor's failure to intervene after he knew, or reasonably should have known,
6  that his interests were not being adequately represented." *Kalbers*, 22 F.4th at 825
7  (quoting *Smith*, 830 F.3d at 857) (cleaned up).  Here, given the early stage of this
8  litigation and how quickly the League has sought to intervene, the parties will not
9  be prejudiced by intervention.  *See, e.g.*, *Citizens for Balanced Use v. Mont.*
10 *Wilderness Ass'n*, 647 F.3d 893, 897 (9th Cir. 2011) (granting motion to intervene
11 because it was made "at an early stage of the proceedings, the parties would not
12 have suffered prejudice from the grant of intervention at that early stage, and
13 intervention would not cause disruption or delay in the proceedings"); *KOR Servs.,*
14 *LLC v. Thomson Int'l*, 2022 WL 18278406, at *4 (C.D. Cal. Aug. 3, 2022) (granting
15 motion to intervene because parties would not be prejudiced when the proceedings
16 were "still in the early stages," discovery was not closed, the parties had not taken
17 depositions, and no dispositive motions had been filed); *Apache Stronghold v. U.S.*,
18 2023 WL 3692937, at *2 (D. Ariz. May 29, 2023) (finding  that existing parties
19 would not be prejudiced where the case was "still in the very early stages").  No
20 substantive deadlines have passed, and the League will of course comply with any
21 schedule adopted by the Court.

22       The League thus meets Rule 24(a)'s timeliness requirement.

23 **B.    The League Has a Significantly Protectable Interest that Will be**
24 **Impaired if Plaintiff DOJ Prevails.**

25       To demonstrate a "significantly protectable interest" relating to the subject
26 matter of the action, the intervenor must (1) assert "an interest that is protected
27 under some law," and (2) show that "there is a relationship between its legally

28

protected interest and the plaintiff's claims." *Kalbers*, 22 F.4th at 827. This is a "practical, threshold inquiry"; no "specific legal or equitable interest need be established." *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 818 (9th Cir. 2001) (quoting *Greene v. U.S.*, 996 F.2d 973, 976 (9th Cir. 1993)). Similarly, to satisfy the impairment requirement, an intervenor need only show that "it will suffer a practical impairment of its interests as a result of the pending litigation." *Wilderness Soc'y*, 630 F.3d at 1179. The League easily satisfies these requirements.

The League has a significantly protectable interest in ensuring its members' personal voter registration data is safeguarded and ensuring their data is not at risk of disclosure through the outcome of this action. *See* Hutchison Decl. ¶¶ 22-23. Like in *Kalbers*, the League's members have a "straightforward" interest in securing the non-disclosure of their sensitive information, and the disposition of this action could impede their ability to protect this interest. *See Kalbers*, 22 F.4th at 827; Hutchison Decl. ¶¶ 22-23. Most of the League's members are registered to vote in California and have already submitted sensitive information to the State for voter registration purposes. Hutchison Decl. ¶ 7. These members have legitimate concerns about their personal information being handed over by California to the federal government. *See id.* ¶¶ 7, 23.

Furthermore, the League has a significantly protectible interest in pursuing its core mission of increasing civic participation and encouraging all eligible Californians to vote, understand, and engage in the political process. *Id.* ¶¶ 23-25. The League's interests in (1) asserting the rights of its members to vote without risking their privacy, (2) advancing its non-partisan advocacy efforts, and (3) diverting its limited resources to educate members about increased privacy concerns, *see id.* ¶¶ 11, 22-25, are strikingly similar to interests courts have held are sufficient for intervention in other cases. *See, e.g.*, *Issa*, 2020 WL 3074351, at

*3 ("[S]uch interests are routinely found to constitute significant protectable interests."); *see also, e.g.*, *Paher v. Cegavske*, 2020 WL 2042365, at *2 (D. Nev. Apr. 28, 2020). The League, its members, and its volunteers have conducted voter registration drives and provided voters with information about how to register to vote and, when relevant to its voter education efforts, provided information about the confidentiality of voter data. Hutchison Decl. ¶ 12. The League has a vested interest in ensuring that this information remains valid, and that the significant resources it has devoted to education and outreach programs continue to be impactful and provide accurate information. *See id.* ¶¶ 22-25.

