HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division
MICHAEL E. GATES
Deputy Assistant Attorney General
Civil Rights Division
MAUREEN RIORDAN
Senior Counsel, Voting Section
Civil Rights Division
BRITTANY E. BENNETT
Trial Attorney, Voting Section
Civil Rights Division
    U.S. Department of Justice
    4 Constitution Square, Room 8.141
    150 M Street NE
    Washington, D.C. 20002
    Telephone: (202) 704-5430
    Email: Brittany.Bennett@usdoj.gov

Attorneys for Plaintiff, UNITED STATES OF AMERICA

1

1
2
3
4
5
6
7
8
9
10
11

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CASE NO: 2:25-cv-09149-DOC-ADS |
| Plaintiff, | HON. DAVID O. CARTER |
| v. | **OPPOSITION TO MOTIONS TO INTERVENE** |
| SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California, and the State of California, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S OPPOSITION TO MOTION TO INTERVENE BY NAACP, NAACP CALIFORNIA-HAWAII STATE CONFERENCE, SERVICES, IMMIGRANT RIGHTS AND EDUCATION NETWORK (DOC. 14) AND THE MOTION TO INTERVENE BY THE LEAGUE OF WOMEN VOTERS OF CALIFORNIA (DOC. 24)**

1

## <u>TABLE OF CONTENTS</u>

2

3  BACKGROUND…………………………………………………………7

4  LEGAL STANDARDS…………………………………………………..11

5  ARGUMENT…………………………………………………… 12

6  I.    THE PROPOSED INTERVENORS DO NOT MEET THE STANDARD

7  FOR INTERVENTION AS OF RIGHT………………………………... 12

8  A.    The Proposed Intervenors Have No Interest in This Action…………...13

9  1.    Proposed Intervenors Have No Interest In This Matter Because HAVA and

10  the CRA Confer No Private Right of Action and Limit Defendants to Responsible

11  Government Officials................................................…………...13

12  2.    The Complaint and Statutory Language Refute Proposed Intervenors'

13  Speculation that Voter Information is at Risk of Improper Disclosure in This

14  Action………………………………………………………............18

15  3.    Proposed Intervenors' Interest of Protecting Members Who are Voters Fails

16  to Show a Particularized Harm Differing from Any Other Members of the

17  Public………………………………………………………………….20

18  B.    The Proposed Intervenors Cannot Show an Interest That May Be Impaired

19  by the Disposition of this Action………………………………………...22

20  C.    The Proposed Intervenors Cannot Show Inadequate Representation by the

21  State Government Defendants…………………………………….. 22

22  II.    PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR

23  PERMISSIVE INTERVENTION…………………………………… 25

24  CONCLUSION…………………………………………… 26

25

26

27

28

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arakaki v. Cayetano*, 324 F.3d 1078 (9th Cir. 2003)…………………………… 23-24

*Ariz. All. for Retired Ams. v. Hobbs*, No. CV-22-01374-PHX-GMS, 2024 WL 4448320 (D. Ariz. Sep. 23, 2022)…………………………………… 24

*Berger v. N. Carolina State Conf. of NAACP*, 597 U.S. 179 (2022)………… 11, 23

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008)……………………… 14

*Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013 (9th Cir. 2022)……………………………………………………… 23

*Chiles v. Thornburgh*, 865 F.2d 1197 (11th Cir. 1989)……………………… 22

*Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025), *appeal docketed*, No. 25-1585 (1st Cir. June 17, 2025)………………………………………………………… 9, 21

*Diamond v. Charles*, 476 U.S. 54 (1986)…………………………………..12-13

*Donaldson v. United States*, 400 U.S. 517 (1971)…………………………… 12

*Donnelly v. Glickman*, 159 F.3d 405 (9th Cir. 1998)……………………… 11, 12

*Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002)………………………………… 14

*Laube v. Campbell*, 215 F.R.D. 655 (M.D. Ala. 2003)……………………… 19

*League of Women Voters of Va. v. Virginia State Bd. of Elections*, 458 F. Supp. 3d 460 (W.D. Va. 2020)………………………………………. 13, 21

*ManaSota–88, Inc. v. Tidwell*, 896 F.2d 1318 (11th Cir. 1990)…………… 20

*Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775 (E.D. Va. 1989)…………………………………… 19-20

*Middlesex Cnty. Sewerage Auth. v. National Sea Clammers Ass'n*, 453 U.S. 1 (1981)………………………………………………………… 16-17

*Mussi v. Fontes*, No. CV-24-01310-PHX-DWL, 2024 WL 3396109 (D. Ariz. July 12, 2024)………………………………………………………23-25

*Oakland Bulk & Oversized Terminal, LLC v. City of Oakland*, 960 F.3d 603 (9th Cir. 2020)…………………………………………………………. 23-24

*Perry v. Proposition 8 Official Proponents*, 587 F.3d 947 (9th Cir. 2009)..... 11, 12, 24-26

*Perry v. Schwarzenegger*, 630 F.3d 898 (9th Cir. 2011)…………………… 12

*Prete v. Bradbury*, 438 F.3d 949 (9th Cir. 2006)……………………… 23

*Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, 5:24-cv-00547-M, 2024 WL 4349904 (E.D.N.C. Sept. 30, 2024)………………….. passim

*Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326 (9th Cir. 1977)………... 12, 13

