Lalitha D. Madduri (CA Bar No. 301236)
lmadduri@elias.law
Jacob D. Shelly* (DC Bar No. 90010127)
jshelly@elias.law
**ELIAS LAW GROUP LLP**
250 Massachusetts Ave. NW, Suite 400
Washington, DC 20001
T: (202) 968-4652
F: (202) 968-4498

Tyler L. Bishop (CA Bar No. 337546)
tbishop@elias.law
Walker McKusick* (WA Bar No. 63205)
wmckusick@elias.law
**ELIAS LAW GROUP LLP**
1700 Seventh Avenue, Suite 2100
Seattle, WA 98101
T: (206) 656-0177
F: (206) 656-0180

Omar Qureshi (CA Bar No. 323493)
omar@qureshi.law
Max Schoening (CA Bar No. 324643)
max@qureshi.law
**QURESHI LAW PC**
700 Flower Street, Suite 1000
Los Angeles, CA 90017
T: (213) 600-6096
F: (213) 277-8989

*Counsel for Proposed Intervenor-Defendants NAACP; NAACP California-Hawaii State Conference; and Services, Immigrant Rights and Education Network*

\* *Admitted pro hac vice*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SHIRLEY N. WEBER, in her official capacity as Secretary of State of California, et al.,<br><br>    Defendants. | Case No: 2:25-cv-09149-DOC-ADS<br><br>**NAACP, NAACP CALIFORNIA-HAWAII STATE CONFERENCE, AND SERVICES, IMMIGRANT RIGHTS AND EDUCATION NETWORK'S REPLY IN SUPPORT OF MOTION TO INTERVENE**<br><br>Hearing Date: Nov. 17, 2025<br><br>Time: 8:30 a.m.<br><br>Courtroom: 10A |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................... 1

ARGUMENT .......................................................................................................... 2

    I.    Proposed Intervenors are entitled to intervene as a matter of right. ............ 2

        A.    Proposed Intervenors' interests are threatened by this lawsuit. ........ 2

            1.    Proposed Intervenors do not require (but still have) a right of action. ................................................................................. 2

            2.    The threat to Proposed Intervenors' privacy interests is concrete. ................................................................................... 4

            3.    Threats to privacy and voting rights are necessarily particularized. ........................................................................... 5

        B.    Existing parties do not adequately represent Proposed Intervenors. ........................................................................................ 6

    II.    Proposed Intervenors should, alternatively, be granted permissive intervention. ................................................................................................ 10

CONCLUSION ..................................................................................................... 10

# INTRODUCTION

Proposed Intervenors are entitled to intervene as of right. They have direct, significant, and protectable interests in the privacy of their members' data and in their own ability to engage constituents in the political process. And no existing party shares these interests, which will be directly impaired if DOJ succeeds in obtaining an unredacted copy of California's voter file.

Nothing in DOJ's opposition justifies finding otherwise. Instead, DOJ's arguments miss the point entirely, run contrary to binding precedent, or both. For example, DOJ argues that two of the three statutes that it sues under do not include a private right of action. But Proposed Intervenors do not seek to *sue* under these statutes as *plaintiffs*; they seek to *intervene* as *defendants*—just as Rule 24 contemplates and as Ninth Circuit precedent has long allowed. DOJ argues that the harms that Proposed Intervenors fear are hypothetical, but it does not dispute that its requested relief entails disclosures of Proposed Intervenors' members' confidential information, and it leaves unrebutted detailed evidence establishing harms to Proposed Intervenors' members' voting rights and mission-critical voting programs—harms that are more than sufficient to meet Rule 24(a)'s interest requirements. DOJ also argues that Proposed Intervenors' interests are too generalized, but longstanding precedent in the Ninth Circuit and elsewhere establishes that the feared harms are sufficient to satisfy even Article III's more rigorous injury-in-fact requirement.

DOJ is also wrong when it argues that State Defendants adequately represent Proposed Intervenors' interests. The State Defendants will not be the victims of any privacy violation if DOJ prevails, and they are not charged with achieving the missions of any Proposed Intervenor. Because State Defendants' interests are far from *identical* to Proposed Intervenors', *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 197 (2022), this prong of Rule 24(a) is satisfied as well. And because states face competing legal obligations for voter list maintenance that diverge from Proposed Intervenors' singular interest in the privacy rights of their members and constituents, courts routinely

find this prong satisfied in cases like this one. Finally, there is no basis to deny Proposed Intervenors' alternative request that they be granted permissive intervention. The Court should grant the motion to intervene.

