1   ROB BONTA
    Attorney General of California
2   R. MATTHEW WISE
    SETH E. GOLDSTEIN
3   Supervising Deputy Attorneys General
    ROBERT WILLIAM SETRAKIAN (SBN 335045)
4   ANNE P. BELLOWS (SBN 293722)
    LISA C. EHRLICH (SBN 270842)
5   MICHAEL S. COHEN (SBN 339846)
    KEVIN L. QUADE (SBN 285197)
6   WILLIAM BELLAMY (SBN 347029)
    MALCOLM A. BRUDIGAM (SBN 323707)
7   Deputy Attorneys General
     1300 I Street, Suite 125
8    Sacramento, CA 95814
     Telephone: (916) 210-7873
9    Fax: (916) 454-8171
     E-mail: Malcolm.Brudigam@doj.ca.gov
10  *Attorneys for Defendants Shirley Weber, in her
    official capacity as the California Secretary of
11  State, and the State of California*

12                  IN THE UNITED STATES DISTRICT COURT

13              FOR THE CENTRAL DISTRICT OF CALIFORNIA

14

15

16

17  | **UNITED STATES OF AMERICA,** | Case No. 2:25-cv-09149-DOC-ADS |
    |---|---|
18  | Plaintiff, | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS** |
19  | **v.** | |
20  | **SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California, and the STATE OF CALIFORNIA,** | Date:       Monday, Dec. 8, 2025 |
21  | | Time:       8:30 a.m. |
22  | | Courtroom:  10A |
    | | Judge:      Hon. David O. Carter |
23  | Defendants. | Trial Date:  None set. |
    | | Action Filed: Sept. 25, 2025 |

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

Introduction ..................................................................................................... 1

Factual Background .......................................................................................... 3

Legal Standard ................................................................................................. 5

Argument ......................................................................................................... 5

I.     DOJ Has Failed to Assert Cognizable Legal Claims ........................... 5

      A.     DOJ's CRA Claim Fails on Both Jurisdictional and Substantive Grounds .................................................................. 5

           1.     Title III of the CRA ............................................... 5

           2.     This court lacks jurisdiction to compel relief .................. 6

           3.     DOJ's demand for records fails to satisfy an essential statutory requirement ........................................ 7

           4.     DOJ cannot invoke Title III to investigate issues unrelated to civil rights ......................................... 8

           5.     DOJ is only entitled to in-person, redacted inspection of records covered by Title III ..................... 11

      B.     DOJ Has Not Asserted a Cognizable Claim Under the NVRA .......................................................................... 13

           1.     The Secretary has complied with the NVRA ................. 13

           2.     The NVRA does not preempt California law ................. 14

      C.     DOJ Has Not Asserted a Cognizable Claim Under HAVA ..... 16

           1.     HAVA has no disclosure provisions at all .................... 17

           2.     DOJ fails to allege any other violation of HAVA .......... 18

           3.     HAVA does not preempt California law ....................... 19

II.     DOJ Has Not Alleged Compliance with Federal Privacy Laws ........ 20

      A.     DOJ's Hunt for Data Violates the Privacy Act ...................... 20

      B.     DOJ's Data Demand Violates the E-Government Act ............ 23

      C.     DOJ's Demand Violates the Driver's Privacy Protection Act ........................................................................... 24

Conclusion ..................................................................................................... 25

i

# TABLE OF AUTHORITIES

**Page**

CASES

*Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. Soc. Sec. Admin.*
    778 F. Supp. 3d 685 (D. Md. 2025) ...................................................... 23

*American Civil Rights Union v. Philadelphia City Commissioners*
    872 F.3d 175 (3d Cir. 2017) .............................................................. 20

*Arizona v. Inter Tribal Council of Arizona, Inc.*
    570 U.S. 1 (2013) ............................................................................ 12

*Atlas Data Priv. Corp. v. We Inform, LLC*
    2025 WL 2444153 (D.N.J. Aug. 25, 2025) ........................................ 15

*Avila v. Spokane Sch. Dist. 81*
    852 F.3d 936 (9th Cir. 2017) ............................................................. 9

*Bellitto v. Snipes*
    935 F.3d 1192 (11th Cir. 2019) ................................................... 16, 17

*Brusseau v. Dep't of Homeland Sec.*
    2021 WL 3174248 (E.D. Va. July 27, 2021) ..................................... 23

*Buckley v. Am. Const. L. Found., Inc.*
    525 U.S. 182 (1999) ........................................................................ 22

*Bufkin v. Collins*
    604 U.S. 369 (2025) .......................................................................... 8

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*
    824 F.3d 1156 (9th Cir. 2016) ........................................................... 5

*Colón-Marrero v. Vélez*
    813 F.3d 1 (1st Cir. 2016) ............................................................... 19

*Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*
    963 F.3d 982 (9th Cir. 2020) ............................................................. 7

*Crowley v. Nev. ex rel. Nev. Sec'y of State*
    678 F.3d 730 (9th Cir. 2012) ........................................................... 17

# TABLE OF AUTHORITIES
### (continued)

Page

*Dittman v. California*
  191 F.3d 1020 (1999) ...................................................................23

*Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*
  470 F.3d 827 (9th Cir. 2006) ..........................................................9

*Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*
  266 F. Supp. 3d 297 (D.D.C. 2017) ................................................24

*Fla. State Conf. of N.A.A.C.P. v. Browning*
  522 F.3d 1153 (11th Cir. 2008) .....................................................17

*Garris v. Fed. Bureau of Investigation*
  937 F.3d 1284 (9th Cir. 2019) .......................................................22

*Gonzalez v. Arizona*
  677 F.3d 383 (9th Cir. 2012) ...................................................12, 15

*Greater Birmingham Ministries v. Sec'y of State for Ala.*
  105 F.4th 1324 (11th Cir. 2024) ....................................................14

*Husted v. A. Philip Randolph Inst.*
  584 U.S. 756 (2018) .....................................................................13

*In re Coleman*
  208 F. Supp. 199 (S.D. Miss. 1962) ............................................7, 10

*In re Saldana*
  122 F.4th 333 (9th Cir. 2024) ..........................................................8

*Kennedy v. Bruce*
  298 F.2d 860 (5th Cir. 1962) .........................................................10

*Kennedy v. Lynd*
  306 F.2d 222 (5th Cir. 1962) ......................................................7, 10

*Khoja v. Orexigen Therapeutics, Inc.*
  899 F.3d 988 (9th Cir. 2018) ...........................................................3

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Oklahoma v. Castro-Huerta*
    597 U.S. 629 (2022) ........................................................................................ 18

*Pac. Coast Fed'n of Fishermen's Assocs., Inc. v. Nickels*
    150 F.4th 1260 (9th Cir. 2025) ........................................................................ 8

*Peters v. United States*
    853 F.2d 692 (9th Cir. 1988) .......................................................................... 18

*Project Vote/Voting for Am., Inc. v. Long*
    752 F. Supp. 2d 697 (E.D. Va. 2010) ............................................................ 14

*Pub. Int. Legal Found., Inc. v. Bellows*
    92 F.4th 36 (1st Cir. 2024) ................................................................. 12, 14, 15

*Pub. Int. Legal Found, Inc. v. Benson*
    136 F.4th 613 (6th Cir. 2025) ................................................................. 16, 17

*Pub. Int. Legal Found., Inc. v. Dahlstrom*
    673 F. Supp. 3d 1004 (D. Alaska 2023) ......................................................... 21

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*
    996 F.3d 257 (4th Cir. 2021) ............................................................. 14, 15, 21

*Reno v. Condon*
    528 U.S. 141 (2000) ........................................................................................ 24

*Ritter v. United States*
    177 Fed. Cl. 84 (2025) .................................................................................... 21

*Rivera v. Peri & Sons Farms, Inc.*
    735 F.3d 892 (9th Cir. 2013) .......................................................................... 23

*Rutan v. Republican Party of Illinois*
    497 U.S. 62 (1990) .......................................................................................... 22

