HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MAUREEN RIORDAN
Senior Counsel, Voting Section
Civil Rights Division
BRITTANY E. BENNETT
Trial Attorney, Voting Section
Civil Rights Division
 U.S. Department of Justice
 4 Constitution Square, Room 8.141
 150 M Street NE
 Washington, D.C. 20002
 Telephone: (202) 704-5430
 Email: Brittany.Bennett@usdoj.gov

Attorneys for Plaintiff, UNITED STATES OF AMERICA

1
2
3
4
5
6

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | |
| v. | |
| SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California, and the State of California, | CASE NO: 2:25-cv-09149-DOC-ADS <br><br> HON. DAVID O. CARTER <br><br> OPPOSITION TO MOTION TO DISMISS |
| Defendants. | |

### **MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

1

# **TABLE OF CONTENTS**

2

3    BACKGROUND ........................................................................................7

4    LEGAL STANDARDS ...........................................................................8

5    ARGUMENT ............................................................................................8

6    I.    The United States Has a Valid Legal Claim Under the Civil Rights Act of

7    1960. ........................................................................................................9

8    A.    The language of the Civil Rights Act of 1960 unambiguously permits the

9    requests. ..................................................................................................9

10   B.    The United States has sufficiently pled a claim for relief under Title III of

11   the Civil Rights Act. ............................................................................11

12   C.    The United States is entitled to unredacted "copying" and "production" of

13   Defendants' Federal election records. .................................................14

14   D.    The Central District of California has jurisdiction to compel relief for the

15   CRA claim brought by the United States. ...........................................17

16   II. The United States Has a Valid Legal Claim Under HAVA. .............18

17   A.    Defendants have failed to engage in reasonable list maintenance practices

18   resulting in an inaccurate voter roll. ...................................................18

19   B.    HAVA does not have a public disclosure requirement because unlike the

20   NVRA, there is no private right of action under the Act. ...................20

21   III.    The United States Has a Valid Legal Claim Under THE NVRA ...............21

22   IV. THE UNITED STATES IS COMPLYING WITH THE APPLICABLE

23   PRIVACY LAWS. ...............................................................................22

24   A.    The United States is Complying with the Privacy Act. ......................23

25   B.    The First Amendment does not prohibit access to data the United States

26   needs for its HAVA and NVRA enforcement. .....................................24

27

28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

C.    The E-Government Act does not prevent the United States from obtaining data supporting its HAVA and NVRA enforcement............................................26

D.    The Driver's Privacy Protection Act does not allow Defendants to deny the United States list maintenance data...................................................28

CONCLUSION...................................................................29

1
2
3

# TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960).................10

*Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013) .................23, 25

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)......................................................8, 20

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)..........................................8

*Brunner v. Ohio Republican Party*, 555 U.S. 5 (2008) ..................................21

*Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937 (D.N.H. May 27, 2025) ......................................................................16

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963)...........................10, 14, 16

*Colón-Marrero v. Vélez*, 813 F.3d 1 (1st Cir. 2016) ....................................19

*Connell v. Lima Corp.*, 988 F.3d 1089 (9th Cir. 2021) ..................................11

*Ebert v. Poston*, 266 U.S. 548 (1925)...............................................10, 11

*Elec. Privacy Info. Ctr. v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 37 (D.C. Cir. 2017) ...............................................................28

*Electronic Privacy Information Center v. Presidential Advisory Commission on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017)..............................27

*Ernst & Haas Mgmt. Co. v. Hiscox, Inc.*, 23 F.4th 1195, (9th Cir. 2022) .................8

*Goal Zero, LLC v. Cargo Freight Servs., Ltd.*, No. 16-CV-04055-LB, 2016 WL 7406796, (N.D. Cal. Dec. 22, 2016) ....................................................18

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)....................................23

*In re Dumont*, 581 F.3d 1104 (9th Cir. 2009) ...........................................10

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)........................................13

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962) .................................passim

*Landers v. Quality Commc'ns., Inc.*, 771 F.3d 638, (9th Cir. 2014).........................8

*Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008)...............................8

*Mi Familia Vota v. Fontes,* 129 F.4th 691 (9th Cir. 2025) ......................................25

*Reno v. Condon*, 528 U.S. 141 (2000)........................................................................28

*Sanders v. Kennedy*, 794 F.2d 478 (9th Cir. 1986) ................................................8, 20

*United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846 (W.D. La. 1960) ...................................................................................................................................21

*United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269 (1929)...................................10, 11

*Voting Rts. Coal. v. Wilson,* 60 F.3d 1411 (9th Cir. 1995) .......................................25

**Statutes**

18 U.S.C. §§ 2721, 2725.............................................................................................28

28 U.S.C. § 84.............................................................................................................17

44 U.S.C. § 3101.........................................................................................................24

5 U.S.C. § 552a.....................................................................................................24, 25

52 U.S.C. § 20507.........................................................................................16, 22, 26

52 U.S.C. § 20701...................................................................................................9, 15

52 U.S.C. § 20703...............................................................................................passim

52 U.S.C. § 20705.................................................................................................17, 18

52 U.S.C. § 20706.......................................................................................................18

52 U.S.C. § 21083.........................................................................................16, 19, 25

52 U.S.C. § 21111.......................................................................................................20

52 U.S.C. §§ 20701-20706 .........................................................................................10

Pub. L. No. 107–347....................................................................................................27

Pub. L. No. 86-449, 74 Stat. 86 (1960) ........................................................................9

Pub. L. No. 93–579, 88 Stat. 1896 (1974)..................................................................25

**Legislative Materials**

106 Cong. Rec. 7767 ...................................................................................................11

148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002)......................................................21

