GRAYCE ZELPHIN (SBN 279112)
gzelphin@aclunc.org
ANGELICA SALCEDA (SBN 296152)
asalceda@aclunc.org
ACLU FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493

JULIA A. GOMEZ (SBN 316270)
jgomez@aclusocal.org
PETER ELIASBERG (SBN 89110)
peliasberg@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5232

Counsel for Intervenor-Defendant
League of Women Voters of California

*Additional counsel listed below*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff,<br><br>　　vs.<br><br>SHIRLEY N. WEBER, in her official capacity as Secretary of State of California, and the STATE OF CALIFORNIA<br><br>　　　　　Defendants. | Case No.: 2:25-cv-09149-DOC-ADS<br><br>**INTERVENOR-DEFENDANT LEAGUE OF WOMEN VOTERS OF CALIFORNIA'S NOTICE OF MOTION AND MOTION TO DISMISS**<br><br>DATE: December 4, 2025<br>TIME: 7:30 A.M.<br>COURTROOM: To be set by the Court<br>JUDGE: David O. Carter |

THERESA J. LEE (NY 5022769)*
tlee@aclu.org
SOPHIA LIN LAKIN (NY 5182076)*
slakin@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

PATRICIA J. YAN (NY 5499173)*
pyan@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800

*Application for admission pro hac vice forthcoming

## **NOTICE OF MOTION AND MOTION TO DISMISS**

Intervenor-Defendant League of Women Voters of California (the "League") respectfully moves for this Court to dismiss the United States's Complaint because it fails to state a claim for which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6). In support of their Motion, the League submits and incorporates the below Memorandum of Points and Authorities.

On November 19, 2025, the Parties appeared and stipulated to a briefing and hearing schedule for Defendants' motions to dismiss that contemplates the League filing this present Motion to Dismiss by November 20, 2025. Dkt. No. 65.

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION TO DISMISS.........................................iii

TABLE OF CONTENTS.......................................................................... iv

TABLE OF AUTHORITIES ....................................................................v

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

LEGAL STANDARD..............................................................................2

ARGUMENT .........................................................................................3

I.    Plaintiff Is Not Entitled to California's Full Unredacted Voter List Under the NVRA. .................................................................................. 3

    A.   The Constitution requires redaction under the NVRA................................4

    B.   The NVRA does not preempt California privacy law....................................6

II.   Plaintiff Fails to State a Cognizable Claim Under Title III of the CRA........7

    A.   Plaintiff's demand for records fails to meet the statutory requirements of Title III of the CRA.................................................................. 8

    B.   Any records disclosed under the CRA should be redacted to protect the constitutional rights of voters. ...................................................12

III.  HAVA Does Not Provide for Data Disclosure. ................................................12

CONCLUSION.....................................................................................13

CERTIFICATE OF COMPLIANCE......................................................15

# <u>TABLE OF AUTHORITIES</u>

**Cases**

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
    570 U.S. 1 (2013) ......................................................................6

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................2, 3

*Caltex Plastics, Inc. v. Lockheed Martin Corp.*,
    824 F.3d 1156 (9th Cir. 2016).....................................................3

*Dinkens v. Att'y Gen. of U.S.*,
    285 F.2d 430 (5th Cir. 1961).......................................................9

*FDIC v. Wentz*,
    55 F.3d 905 (3d Cir. 1995) .........................................................9

*Gonzalez v. Herrera*,
    151 F.4th 1076 (9th Cir. 2025)..................................................13

*Greidinger v. Davis*,
    988 F.2d 1344 (4th Cir. 1993)....................................................4

*In re Coleman*,
    208 F. Supp. 199 (S.D. Miss. 1962).......................................8, 11

*In re Gordon*,
    218 F.Supp. 826 (S.D. Miss. 1963)...........................................11

*Kennedy v. Lynd*,
    306 F.2d 222 (5th Cir. 1962)...............................................8, 10

*Kim Ho Ma v. Ashcroft*,
    257 F.3d 1095 (9th Cir. 2001)....................................................4

*Lynn v. Biderman*,
    536 F.2d 820 (9th Cir. 1976)......................................................9