The League's interest in carrying out its mission will be impaired as a practical matter if DOJ prevails. *Id.* ¶ 23. This is independently sufficient to satisfy the impairment requirement. *See, e.g., Paher*, 2020 WL 2042365, at *2 (finding that intervenors' interests in promoting the franchise and the election of the Democratic Party candidates would be impaired by plaintiff's challenge to Nevada's all mail election provisions); *see also SEC v. Navin*, 166 F.R.D. 435, 440 (N.D. Cal. 1995) (intervenor need only show "potential adverse impact" on the interest). The DOJ's action directly threatens League's legislative advocacy—including the guarantees in the California Motor Voter law and Motor Voter Task Force. Hutchison Decl. ¶ 22; *see also id.* ¶ 20 (League opposition to bills that threaten voter privacy). In these bills and others, the League advocates for legislation that reduces barriers to voter registration, protects voter data confidentiality, and limits laws, practices, and systems that risk the unnecessary or erroneous deactivation of voter registration—goals that directly conflict with the DOJ's stated desire to collect sensitive voter data and purge voters. *Id.* ¶ 19. Such conflicting motivations bolster the League's interest in intervention. In analogous cases, the Ninth Circuit has frequently held that "a public interest group is entitled as a matter of right to intervene in an action challenging the legality of a measure

1    it has supported." *Idaho Farm Bureau Fed'n v. Babbitt*, 58 F.3d 1392, 1397 (9th

2    Cir. 1995) (granting intervention to environmental group to defend agency's action

3    that the group had advocated); *see also, e.g., Sagebrush Rebellion, Inc. v. Watt*, 713

4    F.2d 525, 526-27 (9th Cir. 1983) (granting intervention to wildlife organization to

5    defend Department of Interior's creation of a wildlife habitat area, where the group

6    had participated in the administrative process); *Idaho v. Freeman*, 625 F.2d 886

7    (9th Cir. 1980) (granting intervention to women's rights organization to help a

8    federal agency defend a policy that the organization had supported).  In all these

9    cases, the court had no "difficulty determining that the organization seeking to

10   intervene had an interest in the subject of the suit." *Sagebrush Rebellion*, 713 F.2d

11   at 527.

12        There can be no doubt that the rights and legal interests of both the League

13   and its members would be directly impeded by the relief Plaintiff seeks.

14   **C.    The League's Interests Are Not Adequately Represented by the**

15   **Existing Parties.**

16        The League cannot rely on the existing parties to adequately represent its

17   interests.  Courts in this Circuit consider three factors in evaluating adequacy of

18   representation: "(1) whether the interest of a present party is such that it will

19   undoubtedly make all of a proposed intervenor's arguments; (2) whether the

20   present party is capable and willing to make such arguments; and (3) whether a

21   proposed intervenor would offer any necessary elements to the proceeding that

22   other parties would neglect." *Citizens for Balanced Use*, 647 F.3d at 898 (cleaned

23   up); *Sable Offshore Corp. v. Cnty. of Santa Barbara*, 2025 WL 2412147, at *5

24   (C.D. Cal. July 25, 2025).  This is a "minimal" burden, and the intervenor need

25   only show that the existing parties' representation of its interests "may be

26   inadequate." *Citizens for Balanced Use*, 647 F.3d at 898.

27        Here, Secretary Weber will not adequately represent the League's interests.

28

As the Ninth Circuit has explained, "the government's representation of the public interest may not be identical to the individual parochial interest of a particular group just because both entities occupy the same posture in the litigation." *Id.* at 899. Thus, while Secretary Weber and the League may share the same ultimate objective—defending against DOJ's attempt to forcibly compel production of California's unredacted state voter registration list—their "interests are neither 'identical' nor 'the same.'" *Cal. Dump Truck Owners Ass'n v. Nichols*, 275 F.R.D. 303, 308 (E.D. Cal. 2011). For example, while Secretary Weber is responsible for ensuring compliance with the Elections Code, the League has distinct and particular interests in protecting its members' personal right to vote and privacy as well as ensuring that its organizational mission—including increasing voter participation and advancing pro-voter policies—is unimpeded. Government officials, like Secretary Weber, broadly represent the public interest, not the particular concerns of the League. Indeed, "the government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'" *Citizens for Balanced Use*, 647 F.3d at 899; *see also Issa*, 2020 WL 3074351, at *3 (finding Democratic party organizations had distinct interests from state officials in protecting voters' interests, advancing electoral prospects, and allocating the organizations' limited resources to inform voters).

No other party will represent the League's particular interests in this case, and there is no reason to think that Secretary Weber will "undoubtedly make all of" the League's arguments or that the she will be "capable and willing to make such arguments." *Citizens for Balanced Use*, 647 F.3d at 898. Indeed, the League has a particular interest not just in advancing merits arguments that deny the DOJ's access to non-public information and confirm the legal validity of California's privacy laws *but also* highlighting the need for clear voter-friendly data disclosure