*Stuart v. Huff*, 706 F.3d 345 (4th Cir. 2013)……………………….……… 24-26

*Teague v. Bakker*, 931 F.2d 259 (4th Cir. 1991)……………………………… 13

*Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11 (1979)………….. 17

*United States v. Alabama*, No. 2:06-CV-392-WKW, 2006 WL 2290726 (M.D. Ala. Aug. 8, 2006)………………………………………………… 17, 22

*United States v. City of Los Angeles*, 288 F.3d 391 (9th Cir. 2002)……….. 11, 24

*United States v. New York State Bd. of Elections*, 312 Fed. App'x 353 (2d Cir. 2008)……………………………………………………………. 17

*United States v. N. Carolina Bd. of Elections*, No. 5:25-cv-00283-M-RJ, Consent Order and Judgment (E.D.N.C. Sept. 8, 2025)……………………… 19

*Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173 (9th Cir. 2011)……... 11

**Statutes**

52 U.S.C. § 20501(b)(4)…………………………………………………. 7

52 U.S.C. § 20507(a)(4)…………………………………………………. 7

52 U.S.C. § 20507(i)…………………………………………………. 7

52 U.S.C. §§ 20701-20706……………………………………………...7

52 U.S.C. §§ 20701………...…………………………………………...… 16

52 U.S.C. §§ 20703………...…………………………………………...… 15-16

52 U.S.C. §§ 20705……….....…………………………………………...… 16

52 U.S.C. §§ 20706……….....…………………………………………...… 16

52 U.S.C. § 21083(a)…………………………………………………….    passim

52 U.S.C. § 21111…………………………………………………………… 13-15

52 U.S.C. § 21112……………………………………………………… 14

Pub. L. No. 107-252, 116 Stat. 1666…………………………………………14-15

**Rules**

Fed. R. Civ. P. 24……………………………………………………    passim

**Legislative Materials**

H.R. Rep. No. 107-329(I)…………………………………………………… 7

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002)……………………………14

**Secondary Materials**

U.S. Dep't of Just., Voting Section Litigation, https://www.justice.gov/crt/voting-
        Section-litigation.....................................................................8

U.S. Election Assistance Comm'n, Election Administration and Voting Survey
        (June 2025)...…………………………………………………    8, 14

U.S. Election Assistance Comm'n, About the EAC, https://www.eac.gov.......8

7C Charles Alan Wright et al., Federal Practice and Procedure § 1909
        (3d ed. Supp. 2022)…………………………………………….....    23

## **BACKGROUND**

This is a straightforward case brought by the Attorney General of the United States to enforce the requirements of three complimentary Federal statutes governing voter registration and voting records pertaining to Federal elections. The Civil Rights Act of 1960 ("CRA") requires state and local officials to retain and preserve records related to voter registration and other acts requisite to voting for any Federal office for a period of twenty-two months after any Federal election, and to produce those records to the Attorney General upon request. *See* 52 U.S.C. §§ 20701-20706.

The National Voter Registration Act of 1993 ("NVRA") mandates that responsible election officials "ensure that accurate and current voter registration rolls are maintained" for Federal elections. 52 U.S.C. § 20501(b)(4). To that end, Section 8 of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of… the death of the registrant," or "a change in the residence of the registrant…" 52 U.S.C. § 20507(a)(4). Section 8(i) of the NVRA provides that states shall make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," with certain exceptions. 52 U.S.C. § 20507(i).

The purpose of the Help America Vote Act of 2002 ("HAVA") "is to improve our country's election system" by recognizing "the federal government can play a valuable [role] by assisting state and local government in modernizing their election systems." H.R. Rep. No. 107-329(I) at 31-32 (2001). HAVA imposes "minimum requirements" for the conduct of Federal elections. *Id.* at 35. Specifically, all states are required to implement "in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list defined, maintained, and

administered at the State level" that contains "the name and registration information of every legally registered voter in the State and assigns a unique identifier to each legally registered voter in the State…" 52 U.S.C. § 21083(a)(1)(A). Section 303 of HAVA provides that a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters," among other requirements. 52 U.S.C. § 21083(a)(4).

The United States, acting through the Attorney General, routinely investigates state compliance with the list maintenance requirements for Federal elections. In both Democratic and Republican administrations, the Attorney General has pursued enforcement actions against state and local governments and their officials when their efforts to maintain accurate voter rolls for Federal elections have fallen short of HAVA and NVRA requirements.[1] Identification of noncompliant states is accomplished, in part, by reviewing the biennial Election Administration and Voting Survey ("EAVS") report prepared by the U.S. Election Assistance Commission ("EAC"), "an independent, bipartisan commission whose mission is to help election officials improve the administration of elections and help Americans participate in the voting process."[2] California, like other states, provided the EAC with the voter registration and list maintenance data included in the EAVS report.

The 2024 EAVS Report, which was published in June 2025, revealed several anomalies in California's voter registration data that are inconsistent with

---

[1] A list of HAVA and NVRA enforcement actions brought by the U.S. Department of Justice's Voting Section is available at https://www.justice.gov/crt/voting-section-litigation.

[2] EAC website, "About the EAC," https://www.eac.gov/about.

reasonable list maintenance efforts. For example, California reported 2,178,551 duplicate registrations comprising 15.6 percent of the total registered voters. That number did not include data from seven California counties, including the most populous one, Los Angeles County, which has about one-quarter of the state's population. Compl. ¶ 34(B), Doc. 1 (summarizing California's responses in the EAVS report). Furthermore, California failed to provide any data in response to Question A12h on the EAVS survey regarding duplicate registrations removed from the statewide voter registration database. *Id.* ¶ 34(C). California's percentage of voters removed from the voter registration list because of death was just 11.9 percent, which was a little more than half the national average. *Id.* ¶ 34(D). California did not provide confirmation notice data for several counties and had wide swings in the number of inactive registered voters. *Id.* ¶ 34(E). Taken together, the data that California reported to the EAC raised several red flags that necessitated further investigation.