## ARGUMENT

### I. Proposed Intervenors are entitled to intervene as a matter of right.

#### A. Proposed Intervenors' interests are threatened by this lawsuit.

DOJ makes three arguments in an attempt to establish that Proposed Intervenors lack the requisite interest in this case to be entitled to intervene as of right: (1) HAVA and the CRA do not give Proposed Intervenors an express "right . . . to be party plaintiffs or defendants," (2) the harms to their members and missions are speculative because DOJ promises it will abide by federal law, and (3) the harms are generalized. Resp. 13. Each argument is foreclosed by precedent and none can justify denying intervention.

> 1. Proposed Intervenors do not require (but still have) a right of action.

DOJ's lead theory—that the absence of an express statutory right under HAVA or the CRA "to be a plaintiff or defendant" precludes intervention—is contrary to binding Circuit precedent and fundamentally misunderstands intervention, which "covers the right of one to interpose in, or *become a party to*, a proceeding already instituted." *U.S. ex rel. Eisenstein v. City of New York*, 556 U.S. 928, 933 (2009) (quoting *Rocca v. Thompson*, 223 U.S. 317, 330 (1912)). Regardless of who has a right to bring (or defend) a claim in the first instance, the express purpose of Rule 24 is to ensure "anyone" who has an interest that "may" be impaired and lacks representation "must" be permitted to "intervene" as a matter of right. Fed. R. Civ. P. 24(a)(2).

Recognizing this, the Ninth Circuit has already rejected DOJ's theory. Until 2011, the Ninth Circuit did not permit private parties to intervene as of right as defendants in actions brought under the National Environmental Policy Act (NEPA), reasoning that (in an echo of DOJ here) "such parties lack a 'significantly protectable' interest . . . under Rule 24(a)(2) because NEPA is a procedural statute that binds only the federal government." *Wilderness Soc'y v. U.S. Forest Serv.*, 630 F.3d 1173, 1177

2

(9th Cir. 2011) (*en banc*). In *Wilderness Society*, however, the *en banc* Court unanimously reversed that prohibition, holding that it "run[s] counter to the standards we apply in all other intervention of right cases." *Id.* at 1179. The Court emphasized that Rule 24(a)(2)'s "'interest' test is primarily a practical guide to disposing of lawsuits by involving as many apparently concerned persons as is compatible with efficiency and due process," and that the "asserted interest need not be protected by the statute under which the litigation is brought." *Id.*; *see also id.* at 1178–79 ("No part of Rule 24(a)(2)'s prescription engrafts a limitation on intervention of right to parties liable to the plaintiffs on the same grounds as the defendants.").

Nothing supports DOJ's argument that "Proposed Intervenors have no legally protectable interest" merely because they are not named in the "language of HAVA or the CRA." Resp 18; *see also id.* at 13–17. In fact, most of the cases cited by DOJ do not involve intervention at all. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (discussing private right to bring action as plaintiff); *Gonzaga Univ. v. Doe*, 536 U.S. 273, 286 (2002) (same); *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 19 (1979) (same). DOJ's reliance on *United States v. Alabama*, an unpublished out-of-circuit decision, is also misplaced: it held only that unsubstantiated concerns about a "perception" of partisan taint in the State's implementation of HAVA, without more, did not qualify as a legally protectable interest. *See* No. 2:06-cv-392, 2006 WL 2290726, at *4 (M.D. Ala. Aug. 8, 2006). In *dicta*, the court opined that HAVA does not imply a private right of action to enforce the statute, but it in no way suggested that intervenors in HAVA litigation must have such a right. *See id.* And impairment of interests was not in dispute at all in *United States v. N.Y. State Bd. of Elections*, 312 Fed. App'x 353 (2d Cir. 2008)—which is, again, another out-of-circuit, unpublished opinion. Finally, even if DOJ's theory that an express statutory authorization is required to allow participation as intervenors were correct, it would still go nowhere in this case: DOJ conspicuously fails to even acknowledge that the statute they rely upon for their lead claim, the NVRA, provides an express private right of action for private litigants.

3

*See* Resp. 7, 13–18; 52 U.S.C. § 20510(b).