*Safe Air for Everyone v. Meyer*
    373 F.3d 1035 (9th Cir. 2004) .......................................................................... 5

*Sams v. Yahoo! Inc.*
    713 F.3d 1175 (9th Cir. 2013) ........................................................................ 20

# TABLE OF AUTHORITIES
## (continued)

Page

*Senne v. Vill. of Palatine, Ill.*
   695 F.3d 597 (7th Cir. 2012) (en banc) ............................................................... 25

*State of Ala. ex rel. Gallion v. Rogers*
   187 F. Supp. 848 (M.D. Ala. 1960) ................................................................ 6, 9

*True the Vote v. Hosemann*
   43 F. Supp. 3d 693 (S.D. Miss. 2014) ........................................................ 14, 21

*U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*
   931 F.3d 966 (9th Cir. 2019) ............................................................................ 20

*United States v. Brumbaugh*
   139 F.4th 1077 (9th Cir. 2025) ........................................................................... 6

*United States v. Lynd*
   301 F.2d 818 (5th Cir. 1962) ............................................................................ 10

*United States v. Ritchie*
   342 F.3d 903 (9th Cir. 2003) .............................................................................. 3

*United Steelworkers of Am., AFL-CIO-CLC v. Weber*
   443 U.S. 193 (1979) ............................................................................................ 8

*Voting Rights Coal. v. Wilson*
   60 F.3d 1411 (9th Cir. 1995) ............................................................................ 12

*Yim v. City of Seattle*
   63 F.4th 783 (9th Cir. 2023) ............................................................................ 15

STATUTES

5 U.S.C.
   § 552a(a)(3) ....................................................................................................... 21
   § 552a(a)(4) ....................................................................................................... 21
   § 552a(a)(5) ....................................................................................................... 21
   § 552a(e)(4) ............................................................................................ 21, 23, 24
   § 552a(e)(4)(D) .................................................................................................. 23
   § 552a(e)(7) ............................................................................................ 21, 22, 23
   § 552a(f) ............................................................................................................. 21

v

# TABLE OF AUTHORITIES
## (continued)

**Page**

18 U.S.C.

§ 2721(a) ............................................................................................... 24
§ 2721(b)(1) ........................................................................................... 25
§ 2721(c) ............................................................................................... 25
§ 2725 ................................................................................................... 24

52 U.S.C.

§ 20504 .................................................................................................. 25
§ 20507(i) ..................................................................................... 3, 13, 15
§ 20507(i)(1) .......................................................................................... 13
§ 20507(a)(4) .................................................................................. *passim*
§ 20701 ............................................................................................ 6, 12
§ 20703 ........................................................................................... *passim*
§ 20705 ............................................................................................... 6, 7
§ 20901 .................................................................................................. 17
§ 21081 .................................................................................................. 17
§ 21083 .................................................................................................. 17
§ 21083(a)(2) ......................................................................................... 22
§ 21083(a)(2)(A)(ii) ............................................................................... 20
§ 21083(a)(2)(B)(ii)-(iii) ........................................................................ 19
§ 21083(a)(4) ......................................................................................... 22
§ 21083(a)(5)(A) ............................................................................... 18, 19
§ 21083(a)(5)(A)(iii) .............................................................................. 19
§ 21085 ............................................................................................ 17, 19
§ 21111 ............................................................................................ 17, 18

California Elections Code

§ 2166 ................................................................................................... 11
§ 2166.5 ................................................................................................ 11
§ 2166.7 ................................................................................................ 11
§ 2166.8 ................................................................................................ 11
§ 2194(b)(1) .............................................................................. 1, 11, 15, 21
§ 2200-2214 ........................................................................................... 13
§ 2220-2227 ........................................................................................... 13
§ 2265(b) ............................................................................................... 25

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Government Code
    § 7924.000(b)....................................................................................11
    § 7924.000(b)–(c) .............................................................................15

E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899 (2002)...............24

Pub. L., No. 107–347, § 208(b)(1)(A)(ii)(II) ........................................24

**REGULATIONS**

California Code of Regulations, Tile 2
    § 19001(h)...................................................................14, 16, 21
    § 19074(a) ..................................................................................25

**CONSTITUTIONAL PROVISIONS**

United States Constitution, First Amendment............................................21, 22, 23

United States Constitution, Article I
    § 4, cl. 1 .....................................................................................12

**COURT RULES**

Federal Rule of Civil Procedure
    § 12(b)(1)....................................................................................5, 7
    § 12(b)(6) .......................................................................................5

**OTHER AUTHORITIES**

OMB Guidance, M-03-22 (Sep. 26, 2003), https://perma.cc/E6PW-
    YQTP...........................................................................................24

Brief for the United States as Amicus Curiae, *Pub. Int. Legal Found.,*
    *Inc. v. Bellows*, No. 23-1361 (1st Cir. July 25, 2024), 2023 WL
    4882397 ....................................................................................14, 15

*Basis*, Merriam-Webster Dict., https://www.merriam-
    webster.com/dictionary/basis .............................................................8

*Purpose*, Merriam-Webster Dict., https://www.merriam-
    webster.com/dictionary/purpose.........................................................7

**INTRODUCTION**

In this lawsuit, the U.S. Department of Justice ("DOJ") seeks an order directing the Secretary of State and the State of California (together, "California") to turn over a static, point-in-time copy of California's computerized voter registration list of its nearly 23 million registered voters. Compl. at 16, ¶ 5. It is demanding California do so "with all fields" of information associated with each individual voter's registration record. *Id.* California has not provided access to an entirely unredacted voter list because state law prohibits disclosure of "all fields"— driver's license numbers ("DLNs") and social security numbers ("SSNs"), among other information, "are confidential and shall not be disclosed to any person." Cal. Elec. Code § 2194(b)(1). California is not alone in this refusal. Seven other states and Orange County have been sued by DOJ for taking the same position.

California's refusal was only limited to information protected by state law. The Secretary invited DOJ to inspect the State's entire voter registration list (with appropriate redactions), explained in detail the actions the State takes to maintain the accuracy and currency of the State's voter rolls, and comprehensively answered specific questions posed to the Secretary about data submitted in a biennial federal survey on election administration. These responses are documented in the back-and-forth correspondence beginning in July.

California also asked DOJ sensible questions, such as why there was a need to collect vast amounts of personal information that was unrelated to its voter list maintenance obligations, and how DOJ was complying with other federal laws limiting collection of citizen information. These questions went unanswered. This lawsuit followed.

 DOJ is not legally entitled to the sensitive voter information it was denied. Each of DOJ's three claims fall to a collection of defects, none of which can be cured. Beyond its flawed claims, DOJ has not alleged compliance with three federal laws protecting citizens' personal information: the Privacy Act, the E-Government

1    Act, and the Driver's Privacy Protection Act ("DPPA").

2         In its first count, DOJ tries to invoke Title III of the Civil Rights Act of 1960

3    ("CRA"), a civil rights era tool that allows the Attorney General to make demands

4    to inspect elections records to enforce voting rights laws. But DOJ fundamentally

5    misunderstands this law's purpose and operation. To start, this Court lacks

6    jurisdiction to compel the requested relief because it is not within the judicial

7    district where the records are located or where the records demand was made. Nor

8    has DOJ satisfied Title III's requirement that it provide a statement of the basis and

9    the purpose for its records demand—indeed, DOJ could not do so, because it is not

10   seeking records for a purpose consistent Title III's narrow scope. Finally, Title III

11   does not preempt California's voter information protections. These laws serve as

12   complementary aspects of the same statutory scheme.

13        In its second count, DOJ claims it is entitled to the protected voter information

14   under the National Voter Registration Act's ("NVRA") public inspection provision.

15   But California fully complied with this provision when the Secretary invited DOJ to

16   inspect California's voter rolls—DOJ is not entitled to more. Nor does this

17   provision preempt California's voter information protections. These protections can

18   be read harmoniously with the NVRA's disclosure provision, and numerous courts

19   have found that the NVRA permits redactions of highly sensitive voter information.