H.R. Rep. 107-329(I) (2001) .......................................................................................20

## **BACKGROUND**

The Attorney General of the United States brought this straightforward case to enforce the requirements of three complimentary Federal statutes. Those laws, the Civil Rights Act of 1960 ("CRA"), the Help America Vote Act ("HAVA"), and the National Voter Registration Act ("NVRA"), govern voter registration and voting records pertaining to Federal elections.[1] California reported voter registration data to the U.S. Election Assistance Commission in the Commission's 2024 Election Administration and Voting Survey ("EAVS"), released in late June 2025. *See* Pl.'s Opp. Br., ECF 27 at 8-9. Much of California's data was missing, including from Los Angeles County, which encompasses a quarter of the state's population. *Id.* at 9. What data California did report to the Commission is among the worst in the nation on several metrics and is inconsistent with reasonable list maintenance efforts under Federal law. *See id.* The United States engaged in repeated correspondence with Defendants, requesting Defendants' cooperation to address its data requests in a manner consistent with Federal privacy law. Those efforts were met by delay, obfuscation, and a refusal by Defendants to produce records mandated by Federal law and necessary to assess California's compliance with Federal election laws. *See id.* at 9-10. This litigation followed.

Defendants now move to dismiss the United States' Complaint on several grounds, none of which has merit. *See* Defs.' Mot. to Dismiss & Mem. Law in Supp., ECF 37. Defendants begin with a thread-bare recitation of what they describe as the "legal standard," without acknowledging that the Court must accept all material allegations in the Complaint as true. Instead, Defendants ask the Court to decide this case on the merits at the pleading stage after rewriting the statute to encompass requirements omitted by Congress. This Court should decline Defendants' invitation

---

[1] The United States has set out a detailed background of this litigation previously. *See* Mem. of Law in Opp. to Mot. To Intervene by NAACP et al. and League of Women Voters of Cal. ("Pl.'s Opp. Br."), ECF 27 at 7-11.

1    and deny their motion to dismiss.

2                              **LEGAL STANDARDS**

3          When considering a motion to dismiss, a court must read the complaint in the

4    light most favorable to the non-moving party and accept all material allegations in

5    the complaint as true. *Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986). The

6    court's inquiry is confined to the allegations in the complaint. *Lazy Y Ranch Ltd. v.*

7    *Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). A motion to dismiss must be denied if

8    the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to

9    'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662,

10   678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim

11   is facially plausible "when the plaintiff pleads factual content that allows the court

12   to draw the reasonable inference that the defendant is liable for the misconduct

13   alleged." *Iqbal*, 556 U.S. at 678. In other words, dismissal under Rule 12(b)(6) is

14   proper only when the complaint either: (1) lacks a cognizable legal theory; or (2)

15   fails to allege sufficient facts to support a cognizable legal theory. *Id.* In evaluating

16   whether a complaint states a plausible claim for relief, a court relies on its "judicial

17   experience and common sense." *Landers v. Quality Commc'ns., Inc.*, 771 F.3d 638,

18   641 (9th Cir. 2014). A motion to dismiss is viewed with disfavor and is rarely

19   granted. *Ernst & Haas Mgmt. Co. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir.

20   2022).

21                                **ARGUMENT**

22         The three claims brought by the United States each offer overlapping, and

23   complimentary, statutory authority for obtaining records from the Defendants to

24   enforce Federal voter list maintenance requirements. Defendants seek dismissal of

25   those claims, ostensibly because they maintain that none of them has a plausible

26   basis. To arrive at that conclusion, Defendants ask the Court to: (1) disregard the

27   plain language of the statutes by injecting ambiguities that do not exist and thereby

28   allow the Court to legislate from the bench to rewrite the provisions in a manner that

                                        8

suits them; (2) selectively ignore relief specified in the statutes that foreclose their defenses; and (3) make merit findings that are not only inappropriate at a motion to dismiss stage, but are barred altogether by one of the statutes. The clear text of the CRA, HAVA, and NVRA, and interpretative case law require that accepting all the allegations in the Complaint as true, the United States asserts both a cognizable legal theory and has pled sufficient facts to support that theory. Finally, the privacy arguments are also not grounds on which to dismiss the Complaint. Accordingly, Defendants' Motion to Dismiss should be denied.

## I. THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER THE CIVIL RIGHTS ACT OF 1960.

### A. The language of the Civil Rights Act of 1960 unambiguously permits the requests.

Title III of the Civil Rights Act of 1960 is entitled "Federal Election Records." CRA § 301, Pub. L. No. 86-449, 74 Stat. 86 (1960). It imposes a "sweeping" obligation on election officials to preserve and on request to produce registration records pertaining to Federal elections. *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962). Section 301 provides, in pertinent part, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a Federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (emphasis added). Section 303 authorizes the Attorney General of the United States to compel any person "having custody, possession, or control of such record or paper" to make "available for inspection, reproduction, and copying… by the Attorney General or [her] representative." 52 U.S.C. § 20703.

Notwithstanding the CRA's plain language, Defendants argue that the Court must go outside the text of the statute to the legislative history and find that Title III is limited "to investigations of civil rights violations, namely, efforts to prevent

*eligible* voters from voting or registering to vote for illegal reasons like racial discrimination." Defs.' Mot. to Dismiss, ECF 37-1 at 8 (emphasis in original). No such language appears anywhere in the statutory text. *See* 52 U.S.C. §§ 20701-20706. Moreover, in a decision cited by Defendants, Defs.' Mot. to Dismiss, ECF 37-1 at 6, 9, the court concluded "that the prescribed standard of Section 301 is *clear and unambiguous*." *Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855 (M.D. Ala. 1960) (emphasis added). Specifically, Title III functions as "a special statutory proceeding in which the courts play a limited, albeit vital, role." *Lynd*, 306 F.2d at 225. The only language that is required in the Attorney General's demand is that it "was made for the purpose of investigating possible violations of a Federal statute," *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (quoting "Senator Keating, one of the principal spokesmen for the bill in the Senate," at 106 Cong. Rec. 7767).