*No Labels Party of Arizona v. Fontes*,
    142 F.4th 1226 (9th Cir. 2025)....................................................1

*Oklahoma v. Castro-Huerta*,
    597 U.S. 629 (2022) ...................................................................6

*Peters v. United States,*
   853 F.2d 692 (9th Cir. 1988) .................................................................9

*Project Vote, Inc. v. Kemp,*
   208 F. Supp. 3d 1320 (N.D. Ga. 2016) .............................................5, 6

*Project Vote/Voting for Am., Inc. v. Long,*
   682 F.3d 331 (4th Cir. 2012)................................................... *passim*

*Pub. Int. Legal Found. v. Benson,*
   136 F.4th 613 (6th Cir. 2025)...........................................................10

*Pub. Int. Legal Found. v. Boockvar,*
   431 F. Supp. 3d 553 (M.D. Pa. 2019) .................................................5

*Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.,*
   136 F.4th 456 (3d Cir. 2025)...............................................................5

*Pub. Int. Legal Found., Inc. v. Bellows,*
   92 F.4th 36 (1st Cir. 2024) ...................................... 4, 5, 6, 12

*Pub. Int. Legal Found., Inc. v. Dahlstrom,*
   673 F. Supp. 3d 1004 (D. Alaska 2023)..............................................5

*Pub. Int. Legal Found., Inc. v. Matthews,*
   589 F. Supp. 3d 932 (C.D. Ill. 2022)...............................................5, 6

*Pub. Int. Legal Found., Inc. v. N.C. State Bd. of Elections,*
   996 F.3d 257 (4th Cir. 2021) ..........................................................4, 5

*Sheetz v. Cnty. of El Dorado,*
   601 U.S. 267 (2024) ........................................................................12

*State of Alabama ex rel. Gallion v. Rogers,*
   187 F. Supp. 848 (M.D. Ala. 1960)................................................1, 8

*Trim v. Reward Zone USA LLC,*
   76 F.4th 1157 (9th Cir. 2023)............................................................8

*United States v. Powell,*
   379 U.S. 48 (1964) ............................................................................9

*Yick Wo v. Hopkins,*
   118 U.S. 356 (1886) .........................................................................1

**Statutes**

U.S. Const. art. I, § 4, cl. 1 ...........................................................................3

52 U.S.C. § 20501 ........................................................................................1

52 U.S.C. § 20507(a) ..................................................................................10

52 U.S.C. § 20507(c) ..................................................................................10

52 U.S.C. § 20507(i) ......................................................................... 3, 4, 12

52 U.S.C. § 20701 ........................................................................................1

52 U.S.C. § 20703 ............................................................................ 7, 9, 10, 12

52 U.S.C. § 20901 ....................................................................................1, 12

52 U.S.C. § 21111 ......................................................................................13

Cal. Elec. Code § 2194(b) ............................................................................6

Cal. Gov't Code § 7924.000(b)-(c) ..............................................................6

**Rules**

Fed. R. Civ. P. 12(b) ...................................................................... iii, 2, 14

**Other Authorities**

C.R. Div., U.S. DOJ, F*ederal Law Constraints on Post-Election "Audits"* 2 (Jul. 28, 2021), https://perma.cc/B6Q4-TR6J. ............................................1

H.R. Rep. No. 86-956 ...................................................................................7

Jonathan Shorman, *DOJ Plans to Ask All States for Detailed Voting Info*, Stateline, Aug. 1, 2025, https://perma.cc/526V-97C3. .....................................11

Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry, *Tracker of Justice Department Requests for Voter Information*, Brennan Ctr.r for Just. (Nov. 17, 2025), https://perma.cc/3Q77-SNAN (last updated Nov. 17, 2025)..................11

# **INTRODUCTION**

The right to vote is "of the most fundamental significance under our constitutional structure." *No Labels Party of Arizona v. Fontes*, 142 F.4th 1226, 1231 (9th Cir. 2025) (citation omitted). It is "preservative of all [other] rights" because it guards against tyranny and ensures the competition of ideas amongst our elected officials. *Yick Wo v. Hopkins*, 118 U.S. 356, 370 (1886).