rules, protecting its members' data security, and ensuring that voter registrations and turnout are not reduced as a policy matter. *See* Hutchison Decl. ¶¶ 10, 12, 19, 21. The State, by contrast, may seek to settle due to its competing interests or take positions that the League would not support, like that public redacted data can only be made available on-site. *See id.* ¶ 21. These potential divergences are enough to find that the League's interests may not be adequately protected by the existing parties. *See, e.g., Paher*, 2020 WL 2042365, at *3 ("Proposed Intervenors . . . have demonstrated entitlement to intervene as a matter of right" where they "may present arguments about the need to safeguard [the] right to vote that are distinct from Defendants' arguments"); *GHP Mgmt. Corp. v. City of L.A.*, 339 F.R.D. 621, 624 (C.D. Cal. 2021) (finding "[a]s an initial matter, Proposed Intervenors' very existence is premised on the notion that governmental policies have failed to secure economic or social justice, including housing stability, for Proposed Intervenors' members."); *cf. Associated Gen. Contractors of Am. v. Cal. Dep't of Transp.*, 2009 WL 5206722, at *2-3 (E.D. Cal. Dec. 23, 2009) (granting intervention where defendant state agency's "main interest is ensuring safe public roads and highways" and agency "is not charged by law with advocating on behalf of minority business owners" as intervenors would). The League has distinct interests in opposing the exposure of its members personal and private information and preserving its hard-fought successes in legislative and advocacy that increased voter security and engagement—these interests will only be adequately represented if the League's motion to intervene is granted.

## II.    In the Alternative, the League Should Be Granted Permissive Intervention Under Rule 24(b).

In addition to the requirements for intervention as of right, the League also satisfies the requirements for permissive intervention. The Court may permit intervention by a proposed intervenor who files a timely motion and "has a claim

or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(1)(B). The court may utilize its broad discretion to grant permissive intervention when the movant files a "a timely motion" and raises a claim or defenses that shares "a common question of law and fact" with the "main action." *Callahan v. Brookdale Senior Living Communities, Inc.*, 42 F.4th 1013, 1022 (9th Cir. 2022) (quoting *Freedom from Religion Found., Inc. v. Geithner*, 644 F.3d 836, 843 (9th Cir. 2011)). In exercising its discretion, a court must "consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3). Courts also consider other factors, including, "the nature and extent of the intervenors' interest," the "legal position [the intervenors] seek to advance," and "whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *Callahan*, 42 F.4th at 1022 (quoting *Spangler v. Pasadena City Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977)).

Here, all of these considerations favor granting permissive intervention. First, as explained above, the League timely sought intervention. *See supra* Argument Part I.A. The only difference between mandatory and permissive intervention when it comes to timeliness is that courts generally apply the factors "more leniently" when evaluating mandatory intervention. *See U.S. v. Oregon*, 745 F.2d 550, 552 (9th Cir. 1984). However, that distinction makes no difference here because the League sought to intervene at the earliest possible stage of the proceedings.

Second, the League's defenses share common questions of law and fact with the main action. "A common question of law and fact between an intervenor's claim or defense and the main action arises when the intervenor's claim or defense relates to the subject matter of the action before the district court," or, put

15

Memo. ISO Mot. for Intervention of the League of Women Voters of California | Case No. 2:25-cv-09149-DOC (ADSx)

differently, "when such claims or defenses are clearly a critical part of the instant case." *Republican Nat'l Comm. v. Aguilar*, 2024 WL 3409860, at *2 (D. Nev. July 12, 2024) (cleaned up). The League easily satisfies this requirement, as the applicable state and federal laws at issue are the same across parties, and the League seeks to protect its core mission and members' voter registration data that, as a factual matter, Plaintiff DOJ is aiming to infringe by forcing unauthorized and unlawful disclosure.

Third, as explained above, there will be no prejudice to any existing party if the League is permitted to intervene, nor will there be any delay, because this case is still in the early stages, and there are still weeks to go before any responses are due.

The League has a unique and informed point of view that would not otherwise be before the Court and that will aid the Court in its consideration of the matter. As such, there is no question that the League "will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented." *See Sullivan v. Ferguson*, 2022 WL 10428165, at *4 (W.D. Wash. Oct. 18, 2022). The district court's decision in *Republican National Committee v. Aguilar* is instructive on this point. There, various groups sought to intervene in a case where plaintiffs sought to "compel the State to remove from the [voter] rolls voters whom they claim[ed] were] ineligible" to vote. 2024 WL 3409860, at *1, *3. The court granted permissive intervention, finding that intervenors would "contribute to the just and equitable resolution of the issues before" it because they had a "singular purpose" of "ensur[ing] voters [were] retained on or restored to the rolls," which provided a "counterbalance" to plaintiffs that the state-defendant could not provide due to its "split mission" of "easing barriers to registration and voting" and "protecting electoral integrity." *Id.* at *3. The same reasoning applies here. The League should

be permitted to intervene under Rule 24(b) to advance its members' rights and the rights and interests of California voters, which Plaintiff's action threatens.

## CONCLUSION

For the foregoing reasons, the Court should grant the League intervention as of right under Rule 24(a), or in the alternative, permissive intervention under Rule 24(b).

Dated: October 20, 2025                    Respectfully submitted,


                                           /s/ *Grayce Zelphin*
                                           Grayce Zelphin

                                           Counsel for Proposed Intervenor-Defendant

Memo. ISO Mot. for Intervention of the League of Women Voters of California | Case No. 2:25-cv-09149-DOC (ADSx)