On July 10, 2025, the Attorney General requested that California, through its Secretary of State, fill in the significant gaps of data that the state had not disclosed to the EAC, and to produce its complete voter registration list to include the HAVA identifying numbers.[3] *Id.* ¶ 34. The Secretary responded by requesting more time, which the United States accommodated by extending its deadline until August 29, 2025. *Id.* ¶¶ 35-36. In a letter dated August 8, 2025, the Secretary refused to cooperate and declined to produce the requested voter records,

---

[3] A complete voter registration list is necessary to fully assess California's list maintenance efforts. Indeed, the ACLU, which represents one of the groups of Proposed Intervenors in this case recently requested – and obtained through a motion to compel – "[a] copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation." *Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937, at *2 (D.N.H. May 27, 2025), *appeal docketed*, No. 25-1585 (1st Cir. June 17, 2025).

expressing concerns about voter privacy and claiming that state law foreclosed production of the records pursuant to Federal statutes. *Id.* ¶ 37. On August 13, 2025, the Attorney General made a written demand for a current copy of California's computerized Statewide Voter Registration List ("SVRL"), including each registrant's full name, date of birth, residential address, and the HAVA identifying numbers. The demand explained that the purpose was to evaluate the state's compliance with its list maintenance requirements under Federal law. It further summarized some of the Federal privacy protections that would be applied to the SVRL and described procedures to share the data securely. *Id.* ¶¶ 38-42. On August 21, 2025, the Secretary responded, again refusing to provide the requested information. *Id.* ¶ 43. On August 29, 2025, and September 12, 2025, the Secretary provided minimal responses to the Attorney General's inquiries about California's EAVS responses and continued to refuse to provide the other requested information. *Id.* ¶ 44. On September 25, 2025, the United States brought this action in response to the violations of Federal law by the Defendants, California Secretary of State Shirley Weber and the State of California.

On October 7, 2025, the NAACP, NAACP California-Hawaii State Conference, and Services, Immigrant Rights and Education Network filed their Motion to Intervene, Doc. 14. On October 20, 2025, the League of Women Voters of California filed their Motion to Intervene, Doc. 24. The United States files this consolidated opposition to both Motions, which make similar arguments. The two groups of movants are collectively referred to as "Proposed Intervenors."

Proposed Intervenors have failed to establish sufficient grounds for intervention. Each lacks standing under controlling authority. Each has failed to make the necessary "very compelling" showing of inadequate representation by the governmental Defendants. Each presents only a generalized interest in preventing the United States from obtaining relief from Defendants' violations of Federal law. And each offers only a speculative basis for intervention that fails to articulate any

concrete grievance or interest that has been or may be violated. Proposed Intervenors have failed to meet their burden of demonstrating that they meet the standards for intervention as of right, as set forth in Federal Rule of Civil Procedure 24(a), or for permissive intervention, as set forth in Federal Rule of Civil Procedure 24(b). For the reasons specified below, both the Proposed Intervenors' motions should be denied.

## **LEGAL STANDARDS**

Federal Rule of Civil Procedure 24 provides the standards for intervention of right and permissive intervention. Intervention of right is appropriate if the proposed intervenor: (1) files in a timely manner; (2) demonstrates an interest in the action; (3) shows that the interest may be impaired by the disposition of the action; and (4) has an interest not otherwise adequately protected. Fed. R. Civ. P. 24(a)(2); *see also Berger v. N. Carolina State Conf. of NAACP*, 597 U.S. 179, 190 (2022) (same); *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177 (9th Cir. 2011) (same). A proposed intervenor bears the burden of demonstrating it has a right to intervene. *Donnelly v. Glickman*, 159 F.3d 405, 409 (9th Cir. 1998). Failure to meet any one of these requirements requires denial of the motion. *Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 950 (9th Cir. 2009). Where a proposed intervenor fails to meet one of the requirements, the court need "not address any of the other requirements of Rule 24(a)(2)." *Id.*

Permissive intervention pursuant to Federal Rule of Civil Procedure 24(b)(2) may be appropriate if the proposed intervenor shows: "(1) independent grounds for jurisdiction; (2) the motion is timely; and (3) the applicant's claim or defense, and the main action, have a question of law or a question of fact in common." *United States v. City of Los Angeles*, 288 F.3d 391, 403 (9th Cir. 2002). Importantly, the rule "also *requires* that the court 'consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Proposition 8*, 587 F.3d at 955 (quoting Fed. R. Civ. P. 24(b)(3) (emphasis in original). "Even if

an applicant satisfies those threshold requirements, the district court has discretion to deny permissive intervention." *Donnelly*, 159 F.3d at 412. The Ninth Circuit has combined the criteria under Rule 24(b)(2) with other factors to consider in evaluating a request for permissive intervention:

> [T]he nature and extent of the intervenors' interest, their standing to raise relevant legal issues, the legal position they seek to advance, and its probable relation to the merits of the case… whether the intervenors' interests are adequately represented by other parties, whether intervention will prolong or unduly delay the litigation, and whether parties seeking intervention will significantly contribute to full development of the underlying factual issues in the suit and to the just and equitable adjudication of the legal questions presented.