### 2. The threat to Proposed Intervenors' privacy interests is concrete.

DOJ's next argument—that Proposed Intervenors' interests are "hypothetical" or "speculative"—likewise misses the mark. *See* Resp. 18–20. DOJ does not dispute that the lists it demands contain highly sensitive and protected information, or that it intends to share that data with other components of the federal government, including DHS and DOGE. *See* Mot. 4. Because an allegedly unlawful disclosure of confidential information to another party is in and of itself a sufficiently concrete and particularized harm to satisfy even Article III, *id.* at 14–15 (citing *All. for Retired Americans v. Bessent*, 770 F. Supp. 3d 79, 101–04 (D.D.C. 2025)); *see also In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 598 (9th Cir. 2020), it follows that the prospect of such harm establishes a sufficient interest among Proposed Intervenors' members under Rule 24(a)(2), *see* Mot. 14 (collecting cases).

It makes no difference whether the "information at issue is already subject to extensive statutory protections." *Contra* Resp. 19. DOJ offers nothing to support the conclusory suggestion that the threatened disclosures are necessarily harmless merely because of the existence of federal privacy laws. *See id.* The entry of a consent judgement in which North Carolina agreed to provide parts of its list "upon request," Resp. 19, proves nothing. That judgment is neither a court finding nor evidence the government has followed or will follow the laws. *See id.* (citing Resp. Ex. 1, Consent Judgment and Order, *United States v. N.C. Bd. of Elections*, No. 5:25-cv-00283, at 12 (E.D.N.C. Sept. 8, 2025)); Resp. Ex. 1 at 3 (noting parties "waive[d] a hearing and the entry of findings of fact and conclusions of law"). And it expressly reserves the State's right to seek relief "if" DOJ seeks "confidential . . . data." Resp. Ex. 1 at 12.[1]

---

[1] DOJ also challenges Proposed Intervenors' interests because "counsel for one of the Proposed Intervenors recently obtained through litigation a more extensive" voter list than DOJ requests. Resp. 21 (citing *Coal. for Open Democracy v. Scanlan*, No. 24-CV-312, 2025 WL 1503937 (D.N.H. May 27, 2025)). That is irrelevant and wrong. While

4

DOJ further fails to rebut declarations establishing that Proposed Intervenors have an interest in preserving their own abilities to accomplish their missions of activating voters, and that voter registration and participation will be stifled among their members should DOJ succeed. *See* Mot. 6–9, 12–16 (citing Ashton Decl. ¶¶ 8–13, 15; Callender Decl. ¶¶ 7, 10–14; Tran Decl. ¶¶ 7–14). These facts must be accepted as true, *Sw. Ctr. for Biological Diversity v. Berg*, 268 F.3d 810, 819 (9th Cir. 2001), and they are further validated by public reporting.[2]

### 3. Threats to privacy and voting rights are necessarily particularized.

Finally, DOJ's assertion that Proposed Intervenors' interests are not sufficiently "particularized" because their interests are purportedly shared by all Californians is wrong. Resp. 21 (citing *League of Women Voters of Va. v. Va. State Bd. of Elections*, 458 F. Supp. 3d 460, 465 (W.D. Va. 2020)). "In fact," even in the context of Article III standing, "the Supreme Court has been clear that where large numbers of voters suffer interference with voting rights, the interests related to that are sufficiently" particularized and concrete. *Donald J. Trump for President, Inc. v. Bullock*, 491 F. Supp. 3d 814, 828 (D. Mont. 2020) (citations omitted). The Ninth Circuit has applied the same principle to disclosures of confidential information. *See, e.g.*, *Facebook*, 956 F.3d at 598 (allegedly unauthorized disclosures that apply to large numbers of people

---

litigants sometimes obtain voter lists through discovery to enable experts and ultimately courts to conduct analyses about the impact of particular laws on the electorate, *Open Democracy*, 2025 WL 1503937, at *4–6, access to and use of such information is strictly regulated by protective orders and other tools. Moreover, DOJ omits that the district court in that case *expressly excluded much of the confidential information, including social security numbers and other personal identifying information, that DOJ demands here*. *See* Schedule A to Protective Order, *Open Democracy*, No. 24-CV-312, ECF No. 87-1 (June 18, 2025).