20        In its third count, DOJ claims its generic enforcement authority under the Help

21   America Vote Act ("HAVA") empowers it to demand and receive the huge swaths

22   of highly sensitive data requested. No legal authority supports that proposition.

23        Finally, the Complaint establishes that the DOJ is seeking data protected by

24   the Privacy Act, the E-Government Act, and the DPPA, but it fails to allege its

25   compliance with any of those laws. Each of these federal statutes preclude the DOJ

26   from receiving the records it seeks, making it appropriate for the Court to put an

27   end to the DOJ's improper claims now. The Court should therefore grant

28   California's motion to dismiss the Complaint without leave to amend.

**FACTUAL BACKGROUND**

Beginning in May of this year, DOJ's Civil Rights Division embarked on a project of requesting the full, unredacted copies of the voter registration rolls maintained from dozens of states across the country.[1] To date, DOJ has filed suit against eight states to compel disclosure of the full, unredacted data in electronic form.[2] California is among the dozens of states targeted by DOJ, and one of the eight to be sued so far.

In July, DOJ sent its first letter[3] to the Secretary demanding an electronic, unredacted, and point-in-time copy of California's statewide voter registration list, which is maintained in a computerized database as required by HAVA. Compl. ¶ 34; Brudigam Decl. Ex. 1. DOJ also asked the Secretary to provide a description of the steps she takes to ensure voter list maintenance is done in accordance with the NVRA and posed questions about California's submissions in response to the U.S. Election Assistance Commission's 2024 Election Administration and Voting Survey (EAVS). Brudigam Decl. Ex. 1. DOJ's stated authority for this initial demand was the NVRA's public inspection provision, 52 U.S.C. § 20507(i).

The Secretary responded on July 22 explaining that she needed more than the 14 days provided by DOJ to respond. Compl. ¶ 35; Brudigam Decl. Ex. 2. A week

---

[1] DOJ letters demanding all statewide voter registration data from 30 states have been collected into Exhibit 17 to the Declaration of Malcolm Brudigam ("Brudigam Decl."). This is not an exhaustive collection. DOJ letters are properly subject to judicial notice, as set out in the Request for Judicial Notice ("RJN") at 3–4, filed herewith. Matters subject to judicial notice may be considered by the Court on a motion to dismiss without converting the motion to one for summary judgment. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018).

[2] *United States v. Bellows*, 1:25-cv-00468 (D.Me.) (filed Sep. 16, 2025); *United States v. Oregon*, 6:25-cv-01666 (D.Or.) (filed Sep. 16, 2025); *United States v. Simon*, 0:25-cv-03761 (D. Minn.) (filed Sep. 25, 2025); *United States v. Benson*, 1:25-cv-01148 (W.D. Mich.) (filed Sep. 25, 2025); *United States v. Pennsylvania*, 2:25-cv-01481 (W.D. Penn.) (filed Sep. 25, 2025); *United States v. Bd. Of Elecs.*, 1:25-cv-01338 (N.D.N.Y.) (filed Sep. 25, 2025); *United States v. Scanlan*, 1:25-cv-00371 (D.N.H.) (filed Sep. 25, 2025); *see* RJN at 4–5.

[3] All letters exchanged between the DOJ and California are attached as Exhibits 1–8 to the Brudigam Decl. Because these letters are all referenced in the Complaint and form the basis of the DOJ's claims, *see* Compl. ¶¶ 34–38, 43–44, they are incorporated by reference into the Complaint and properly considered on a motion to dismiss. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

1    later, DOJ sent a second letter demanding immediate responses to some questions, a

2    copy of the statewide voter registration list by August 8, and the remainder of the

3    information by August 29. Compl. ¶ 36; Brudigam Decl. Ex. 3.

4         On August 8, the Secretary identified documents responsive to DOJ's

5    inquiries and offered to make a copy of California's voter registration list available

6    for inspection at the Secretary's office in Sacramento. Compl. ¶ 37; Brudigam Decl.

7    Ex. 4. The letter noted that, in accordance with California and federal law, certain

8    sensitive information would be redacted, including voters' DLNs and SSNs.

9    Brudigam Decl. Ex. 4.

10        On August 13, DOJ rejected the Secretary's invitation to inspect the voter

11   registration list. Compl. ¶¶ 38–42; Brudigam Decl. Ex. 5. DOJ reiterated its demand

12   for an unredacted electronic copy of the voter registration list and invoked new

13   legal grounds for its demand—HAVA and Title III of the CRA. Brudigam Decl.

14   Ex. 5. DOJ claimed that the data sought was necessary to "determine whether

15   California's list maintenance program complies with the NVRA." *Id.* The August

16   13 letter also demanded "a copy of all original and completed voter registration

17   applications submitted to the State of California" from the past two years. *Id.*

18        On August 21, the Secretary responded to DOJ again inviting it to inspect the

19   California voter registration list at her office. Compl. ¶ 43; Brudigam Decl. Ex. 6.

20   The Secretary explained that Title III of the CRA and HAVA did not apply to

21   DOJ's request and asked DOJ whether its efforts to build a system of records of

22   California voters complied with the Privacy Act. Brudigam Decl. Ex. 6. The

23   Secretary also pointed out that DOJ's efforts to obtain similar data from all 50

24   states undercut its claim that such data was necessary for an investigation of

25   *California's* NVRA compliance. *Id.*

26        On August 29, the Secretary sent DOJ a list of election officials responsible

27   for conducting voter registration list maintenance, as requested in its July 10 letter.

28   Compl. ¶ 44; Brudigam Decl. Ex. 7.

On September 12, the Secretary sent her final letter providing comprehensive responses to every question posed in DOJ's July 10 letter. Compl. ¶ 44; Brudigam Decl. Ex. 8. The Secretary declined to provide copies of every original and completed voter registration application dating back two years, explaining that DOJ failed to cite any applicable legal authority to justify the sweeping request. *Id.* The Secretary again raised questions about DOJ's compliance with federal laws that appeared implicated by its vast collection of voter information. *Id.*

DOJ never responded to the Secretary's August 21, August 29, and September 12 letters, and never coordinated an inspection of California's voter registration list. Instead, on September 25, DOJ sued the Secretary and five other States.

## LEGAL STANDARD

"A complaint may be dismissed for failure to state a claim only when it fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016); Fed. R. Civ. P. 12(b)(6). A complaint may be dismissed for lack of subject matter jurisdiction if "the allegations contained in a complaint are insufficient on their face to invoke [the court's] jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004); Fed. R. Civ. P. 12(b)(1).

## ARGUMENT

### I.    DOJ HAS FAILED TO ASSERT COGNIZABLE LEGAL CLAIMS

DOJ asserts three claims against California: (1) violation of Title III of the CRA; (2) violation of the NVRA; and (3) violation of HAVA. Each claim suffers from multiple fatal flaws that cannot be cured by amendment.

### A.    DOJ's CRA Claim Fails on Both Jurisdictional and Substantive Grounds

#### 1.    Title III of the CRA

Title III was "designed to secure a more effective protection of the right to vote." *State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala.

1960), *aff'd sub nom. Dinkens v. Att'y Gen. of U. S.*, 285 F.2d 430 (5th Cir. 1961). In furtherance of this purpose, Title III imposes document retention requirements on elections officials: "[e]very officer of election," or designated custodian, "shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election" for federal office, "all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election . . . ." 52 U.S.C. § 20701; *id.* § 20706.

If certain conditions are met, DOJ may inspect these records. *Id.* § 20703. As relevant here, the Attorney General must present "a statement of the basis and the purpose therefor." *Id.* Title III also includes an enforcement mechanism to compel production of these records. The district court located where the written demand is made, or where the records are located, has "jurisdiction by appropriate process to compel the production of such record or paper." *Id.* § 20705.