Requiring more than that by engrafting a requirement of racial discrimination that does not exist in the statute would violate the clear congressional mandate. Where, like here, "the language of an enactment is clear… the words employed are to be taken as the final expression of the meaning intended." *In re Dumont*, 581 F.3d 1104, 1111 (9th Cir. 2009) (quoting *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929)). Well-established principles of statutory construction foreclose Federal courts from rewriting a statute in a manner that better suits a litigant. As the Supreme Court explained, "The judicial function to be exercised in construing a statute is limited to ascertaining the intention of the Legislature therein expressed. A *casus omissus* does not justify judicial legislation." *Ebert v. Poston*, 266 U.S. 548, 554-55 (1925). "[W[here the language of an enactment is clear, and construction according to its terms does not lead to absurd or impracticable consequences, the words employed are to be taken as the final expression of the meaning intended. And in such cases legislative history may not be used to support a construction that adds to or takes from the significance of the words employed." *Mo. Pac.*, 278 U.S. at 278-79 (citations omitted). In that manner, the "'judicial function [is] to apply statutes on

the basis of what Congress has written, not what Congress might have written.'" *Connell v. Lima Corp.*, 988 F.3d 1089, 1108 (9th Cir. 2021) (quoting *Ebert*, 266 U.S. at 554).

As a result, the United States respectfully submits that the Court must decline Defendants' invitation to rewrite the statute to add a requirement of racial discrimination. *See id.*[2]

**B.**     **The United States has sufficiently pled a claim for relief under Title III of the Civil Rights Act.**

The filing of a request for Federal election records under Title III by the Attorney General "is not the commencement of an ordinary, traditional civil action with all of its trappings." *Lynd*, 306 F.2d at 225. Instead, "it is… comparable to the form of a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.* The Fifth Circuit has described in detail what the Attorney General must allege to satisfy the statute:

> Since it is a special statutory proceeding, it does not require pleadings which satisfy usual notions under the Federal Rules of Civil Procedure. All that is required is a simple statement by the Attorney General that after a [Section 303] written demand for inspection of records and papers covered in [Section 301], the person against whom an order for production is sought under [Section 305] has failed or refused to make such papers 'available for inspection, reproduction, and copying…'

*Id.* at 225-26 (quoting 52 U.S.C. § 20703). Under the plain language of the statute, "[t]here is no place for any other procedural device or maneuver – either before or during any hearing of the application – to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* at 226. Likewise, there is no basis

---

[2] Defendants' recitation of what they describe as legislative history for which they seek judicial notice, therefore is immaterial and not helpful to the Court in its consideration of their Motion to Dismiss.

in the proceedings to challenge "the reasons why the Attorney General considers the records essential…" *Id.* Rather, if the Attorney General has stated in writing the basis and the purpose of the demand, Title III is satisfied, and the records must be produced. 52 U.S.C. § 20703.

The United States has met those requirements. On July 10, 2025, the Attorney General requested that California, through its Secretary of State, fill in the wide gaps of data that the state had not disclosed to the EAC, and to produce its complete voter registration list to include the HAVA identifying numbers. Compl. ¶ 34, ECF 1. In a letter dated August 8, 2025, the Secretary refused to cooperate and declined to produce the requested voter records. *Id.* ¶ 37. On August 13, 2025, the Attorney General made a written demand pursuant to Title III for a current copy of California's computerized Statewide Voter Registration List ("SVRL"), including each registrant's full name, date of birth, residential address, and the HAVA identifying numbers. The demand explained that the purpose was to evaluate the state's compliance with its list-maintenance requirements under Federal law and described how the privacy of data would be protected and could be transmitted securely. *Id.* ¶¶ 38-42. Defendants tacitly acknowledge that amounts to the "statement of its purpose" required by Section 303. Defs.' Mot. to Dismiss, ECF 37-1 at 7.

Conversely, Defendants argue that the United States failed to describe the basis for its request. *Id.* To arrive at that conclusion, Defendants erroneously employ a hyper-technical reading of Section 303. In doing so, they deliberately ignore the detailed basis the United States provided in writing to them in its July 10, 2025 letter. That basis will be restated briefly again here.

As the United States explained to Defendants in that letter, the 2024 EAVS Report revealed several anomalies in California's voter registration data inconsistent with reasonable list maintenance efforts. The letter described how California reported 2,178,551 duplicate registrations comprising 15.6 percent of the total

registered voters. The actual number is significantly higher because it did not include data from seven California counties, including the most populous one, Los Angeles County (which has one-quarter of the state's population). Compl. ¶ 34(B), ECF 1 (summarizing California's responses in the EAVS report). Furthermore, California failed to provide any data in response to Question A12h on the EAVS survey regarding duplicate registrations removed from the statewide voter registration database. *Id.* ¶ 34(C). California's percentage of voters removed from the voter registration list because of death was just 11.9 percent, which was a little more than half the national average. *Id.* ¶ 34(D). California did not provide confirmation notice data for several counties and had wide swings in the number of inactive registered voters. *Id.* ¶ 34(E). Taken together, the data that California reported to the EAC raised several red flags that necessitated further investigation. Therefore, the Attorney General requested that California, through its Secretary of State, fill in the wide gaps of data that the state had not disclosed to the EAC, and to produce its complete voter registration list to include the HAVA identifying numbers. *Id.* ¶ 34.