It is in this context that Congress has repeatedly legislated to protect the franchise, including through the National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq.*, the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq.*, and the Civil Rights Act of 1960 ("CRA"), 52 U.S.C. § 20701 *et seq*. These statutes were all passed for the express purpose of ensuring that eligible Americans—especially racial minorities and voters with disabilities—can participate in free, fair, and secure elections. Congress designed the NVRA to limit "discriminatory and unfair registration laws and procedures" that restrict voter participation, particularly among racial minorities. 52 U.S.C. § 20501(a)(3). Similarly, Congress designed HAVA to help Americans vote by investing in election administration that would improve "accessibility and quantity of polling places" for those with disabilities and limited English proficiency. 52 U.S.C. § 20901(b)(1)(G). And the Department of Justice ("DOJ") itself explains that Title III of the CRA, its election records provision, was designed to "secure a more effective protection of the right to vote." C.R. Div., U.S. DOJ, *Federal Law Constraints on Post-Election "Audits"* 2 (Jul. 28, 2021), https://perma.cc/B6Q4-TR6J (quoting *State of Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960)).

The United States's demand for California's *unredacted* voter file—which contains sensitive personal information including a driver's license number, a state identification number, or a Social Security number from every voter in the state—runs afoul of the core purposes of these statutes and is contrary to law. To be sure,

the public disclosure of state voting records is a critical transparency measure that helps maintain the accuracy of the voter rolls and, of utmost importance, ensures that citizens are not erroneously removed from the voter records. Yet releasing the State's voter records *without redaction* of sensitive personal information would deter voter participation and undermine the right to vote. It would also violate state law meant to prevent the erosion of that right. Indeed, and as many courts have held, redacting sensitive personal information when releasing state voting records is essential to strike a balance between guaranteeing transparency in elections and ensuring voters' sensitive information is kept confidential so they can exercise their fundamental right to vote.

The United States cannot point to any authority that supports its demand for unredacted voter data: the NVRA only requires disclosure of *redacted* data, the United States has not and cannot state a basis and purpose for its request for data under the CRA (and even documents properly requested should be redacted), and HAVA contains no data disclosure provisions at all. Because the United States has failed to state a legally cognizable claim, the Court should dismiss the Complaint in its entirety under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## BACKGROUND

We incorporate by reference the factual background provided in Defendants' Motions to Dismiss (Dkt. 37-1 and Dkt. 62-1) to avoid restating facts already before the Court.

## LEGAL STANDARD

A court must dismiss a complaint if, accepting all well-pleaded factual allegations as true, it does not "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When considering a motion to dismiss, a court need not accept the complaint's legal conclusions. *Iqbal*, 556 U.S. at 678. A complaint must state a "plausible claim for relief" and contain more than "[t]hreadbare recitals of the elements of a cause of

action, supported by mere conclusory statements." *Id.* at 678–79. A complaint must be dismissed if it "fails to state a cognizable legal theory or fails to allege sufficient factual support for its legal theories." *Caltex Plastics, Inc. v. Lockheed Martin Corp.*, 824 F.3d 1156, 1159 (9th Cir. 2016).

## ARGUMENT

## I.    Plaintiff Is Not Entitled to California's Full Unredacted Voter List Under the NVRA.

The United States invokes the NVRA to demand California's unredacted voter list, Compl. ¶¶ 12–21, 34, 50–56, but the statute does not authorize such disclosure. Section 8(i)(1) of the NVRA requires states to provide "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" upon request. 52 U.S.C. § 20507(i)(1). Anyone—including individual voters, groups that protect the right to vote, and government officials—has the same right to records under the NVRA. Voting rights advocates have consistently relied on the NVRA to investigate infringements on the right to vote, including whether election officials have improperly denied or cancelled voter registrations. *See, e.g.*, *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 333 (4th Cir. 2012) (nonprofit investigating improper rejection of voter registrations submitted by students at a historically Black university).

However, the information required to be disclosed under the NVRA is not without limits. As federal courts have consistently found, providing for the redaction of sensitive personal information strikes the necessary balance that the Constitution demands: protecting both the fundamental right to vote and transparency in our elections. This is necessary to safeguard voters' constitutional right to participate in elections, consistent with each state's authority to prescribe the time, place, and manner of elections. *See* U.S. Const. art. I, § 4, cl. 1.