*Spangler v. Pasadena Bd. of Educ.*, 552 F.2d 1326, 1329 (9th Cir. 1977). A district court is vested with broad discretion to decide a motion for permissive intervention. *Perry v. Schwarzenegger*, 630 F.3d 898, 905-06 (9th Cir. 2011).

## **ARGUMENT**

## I. **THE PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR INTERVENTION AS OF RIGHT.**

### A. **The Proposed Intervenors Have No Interest in This Action.**

To support intervention, the intervenor's interest must be a particularized and legally protected interest rather than a general grievance. *See* Fed. R. Civ. P. 24(a)(2). That necessitates "a significantly protectable interest," *Donaldson v. United States*, 400 U.S. 517, 531 (1971), requiring that the intervenor establish the legal right to bring or defend the claim before the district court as a plaintiff or defendant. *See generally Diamond v. Charles*, 476 U.S. 54, 66–67 (1986) ("Article III requires more than a desire to vindicate value interests. It requires an 'injury in fact' that distinguishes "'a person with a direct stake in the outcome of a litigation—even though small—from a person with a mere interest in the

problem.'"). The intervenor must show that they "stand to gain or lose by the direct legal operation of the district court's judgment" on the complaint. *Teague v. Bakker*, 931 F.2d 259, 261 (4th Cir. 1991); *see also Spangler*, 552 F.2d at 1329 (citing standing as a factor for permissive intervention). "An 'interest' shared by all members of an electorate is not 'sufficient[ly particularized] to meet the requirements of Rule 24(a).'" *Republican Nat'l Comm. v. N. Carolina State Bd. of Elections*, No. 5:24-cv-00547-M, 2024 WL 4349904, at *2 (E.D.N.C. Sept. 30, 2024) (denying motion to intervene by the North Carolina Conference of the NAACP) (quoting *League of Women Voters of Va. v. Virginia State Bd. of Elections*, 458 F. Supp. 3d 460, 466 (W.D. Va. 2020)). Proposed Intervenors cannot meet their burden for three reasons: neither HAVA nor the CRA confers a right for private organizations or individuals to be party plaintiffs or defendants in this action; Federal law expressly refutes their speculative concern that the privacy of voter information will not be protected; and they have failed to identify any particularized harm that differs from that of any other member of the public.

  1. <u>Proposed Intervenors Have No Interest in This Matter Because HAVA and the CRA Confer No Private Right of Action and Limit Defendants to Responsible Government Officials.</u>

  Proposed Intervenors can neither bring nor defend a claim under HAVA or the CRA.

  Neither HAVA nor the CRA create a private right of action. Turning first to HAVA, the only enforcement provision in the Act authorizing a cause of action in Federal court is found at Section 401, which provides that:

  The *Attorney General* may bring a civil action against any State or jurisdiction in an appropriate United States District Court for such declaratory and injunctive relief (including a temporary restraining order, a permanent or temporary injunction, or other order) as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083, and 21083a of this title [Sections 301, 302, 303, and

13

1    303a of HAVA].

2  52 U.S.C. § 21111 (emphasis added).

3        Aside from that right of action, granted exclusively to the Attorney General

4  of the United States, no other explicit right of action in Federal court exists to

5  enforce the provisions of HAVA. The clear text of the statute is reinforced by its

6  legislative history. Senator Dodd of Connecticut – a HAVA conferee and sponsor –

7  openly lamented the lack of a private right of action in HAVA, observing that such

8  participation was limited to the participation through the Act's administrative

9  hearing process in Section 402 of the Act, 52 U.S.C. § 21112:

10        While I would have preferred that we extend the private right of
          action afforded private parties under [the] NVRA, the House simply
11        would not entertain such an enforcement provision[]. Nor would they
          accept Federal judicial review of any adverse decision by a State
12        administrative body. However, the state-based administrative
          procedure must meet basic due process requirements and afford an
13        aggrieved party a hearing on the record if they so choose.

14

15  148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002).

16        Consequently, private parties may not bring Section 303 or make requests

17  for records under that provision. *See Brunner v. Ohio Republican Party*, 555 U.S.

18  5, 6 (2008) (per curiam) ("Respondents, however, are not sufficiently likely to

19  prevail on the question whether Congress has authorized the District Court to

20  enforce § 303 in an action brought by a private litigant to justify the issuance of a

21  TRO."); *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) (explaining that

22  where "the text and structure of a statute … provide no indication that Congress

23  intends to create new individual rights, there is no basis for a private suit").

24        HAVA's text likewise limits who may be a defendant. As HAVA's

25  preamble makes clear, the provisions of Title III of the Act "establish minimum

26  election administration standards for States and units of local government …

27  responsibl[e] for the administration of Federal elections." Pub. L. No. 107-252,