[2] *See, e.g.*, Jen Fifield, *Details of DHS Agreement Reveal Risks of Trump Administration's Use of Social Security Data for Voter Citizenship Checks*, ProPublica (Oct. 30, 2025), https://www.propublica.org/article/dhs-social-security-data-voter-citizenship-trump (reporting on growing claims that DOJ, DHS, and SSA's attempts to compile state voter data violate privacy laws and risk unlawful disclosures, and that audits confirm that DHS's tactics to identify purported non-citizens are unreliable).

are "particularized" because the right to privacy in one's information is "personal"). And Proposed Intervenors' interests in their own missions are plainly not shared by all others. *See* Mot. 15–16.

* * *

In sum, Proposed Intervenors have protectable interests in preserving the privacy and voting rights of their members as well as their mission-critical voting rights programs. DOJ does not dispute that the relief it seeks would impair those interests, *see* Resp. 22 (contesting only whether Proposed Intervenors have identified a protectable interest)—which would undisputedly result in California exposing the protected records of Proposed Intervenors' members to various federal agencies. *See Cal. ex rel. Lockyer v. United States*, 450 F.3d 436, 442 (9th Cir. 2006) ("Having found that appellants have a significant protectable interest, we have little difficulty concluding that the disposition of this case may, as a practical matter, affect it."); *accord Berg*, 268 F.3d at 822 ("[I]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." (quotation omitted)). Rule 24(a)'s interest and impairment prongs are fully satisfied.

**B.     Existing parties do not adequately represent Proposed Intervenors.**

The Ninth Circuit has a long-standing practice of interpreting Rule 24 "broadly in favor of intervention." *W. Watersheds Project v. Haaland*, 22 F.4th 828, 835 (9th Cir. 2022). Consistent with this approach, Proposed Intervenors face a "minimal challenge" of showing only that existing parties' representation of their interests "may be" inadequate. *Berger v. N.C. State Conf. of the NAACP*, 597 U.S. 179, 195 (2022); *see also Citizens for Balanced Use v. Mont. Wilderness Ass'n*, 647 F.3d 893, 900 (9th Cir. 2011) ("We stress that intervention of right does not require an absolute certainty that a party's interests will be impaired or that existing parties will not adequately represent its interests."). A presumption of adequate representation is not warranted merely because the named defendants are government officers tasked with representing the public. Instead, "a proposed intervenor must make a compelling showing of

inadequate representation [only] when her interest is *identical* to that of an existing party." *Callahan v. Brookdale Senior Living Cmtys.*, 42 F.4th 1013, 1021 n.5 (9th Cir. 2022) (emphasis added).

This rule follows directly from *Berger*, where the U.S. Supreme Court made clear that "[w]here 'the absentee's interest is similar to, but not identical with, that of one of the parties,' that normally is not enough to trigger a presumption of adequate representation." *Berger*, 597 U.S. at 197 (quoting 7C C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1909 (3d ed. Supp. 2022)). In *Trbovich v. United Mine Workers of Am.*, 404 U.S. 528 (1972), for example, the Supreme Court reviewed a union member's effort to intervene as plaintiff in a suit that the Secretary of Labor brought against his union. *Id.* at 539. As *Berger* summarized, "At a high level of abstraction, the union member's interest and the Secretary's might have seemed closely aligned," but the presumption of adequate representation was not warranted because "the union member sought relief against his union, full stop," while the Secretary also had to "bear in mind broader public-policy implications." 597 U.S. at 196; *see also Federated Indians of Graton Rancheria v. U.S. Dep't of the Interior*, No. 24-CV-08582-RFL, 2025 WL 2096171, at *6 (N.D. Cal. July 18, 2025) (finding government representation inadequate where its interests might diverge from intervenors). That is why *Berger* "calls into question whether the application of such a presumption is appropriate." *Callahan*, 42 F.4th at 1021 n.5. DOJ proposes a presumption nonetheless applies *whenever* a "private litigant" seeks to litigate "alongside the government," Resp. 23 (citing *Mussi v. Fontes*, No. 24-cv-0131, 2024 WL 3396109, at *2 (D. Ariz. July 12, 2024)), but that view cannot be squared with *Trbovich*, which itself involved a private litigant on the same side as "an existing government party," *Berger*, 597 U.S. at 196 ("Rather than endorse a presumption, the Court held that a movant's burden in circumstances like these 'should be treated as minimal.'" (quoting *Trbovich*, 404 U.S. at 538 n.10)).