### 2.    This court lacks jurisdiction to compel relief

DOJ's difficulties in invoking Title III start at the beginning: DOJ has not sued in the correct court. Jurisdiction lies in only the federal judicial district where the written demand was made, or the relevant records are located, 52 U.S.C. § 20705, and this specific jurisdictional statute must control over the Complaint's general jurisdictional citations, otherwise Section 20705's requirement is rendered a nullity. *United States v. Brumbaugh*, 139 F.4th 1077, 1085 (9th Cir. 2025) ("[T]he specific governs the general . . . especially where . . . Congress has enacted a comprehensive scheme and has deliberately targeted specific problems with specific solution.")

Here, DOJ sued California in the Central District of California, but DOJ's demand was made to the Secretary at her Sacramento address, and her response stated that the records demanded are in her Sacramento office. Compl. ¶ 37; Brudigam Decl. Exs. 5–6. Thus, this Court lacks jurisdiction under Title III to compel the production of election records. 52 U.S.C. § 20705. This Court should dismiss DOJ's Title III claim without leave to amend. Fed. R. Civ. P. 12(b)(1).

### 3.    DOJ's demand for records fails to satisfy an essential statutory requirement

Even if the Court takes jurisdiction to compel relief under Title III, DOJ failed to provide "a statement of the basis *and* the purpose therefor," as the law requires. 52 U.S.C. § 20703 (emphasis added); *Confederated Tribes & Bands of Yakama Nation v. Yakima Cnty.*, 963 F.3d 982, 990 (9th Cir. 2020) ("[W]hen 'and' is used to join two concepts, it is usually interpreted to require 'not one or the other, but both.'"). DOJ has long treated "purpose" and "basis" separately. *See Kennedy v. Lynd*, 306 F.2d 222, 231 n.6 (5th Cir. 1962) (showing a demand by the Attorney General where it stated a basis *and* a purpose); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (same), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963).

As an initial matter, DOJ offers no statement of the purpose and the basis for its demand for unredacted copies of all original and completed voter registration applications from December 1, 2023 through July 1, 2025. *See* Compl. ¶¶ 38, 47–48; Brudigam Decl. Exs. 5; 8 at 7–8.

As for its demand for California's entire voter registration list, DOJ alleges that it made a proper demand in its August 13 letter to the Secretary, where it wrote that the "statement of the basis and the purpose" of its demand was "to assist in our determination of whether California's list maintenance program complies with the NVRA." Compl. ¶¶ 38, 47–48; Brudigam Decl. Ex. 5. DOJ's statement amounts, at best, only to a statement of its purpose. *Purpose*, Merriam-Webster Dict., https://www.merriam-webster.com/dictionary/purpose (defining "purpose" as "something set up as an object or end to be attained: intention"). In contrast, a "basis" is "something on which something else is established or based." *Basis*, Merriam-Webster Dict., https://www.merriam-webster.com/dictionary/basis. DOJ's request fails to provide any statement of its grounds for suspecting that California was violating the NVRA or to explain how the requested records are relevant to its

1   inquiry. Allowing DOJ to obtain records without such a showing would ignore the

2   canon against surplusage and vitiate Congress's choice in establishing this

3   requirement. *In re Saldana*, 122 F.4th 333, 342–43 (9th Cir. 2024).

### 4.    DOJ cannot invoke Title III to investigate issues unrelated to civil rights

6       DOJ's demand for records also fails to satisfy Title III's requirements because

7   the stated purpose falls outside the scope of the CRA. The CRA's text and history

8   limit Title III to investigations of civil rights violations, namely, efforts to prevent

9   *eligible* voters from voting or registering to vote for illegal reasons like racial

10  discrimination. As shown below, for the "statement of the basis and the purpose" of

11  a Title III demand to be valid, it must relate to a civil rights investigation.

12      Title III's text provides that the "statement of the basis and the purpose"

13  "shall" be included in a records demand, indicating it is an explicit requirement and

14  precondition. *Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("It is undisputed that the

15  word 'shall' imposes a mandatory command. . . . 'Shall' means 'must.'"). But some

16  statements of basis and purpose—say, bases or purposes unrelated to voting at all—

17  could not suffice, because that would "sap the interpreted provision of all practical

18  significance." *Pac. Coast Fed'n of Fishermen's Assocs., Inc. v. Nickels*, 150 F.4th

19  1260, 1271, 1273 (9th Cir. 2025). Indeed, "[i]t is a 'familiar rule that a thing may

20  be within the letter of the statute and yet not within the statute, because not within

21  its spirit nor within the intention of its makers.'" *United Steelworkers of Am., AFL-

22  CIO-CLC v. Weber*, 443 U.S. 193, 201–02 (1979) (concluding that the "prohibition

23  against racial discrimination in . . . Title VII must therefore be read against the

24  background of [its] legislative history . . . and the historical context from which the

25  Act arose"); *Doe v. Kamehameha Sch./Bernice Pauahi Bishop Est.*, 470 F.3d 827,

26  846 (9th Cir. 2006) (applying *Weber*).

27      The Court must read that text alongside Title III's context and history. *Avila v.

28  Spokane Sch. Dist. 81*, 852 F.3d 936, 941 (9th Cir. 2017). The overwhelming

1  evidence shows that Title III of the CRA was enacted to facilitate investigation into

2  civil rights violations related to discrimination in voting. A valid "statement of the

3  basis and purpose," then, is one that relates to such an investigation.

4      Both congressional reports and President Eisenhower's signing statement

5  indicate that the CRA focused on the "key constitutional right of every American,

6  the right to vote without discrimination on account of race or color." Brudigam

7  Decl. Ex. 9 at 1; Ex. 10 at 2 (under "Summary"); Ex. 11 at 1–3; *see also* RJN at 2–

8  3. Title III was enacted to further that overarching goal of the CRA. The year before

9  the CRA's enactment, the President's recommendations to Congress emphasized

10  the "serious obstacle" that insufficient access to voter registration records posed to

11  safeguarding the right to vote under the Civil Rights Act of 1957. Brudigam Decl.

12  Ex. 12 at 2. Once enacted, the President's signing statement recognized that Title

13  III "requires the retention of voting records, [which] will be of invaluable aid in the

14  successful enforcement of existing voting rights statutes." *Id.* Ex. 9 at 1–2.

15      In fact, all contemporaneous records related to the CRA's enactment strongly

16  indicate that Title III was enacted to build upon the Civil Rights Act of 1957. As a

17  House committee report explained, "Title III is a necessary supplement to part IV

18  of the Civil Rights Act of 1957," and "would implement Federal enforcement" of

19  this prohibition. *Id.* Ex. 11 at 26; *see also* Ex. 15 at Part IV. And the congressional

20  record repeatedly shows that Title III was meant to facilitate the enforcement of the

21  voting rights protections codified in the Civil Rights Act of 1957. *Id.* Ex. 13 at

22  3683, 3692; Ex. 14 at 5193, 5209; *see also Rogers*, 187 F. Supp. at 853 (finding

23  that the CRA's legislative history "leaves no doubt but that [Title III] is designed to

24  secure a more effective protection of the right to vote"); RJN at 2–3.