Defendants deride the serious gaps and red flags in their own voter registration data as being somehow insufficient to "fall within Title III's scope." Defs.' Mot. to Dismiss, ECF 37-1 at 10. As support for their contention, they take out of context a quote from a Fifth Circuit decision that statistical evidence "was 'a matter which does not bear any particular importance to the present inquiry.'" *Id.* (quoting *Kennedy v. Bruce*, 298 F.2d 860, 863 & n.2 (5th Cir. 1962)). What Defendants leave out is the reason why evidence bearing on the Attorney General's purpose and basis is immaterial. In *Lynd,* the Fifth Circuit explained, "On the filing of this simple statement by the Attorney General, the Court is required to treat it as a summary proceeding." 306 F.2d at 226. By doing so, the statistics included in the Department's July 10, 2025, letter became immaterial beyond satisfying Section 303's requirement for a basis for the request. Under the language of the statute, "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the

purpose' contained in the written demand, [Section 303], *is not open to judicial review or ascertainment*." *Id.* (emphasis added).

To summarize, the United States identified the basis for its request for Federal election records by identifying in its July 10, 2025, letter to Defendants voter registration metrics reported by California that are among the worst in the nation. When Defendants failed to produce those records, the United States followed up with a written statement of its purpose, to evaluate California's compliance with list-maintenance requirements under Federal law in its August 13, 2025 letter. That correspondence satisfies the plain language in Section 303 of the CRA for a "demand in writing by the Attorney General or [her] representative" including "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703. *See generally Coleman*, 313 F.2d at 868 (a written demand "made for the purpose of investigating possible violations of a Federal statute," such as HAVA and the NVRA, is sufficient to comply with Section 303).

## C.    The United States is entitled to unredacted "copying" and "production" of Defendants' Federal election records.

Section 303's language provides that "[a]ny record or paper required by [Section 301] to be retained and preserved shall" upon written demand by the Attorney General or her representative stating the basis and purpose, "be made available for inspection, *reproduction, and copying*…" 52 U.S.C. § 20703 (emphasis added). Records that must be produced to the United States pursuant to this demand cannot be contested as long as the records fall within Section 301's broad definition: "all records and papers which come into [the officer of election's] possession relating to any application, registration, payment of poll tax, or other act requisite to voting" in a Federal election "for a period of twenty-two months from the date of any general, special, or primary election" for Federal office. 52 U.S.C. § 20701. As the Fifth Circuit explained in *Lynd*, "the scope of the order to produce" is "not open to judicial review or ascertainment." 306 F.2d at 226. "This is so because the papers

and records subject to inspection and demand have been specifically identified by Congress," as set out in Section 301. *Id.* "The incorporated standard of [Section 301] is *sweeping.*" *Id.* (emphasis added). The question is only "open for determination" by the Court if "a genuine dispute… arises as to whether or not any specified particular paper or record comes within this broad statutory classification of 'all records and papers… relating to any… act requisite to voting'…" *Id.*

Defendants do not contest that the request by the United States for California's SVRL for the statutory 22-month period comes within Section 301's "sweeping" scope. *Id.* Apparently acknowledging the futility of their position, Defendants again ask the Court to legislate two limitations that are conspicuously absent from Title III: that the Attorney General be restricted to "inspection" that is reduced to "a redacted version of California's voter registration list…" Defs.' Mot. to Dismiss, ECF 37-1 at 11. They then proceed to argue that notwithstanding the Supremacy Clause of the Constitution, which they concede "gives Congress preemptive power over certain state election law," that California law prevails. *See id.* To reach that strained conclusion, they maintain that they may redact the Federal election records that have been properly demanded because "Title III's text does not prohibit the redaction of sensitive voter information." *Id.* at 12. The weakness of Defendants' position is so transparent that they are not even troubled to explain how the Court can limit the United States to "inspection" in the face of Section 303's references to "reproduction" and "copying." *See id.*

Furthermore, if the Defendants' position were to be adopted, it would eviscerate Title III. The Attorney General can only meaningfully investigate and enforce the list maintenance requirements of HAVA and the NVRA by having access to the voter identification numbers required by Federal law. For each voter, that includes their driver's license number, last four digits of their social security number, or other identifying number. *See* 52 U.S.C. § 21083(a)(5)(A). That information is necessary to identify duplicate registration records, registrants who have moved, and

registrants who have died or otherwise are no longer eligible to vote in Federal elections.[3] There is no question that enforcement of the list maintenance requirements of HAVA and the NVRA are for "the purpose of investigating possible violations of a Federal statute." *Coleman*, 313 F.2d at 868.

Indeed, the data the United States has requested under the CRA is the same that twenty-five states and the District of Columbia (which does not include California) routinely share through the Electronic Registration Information Center, ("ERIC"), to facilitate their compliance with Federal list-maintenance requirements.[4] Similarly, private parties have been granted access to even more detailed voter data than what the United States has requested where necessary to bring actions to enforce Federal rights. *See Coal. for Open Democracy v. Scanlan*, No. 24-CV-312-SE, 2025 WL 1503937, at *2 (D.N.H. May 27, 2025) (ACLU compelled production of "[a] copy of the New Hampshire statewide voter database and all documents concerning the use of the statewide voter database, including instruction manuals or other guides concerning the data fields contained in the database and their correct interpretation."), *appeal docketed*, No. 25-1585 (1st Cir. June 17, 2025).

---

[3] *See generally* 52 U.S.C. § 20507(a)(4) ("In the administration of voter registration for elections for Federal office, each State shall – (4) conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of – (A) the death of the registrant; or (B) a change in the residence of the registrant…"); 52 U.S.C. § 21083(a)(4) ("The State election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly, including… (A) A system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters…").