1

**A.      The Constitution requires redaction under the NVRA.**

2       Since the NVRA is silent as to how sensitive personal information should be

3    treated during disclosure, *see* 52 U.S.C. § 20507(i)(1), the Court must interpret the

4    statute in a manner that does not unconstitutionally burden the right to vote. *See*

5    *Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1111 (9th Cir. 2001) (recognizing "a statute

6    should be construed to avoid constitutional problems so long as the saving

7    construction is not 'plainly contrary to the intent of Congress'" (citation omitted)).

8    Federal courts throughout the country have consistently struck this balance,

9    interpreting the "all records concerning" language in Section 8(i)(1) to permit—

10   and even in some cases require—redaction and the protection of sensitive materials.

11   Indeed, as the First Circuit has noted, "nothing in the text of the NVRA prohibits

12   the appropriate redaction of uniquely or highly sensitive personal information in

13   the Voter File," and as such, "the proper redaction of certain personal information

14   in the Voter File can further assuage the potential privacy risks implicated by the

15   public release of the Voter File." *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th

16   36, 56 (1st Cir. 2024); *see also Pub. Int. Legal Found., Inc. v. N.C. State Bd. of*

17   *Elections*, 996 F.3d 257, 266–68 (4th Cir. 2021) (holding that the potential

18   connection to ongoing criminal investigations and the possibility of erroneously

19   labeling a voter as a noncitizen and subjecting them to public harassment warrants

20   maintaining confidentiality of records).

21       Indeed, the Fourth Circuit has held that redaction may be affirmatively

22   required to the extent the disclosure of such sensitive material would "create[] an

23   intolerable burden on [the constitutional] . . . right [to vote] as protected by the First

24   and Fourteenth Amendments." *Project Vote*, 682 F.3d at 339 (quoting *Greidinger*

25   *v. Davis*, 988 F.2d 1344, 1355 (4th Cir. 1993)). The Court in *Project Vote*, even

26   while granting access to a state's voter registration applications for inspection and

27   photocopying, ensured the redaction of Social Security numbers, which it found

28   are "uniquely sensitive and vulnerable to abuse." *Id.* (citation omitted). In coming

to this conclusion, the Court emphasized that the NVRA reflected Congress's view that the right to vote was "fundamental," and that the unredacted release of records risked deterring citizens from registering to vote and thus created an "intolerable burden" on this fundamental right. *Id.* at 334, 339 (citations omitted). If disclosure is compelled here contrary to existing legal protections, California voters "may become less engaged and reluctant to register to vote or otherwise participate in the political process," Dkt. 24-1, ¶ 23, the exact risk warned of in *Project Vote*. 682 F.3d at 339. The public disclosure provisions of the NVRA must be interpreted to avoid this unconstitutional burden. *See id.*; *Bellows*, 92 F.4th at 56. And courts have consistently recognized that the NVRA disclosure provisions do not compel the release of sensitive information that is otherwise protected by federal or state laws, such as California's privacy law that is applicable here. *See, e.g.*, *N.C. State Bd. of Elections*, 996 F.3d at 264; *Pub. Int. Legal Found. v. Boockvar*, 431 F. Supp. 3d 553, 561–63 (M.D. Pa. 2019); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344–45 (N.D. Ga. 2016); *see also Pub. Int. Legal Found., Inc. v. Dahlstrom*, 673 F. Supp. 3d 1004, 1015–16 (D. Alaska 2023); *Pub. Int. Legal Found., Inc. v. Matthews*, 589 F. Supp. 3d 932, 942 (C.D. Ill. 2022), *clarified on denial of recons.*, No. 20-CV-3190, 2022 WL 1174099 (C.D. Ill. Apr. 20, 2022).