28  116 Stat. 1666. Proper party defendants in a Section 303 enforcement action

therefore are limited to "any State or jurisdiction." 52 U.S.C. § 21111. Under Section 303(a), "State or jurisdiction" includes their election officials who are responsible for implementing the statutory mandates. *See*, *e.g.*, 52 U.S.C. § 21083(a)(1)(A) (*"[E]ach State, acting through the chief State election official*, shall implement, in a uniform and nondiscriminatory manner, a single, uniform, official, centralized, interactive computerized statewide voter registration list….") (emphasis added); 52 U.S.C. § 21083(a)(1)(A)(vi) ("All voter registration information obtained by *any local election official in the State* shall be electronically entered into the computerized list on an expedited basis at the time the information is provided to the local official….") (emphasis added); 52 U.S.C. § 21083(a)(5)(A)(i) ("an application for voter registration for an election for Federal office may not be accepted or processed by a *State* unless the application includes" the identifying number required by Section 303) (emphasis added); 52 U.S.C. § 21083(a)(5)(A)(ii) ("… *the State* shall assign the applicant a number which will serve to identify the applicant for voter registration purposes…") (emphasis added); 52 U.S.C. § 21083(a)(5)(A)(iii) ("*The State* shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, in accordance with State law.") (emphasis added). To summarize, Section 303 of HAVA regulates election administrators responsible for timely updating California's computerized statewide voter registration list for Federal offices; the State and those officials are the only valid defendants.

The CRA has limitations on parties that parallel those included in HAVA. Title III of the CRA provides that only the Attorney General of the United States may bring an action in Federal court to enforce the Act's provisions for retaining and producing election records upon request. *See* 52 U.S.C. § 20703 (providing that "upon demand in writing by the *Attorney General*" "[a]ny record or paper required by section 301" shall be "made available for inspection, reproduction, and

copying…") (emphasis added); *see also* 52 U.S.C. § 20705 (providing that the United States District Court for the district in which the Attorney General has made the demand "shall have jurisdiction" over any litigation to compel production of the covered records).

Like HAVA, the CRA limits defendants to certain election officials. Section 301 of the CRA applies to "*[e]very officer of election*" who must "maintain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for Federal office "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (emphasis added). Section 306 of the CRA makes this explicit, defining the term "officer of election" as "any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting" in any Federal election. 52 U.S.C. § 20706.

Proposed Intervenors do not contend, and cannot establish, that they have any responsibilities for voter list maintenance under Section 303 of HAVA or that they are required to maintain and produce voter registration records under Sections 301 or 306 of the CRA. Rather, they assert only that they are organizations that perform voter engagement and education for some voters and seek to maintain the privacy of voters they claim to represent. *See* Doc. 14 at 13; Doc. 24 at 10. While these may be noble interests, they fall well outside the clear language of the parties covered under the provisions of HAVA and the CRA that the Attorney General is enforcing in this action.

"In the absence of strong indicia of a contrary congressional intent," the Supreme Court has stated, "we are compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex Cnty. Sewerage Auth.*

*v. National Sea Clammers Ass'n*, 453 U.S. 1, 15 (1981). "Where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it." *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979). Congress specifically limited the parties in litigation over HAVA's computerized statewide voter registration list requirements and over voter registration records covered by Title III of the CRA to the Attorney General of the United States to enforce the provisions, and States, jurisdictions, and their responsible election officials, as defendants. Consequently, Proposed Intervenors are foreclosed from intervening as a party, including in the role of a defendant.

Although case law interpreting the CRA is scarce, several decisions under HAVA reject intervention by individuals or groups not included in the statutory text. Federal courts have not permitted intervention by private parties and even for some election boards in previous Section 303 enforcement actions brought by the Attorney General. In *United States v. Alabama*, the Chairs of the Alabama Democratic Executive Committee and the Alabama Democratic Conference moved to intervene for the purpose of suggesting special masters to remedy the Section 303 violation. No. 2:06-CV-392-WKW, 2006 WL 2290726, at *1 (M.D. Ala. Aug. 8, 2006). The court denied their motions, concluding that "HAVA does not confer a private right of action. Congress granted explicitly to the Attorney General of the United States the right of enforcement of Sections 301, 302, and 303 of HAVA." Id. at *4. Therefore, the court found that the proposed intervenors did not have a "legally protectable" interest under HAVA and denied their motion. *Id*. Similarly, in *United States v. New York State Board of Elections*, the district court denied motions to intervene as defendants by the Nassau County Board of Elections and the Nassau County Legislature, despite both having some responsibilities under HAVA for administering the State's computerized statewide voter registration list. *See* 312 Fed. App'x 353 (2d Cir. 2008).

17

Here, the Proposed Intervenors are organizations that say they represent some California voters, none of whom bears responsibility for implementing the requirements of HAVA or the CRA. Neither Proposed Intervenors nor their individual members fall within the plain language of HAVA or the CRA, in which Congress clearly articulated who may be parties to enforcement actions, whether as plaintiffs or as defendants. As such, Proposed Intervenors have no legally protectable interest and are not entitled to intervene as of right.

2.    <u>The Complaint and Statutory Language Refute Proposed Intervenors' Speculation that Voter Information is at Risk of Improper Disclosure in This Action.</u>

Even if this Court were to consider Proposed Intervenors' speculative concerns about the privacy of data that voters have already submitted to state election officials, those concerns are completely unfounded. The United States' requests in this matter are authorized by Congress. The Complaint states very clearly that the United States is seeking relief in this litigation that is narrowly focused on obtaining records under the CRA and bringing Defendants into compliance with the list maintenance requirements in HAVA and the NVRA for Federal elections. Specifically, the Complaint requests, *inter alia*, that the Court "order Defendants to provide to the United States the current electronic copy of California's computerized statewide voter registration list, with all fields, including each registrant's full name, date of birth, residential address, and either their state driver's license number, or the last four digits of their Social Security number and original and completed voter registration applications as required by the CRA, NVRA, and HAVA." Compl. at 16, Doc. 1. The requested relief encompasses the requirements pursuant to each relevant statute, and goes no further, to ensure and enforce compliance.