Even if a presumption applied here, Proposed Intervenors have sufficiently

shown that the State Defendants do not adequately represent their interests. For one, the State Defendants do not share Proposed Intervenors' parochial interests in protecting and mobilizing Black and immigrant communities. *See Citizens for Balanced Use*, 647 F.3d at 899 ("[T]he government's representation of the public interest may not be 'identical to the individual parochial interest' of a particular group just because 'both entities occupy the same posture in the litigation.'"). And crucially, the highly sensitive information at stake in this litigation is *about the voters* who comprise Proposed Intervenors' membership and constituency; State Defendants do not share any interest in avoiding the risks of identity theft and political persecution if the underlying data is mishandled. *See LA All. for Hum. Rts. v. City of Los Angeles*, No. 20-02291-DOC, 2020 WL 13586046, at *3 (C.D. Cal. Mar. 18, 2020) (granting intervention of right to advocacy organizations that represented individuals directly affected by policy at issue).

The State Defendants' interests reflect their own unique responsibilities. They must reconcile diffuse interests in election administration, budget management, coordination with federal agencies, and serving the electorate writ large, among others. *See Bellitto v. Snipes*, 935 F.3d 1192, 1201 (11th Cir. 2019) (recognizing the NVRA requires state officials to "balance competing objectives" of accurate voter rolls and ballot access). Proposed Intervenors, in contrast, are singularly focused on achieving their missions by protecting their members' privacy and ensuring the effective political mobilization of their constituencies. *See* Mot. at 13–16. Put simply, "[n]o one can better assert an interest in personal privacy than the person whose privacy is at stake." *Providence Journal Co. v. Federal Bureau of Investigation*, 460 F. Supp. 762, 766 (D.R.I. 1978), *overruled on other grounds*, 602 F.2d 1010 (1st Cir. 1979); *see also Kalbers v. DOJ*, 22 F.4th 816, 827 (9th Cir. 2021) (recognizing "straightforward" significantly protectable interest in confidentiality of non-public documents). Given this divergence in interests between state officials, on the one hand, and individual voters and their advocates, on the other, courts regularly grant intervention to civic groups in litigation over voter rolls. *See, e.g., Judicial Watch, Inc., v. Ill. State Bd. of Elections*,

No. 24-cv-1867, 2024 WL 3454706, at *6 (N.D. Ill. July 18, 2024); *1789 Found. Inc. v. Fontes*, No. 24-cv-02987, 2025 WL 834919, at *3 (D. Ariz. Mar. 17, 2025); *RNC v. Aguilar*, No. 2:24-cv-00518, 2024 WL 3409860, at *3 (D. Nev. July 12, 2024); *Pub. Interest Legal Found., Inc. v. Winfrey*, 463 F. Supp. 3d 795, 799–800 (E.D. Mich. 2020).

As yet another distinction, the State Defendants and Proposed Intervenors face different litigation incentives. States are often inclined to settle costly voter list litigation, *see, e.g.,* Resp. Ex. 1, while Proposed Intervenors seek a merits victory that resoundingly confirms their privacy rights.[3] And given that the President has already threatened to withhold election funding from States that resist complying with his policy preferences, *see* Exec. Order No. 14,248, 90 Fed. Reg. 14005, §§ 5(b), 7(b) (Mar. 25, 2025), it is imperative to include private intervenors who face no such dilemma. *See City of Chicago v. FEMA*, 660 F.3d 980, 986 (7th Cir. 2011) (affirming grant of intervention where named defendants "might have been tempted to agree to a settlement").

Ultimately, there is no basis to conclude any existing party "will undoubtedly make all of a proposed intervenor's arguments." *W. Watersheds Project*, 22 F.4th at 840.[4] The State Defendants have not yet answered the Complaint or briefed any substantive arguments. And there are no other existing parties.[5] Because Proposed

---

[3] Precisely because North Carolina settled that voter list litigation, at the expense of voter privacy, multiple proposed intervenors have renewed their requests to intervene, which remain pending. Resp. 19 n.4.

[4] DOJ relies heavily on a pre-*Berger* case, Resp. 23–24, where the impropriety of intervention was based on record evidence that the named defendants would make "all arguments necessary," including those raised by the proposed intervenor, *Arakaki v. Cayetano*, 324 F.3d 1078, 1087 (9th Cir. 2003). Such evidence does not exist here at this early stage of the litigation. And given Rule 24's requirement that intervention motions be timely filed, Proposed Intervenors are under no obligation to wait for that record to develop.