25      Courts construing Title III shortly after it was enacted confirm that its aim was

26  to facilitate protection of the right to vote through the Civil Rights Act of 1957 and

27  the CRA itself. *Lynd*, 306 F.2d at 228 (explaining that the Attorney General "is

28  entitled to inspect and copy all of the voter papers and records as defined" "in

1  fulfillment of the duties imposed upon him by the Civil Rights Act of 1957 and
2  1960"). Valid statements of basis and purpose from the time of enactment were
3  "based upon information in the possession of the Attorney General tending to show
4  that discriminations on the basis of race and color have been made with respect to
5  registration and voting within your jurisdiction." *Id.* at 231 n.6; *In re Coleman*, 208
6  F. Supp. at 199–200. Repeatedly addressing the issue, the Fifth Circuit "laid down
7  the rule that the government is entitled to have an order of the trial court authorizing
8  it to inspect the voting records" based on DOJ's "reasonable grounds for belief that
9  certain voters are being discriminatorily denied their voting rights in a given
10  county." *United States v. Lynd*, 301 F.2d 818, 822 (5th Cir. 1962).
11      No valid civil rights purpose is alleged in DOJ's Complaint. DOJ's alleged
12  purpose concerns assessing compliance with the voter registration list maintenance
13  provisions of the NVRA, which requires each state "conduct a general program that
14  makes a reasonable effort to remove the names of" voters who are ineligible due to
15  death or a change in residence. 52 U.S.C. § 20507(a)(4); Compl. ¶ 53. But the mere
16  failure to purge voter registration lists of these ineligible voters for these reasons
17  does not automatically fall within Title III's scope. *See Kennedy v. Bruce*, 298 F.2d
18  860, 863 & n.2 (5th Cir. 1962) (noting that statistical evidence in a Title III
19  proceeding indicating a failure to remove voters who moved away or died was "a
20  matter which does not bear any particular importance to the present inquiry"). DOJ
21  must articulate a purpose and basis that relates to an investigation into civil rights,
22  specifically, discrimination in voting.
23      Here, DOJ has failed to allege *any* basis for its demand, let alone one stating a
24  reason to believe that discrimination in voting is occurring in California. And
25  DOJ's alleged purpose is not valid either because DOJ has not articulated how its
26  assessment of California's compliance with 52 U.S.C. § 20507(a)(4) relates to an
27  investigation into civil rights, and more specifically, discrimination in voting.
28

1    Nothing in DOJ's Complaint or letters to the Secretary suggests that any of these

2    kinds of allegations could be made.

3            **5.    DOJ is only entitled to in-person, redacted inspection of
              records covered by Title III**
4

5        Even if the Court takes jurisdiction and concludes that Title III authorizes

6    DOJ's demand, and that DOJ can satisfy the statement of the basis and the purpose

7    requirement, DOJ may only inspect a redacted version of California's voter

8    registration list at the Secretary's office in Sacramento.

9        DOJ is not entitled to inspect an unredacted version of California's voter

10    registration list, which includes voters' "state driver's license number, and the last

11    four digits of their Social Security number." Compl. ¶ 47. California, like most

12    states, prohibits disclosure of sensitive information contained in voter registration

13    records, including SSNs, DLNs, and contact information of confidential voters.[4]

14    Cal. Elec. Code § 2194(b)(1); Cal. Gov't Code § 7924.000(b). DOJ, claiming that

15    such unredacted disclosures are "authorized by 52 U.S.C. § 20703," maintains that

16    these state laws are preempted by the CRA. Compl. ¶ 42; *id.* at 16, ¶ 4. Because

17    both statutory schemes can operate harmoniously, the CRA does not preempt the

18    state laws protecting voter's sensitive information.

19        The Elections Clause gives States the power to regulate the time, place, or

20    manner of federal congressional elections, and it simultaneously gives Congress the

21    power to "make or alter such [r]egulations." U.S. Const., art I, sec. 4, cl. 1; *Voting*

22    *Rights Coal. v. Wilson*, 60 F.3d 1411, 1413–14 (9th Cir. 1995). This scheme gives

23    Congress preemptive power over certain state election law, which is analyzed

24    according to preemption principles specific to the Elections Clause. *Arizona v. Inter*

25    *Tribal Council of Arizona, Inc.*, 570 U.S. 1, 8–9, 13–15 (2013) (*ITCA*). Although

26    _____

27        [4] Confidential voters include victims of domestic violence, sexual assault, or
      stalking, public safety officers, election workers, among others, who face life-
28    threatening circumstances to obtain temporary confidential status on voter
      registration lists. *See* Cal. Elec. Code §§ 2166, 2166.5, 2166.7, 2166.8.

there is no presumption against preemption for federal laws enacted by Congress under its Elections Clause power, *id.* at 13–15, courts must be attentive to the scope and limits of express requirements set out in federal statute. Congress's authority over federal elections supersedes state law only "so far as it is exercised, and no farther." *Id*. at 9 (quoting *Ex parte Siebold*, 100 U.S. 371, 392 (1880)). If the federal and state provisions can "operate harmoniously in a single procedural scheme," then the state statute is not preempted. *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012), *aff'd sub nom*. *ITCA*, 570 U.S. 1 (2013).

Here, Title III does not preempt California's narrow confidentiality protections of voter's sensitive information for several reasons. Title III requires, in response to a proper demand, that the recordkeeper make available "all records . . . relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. §§ 20701, 20703. To start, Title III's text does not prohibit the redaction of sensitive voter information. *Cf. Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (finding that "the appropriate redaction of uniquely or highly sensitive personal information in the Voter File" was permissible where the NVRA did not prohibit such redactions). Moreover, Title III's purpose is to enable civil rights investigations into discrimination in voting, but there is no articulated connection between the sensitive voter information DOJ demands and an allegation of or investigation into discrimination in voting. *Compare* Brudigam Decl. Ex. 5 at 2 *with id.* Ex. 15, Part IV. State law thus operates harmoniously with Title III. *See Gonzalez*, 677 F.3d at 394.

Finally, DOJ's demand that it be sent an electronic version of California's statewide voter registration database is contrary to Title III's unambiguous text. Compl. at 16, ¶ 5; Brudigam Decl. Ex. 5. A valid demand would require only that the records "be made available . . . *at the principal office of such custodian*." 52 U.S.C. § 20703 (emphasis added).

### B. DOJ Has Not Asserted a Cognizable Claim Under the NVRA

DOJ has failed to assert a cognizable NVRA claim because the Secretary satisfied all her obligations under the NVRA when she gave DOJ an opportunity to inspect a redacted version of California's voter registration list. As with Title III, California's laws protecting sensitive voter information are not preempted by the NVRA: withholding such information does not frustrate the NVRA's purpose, and both laws can be read as complementary parts of the same statutory scheme.

The NVRA "erect[s] a complex superstructure of federal regulation atop state voter-registration systems." *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756, 761 (2018). As relevant here, it requires States "to 'conduct a general program that makes a reasonable effort to remove the names' of voters who are ineligible 'by reason of' death or change in residence." *Id.* (quoting 52 U.S.C. § 20507(a)(4)). With help from county elections officials, the Secretary follows a detailed process in state law for ensuring these ineligible voters are removed from voter rolls. Cal. Elec. Code §§ 2200–2214, 2220–2227; Brudigam Decl. Ex. 8.

#### 1. The Secretary has complied with the NVRA

The NVRA requires each State to maintain for at least two years and "make available for *public* inspection"—i.e., to anyone who asks—"all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added). Here, the Secretary offered DOJ an opportunity to inspect a redacted version of California's voter registration list. Compl. ¶ 37; Brudigam Decl. Exs. 4, 6. This satisfies her obligations under Section 20507(i). And there is no requirement that California provide an electronic version of the records—the NVRA only requires "inspection." *Greater Birmingham Ministries v. Sec'y of State for Ala.*, 105 F.4th 1324, 1333 (11th Cir. 2024) ("'[P]ublic inspection' as used in the . . . [NVRA] does not include electronic disclosure").

Moreover, courts have consistently recognized limitations on disclosing highly sensitive personal information of voters, even after reading the "all records concerning" language broadly. *Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 266-67 (4th Cir. 2021) ("*N.C. State*"); *Bellows*, 92 F.4th at 47–49, 56; *Greater Birmingham*, 105 F.4th at 1331–32. For example, courts have permitted redactions of SSNs and birthdates. *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 711–12 (E.D. Va. 2010); *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 733 (S.D. Miss. 2014). And DOJ itself has previously maintained that the NVRA does not prohibit States from redacting "uniquely sensitive information," such as SSNs, before disclosing records. *Brief for the United States as Amicus Curiae*, *Pub. Int. Legal Found., Inc. v. Bellows* ("*DOJ Amicus Brief*"), No. 23-1361 (1st Cir. July 25, 2024), 2023 WL 4882397 at *27–28.

At bottom, DOJ sued California because it wants the state's entire unredacted voter registration list in electronic form, using the NVRA as a fig leaf.[5] But neither electronic production nor disclosure of sensitive voter information are required under the NVRA. The latter is explicitly prohibited under California law.