[4] *See* ERIC, ERIC Overview, *available at* https://ericstates.org/ (last visited Nov. 17, 2025).

Consequently, the United States is entitled to copying and production of California's unredacted SVRL under the plain language of Section 303 of the CRA. *See* 52 U.S.C. § 20703.

**D.    The Central District of California has jurisdiction to compel relief for the CRA claim brought by the United States.**

Section 305 of the CRA provides that the "United States district court for the district in which a demand is made pursuant to [section 303], or in which a record or paper so demanded is located, shall have jurisdiction by appropriate process to compel the production of such record or paper." 52 U.S.C. § 20705. The Central District of California encompasses seven of California's 58 counties: Los Angeles, Orange, Riverside, San Bernardino, San Luis Obispo, Santa Barbara, and Ventura. 28 U.S.C. § 84(c). Together, those counties account for nearly half of California's total population; according to the 2020 Census, roughly nineteen million people out of the state's 39.5 million people.[5] As the California Secretary of State's NVRA Manual makes clear, county election officials maintain voter registration records and have list-maintenance responsibilities.[6]

Defendants adopt a narrow reading of Section 305, asserting that the United States only can file its CRA suit in the Eastern District of California because the "demand was made to the Secretary at her Sacramento address, and her response stated that the records demanded are in her Sacramento office." Defs.' Mot. to Dismiss, ECF 37-1 at 6. The Secretary's office address is of no consequence to this action. Section 305 does not limit jurisdiction to the district in which the demand is

---

[5] *See* U.S. Census Bureau, 2020 Census total population by county for the State of California, *available at* https://www.census.gov/data/tables/time-series/demo/popest/2020s-counties-total.html (last visited Nov. 17, 2025).

[6] *See* California Sec'y of State, California National Voter Registration Act Manual ch. 4 (2025), *available at* https://elections.cdn.sos.ca.gov/nvra/nvra-manual/chap-4.pdf (last visited Nov. 17, 2025).

17

made. It also provides that jurisdiction is proper in a district "in which a record or paper so demanded" is located. 52 U.S.C. § 20705.

In this instance, millions of the records demanded by the United States – about half of all of California's SVRL – are created and maintained by "officers of election," namely county election officials, in the Central District. Like the other provisions of Title III, that term is defined broadly to include "any person who… performs or is authorized to perform any function, duty, or task in connection" with Federal election records, such as those records originating in the seven counties in the Central District. 52 U.S.C. § 20706. Moreover, if California continues to maintain and use the computerized SVRL as required by HAVA and its 2005 agreement with the Attorney General,[7] then those electronic records may be securely accessed and produced anywhere in the State of California, including in the Central District. Accordingly, Defendants' effort to seek dismissal for lack of jurisdiction fails.[8]

## II. THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER HAVA.

### A.    Defendants have failed to engage in reasonable list maintenance practices resulting in an inaccurate voter roll.

Congress enacted HAVA "to improve our country's election system." H.R. Rep. 107-329(I) at 31 (2001). The Act recognizes that "the federal government can

---

[7] *See* Mem. of Agt. between the United States and California (Nov. 2, 2005), *available at* https://www.justice.gov/crt/case-document/file/1081196/dl?inline (last visited Nov. 17, 2025).

[8] Defendants maintain that the Court "should dismiss DOJ's Title III claim without leave to amend" for lack of jurisdiction. Defs.' Mot. to Dismiss, ECF 37-1 at 6. The Court need not reach the question for the reasons discussed above. If it did, typically, "'if there is another district or division in which the action could have been brought, transfer is preferred to the harsh remedy of dismissal.'" *Goal Zero, LLC v. Cargo Freight Servs., Ltd.*, No. 16-CV-04055-LB, 2016 WL 7406796, at *4 (N.D. Cal. Dec. 22, 2016) (citation omitted).

play a valuable [role]" in assisting states in modernizing their elections systems. *Id.* at 31-32. HAVA requires states to implement a computerized SVRL that is coordinated with other state agency databases. *See* 52 U.S.C. § 21083(a)(1)(A). It also establishes "[m]inimum standard[s] for accuracy of State voter registration records." 52 U.S.C. § 21083(a)(4). Under HAVA Section 303, a state's "election system shall include provisions to ensure that voter registration records in the State are accurate and are updated regularly," including by use of a "system of file maintenance that makes a reasonable effort to remove registrants who are ineligible to vote from the official list of eligible voters" and "[s]afeguards to ensure that eligible voters are not removed in error from the official list of eligible voters." *Id.* HAVA's list maintenance requirements apply to all states, including California. *See Colón-Marrero v. Vélez*, 813 F.3d 1, 14 (1st Cir. 2016) (collecting citations).

Defendants acknowledge HAVA includes list maintenance requirements that apply to California. *See* Defs.' Mot. to Dismiss, ECF 37-1 at 16-17. Nevertheless, they assert that the United States "fails to allege any facts supporting a specific violation of HAVA's list maintenance requirements." *Id.* at 18. Instead, Defendants maintain that the principal HAVA violation that the United States alleges, that California has provided insufficient information and voter registration data in response to its requests, prevents evaluation of the state's HAVA efforts. *Id.* The balance of their arguments asks the Court to determine at the pleading stage – without the benefit of any discovery – that Defendants comply with HAVA on the face of the incomplete and self-serving responses they provided in their correspondence with the United States. *See id.* at 17-19.