The United States has itself admitted—on multiple occasions, and as recently as last year—that the NVRA does not prohibit the States from redacting "uniquely sensitive information" when disclosing voting records. *See, e.g.*, Brief for the United States as Amicus Curiae, *Bellows*, 92 F.4th 56 (No. 23-1361), 2023 WL 4882397 ("United States *PILF* Amicus Brief"), at *27–28; Brief for the United States as Amicus Curiae at 28–29, *Pub. Int. Legal Found. v. Sec'y Commonwealth of Pa.*, 136 F.4th 456 (3d Cir. 2025), (Nos. 23-1590 and 23-1591), https://perma.cc/3BQ9-36UJ ("States may redact certain information before disclosing Section 8(i) records.").

As with any requester of records under the NVRA, the United States should be afforded access to the voting records contemplated under Section 8(i) of the NVRA. But federal court precedent is clear that this access is not unfettered and instead must always be balanced against privacy protections that are vital to ensuring that citizens' fundamental right to vote is not burdened.

**B.     The NVRA does not preempt California privacy law.**

Contrary to the United States' about-face on this issue, there is no conflict between the NVRA and California's privacy law.[1] Federal laws like the NVRA preempt state election laws only when there is an actual conflict, such that the two sets of law cannot be read consistently with one another. *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) (holding that the NVRA preempts state election law only insofar as the two are inconsistent); *see also Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("The Supremacy Clause cannot 'be deployed' 'to elevate abstract and unenacted legislative desires above state law'") (citation omitted).

California's voter privacy law, Cal. Elec. Code § 2194(b)(1); Cal. Gov't Code §§ 7924.000(b)-(c), is on all fours with the governing federal case law. Courts have consistently held both that redactions are appropriate to accommodate and harmonize state privacy laws while ordering the disclosure of documents as mandated by the NVRA, *see, e.g.*, *Matthews*, 589 F. Supp. 3d at 942 ; *Kemp*, 208 F. Supp. 3d at 1344–45, and that redactions and preserving confidential information may even be required to protect the constitutional right to vote, *see, e.g.*, *Project Vote*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56.  If Plaintiff is permitted to engineer a false conflict between the NVRA and California's privacy laws, it will force the Secretary of State to violate California law and potentially the federal Constitution, stripping millions of Californians of their privacy and stifling Californian voter

---

[1] Def. State of California Mem. of P. & A. in Supp. of Defs.' Mot. to Dismiss ("State MTD"), Dkt. 37-1 at 14–16 provides additional authority on this point.

registration, all while exceeding both the purpose of and statutory authority provided by the NVRA. *See* United States *PILF* Amicus Brief, 2023 WL 4882397 at *27–28 (arguing Section 8(i) does not compel production of unredacted social security numbers and driver's license numbers as state limits on voter information are not preempted when they impact uses that "would not further the NVRA's purposes").

## II.    Plaintiff Fails to State a Cognizable Claim Under Title III of the CRA.

Congress enacted the public records provisions in Title III of the CRA to facilitate investigations of civil rights violations preventing eligible citizens from voting due to discrimination. *See* H.R. Rep. No. 86-956 at 7 (1959) (indicating the purpose of Title III "is to provide a more effective protection of the right of all qualified citizens to vote without discrimination on account of race"). Title III requires that records requested by the Attorney General be made "available for inspection, reproduction, and copying at the principal office of [the] custodian." 52 U.S.C. § 20703.

The Attorney General's request here is contrary to the CRA for at least two reasons. *First*, Plaintiff failed to provide "a statement of the basis and the purpose" supporting its records requests as required by the statute. *Id*. The Complaint provides no basis to conclude that unredacted records will aid an assessment of California's compliance with the list maintenance provisions of the NVRA or HAVA. *Second*, to the extent Plaintiff is or becomes entitled to any records under the CRA, those records must be redacted—as they must be for the requests under the NVRA—to uphold the privacy and constitutional rights of California voters.

**A.     Plaintiff's demand for records fails to meet the statutory requirements of Title III of the CRA.**

Plaintiff's request to California fails to provide "a statement of the basis and the purpose," *id.*, sufficient to support disclosure of the unredacted voter file.[2] Indeed, neither the Complaint nor the DOJ letter that invoked Title III identify a sufficient purpose or basis supporting the records request.

"Basis" and "purpose" under Title III have consistently been treated as distinct concepts. *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962) (showing that basis was the underlying information providing the grounds for the complaint); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (same), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). The United States' failure to articulate both a sufficient basis and purpose underlying its request for the unredacted voter file is enough to invalidate the CRA claim.