The Proposed Intervenors' alleged injury—fear that voter data may be misused or chill engagement from vulnerable populations—is not concrete or

imminent, but hypothetical and baseless. The information at issue is already subject to extensive statutory protections under both Federal law. The litigation concerns whether certain information must be disclosed to the Attorney General to facilitate enforcement of Federal list maintenance requirements—not whether that information will be made public, nor whether any party to this case intends to misuse such data.

One of the law firms representing some of the Proposed Intervenors in this case made similar alarmist arguments about the Attorney General's enforcement of Section 303 of HAVA in North Carolina. There, the Federal court denied the motions to intervene when those arguments objectively proved to be unfounded.[4] *See* Consent Judgment and Order, *United States v. N. Carolina Bd. of Elections*, No. 5:25-cv-00283-M-RJ, at 12 (E.D.N.C. Sept. 8, 2025), attached hereto as Exhibit 1. Notably, the consent order there made clear that: "All records and data received by the United States from the State Board Defendants will be kept securely and treated consistently with the Privacy Act, 5 U.S.C. § 552a, *et seq*. To the extent confidential records or data is requested, the State Board Defendants reserve the right to seek a protective order from the court." *Id.* Therefore, in that case, as in this one, the United States has made clear it will protect voter information provided by the state consistent with the requirements of the Privacy Act, the CRA, and other applicable Federal law. The remedial order the United States requests can readily make that clear. As a result, like in North Carolina, the alarmist harms that the Proposed Intervenors decry cannot and will not materialize.

Moreover, speculative injury "does not rise to the level required for intervention as a matter of right." *Media Gen. Cable of Fairfax, Inc. v. Sequoyah Condo. Council of Co-Owners*, 721 F. Supp. 775, 779 (E.D. Va. 1989); *see also*

---

[4] Two of the groups of proposed intervenors in that case have filed motions for reconsideration, which were pending when the case was stayed due to the Federal government shutdown.

*Laube v. Campbell*, 215 F.R.D. 655, 657 (M.D. Ala. 2003) ("Interests that are contingent upon some future events and which are 'purely a matter of speculation' are not 'the kind of protectable interest … necessary to support intervention as of right.'") (quoting *ManaSota–88, Inc. v. Tidwell*, 896 F.2d 1318, 1322 (11th Cir. 1990)). Even if Proposed Intervenors had a legally protectable interest in this case under the CRA, HAVA, or the NVRA, which they do not, their concern about an alleged misuse of voter information is imagined, speculative, and not going to occur because it is contrary to Federal law and can be readily addressed by the Court through an order like the one entered in the North Carolina consent judgment and order.

          3.      <u>Proposed Intervenors' Interest of Protecting Members Who are Voters Fails to Show a Particularized Harm Differing from Any Other Members of the Public.</u>

Proposed Intervenors next argue that "[m]any of Proposed Intervenors' members strongly oppose surrendering their personal information to the federal government, and they have legitimate concerns about the consequences of doing so." Doc. 14 at 13. In support, Proposed Intervenors rely on speculative declarations claiming fear of misuse and contentions unrelated to this litigation that "the current administration has targeted people with whom it disagrees." Ashton Decl. ¶¶ 11-14, Callender Decl. ¶¶ 9–12. Proposed Intervenors' alarmist assertions, which as explained above already have proven to be without merit, distract from the straightforward records claims brought by the Attorney General pursuant to enforcement powers conferred by Congress.

Furthermore, Proposed Intervenors' argument ignores that Federal agencies routinely are provided and maintain the same data being sought in this action. Individuals routinely share sensitive personal information—such as Social Security numbers, dates of birth, income, education, immigration status, and addresses—with Federal agencies like the IRS (for tax filing and refunds), SSA (for Social

Security benefits), HHS (for Medicaid and Medicare), Department of Education (for Federal student aid), State Department (for passports), Selective Service (for draft registration), and the Census Bureau (for Federally mandated surveys used for representation and funding allocation). They do so without filing litigation to stop agencies from performing congressionally mandated functions such as the list maintenance enforcement powers assigned to the Attorney General. Indeed, it is disingenuous that counsel for one of the Proposed Intervenors recently obtained through litigation a more extensive SVRL than the one that the Attorney General, who has exclusive authority to enforce the CRA and HAVA, has requested here. *See Coal. for Open Democracy*, 2025 WL 1503937, at *2.

District courts routinely deny motions to intervene, even in cases unlike this one where the individual right to vote is implicated. "[C]ourts that have addressed intervention motions from similarly situated prospective intervenors… have regularly denied intervention as of right under Rule 24(a)." *League of Women Voters* 458 F. Supp. 3d 460, 465 (W.D. Va. 2020) (collecting citations). Here, "[t]here is nothing that distinguishes Prospective Intervenors' interest in this case from that of any other eligible voter" in California. *Id*. Proposed Intervenors have interests that are completely indistinguishable from tens of millions of other California citizens of voting age.

"Courts are typically disinclined to allow intervenors who merely assert a 'generalized public policy interest shared by a substantial portion of the population.'" *Id.* "[D]espite its 'personal' nature, the right to vote… is no different as between any other eligible [Californian], and indeed, any other eligible American. It may be personal, but it is also *universal* to those that qualify for the franchise." *Id*. (emphasis in original). Unlike cases directly implicating the right to vote, Proposed Intervenors have no interest in this case, which involves regulation of the administration of Federal elections in California and the associated records that must be produced under Federal law.