[5] DOJ's reliance on *Arakaki* is further misplaced because, in that case, other already-admitted intervenors were similarly situated to the proposed intervenor. *See* 324 F.3d at

9

Intervenors and State Defendants maintain "different interests and perspectives," *Berger*, 597 U.S. at 191, Proposed Intervenors qualify for intervention as of right.

## II. Proposed Intervenors should, alternatively, be granted permissive intervention.

Because DOJ concedes that Proposed Intervenors' motion is timely and that it raises a defense that shares a common question of law or fact with the main action, *see* Resp. 25, the only element of permissive intervention in dispute is whether Proposed Intervenors' participation will unduly delay the litigation or prejudice the original parties' rights, *see* Fed. R. Civ. P. 24(b)(3). But DOJ has no basis to argue delay when successful intervention would not require altering any existing deadlines, and Proposed Intervenors have agreed to abide by any future deadlines set by the Court. *See* Mot. at 12. DOJ's speculative fear of duplicative briefing, complicated discovery, and "squabbles at every juncture," Resp. 26, meanwhile, is entirely manufactured. Given the severe legal deficiencies in DOJ's pleading, it is unclear whether this case will even advance to discovery. And the most foreseeable "squabble" is over the fundamental question of whether DOJ has sufficiently pleaded a claim—DOJ cannot avoid the obligation to defend its complaint by excluding the arguments of interested intervenors.

DOJ admits that it most fears the prospect of "divergences of view." Resp. 26. But such divergences are precisely what warrants intervention in the first place—Proposed Intervenors possess interests that diverge from DOJ and State Defendants in a manner that may well result in different arguments. Intervention ensures that the voices of the individuals *with the most at stake* in this litigation are heard, and that this Court receives a full airing of adversarial arguments.

## CONCLUSION

Proposed Intervenors request that this Court grant their Motion to Intervene.

---

1087; *see also Perry v. Proposition 8 Official Proponents*, 587 F.3d 947, 949–52 (9th Cir. 2009) (denying intervention where two similar organizations had already intervened alongside California government defendants). Here, Proposed Intervenors were the first to move, and no other intervention has been granted.

| | | |
|---|---|---|
| 1 | Dated: November 3, 2025 | Respectfully submitted, |
| 2 | | /s/ Lalitha D. Madduri |
| 3 | | Lalitha D. Madduri (CA Bar No. 301236) |
| | | Jacob D. Shelly* (DC Bar No. 90010127) |
| 4 | | **ELIAS LAW GROUP LLP** |
| 5 | | 250 Massachusetts Ave. NW, Suite 400 |
| 6 | | Washington, DC 20001 |
| 7 | | T: (202) 968-4652 |
| | | F: (202) 968-4498 |
| 8 | | lmadduri@elias.law |
| 9 | | jshelly@elias.law |
| 10 | | Tyler L. Bishop (CA Bar No. 337546) |
| 11 | | Walker McKusick* (WA Bar No. 63205) |
| 12 | | **ELIAS LAW GROUP LLP** |
| | | 1700 Seventh Avenue, Suite 2100 |
| 13 | | Seattle, WA 98101 |
| 14 | | T: (206) 656-0177 |
| 15 | | tbishop@elias.law |
| 16 | | wmckusick@elias.law |
| 17 | | Omar Qureshi (CA Bar No. 323493) |
| 18 | | Max Schoening (CA Bar No. 324643) |
| 19 | | **QURESHI LAW PC** |
| | | 700 Flower Street, Suite 1000 |
| 20 | | Los Angeles, CA 90017 |
| 21 | | T: (213) 600-6096 |
| 22 | | omar@qureshi.law |
| 23 | | max@qureshi.law |
| 24 | | *Counsel for Proposed Intervenor-* |
| 25 | | *Defendants NAACP; NAACP California-* |
| 26 | | *Hawaii State Conference; and Services,* |
| | | *and Immigrant Rights and Education* |
| 27 | | *Network* |
| 28 | | * Admitted pro hac vice |

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Proposed Intervenor-Defendants NAACP, NAACP-CA/HI, and SIREN certifies that the foregoing reply complies with the type-volume limitation of Local Rule 11-6.1.

Dated: November 3, 2025              */s / Lalitha D. Madduri*
                                     Lalitha D. Madduri