### 2. The NVRA does not preempt California law

DOJ alleges that California's laws protecting voter's sensitive information are preempted by the NVRA. Compl. ¶ 42; *id.* at 16, ¶ 4. First, as demonstrated immediately above, the NVRA does not compel production of such sensitive information. Even if it did, California's voter information protections do not frustrate the NVRA's purpose and can operate harmoniously with the NVRA's public disclosure requirements.

Under California law, "the California driver's license number, the California identification card number, the social security number, and any other unique identifier used by the State of California for purposes of voter identification. . . , are

---

[5] The "voter registration information" that can be inspected includes birthdates, voter participation history, registration method, registration status, and a host of other information. Cal. Code Regs. tit. 2, § 19001(h).

confidential and shall not be disclosed to any person." Cal. Elec. Code
§ 2194(b)(1); Cal. Gov't Code § 7924.000(b)–(c). There is no conflict with the
NVRA's requirements because California law and the NVRA can be construed as
part of a "single procedural scheme," with California's voter information
protections functioning as an implementing detail. *See Gonzalez*, 677 F.3d at 394.
And because courts have concluded that redacting sensitive voter information in
response is permitted under the NVRA, a state law requiring the same kind of
redactions would not be preempted. *See Bellows*, 92 F.4th at 56; *N.C. State*, 996
F.3d at 264, 266–67. Not only can state and federal law operate together, but
California's protections are a logical limitation on *public* inspection. Otherwise,
anyone could request and receive access to all the sensitive information of nearly 23
million Californians—an absurd result. *Yim v. City of Seattle*, 63 F.4th 783, 792
(9th Cir. 2023) ("[Courts] are not required to interpret a statute in a formalistic
manner when such an interpretation would produce a result contrary to the statute's
purpose or lead to unreasonable results.").

The NVRA and California's voter information protections can also be read in
concert because the latter does not obstruct the purposes of the former. *Bellows*, 92
F.4th at 52. As discussed above, DOJ and federal courts have explained that Section
20507(i) does not compel the production of unredacted SSNs and DLNs. *DOJ Amicus Brief*, 2023 WL 4882397 at *28 (state law limits on voter information are
not preempted when they affect uses that "would not further the NVRA's
purposes," including "bans on disseminating personal data."). Thus, there is no
conflict between state and federal purposes here. *See Atlas Data Priv. Corp. v. We Inform, LLC*, 2025 WL 2444153, at *2–3 (D.N.J. Aug. 25, 2025) (finding state law
limiting disclosure of personal information not preempted by the NVRA).

DOJ's attempts to generate a conflict in the face of these authorities fail. DOJ
alleges that the information it is seeking "is necessary for the Attorney General to
determine if California is" complying with its obligations under Section

20507(a)(4). Compl. ¶ 53. However, DOJ fails to allege *why* SSNs and DLNs, and other protected voter information, are necessary to assess whether California is conducting a general program that makes a reasonable effort to remove ineligible voters by reason of death or change in residence. This failure is especially glaring when DOJ has been offered access to inspect large amounts of unredacted voter information, including names, dates of birth, addresses, and other information. Cal. Code Regs. tit. 2, § 19001(h). It also ignores the detailed explanation and citations to state law setting forth the robust list-maintenance program in California. *Compare Bellitto v. Snipes*, 935 F.3d 1192, 1205 (11th Cir. 2019) (examples of a reasonable effort under section 20507(a)(4)) *with* Brudigam Decl. Ex. 8.

Finally, the request is improper because the NVRA may permit investigation into *whether* a state has a reasonable list maintenance program—something California clearly conducts—but it does not allow a fishing expedition into line-by-line voter list accuracy, which DOJ appears to want here. That level of accuracy, in a voter registration list that is being updated daily, is not necessary to satisfy compliance under the NVRA. *Pub. Int. Legal Found., Inc. v. Benson*, 136 F.4th 613, 625–26, 628 (6th Cir. 2025) (rejecting the argument that the adequacy of a list maintenance program should be judged by statistical indicia).

Because the NVRA leaves room for state laws, like California's voter information protections, that do not obstruct the NVRA's purposes and can be read as part of the same statutory scheme, there is no preemption here.

### C.    DOJ Has Not Asserted a Cognizable Claim Under HAVA

HAVA sought to upgrade voting systems by setting standards for voting machines and voter registration databases and by providing federal funding to the States for elections purposes. *See* 52 U.S.C. §§ 20901, 21081, 21083; *Crowley v. Nev. ex rel. Nev. Sec'y of State*, 678 F.3d 730, 734 (9th Cir. 2012). Congress left much of the implementation of HAVA to the states. *See* 52 U.S.C. § 21085; *Fla. State Conf. of N.A.A.C.P. v. Browning*, 522 F.3d 1153, 1172 (11th Cir. 2008).

California carefully complies with HAVA's list maintenance requirements and demonstrates this compliance through its documented policies and practices. In response to DOJ's inquiries, the Secretary set out its list maintenance compliance in detail in the letters sent to DOJ on August 8, August 21, and September 12. Brudigam Decl. Exs. 4, 6, 8. At no point—in its correspondence or Complaint—has DOJ taken issue with any of California's specific policies or practices, or alleged any actual or suspected violation of HAVA.

Instead, DOJ is requesting a static, and unredacted, copy of the state's voter registration list, allegedly to investigate and find some unknown HAVA list maintenance violation. Compl. ¶¶ 57–63. HAVA does not require such disclosure. And as mentioned above, state compliance is based on assessing whether a state is taking reasonable steps to remove ineligible voters "on a regular and ongoing basis," not on a static look at the entirety of a state's voter registration list on any single day. *Benson*, 136 F.4th at 627; *see also Bellitto*, 935 F.3d at 1202 ("Nothing in HAVA broadens the scope of the NVRA's list-maintenance obligations.").

### 1.    HAVA has no disclosure provisions at all

Unlike the NVRA, HAVA has no disclosure provisions—and DOJ's Complaint and letters to California cite no case law or other authority for the proposition that the mere existence of DOJ's authority to enforce HAVA's "uniform and nondiscriminatory" requirements entitles it to unfettered access to state voter registration lists upon demand. 52 U.S.C. § 21111. Section 21111 authorizes the Attorney General to "bring a civil action against any State or jurisdiction . . . for such declaratory and injunctive relief . . . as may be necessary to carry out the uniform and nondiscriminatory election technology and administration requirements." 52 U.S.C. § 21111. This statutory text includes no requirement to produce information about specific registered voters, and the statutory text must control. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022). It is axiomatic that DOJ must cite statutory authority to demand documents. *Peters v. United*

1    *States*, 853 F.2d 692, 696 (9th Cir. 1988) (authority of government agency to issue

2    document request "created solely by statute"). And, of course, the specific

3    disclosure requirement in the NVRA is not incorporated into HAVA. Thus, DOJ's

4    allegation that California's failure to provide sufficient information—specifically

5    its decision to not disclose an "unredacted voter registration list[]"—constitutes "a

6    violation of HAVA," Compl. ¶ 62, fails to state a plausible legal claim.

7          **2.**    **DOJ fails to allege any other violation of HAVA**

8        In the Complaint, DOJ asserts that "Defendants have failed to take the actions

9    necessary for the State of California to comply with Section 303 of HAVA."

10   Compl. ¶ 59. But DOJ fails to allege any facts supporting a specific violation of

11   HAVA's list maintenance requirements. DOJ's assertion also fails to acknowledge

12   the detailed information that California provided to DOJ in its response letters

13   demonstrating its compliance list maintenance program. Brudigam Decl. Exs. 4, 6,

14   8. DOJ then, conflictingly, suggests that California's "failure to provide sufficient

15   information in response" to DOJ's demand letters "prevent[s] the Attorney General

16   from *evaluating* California's compliance with HAVA." Compl. ¶ 60 (emphasis

17   added). DOJ's fundamental misunderstanding of HAVA does not end here.