The United States has identified numerous anomalies from voter registration data that California reported in the 2024 EAVS Report, which show Defendants' list maintenance program is inconsistent with the reasonable efforts required by HAVA. *See supra* Part I(B). The Court must read these allegations in the Complaint in the light most favorable to the United States and accept all those material allegations as

true. *Sanders*, 794 F.2d at 481. At this early juncture, the Court can reasonably conclude that the incomplete data provided by California to the EAC, which omitted over one-quarter of all voter files statewide and still resulted in some of the worst voter registration metrics in the country, makes the HAVA claim "plausible on its face." *Iqbal*, 556 U.S. at 678. The United States plainly has stated a cognizable legal theory under HAVA and pled sufficient facts to support that theory. As a result, dismissal is inappropriate. *Id.* Defendants' motion to dismiss the HAVA claim therefore must be denied.

### B. HAVA does not have a public disclosure requirement because unlike the NVRA, there is no private right of action under the Act.

Defendants further argue that the HAVA claim must be dismissed because "[u]nlike the NVRA, HAVA has no disclosure provisions." Defs.' Mot. to Dismiss, ECF 37-1 at 17. That is true, and it explains why the United States is entitled to the Federal election records it has demanded through its HAVA claim. The only enforcement provision in HAVA authorizing a cause of action in Federal court is found at Section 401, which provides that enforcement of the Act is vested solely in the Attorney General. *See* 52 U.S.C. § 21111. Senator Dodd of Connecticut, a HAVA conferee and sponsor, recognized that the Act did not have a private right of action. *See* 148 Cong. Rec. S10512 (daily ed. Oct. 16, 2002). As a result, the Supreme Court has held that private parties may not enforce Section 303, including requests for records under that provision. *See Brunner v. Ohio Republican Party*, 555 U.S. 5, 6 (2008) (per curiam) ("Respondents, however, are not sufficiently likely to prevail on the question whether Congress has authorized the District Court to enforce § 303 in an action brought by a private litigant to justify the issuance of a TRO."). Congress unsurprisingly did not include a public disclosure requirement, such as the one included in Section 8(i) of the NVRA, because unlike the NVRA, private parties cannot enforce HAVA.

At the same time, however, that does not leave the United States without

recourse to seek list maintenance records under HAVA. Rather, it may do so through the ordinary discovery process necessary to prosecute its Section 303 claim. Here, the CRA cases are instructive. Under the CRA, election officials are required to preserve and produce Federal election records "to facilitate the investigation… before suit is filed." *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960) (per curiam). By comparison, the demand for records that the United States has made under HAVA falls into the conventional realm of discovery: "The chief purpose of [Federal] Rule [of Civil Procedure] 34… is to give a party litigant the right to have records produced after suit has been filed." *Id.* That is all the United States is doing in this case. It seeks records necessary to establish its claim under HAVA that Defendants are violating the list maintenance requirements in Section 303(a)(4) of the Act.

Accordingly, Defendants' motion to dismiss the HAVA claim should be denied.[9]

## III.    THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER THE NVRA.

For similar reasons, Defendants' motion to dismiss the NVRA claim must be denied. The plain text of Section 8(i) of the NVRA requires states to make available "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters…" 52 U.S.C. § 20507(i)(1). That includes the voter registration list, which necessarily must be used to ensure the accuracy of the official list of eligible voters,

---

[9] Defendants' citation of a Third Circuit decision addressing the narrow issue of the removal of convicted felons from the voter rolls is not controlling and has no bearing on this action. *See* Defs.' Mot. to Dismiss, ECF 37-1 at 19-20.

and is the some of the best evidence of a state's voter list maintenance efforts. The United States has properly alleged in its Complaint that Defendants have failed to engage in reasonable list maintenance efforts and have refused to produce records associated with those efforts. For the same reasons described in the preceding discussion, all the well-pled allegations in the Complaint must be accepted as true. As stated repeatedly throughout this brief, California's voter registration metrics are among the worst in the nation and are strongly suggestive of its list maintenance violations. It is wholly improper to determine based upon the pleadings alone that Defendants have "complied with the NVRA." Defs.' Mot. to Dismiss, ECF 37-1 at 13.

Finally, it is unnecessary to address in any detail the string cite of authorities that Defendants can deny the United States what they describe as "highly sensitive personal information of voters." *Id.* at 14. All the decisions that Defendants summarize, as well as the selected excerpt from an amicus brief filed by the United States, involved efforts by *private organizations* to obtain that data and accordingly are distinguishable from this action. Here, the United States is seeking certain data in the SVRL in its efforts to enforce the NVRA in California. As discussed in the final part, Federal privacy laws that apply to the Attorney General and the Department of Justice ensure that no sensitive voter data or information will be used, disseminated, or disclosed. Consequently, Defendants' motion to dismiss the NVRA claim should be denied.[10]

## IV. THE UNITED STATES IS COMPLYING WITH THE APPLICABLE

---

[10] Contrary to what Defendants argue on pages 14-16 of their brief, to the extent California law purports to bar the United States from obtaining Federal election data necessary to enforce the NVRA, that conflicting law is preempted. *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1 (2013).

1    **PRIVACY LAWS.**

2    California fails to raise legitimate privacy issues to mandate a dismissal. The

3    United States does not dispute that the Privacy Act applies here, and the United

4    States is complying with those requirements. The First Amendment does not prohibit

5    the Department's collection of voter information to assess compliance with the

6    NVRA and HAVA.  The requirement for a Privacy Impact Assessment under E-

7    Government Act does not apply to the list maintenance activities being conducted

8    by the United States under the NVRA and HAVA. Similarly, the Driver's Privacy

9    Protection Act does not limit the United States' ability to conduct list maintenance

10   activities.