While that statute does not define basis or purpose, courts look to the "ordinary meaning" of undefined statutory terms. *Trim v. Reward Zone USA LLC*, 76 F.4th 1157, 1161 (9th Cir. 2023). Contemporaneous case law immediately following the enactment of Title III shows that "basis" is the statement for why the Attorney General believes there is a violation of federal civil rights law, and the "purpose" explains how the requested records would help determine if there is a violation of the law. *See Lynd*, 306 F.2d at 229 n.6. The basis and purpose requirements under the CRA are critical safeguards, so that the statute cannot be used as a fishing expedition to obtain records for either speculative or unrelated reasons. For example, the Attorney General could not use the CRA to obtain voting records because it wanted to verify taxpayer addresses. *See State of Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 853 (M.D. Ala. 1960) ("Title III provides—

---

[2] *See also* State MTD at 7–8; NAACP; NAACP California-Hawaii State Conference; and SIREN Proposed Notice of Mot. and Mot. to Dismiss ("NAACP/SIREN MTD"), Dkt. 62-1 at 17–19.

if properly applied and enforced—an effective means whereby preliminary investigations of registration practices can be made in order to determine whether or not such practices conform to constitutional principles."), *aff'd sub nom. Dinkens v. Att'y Gen. of U.S.*, 285 F.2d 430 (5th Cir. 1961). The statutory basis and purpose requirements are not perfunctory but require a specific statement detailing the reason(s) for requesting the information and how that information will aid in the investigatory analysis.

In the context of administrative subpoenas, an analogous power by which federal agencies obtain records in service of investigations, courts have found that the test of judicial enforcement of such subpoenas includes an evaluation of whether the investigation is "conducted pursuant to a legitimate purpose," *Lynn v. Biderman*, 536 F.2d 820, 824 (9th Cir. 1976) (citing *United States v. Powell*, 379 U.S. 48, 57–58 (1964)), and that such subpoenas "may not be so broad so as to be in the nature of a 'fishing expedition,'" *Peters v. United States*, 853 F.2d 692, 700 (9th Cir. 1988). Indeed, courts have explained that such a purpose requirement ensures that the information sought is relevant to the inquiry and not unduly burdensome. *See, e.g.*, *FDIC v. Wentz*, 55 F.3d 905, 908 (3d Cir. 1995) (reciting requirements for investigation pursuant to an administrative subpoena).

Here, the Complaint does not plausibly allege that the Attorney General has provided an adequate statement of the basis and purpose supporting the demand for California's unredacted voter file. It contains a handful of paragraphs describing the explanation it provided to California in support of its CRA records request. Compl. ¶¶ 38–40. This includes a partial quote of the statutory language of 52 U.S.C. § 20703, but notably fails to include the law's relevant text: "This demand shall contain a statement of the basis and the purpose therefor." *See* Compl. ¶ 39. Nowhere in the Complaint does the United States make any allegation as to the specific basis for, or purpose of, its CRA request, including within the entirety of the CRA count. *See* Compl. ¶¶ 46–49.

Plaintiff has provided no basis for why it believes California's list maintenance procedures violate the NVRA or HAVA. But even assuming that enforcement of the NVRA and HAVA could be a proper "basis" for the demand, nowhere in the Complaint does the United States explain the "purpose" of seeking the unredacted information here. It does not attempt to explain why unredacted voter files are necessary to determine whether California has undertaken a "reasonable effort to remove the names of ineligible voters," 52 U.S.C. § 20507(a)(4), likely because those files are not in fact necessary. A single snapshot of a state's voter list does not provide information from which one could determine if the state has made a "reasonable effort" to remove ineligible voters. Further, the NVRA and HAVA both leave the mechanisms for conducting list maintenance within the discretion of the State. *See id.* § 20507(a)(4); (c)(1); § 21083(a)(2)(A). The procedures carried out by a state or locality establish its compliance; the unredacted voter file does not. *See, e.g.*, *Pub. Int. Legal Found. v. Benson*, 136 F.4th 613, 624–27 (6th Cir. 2025).