**B.    Proposed Intervenors Cannot Show an Interest That May Be Impaired by the Disposition of this Action.**

Next, Proposed Intervenors are required to establish that their purported interest that may be impaired by the disposition of the action. *See* Fed. R. Civ. P. 24(a)(2); *Wilderness Soc'y*, 630 F.3d at 1177. In this factor, "'[t]he focus ... is on whether the proposed intervenor would suffer a 'practical disadvantage or impediment' if not permitted to intervene.'" *Republican Nat'l Comm.*, 2024 WL 4349904, at *2. "This requirement is 'intimately related' to the alleged interest sought to be protected" by the Proposed Intervenors. *United States v. Alabama*, 2006 WL 2290726, at *5 (quoting *Chiles v. Thornburgh*, 865 F.2d 1197, 1213 (11th Cir. 1989)); *see also Republican Nat'l Comm.*, 2024 WL 4349904, at *2 ("If a third party satisfies the first factor of Rule 24(a), it often follows that participation as a party is necessary to protect that interest.") (citation omitted). Proposed Intervenors cannot make their required showing.

For the reasons explained in the previous section, Proposed Intervenors have no interest because neither the CRA nor HAVA allows private individuals the right to be a party in this action. Furthermore, Proposed Intervenors have failed to show an interest distinguishable from that of tens of millions of other Californians. This is a dispute between the Attorney General of the United States who requested voter registration records, and the State of California that maintains those records. The United States is not seeking, and will not be seeking, any information from a single member of the groups represented by the Proposed Intervenors, nor will it be seeking more information than those members have already voluntarily submitted to the State of California in order to participate in Federal elections. Consequently, none of the Proposed Intervenors or their members can be harmed by the outcome of this litigation. Thus, there is no interest that Proposed Intervenors can protect in this litigation other than the generalized interest of all Californians, and indeed of all Americans, in the fair and equitable administration of elections. Without an

1     interest, Proposed Intervenors' claims of impairment of that interest must fail.

2           **C.**     **Proposed Intervenors Cannot Show Inadequate Representation**
3               **by the State Government Defendants.**

4       "There is … an assumption of adequacy when the government is acting on

5     behalf of a constituency that it represents. In the absence of a *very compelling*

6     *showing* to the contrary, it will be presumed that a state adequately represents its

7     citizens when the applicant shares the same interest." *Arakaki v. Cayetano*, 324

8     F.3d 1078, 1086 (9th Cir. 2003) (emphasis added). Federal courts, including the

9     Ninth Circuit, have long followed the rule that "when a governmental body or

10    officer is the named party," "representation will be presumed adequate unless

11    special circumstances are shown." 7C Wright, Miller & Kane, Federal Practice and

12    Procedure § 1909 (3d ed. Supp. 2022); *see also Oakland Bulk & Oversized*

13    *Terminal, LLC v. City of Oakland*, 960 F.3d 603, 620 (9th Cir. 2020) (applying a

14    presumption of adequate representation of intervenors' interests by the

15    governmental party); *Prete v. Bradbury*, 438 F.3d 949, 957 (9th Cir. 2006) (same).

16       The United States Supreme Court narrowed that rule slightly by holding that

17    the presumption of adequate representation is inapplicable where the proposed

18    intervenors themselves are government officials, namely "duly authorized state

19    agent[s]." *Berger*, 597 U.S. at 197. However, as a recent decision from a court in

20    this Circuit noted, "*Berger* pointedly declined to overrule the lower-court decisions

21    holding that a 'presumption of adequate representation might sometimes be

22    appropriate when a private litigant seeks to defend a law alongside the

23    government…'" *Mussi v. Fontes*, No. CV-24-01310-PHX-DWL, 2024 WL

24    3396109, at *2 (D. Ariz. July 12, 2024) (quoting *Berger*, 597 U.S. at 197).

25    Consequently, the *Arakaki* presumption of adequate representation "remains

26    binding Ninth Circuit law that this Court is duty-bound to follow." *Id.* (citation

27    omitted). Since none of the Proposed Intervenors is a "duly authorized state agent,"

28    the presumption that the State Defendants will adequately represent their interests

applies.

Courts in this Circuit consistently deny motions to intervene on adequacy of representation alone, particularly where intervention is sought on the same side as government parties. *See*, *e.g.*, *Callahan v. Brookdale Senior Living Cmtys., Inc.*, 42 F.4th 1013, 1020 (9th Cir. 2022) (assuming, without deciding, that the other three Rule 24 factors were met, intervention was properly denied on the adequacy of representation requirement); *Proposition 8 Opponents*, 587 F.3d at 950 ("[T]he Campaign failed to show that the Proponents will not adequately represent its interests in the litigation. Consequently, we do not address any of the other requirements of Rule 24(a)(2)."); *Ariz. All. for Retired Ams. v. Hobbs,* No. CV-22-01374-PHX-GMS, 2022 U.S. Dist. LEXIS 172722 (D. Ariz. Sep. 23, 2022*)* ("As it is dispositive of the motion to intervene as of right, the Court will address only the fourth requirement – that the entity's interest is not adequately represented by the existing parties."); *Fontes*, 2024 WL 3396109, at *1 ("even assuming that Proposed Intervenors can satisfy the first three elements of the test for intervention as of right, they cannot satisfy the fourth," adequacy of representation).