18        DOJ alleges, for example, that California's refusal to provide an unredacted

19   voter list with sensitive voter information included "prevents the Attorney General

20   from determining California's compliance with the list maintenance requirements

21   of HAVA," citing 52 U.S.C. § 21083(a)(5)(A). Compl. ¶ 61. But section

22   21083(a)(5)(A) is not a list maintenance requirement; it requires a voter registration

23   application to include certain identifying information for the State to use in

24   registration, such as a SSN or DLN. *Id.* § 21083(a)(5)(A)(i). California is plainly

25   complying with this requirement; otherwise, there would be no dispute here over

26   inspecting this sensitive information. Compliance is also apparent from publicly

27   available state voter registration forms. Brudigam Decl. Ex. 16; RJN at 3.

28

Section 21083(a)(5)(A) also explains that "*[t]he State* shall determine whether the information provided by an individual is sufficient to meet the requirements of this subparagraph, in accordance with State law." 52 U.S.C. § 21083(a)(5)(A)(iii) (emphasis added). The upshot is that there is no "compliance" for DOJ to assess; this is wholly the State's domain. *See also* 52 U.S.C. § 21085 ("The specific choices on the methods of complying with the requirements of this subchapter shall be left to the discretion of the State."). Nor has DOJ alleged facts plausibly suggesting that California is violating this requirement.

DOJ then alleges that California's "failure to provide unredacted voter registration lists to include non-citizen voter data constitutes a violation of HAVA," citing 52 U.S.C. § 21083(a)(2)(B)(ii)-(iii). Compl. ¶ 62. This allegation is also a nonstarter. Section 21083(a)(2)(B)(ii)-(iii) requires that a state's computerized list maintenance be conducted "in such a manner that ensures that" only voters who are not registered or who are not eligible to vote, and duplicated names, are removed from the list. California provided DOJ with detailed information about how it conducts list maintenance to ensure that these requirements of HAVA are met, and DOJ has not put forth any allegations to the contrary.

### 3.    HAVA does not preempt California law

California law prohibits disclosing the requested voter information, as discussed above. Here, HAVA includes no disclosure requirement at all, much less one that directly conflicts with the state law prohibition on producing sensitive voter information. *Cf. Colón-Marrero v. Vélez*, 813 F.3d 1, 14 (1st Cir. 2016) (finding state statute preempted where it required voters be removed from voter rolls after not voting in *one* prior general election, but HAVA limited removal to voters who did not vote in *two* consecutive general elections).

This case thus tracks *American Civil Rights Union v. Philadelphia City Commissioners*, 872 F.3d 175 (3d Cir. 2017), in which the Third Circuit rejected a claim that HAVA required Philadelphia to purge voters incarcerated for a felony

conviction from the rolls. In Pennsylvania, individuals convicted of a felony need not be removed from voter registration rolls under state law. *Id.* at 180 (citations omitted). The plaintiffs argued that the state law conflicted with HAVA, citing the list-maintenance requirement in 52 U.S.C. § 21083(a)(2)(A)(ii). The Third Circuit rejected this argument, finding that the felony conviction reporting requirements in HAVA did "not impose a duty on election officials to subsequently act on that information by purging those individuals from the voter rolls *in disregard of the law of their state*." *Am. Civil Rights Union*, 872 F.3d at 186 (emphasis added). Here, *no* statutory text in HAVA creates a requirement to produce a voter list, much less one containing the sensitive voter information California law explicitly prohibits producing. Thus, there can be no preemption here.

## II.    DOJ HAS NOT ALLEGED COMPLIANCE WITH FEDERAL PRIVACY LAWS

The Court may consider affirmative defenses at the motion to dismiss phase. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013). Specifically, if the Court sees "some obvious bar to securing relief on the face of the complaint," it can dismiss based on an affirmative defense. *U.S. Commodity Futures Trading Comm'n v. Monex Credit Co.*, 931 F.3d 966, 973 (9th Cir. 2019) (quotation omitted). As demonstrated below, the Complaint's face reveals three "obvious bar[s]" to relief: failure to comply with the Privacy Act, the E-Government Act, and the DPPA.

### A.    DOJ's Hunt for Data Violates the Privacy Act

The Privacy Act bars DOJ's claim, and the Court can resolve this gaping Privacy Act issue now. "The Privacy Act exists to protect individuals from disclosure of government-collected information." *Ritter v. United States*, 177 Fed. Cl. 84, 87 (2025). The law accordingly erects "certain safeguards for an individual against an invasion of personal privacy." Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974). Among these safeguards, agencies are prohibited from collecting or maintaining records related to an individual's First Amendment activities (unless narrow exceptions apply), and they must follow specific procedures before they

"maintain, collect, use, or disseminate" any group of records searchable by individual. 5 U.S.C. §§ 552a(a)(3), (a)(5), (e)(4), (e)(7), (f).

The Privacy Act applies to the detailed voter data requested by DOJ. A covered "record" includes "any item, collection, or grouping of information about an individual that is maintained by an agency." 5 U.S.C. § 552a(a)(4). The requested records pass the test, housing core personal information like addresses, party preference, voting participation history, and date of birth, Cal. Code Regs. tit. 2, § 19001(h), as well as sensitive personal identifying information protected as confidential under California law such as signatures, DLNs, and SSNs, Cal. Elec. Code § 2194(b)(1).[6] *See* Compl. ¶ 38, p. 16, ¶ 5 (requesting the statewide voter registration list "with all fields," including sensitive personal data). And DOJ's effort to seize those records through this suit, if allowed, will result in a covered collection of records. *See* 5 U.S.C. § 552a(a)(3) (defining "maintain" to include "maintain, collect, use, or disseminate").

The Privacy Act thus squarely governs DOJ's records request here. As explained below, it precludes collection of this data for two reasons.

First, the Privacy Act bars federal agencies from collecting or maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7). DOJ's records request directly implicates that statutory bar: voter registration, party affiliation, and the choice to participate or not in an election are all forms of political expression protected by the First Amendment. *Buckley v. Am. Const. L. Found., Inc.*, 525 U.S. 182, 195 (1999) (choice of whether to register to vote "implicates political thought and expression");

---

[6] Indeed, federal courts have held that the Privacy Act covers records that may be requested under the NVRA's public inspection provisions. *Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015 (D. Alaska 2023); *Hosemann*, 43 F. Supp. 3d at 735; *N.C. State*, 996 F.3d at 263–64, 268.

*Rutan v. Republican Party of Illinois*, 497 U.S. 62, 69, 75–76 (1990) (the expression of political beliefs and association through political affiliation is protected by the First Amendment). No exception applies. No statute authorizes DOJ to maintain Americans' full, unredacted voter registration records. DOJ has not received the express authorization of the millions of voters whose records it seeks. And a point-in-time snapshot of the voter file is not pertinent to or within the scope of DOJ's purported investigation of California's list maintenance program and practices under the NVRA and HAVA. *See* 52 U.S.C. § 20507(a)(4) (NVRA provision requiring states to "conduct a general program that makes a reasonable effort" to remove ineligible voters due to death or change in residence), cited in Compl. ¶¶ 13, 53; 52 U.S.C. § 21083(a)(2), (a)(4) (parallel provision in HAVA), cited in Compl. ¶¶ 26, 29, 62. The complete voter registration applications DOJ requested likewise sit far afield from a legitimate investigation into list-maintenance practices. If a record "has at best only speculative relevance to an unstated law enforcement purpose," this exception is not satisfied. *Garris v. Fed. Bureau of Investigation*, 937 F.3d 1284, 1299 (9th Cir. 2019). Because no exception applies, the statutory bar on maintaining records on First Amendment activities prohibits DOJ from collecting the requested records.

Second, even if DOJ could somehow evade that First-Amendment-activity problem, heightened protections apply when an agency establishes or alters a "system of records," or "group of records under the control of any agency from which information is retrieved by the name of the individual" or other individual identifier. 52 U.S.C. § 552a(a)(5), (e). As relevant here, the Privacy Act requires US DOJ to publish a System of Records Notice or SORN in the Federal Register before "establish[ing] or revis[ing]" a "system of records." *Id.* § 552a(e)(4); *Brusseau v. Dep't of Homeland Sec.*, 2021 WL 3174248, at *5 (E.D. Va. July 27, 2021). DOJ seeks to knock down these guardrails. Its attempt to obtain full, unredacted voter records from scores of states is a textbook example of a "system

1  of records." *See* 52 U.S.C. § 552a(a)(5). The Complaint identifies no SORN

2  allowing it to collect this data, nor is California aware of any applicable SORN.