11   **A.    The United States is Complying with the Privacy Act.**

12   Defendants argue that the United States must comply with the Privacy Act,

13   and the United States is doing that. However, there is no requirement that the United

14   States needs to plead its compliance with the Privacy Act in every complaint that

15   may contain personally identifiable information.

16   The voter information that the Department is collecting is maintained

17   consistent with Privacy Act protections as explained in the Civil Rights Division's

18   Privacy Policy.[11] The full list of routine uses for this collection of information can

19   be found in the systems of records notices ("SORN") titled, JUSTICE/CRT – 001,

20   "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg.

21   47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed.

22   Reg. 24147-01 (May 25, 2017). The statutes cited in the SORNs for routine use

23   include the NVRA, HAVA, and the Civil Rights Act of 1960, and the United States

24   made its requests pursuant to those statutes. The records in the system of records are

25   kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling

27

28   [11] *See* https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.

Similarly, to the extent that Defendants are concerned about the transport of such data to the United States, the Department uses a secure file-sharing system, Justice Enterprise File Sharing ("JEFS"). That system implements strict access controls to ensure that each user can only access their own files and is also covered by SORNs. [12]

Moreover, the Privacy Act does not bar the disclosure of California's SVRL to the United States. The Privacy Act regulates Federal agencies' collection, maintenance, and disclosure of information within their own systems of records – it does not restrict the ability of state actors to share information with Federal agencies. The statute's plain language confirms that it applies only to Federal "agencies" as defined in 5 U.S.C. § 552a(a)(1), meaning "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the Government." State and local entities fall outside that definition. The Privacy Act "erects certain safeguards for an individual against an invasion of personal privacy," Pub. L. No. 93–579, § 2(b), 88 Stat. 1896 (1974), only within the scope of Federal agency record systems. There is no basis for California to fail to disclose information to a Federal agency for law enforcement purposes, particularly here, where the United States is complying with the provisions of the Privacy Act.

**B.    The First Amendment does not prohibit access to data the United**

---

[12] *See* JUSTICE/DOJ-014, Department of Justice Employee Directory Systems, last published in full at 74 Fed. Reg. 57194 (Nov. 4, 2009), and modified at 82 Fed. Reg. 24151, 24153 (May 25, 2017); JUSTICE/DOJ-002, Department of Justice Computer Systems Activity and Access Records, last published in full at 64 Fed. Reg. 73585-02 (Dec. 30, 1999), and modified at 66 Fed. Reg. 8425-02 (Jan. 31, 2001) and 82 Fed. Reg. 24147-01 (May 25, 2017).

**States needs for its HAVA and NVRA enforcement.**

The United States is not violating 5 U.S.C. § 552a(e)(7) of the Privacy Act by requesting California's SVRL. Defendants contend that the United States violates the First Amendment because the request for the SVRL is not "pertinent to and within the scope of an authorized law enforcement activity" under 5 U.S.C. § 552a(e)(7).  Defs.' Mot. to Dismiss, ECF 37-1 at 20-22.

Initially, the United States made it clear that it seeks the SVRL to enforce Section 8 of the NVRA and Section 303 of HAVA regarding list maintenance.  Both of those statutes are enacted pursuant to the Elections Clause and have broad mandates. *See Arizona v. Inter Tribal Council of Arizona, Inc.*, 570 U.S. 1, 7-9 & n1 (2013) (discussing the breadth of the Elections Clause). As the Ninth Circuit explained in rejecting a constitutional challenge to the NVRA in *Mi Familia Vota v. Fontes,* "the Supreme Court has read the grant of power to Congress in Article I, section 4 [of the U.S. Constitution] as quite broad." 129 F.4th 691, 712 (9th Cir. 2025) (citing *Voting Rts. Coal. v. Wilson,* 60 F.3d 1411, 1413-14 (9th Cir. 1995)).

Defendants' argument that the United States' request for the SVRL is not pertinent to California's list maintenance program is baffling. Defs.' Mot. to Dismiss, ECF 37-1 at 22. HAVA requires the driver's license number or the last four digits of the Social Security Number in Section 303(a)(5)(A), and the Attorney General is enforcing California's compliance with that provision. *See* 52 U.S.C. § 21083(a)(5)(A). Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters by reason of… the death of the registrant," or "a change in the residence of the registrant…" 52 U.S.C. § 20507(a)(4). A registered voter list that includes all fields will allow for more accurate matching when determining whether a person on the voter registration list is deceased or in finding duplicate registrations.

The work of the ERIC supports this proposition. ERIC is a private

organization whose mission includes, among other things, the means "to assist states in improving the accuracy of America's voter rolls," although California is not a member of ERIC.[13] According to ERIC's website, "Members submit dates of birth, driver's license/ID card numbers, and Social Security numbers to ERIC…" *Id.* "At least every 60 days, each member submits their voter registration data and licensing and identification data from their Moter Vehicle Department ("MVD") to ERIC. ERIC refers to these data as Member Data. Data fields related to name, address, driver's license or state ID number, last four digits of social security number, date of birth, and activity date are required, if present. Members also submit information on current record status (e.g., is the record 'active' or 'cancelled'), phone number, and email address when available. These fields improve the quality of the data matching process." *Id.* List maintenance is an authorized enforcement activity, and California's voter registration list is integral to that effort.

### C.    The E-Government Act does not prevent the United States from obtaining data supporting its HAVA and NVRA enforcement.