Moreover, any post hoc efforts of Plaintiff to contort its requests to meet the requirements of the CRA fail when compared to the standards set in past cases, where, for example, the demand explained that the Attorney General had information indicating that there was a racial disparity in voter registration and that he could determine whether that was in fact the case by examining the requested records. *See Lynd*, 306 F.2d at 229 n.6 ("This demand is based upon information in the possession of the Attorney General tending to show that distinctions on the basis of race or color have been made with respect to registration and voting within your jurisdiction."). As such, Plaintiff's statement invoking Title III does not provide a "statement of the basis and the purpose therefor," and thus does not comply with the CRA. 52 U.S.C. § 20703.

The United States' failure to identify its basis and purpose is unsurprising, because it has made clear elsewhere that its purpose is *not* to evaluate compliance

with the list maintenance provisions of the NVRA or HAVA, but to sweep up sensitive data of tens of millions of voters that can be used for any number of reasons.[3] Federal courts have confirmed that the Attorney General's authority to examine election records is not unlimited and can be inhibited by courts if the purposes are "speculative, . . . from idle curiosity," or for improper purposes. *Coleman*, 208 F. Supp. at 201. In stark contrast to previous *targeted* demands under the CRA, here DOJ has requested sensitive voter data from at least 40 states,[4] and sued eight states and one county that failed to immediately comply with its full demands.[5] This undermines any purported basis and purpose that Plaintiff may now seek to advance. *Cf. Coleman*, 208 F. Supp. at 201 ("[The Attorney General] is presumed to be acting in good faith and in the proper pursuit of his official duties unless otherwise shown."). Plaintiff has provided no basis for arguing that 40 states are violating the list maintenance provisions of the NVRA or HAVA, and arguing as much would be implausible. DOJ cannot use the CRA as a limitless tool to compile and consolidate voter data, rather it is a limited device to protect the right to vote. *See In re Gordon*, 218 F.Supp. 826, 827 (S.D. Miss. 1963) ("It is like wise a mistaken view to assume that such investigation of such records is an unlimited discovery device which may be employed and used without restraint and in the

---

[3] Jonathan Shorman, *DOJ Plans to Ask All States for Detailed Voting Info*, Stateline, Aug. 1, 2025, https://perma.cc/526V-97C3.

[4] Decl. of Malcolm A. Brudigam in Supp. of Defs.' Mot. to Dismiss, Dkt. 37-2 at 148–237; Kaylie Martinez-Ochoa, Eileen O'Connor & Patrick Berry*, Tracker of Justice Department Requests for Voter Information,* Brennan Ctr.r for Just. (Nov. 17, 2025), https://perma.cc/3Q77-SNAN (last updated Nov. 17, 2025).

[5] *United States v. Bellows*, No. 1:25-cv-00468 (D. Me. filed Sept. 16, 2025); *United States v. Oregon*, No. 6:25-cv-01666 (D. Or. filed Sept. 16, 2025); *United States v. Benson*, No. 1:25-cv-01148 (W.D. Mich. filed Sept. 25, 2025); *United States v. Simon*, No. 0:25-cv-03761 (D. Minn. filed Sept. 25, 2025); *United States v. Bd. of Elections of the State of N.Y.*, No. 1:25-cv-01338 (N.D.N.Y. filed Sept. 25, 2025); *U.S. v. Scanlan*, No. 1:25-cv-00371 (D.N.H. filed Sept. 25, 2025); *United States v. Pennsylvania*, No. 2:25-cv-01481 (W.D. Pa. filed Sept. 25, 2025); *United States v. Page*, No. 8:25-cv-01370 (C.D. Cal. filed June 25, 2025).

place and stead of a Rule 34 motion with its less restrained facilities for a complete discovery of any relevant irregularities and improprieties in the administration of the registration and voting laws of the state.").