Here, the record demonstrates that the Proposed Intervenors share the same interests in this litigation – to reject efforts by the United States to obtain the SVRL pursuant to its Federal claims because they allege concerns about voter privacy and how the requested data will be used. However, contrary to *Arakaki*, the Proposed Intervenors have wholly failed to make their required "very compelling showing" that the State Defendants will not adequately represent their interests. 324 F.3d at 1086. While the Proposed Intervenors may suggest, at the margins, that they offer unique perspectives that may not be raised by the Defendants, that is "insufficient" to establish inadequacy. *Oakland Bulk*, 960 F.3d at 620. Similarly, "[d]ifferences in litigation strategy do not normally justify intervention." *Arakaki*, 324 F.3d at 1086. The "theoretical possibility of a future conflict" likewise is insufficient. *Fontes*, 2024 WL 3396109, at *4. Instead, in cases like this one in which the

parties share the same ultimate objective, intervention should be denied. *Los Angeles*, 288 F.3d at 402.

In summary, the unrealized concerns that Proposed Intervenors allege might occur, amount to the possibility of "'divergent approaches to the conduct of the litigation'" that "is not enough to rebut the presumption of adequacy." *Stuart v. Huff*, 706 F.3d 345, 353 (4th Cir. 2013) (citing, among other cases, *Proposition 8*, 587 F.3d at 954) (collecting cases). "'A mere difference of opinion concerning the tactics with which the litigation should be handled does not make inadequate the representation of those whose interests are identical with that of an existing party.'" *Id.* (citation omitted). As the Fourth Circuit has explained in applying an analogous rule:

> Nor could it be any other way. There will often be differences of opinion among lawyers over the best way to approach a case. It is not unusual for those who agree in principle to dispute the particulars. To have such unremarkable divergences of view sow the seeds for intervention as of right risks generating endless squabbles at every juncture over how best to proceed. There is much to be said, frankly, for simplifying rather than complicating the litigation process.

*Id.* at 354. Those concerns are equal, if not greater, in this litigation. Proposed Intervenors have failed to demonstrate a right to intervention under Rule 24(a)(2).

## II. PROPOSED INTERVENORS DO NOT MEET THE STANDARD FOR PERMISSIVE INTERVENTION.

Rule 24(b)(2) intervention should be denied for the same reasons. As explained above, "Proposed Intervenors' interests and objectives align" with those of the State Defendants "and their participation will not significantly contribute to full development of the factual and legal issues in this action." *Fontes*, 2024 WL 3396109, at *6. Permissive intervention requires more than just a timely motion and raising a "defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2)(1)(B). As the Ninth Circuit has reminded courts,

the rule "also *requires* that the court 'consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.'" *Proposition 8*, 587 F.3d at 955 (quoting Fed. R. Civ. P. 24(b)(3)). "[A]dding [two] groups of intervenors" – and possibly several others – "would necessarily complicate the discovery process and consume additional resources of the court and the parties." *Stuart*, 706 F.3d at 355. And in doing so it would impede, not advance, this litigation. The Proposed Intervenors have no standing to assert any claim or defense in this litigation and therefore could add nothing to the Court's consideration of the United States' claims. At best, "'intervention is likely only to result in duplicative briefing.'" *Republican Nat'l Comm.*, 2024 WL 4349904, at *4. At worst, it will inject into this case "unremarkable divergences of view" about litigation strategy that risks "generating endless squabbles at every juncture over how best to proceed." *Stuart*, 706 F.3d at 354; *see Proposition 8*, 587 F.3d at 954.

Denying permissive intervention will not leave the Proposed Intervenors without recourse. Nothing would impede their ability to consult with their duly elected State officials, particularly Secretary Weber, about how to proceed. They also would "retain the ability to present their views… by seeking leave to file" an amicus brief. *Stuart*, 706 F.3d at 355. That is an especially appropriate means for Proposed Intervenors to weigh in, given the statements in their briefs showing little more than a speculative, generalized interest in this case. "While a would-be intervenor may prefer party status to that of friend-of-the-court, the fact remains that amici often make useful contributions to litigation. The availability of such alternative avenues of expression reinforces… [the] disinclination to drive district courts into multi-cornered lawsuits by indiscriminately granting would-be intervenors party status and all the privileges pertaining thereto." *Id*.

Accordingly, the Court should deny permissive intervention to Proposed Intervenors.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that the Court deny the Motions to Intervene by Proposed Intervenors NAACP, NAACP California-Hawaii State Conference, Services, Immigrant Rights and Education Network (Doc. 14) and by Proposed Intervenors League of Women Voters of California (Doc. 24).

DATED: October 27, 2025                    Respectfully submitted,

                                           HARMEET K. DHILLON
                                           Assistant Attorney General
                                           Civil Rights Division

                                           */s/  Michael E. Gates*
                                           MICHAEL E. GATES
                                           Deputy Assistant Attorney General
                                           MAUREEN RIORDAN
                                           Senior Counsel, Voting Section
                                           BRITTANY E. BENNETT
                                           Trial Attorney, Voting Section
                                           Civil Rights Division
                                           U.S. Department of Justice
                                           4 Constitution Square
                                           150 M Street NE, Room 8.141
                                           Washington, D.C. 20002
                                           Telephone: (202) 704-5430
                                           Email: brittany.bennett@usdoj.gov

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 27, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Brittany E. Bennett*
Brittany E. Bennett
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: brittany.bennett@usdoj.gov