3  This dooms DOJ's data-collection efforts under the Privacy Act—the Act's

4  structure hinges on public notice and comment regarding the nature, scope, and

5  routine uses of a system of records *before* the government bulk-collects Americans'

6  data. 5 U.S.C. § 552a(e)(4)(D); *see Am. Fed'n of State, Cnty. & Mun. Emps., AFL-*

7  *CIO v. Soc. Sec. Admin.*, 778 F. Supp. 3d 685, 763 (D. Md. 2025), *appeal docketed*,

8  No. 25-1411 (4th Cir. Apr. 18, 2025).[7]

9      And with a Privacy Act issue this blatant, the Court can and should fix the

10  problem now. The Court may consider this Privacy Act issue on a Motion to

11  Dismiss because the violations "are apparent on the face of the complaint." *Rivera*

12  *v. Peri & Sons Farms, Inc.*, 735 F.3d 892, 902 (9th Cir. 2013). DOJ seeks Privacy-

13  Act-protected information, *see* Compl. ¶ 38, p. 16, ¶ 5, but fails to include

14  allegations explaining how this trawl for data would comply with that law. Nor can

15  this deficiency be cured. DOJ is statutorily barred from collecting records, such as

16  these, that describe individuals' protected First Amendment activity. *See* 5 U.S.C.

17  § 552a(e)(7). And even if DOJ could collect such records, no SORN satisfies DOJ's

18  rigorous procedural duties under the Act. *Id.* § 552a(e)(4). The Complaint's face

19  thus illustrates the affirmative defense, allowing judicial resolution now.

20      **B.    DOJ's Data Demand Violates the E-Government Act**

21      For similar reasons, the Court should dismiss the Complaint for failure to

22  comply with the E-Government Act, Pub. L. No. 107–347, § 208, 116 Stat. 2899

23  (2002). The E-Government Act requires federal agencies to conduct a "privacy

24  impact assessment" (PIA) prior to "initiating a new collection of information" that

25  ───────────────
[7]The Complaint's sole mention of the Privacy Act is the irrelevant observation that

26  HAVA exempts "the 'last 4 digits of a social security number'" from section 7 of
the Act. Compl. ¶ 41 (quoting 52 U.S.C. § 21083(c)). Section 7, an uncodified

27  provision found at Pub. L. No. 93-579, 88 Stat. 1896 (1974), prohibits denying
individuals "any right, benefit or privilege" due to their refusal to disclose a Social

28  Security Number. *See Dittman v. California*, 191 F.3d 1020, 1026 (1999). This
provision has no bearing on whether DOJ can lawfully collect the records it seeks.

"includes any information in an identifiable form permitting the physical or online contacting of a specific individual" if the information encompasses "10 or more persons." *Id.* § 208(b). The PIA and its procedural requirements must be completed "*before* the agency initiates a new collection of information." *Elec. Priv. Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 266 F. Supp. 3d 297, 311 (D.D.C. 2017) (emphasis original).

The face of the Complaint reveals that DOJ is seeking information protected by the E-Government Act. Compl. ¶ 38, p. 16, ¶ 5. The names, addresses, and sensitive voter information contained in the data and applications sought by DOJ fall in the heartland of the personal information protected by the Act, triggering the PIA requirement. *See* Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II); OMB Guidance, M-03-22 (Sep. 26, 2003), https://perma.cc/E6PW-YQTP, Att. A § II(A)(b), *id.* § II(B)(a)(6). Yet the Complaint does not allege that DOJ completed a PIA applicable to this vast new trove of data on individual voters, requiring dismissal.

### C.    DOJ's Demand Violates the Driver's Privacy Protection Act

Finally, DOJ's demand also violates DPPA because California's statewide voter registration database pulls sensitive voter information directly from the California Department of Motor Vehicles ("DMV").

The DPPA prohibits disclosing "personal information" that is obtained by the DMV in connection with a "motor vehicle record." 18 U.S.C. §§ 2721(a), 2725(1), (3), & (4); *Reno v. Condon*, 528 U.S. 141, 143 (2000). This prohibition extends to authorized recipients, like the Secretary, who receives information from the DMV in carrying out her functions related to voter registration. 18 U.S.C. §§ 2721(b)(1), (c). In California, the DMV electronically provides to the Secretary certain information associated with each person who applies for a driver's license, including completed voter registration applications. Cal. Elec. Code § 2265(b); *see also* 52 U.S.C. § 20504. Notably, California's statewide voter registration system

24

1   also pulls DLNs directly from the DMV on a regular and ongoing basis. Cal. Code
2   Regs. tit. 2, § 19074(a).

3        In its Complaint, DOJ alleges that its records demand is exempt from the
4   DPPA because the requested disclosure here "is for use by a government agency in
5   carrying out the government agency's function to accomplish its enforcement
6   authority as [DOJ] is now doing." Compl. ¶ 41 (citing 18 U.S.C. § 2721(b)(1)).
7   This conclusory allegation is insufficient to plausibly allege the applicability of the
8   DPPA's government use exception. The DPPA's inclusion of the phrase "[f]or use"
9   dictates the critical inquiry—i.e., whether "the actual information disclosed . . . is
10  *used* for the identified purpose." *Senne v. Vill. of Palatine, Ill.*, 695 F.3d 597, 606
11  (7th Cir. 2012) (en banc). "When a particular piece of disclosed information is not
12  *used* to effectuate that purpose in any way, the exception provides no protection for
13  the disclosing party." *Id.* (emphasis original)

14       Here, as discussed above, assessing compliance with 52 U.S.C. § 20507(a)(4),
15  Compl. ¶ 53, turns on *whether* California conducts a general program that makes a
16  reasonable effort to remove persons due to death or change in residence. *See supra*
17  pp. 15–16. It is implausible that DLNs for millions of registered voters would be
18  *used* for that purpose—and DOJ certainly has not alleged how it would use those
19  DLNs. Thus, DOJ's unbounded request exceeds the scope of the DPPA's
20  government-function exception.

21                              **CONCLUSION**
22       The Court should grant California's motion to dismiss.

23

24

25

26

27

28

                                    25

1  Dated: November 7, 2025                    Respectfully submitted,

2                                             ROB BONTA
                                              Attorney General of California
3                                             R. MATTHEW WISE
                                              SETH E. GOLDSTEIN
4                                             Supervising Deputy Attorneys General

5

6                                             /s/ Malcolm A. Brudigam

7                                             MALCOLM A. BRUDIGAM
                                              ROBERT WILLIAM SETRAKIAN
8                                             ANNE P. BELLOWS
                                              LISA C. EHRLICH
9                                             MICHAEL S. COHEN
                                              KEVIN L. QUADE
10                                            WILLIAM BELLAMY
                                              Deputy Attorneys General
11                                            *Attorneys for Defendants Shirley
                                              Weber, in her official capacity as the
12                                            California Secretary of State, and
                                              State of California*

13  SA2025305412

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Secretary of State Shirley Weber and State of California, certifies that this brief is 25 pages, which:

__ complies with the word limit of L.R. 11-6.1.

_X_ complies with the page limit set by Section 6 under "Judge's Procedures" on Judge Carter's courtroom website, https://apps.cacd.uscourts.gov/Jps/honorable-david-o-carter.


Dated: November 7, 2025                    Respectfully submitted,

                                           ROB BONTA
                                           Attorney General of California


                                           /s/ Malcolm A. Brudigam
                                           MALCOLM A. BRUDIGAM
                                           Deputy Attorney General
                                           *Attorneys for Defendants Shirley*
                                           *Weber, in her official capacity as the*
                                           *California Secretary of State, and*
                                           *State of California*

27