The E-Government Act neither authorizes dismissal of this case nor limits the United States' ability to bring suit. The E-Government Act is not applicable to the United States' enforcement of HAVA and the NVRA. The United States is not initiating a new process whereby it is contacting individuals for information as contemplated by Pub. L. No. 107–347, § 208(b)(1)(A)(ii)(II), which "includes any information in an identifiable form permitting the physical or online contacting of a specific individual, if identical questions have been posed to, or identical reporting requirements imposed on, 10 or more persons, other than agencies, instrumentalities, or employees of the Federal Government." The request is made to California to

---

[13] ERIC, FAQS*, available at* https://ericstates.org/faq/ (last visited Nov. 17, 2025); *see also* ERIC, "Which States Are Members of ERIC?," *available at* https://ericstates.org/about/ (last visited Nov. 17, 2025).

provide a voter registration list they already maintain pursuant to Federal law to analyze their federally required list maintenance.[14]

Applying the E-Government Act to enforcement of voting statutes would lead to an absurd result whereby the Department of Justice would need to do thousands of Privacy Impact Assessments whenever the Section gathered any voter data to enforce the Voting Rights Act, NVRA, HAVA, or the Uniform and Overseas Citizens Voting Act (UOCAVA).  Nor does the purpose of the privacy provision in the E-Government Act suggest it was meant to encompass the enforcement provisions of all voting laws where voter data is examined.  *See* Pub. L. No. 107–347, § 208 (a).

Even if the Court found the E-Government Act applied here—and it should not—Defendants' reliance on *Electronic Privacy Information Center v. Presidential Advisory Commission on Election Integrity*, 266 F. Supp. 3d 297 (D.D.C. 2017) does not support dismissal of a complaint based on an alleged failure to conduct a PIA. The plaintiff sought to enjoin a Federal commission's collection of state voter information, claiming the commission had failed to prepare a PIA under § 208 of the E-Government Act. The D.C. Circuit affirmed dismissal of the claim on standing grounds, finding that "As we read it, the provision is intended to protect *individuals*—in the present context, voters—by requiring an agency to fully consider their privacy before collecting their personal information. EPIC is not a voter and is therefore not the type of plaintiff the Congress had in mind." *Elec. Privacy Info. Ctr.*

---

[14] When the Civil Rights Division began using ServiceNow (SNOW), a FedRAMP High-compliant Software as a Service (SaaS) cloud-hosting provider offering a suite of natively integrated applications designed to support Information Technology Service Management (ITSM), resource management, and shared support services, it prepared a Privacy Act Assessment ("PIA") as required by the E-Government Act. *See* Office of Privacy & Civ. Liberties, DOJ Privacy Impact Assessments, *available at* https://www.justice.gov/opcl/doj-privacy-impact-assessments (last visited Nov. 17, 2025).

1    *v. Presidential Advisory Comm'n on Election Integrity*, 878 F.3d 371, 378 (D.C. Cir.
2    2017).

D.    **The Driver's Privacy Protection Act does not allow Defendants to deny the United States list maintenance data.**

5    The Driver's Privacy Protection Act (DPPA) generally prohibits the
6    disclosure of "personal information" obtained by a state Department of Motor
7    Vehicles in connection with a motor vehicle record. 18 U.S.C. §§ 2721(a), 2725(1),
8    (3), (4). The statute explicitly contains exceptions that permit certain governmental
9    uses. Under 18 U.S.C. § 2721(b)(1), disclosure is allowed "for use by any
10   government agency … in carrying out its functions," including law enforcement or
11   other regulatory enforcement purposes. This statutory language demonstrates that
12   the DPPA was not intended to block all government access to DMV records.

13   The Supreme Court in *Reno v. Condon*, 528 U.S. 141 (2000), confirmed this
14   principle. In that case, the court upheld the DPPA against a Tenth Amendment
15   challenge, emphasizing that the statute regulates the use of DMV information rather
16   than the state itself. The court explicitly recognized that the DPPA does not restrict
17   a state agency's use of personal information for its own functions, including
18   enforcement and other official governmental activities. As the court stated, "The
19   DPPA *permits* DMVs to disclose personal information from motor vehicle records
20   for a number of purposes." *Id*. at 145 (emphasis in original).

21   The DPPA's prohibition is clearly not implicated in the present case. The DOJ
22   is a government agency performing a statutorily mandated function —verifying
23   voter registration records maintained by state and local entities. Under the
24   governmental-function exemption in § 2721(b)(1), the DOJ's use of DMV-provided
25   information is permissible, even though the information originates from a motor
26   vehicle record.   Transfers of DMV data to government agencies for official
27   functions, including voter registration administration, are therefore consistent with

28

1  the DPPA and fall squarely within the statute's exceptions.

2  **<u>CONCLUSION</u>**

3       For the foregoing reasons, the United States respectfully requests that the

4  Court deny the Motion to Dismiss by Defendants.

5

6  DATED: November 17, 2025                    Respectfully submitted,

7

8                                             HARMEET K. DHILLON
                                              Assistant Attorney General
9                                             Civil Rights Division

10

11                                            /s/ *Brittany E. Bennett*

12                                            MAUREEN RIORDAN
                                              Senior Counsel, Voting Section
13                                            BRITTANY E. BENNETT
14                                            Trial Attorney, Voting Section
                                              Civil Rights Division
15                                            U.S. Department of Justice
16                                            4 Constitution Square
                                              150 M Street NE, Room 8.141
17                                            Washington, D.C. 20002
18                                            Telephone: (202) 704-5430
19                                            Email: brittany.bennett@usdoj.gov

20

21

22

23

24

25

26

27

28

## <u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on November 17, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Brittany E. Bennett*
Brittany E. Bennett
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: brittany.bennett@usdoj.gov

# <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,690 words, and complies with the word limit of L.R. 11-6.1.

<u>/s/ *Brittany E. Bennett*</u>
Brittany E. Bennett
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: brittany.bennett@usdoj.gov