### B. Any records disclosed under the CRA should be redacted to protect the constitutional rights of voters.

Even had Plaintiff provided a valid basis and purpose to support its demands—which it did not—any sensitive personal voter information would be subject to redaction. Just like the NVRA, the text of Title III does not prohibit redactions to ensure compliance with both state law and the Constitution. *See supra* Part I.A; *Project Vote*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56. The same privacy and constitutional concerns that federal courts have found warrant redactions in response to NVRA records requests apply equally to requests for the same records under the CRA. *Cf. Sheetz v. Cnty. of El Dorado*, 601 U.S. 267, 281 (2024) (Gorsuch, J., concurring) ("[O]ur Constitution deals in substance, not form. However the government chooses to act, . . . it must follow the same constitutional rules."). Thus, even were Plaintiff entitled to records under Title III, the sensitive personal information protected by California law still must be redacted. No matter the statutory mechanism, conditioning the right to vote on the release of voters' sensitive private information "creates an intolerable burden on that right . . . ." *Project Vote*, 682 F.3d at 339 (citation omitted).

## III. HAVA Does Not Provide for Data Disclosure.

Unlike the NVRA and CRA, HAVA does not have a disclosure provision. *Compare* 52 U.S.C. § 20507(i)(1) (NVRA requiring states to make certain voting records available for public inspection) *and* 52 U.S.C. § 20703 (CRA authorizing the Attorney General to inspect, reproduce, or copy election records), *with* 52 U.S.C. § 20901 *et seq.* (HAVA containing no comparable provision). This alone ends the inquiry: California cannot be legally required to disclose records pursuant

to a statute that does not authorize the disclosure of any records, let alone the specific and expansive ones that Plaintiff demands.[6]

Plaintiff apparently contends that the mere existence of HAVA's civil enforcement mechanism allows for unredacted access to all of California's voting records. Compl. ¶¶ 30, 60; *see* 52 U.S.C. § 21111 (permitting the Attorney General to enforce "the uniform and nondiscriminatory election technology and administration requirements under sections 21081, 21082, 21083 [Section 303], and 21083a."). Not so. HAVA does not provide authority to access state records. Rather, 52 U.S.C. § 21111 merely provides the Attorney General with the authority to bring a civil action to enforce compliance with the four sections of HAVA establishing the "uniform and nondiscriminatory election technology and administration requirements . . . ." And none of the personal identifiers that Plaintiff seeks are necessary to ensure that California's system complies with these HAVA sections. Indeed, the fact that other voting-related statutes that also include civil enforcement mechanisms, such as the NVRA and the CRA, contain records provisions when HAVA does not compel the conclusion that HAVA contains no such authority. *See, e.g.*, *Gonzalez v. Herrera*, 151 F.4th 1076, 1084 (9th Cir. 2025) (courts "must assume 'that Congress acts intentionally when it omits language included elsewhere'" (citation omitted)). Because HAVA contains no provision entitling the United States to state records, this cause of action must also fail as a matter of law.

## **CONCLUSION**

In exercising its legislative authority in enacting elections laws, Congress has struck a careful balance between transparency and protecting individuals' fundamental, constitutional right to vote. Never has Congress concluded that the privacy of sensitive personal information must give way in order for individuals to

---

[6] *See also*, State MTD at 16-20; NAACP/SIREN MTD at 10-11.

access voter registration. And indeed, it would not have done so as conditioning the right to vote on the release of private information "creates an intolerable burden on that right." *Project Vote*, 682 F.3d at 339 (citation omitted). For these reasons, Plaintiff's request for California's full and unredacted electronic voter file should be denied, and Plaintiff's complaint should be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

Dated: November 20, 2025                    Respectfully submitted,

                                            /s/ *Grayce Zelphin*
                                            Grayce Zelphin

                                            *Counsel for Intervenor-Defendant League of Women Voters of California*

1

## **CERTIFICATE OF COMPLIANCE**

2

The undersigned counsel of record for Defendant-Intervenor the League of

3

Women Voters of California, certifies that this brief contains 4386 words, which

4

complies with the page limit set by Section 6 under "Judge's Procedures" on Judge

5

Carter's courtroom website, https://apps.cacd.uscourts.gov/Jps/honorable-david-o-

6

carter, and with L.R. 11-6.1.

7

8

Dated: November 20, 2025          Respectfully submitted,

9

10

/s/ *Grayce Zelphin*

11

Grayce Zelphin
ACLU Foundation of Northern California

12

13

*Counsel for Defendant-Intervenor League*
*of Women Voters of California*

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28