HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MAUREEN RIORDAN
Senior Counsel, Voting Section
Civil Rights Division
BRITTANY E. BENNETT
ERIC NEFF
Trial Attorneys, Voting Section
Civil Rights Division
        U.S. Department of Justice
        4 Constitution Square, Room 8.141
        150 M Street NE
        Washington, D.C. 20002
        Telephone: (202) 704-5430
        Email: Brittany.Bennett@usdoj.gov

Attorneys for Plaintiff, UNITED STATES OF AMERICA

1

1
2
3
4
5
6
7

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
SOUTHERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California, and the State of California,<br><br>Defendants. | CASE NO: 2:25-cv-09149-DOC-ADS<br><br>HON. DAVID O. CARTER<br><br>OPPOSITION TO MOTIONS TO DISMISS FILED BY NAACP, NAACP CALIFORNIA-HAWAII STATE CONFERENCE, SERVICES, IMMIGRANT RIGHTS AND EDUCATION NETWORK, AND LEAGUE OF WOMEN VOTERS<br><br>Hearing Date: December 4, 2025<br>Time: 7:30AM<br>Courtroom: 5A, 5th Floor |

## <u>MEMORANDUM OF LAW IN OPPOSITION TO INTERVENORS' MOTION TO DISMISS</u>

# **TABLE OF CONTENTS**

BACKGROUND ...................................................................................................7

LEGAL STANDARDS .......................................................................................7

ARGUMENT .......................................................................................................8

I.    THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER THE CIVIL RIGHTS ACT OF 1960 ...........................................................................9

    A. The Plain Meaning of the CRA Warrants Production to the Attorney General……………………………………………………………..9

    B. The CRA includes California's internally created statewide voter registration list……………………………………………………...9

II.    THE NVRA IS CLEAR AND UNAMBIGUOUS AND DOES NOT PERMIT REDACTION OF SENSITIVE PERSONAL INFORMATION. ..........................10

III. THE NVRA PREEMPTS CALIFORNIA LAW...............................................16

CONCLUSION....................................................................................................18

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013) ...........................17

*Arizona v. United States*, 567 U.S. 387 (2012) .........................................................17

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)........................................................................8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................8

*Ernst & Haas Mgmt. Co. v. Hiscox, Inc.*, 23 F.4th 1195 (9th Cir. 2022) ..................8

*Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993) .................................................16

*Harkless v. Brunner*, 545 F.3d 445 (6th Cir. 2008) ..................................................17

*In re Dumont*, 581 F.3d 1104 (9th Cir. 2009) .............................................................9

*Landers v. Quality Commc'ns., Inc.*, 771 F.3d 638 (9th Cir. 2014)............................8

*Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008).....................................8

*Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320 (N.D. Ga. 2016) ........................13

*Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697 (E.D. Va. 2010),
    aff'd, 682 F.3d 331 (4th Cir. 2012).........................................................14, 15, 16

*Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257 (4th
    Cir. 2021) ............................................................................................................13

*Sanders v. Kennedy*, 794 F.2d 478 (9th Cir. 1986) .....................................................7

*True the Vote v. Hosemann*, 43 F. Supp. 3d 693 (S.D. Miss. 2014) ..................12, 13

*United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269 (1929)...........................................9

**Statutes**

18 U.S.C. § 611...........................................................................................................11

44 U.S.C. § 3101..........................................................................................................14

5 U.S.C. § 552a............................................................................................................13

52 U.S.C. § 20507.................................................................................................11, 17

52 U.S.C. § 20510........................................................................................................13

52 U.S.C. § 20701.....................................................................................................9, 10

52 U.S.C. § 20703..........................................................................................................9

**Regulations**

28 C.F.R. § 0.51 ...................................................................................................14

28 C.F.R. § 0.50 ...................................................................................................14

**Constitutional Provisions**

U.S. Const. art. I, § 4, cl. 1 ................................................................................17

## <u>BACKGROUND</u>

Intervenors were admitted on November 17, 2025, and now move to dismiss the United States' Complaint on several grounds, none of which has merit. *See* Intervenors' Mot. to Dismiss, ECF 62-1 and 67.[1] Many of the arguments echo the Motion to Dismiss filed by Defendants Secretary of State Weber and the State of California, and the United States refers to the response filed its Opposition to Defendants' Motion to Dismiss. *See* Pl's Opposition at Doc. 64. Intervenors add speculative accusations that the United States has a nefarious purpose for demanding voting records that it is entitled to under the law and using baseless news articles as their only support for this assertion. Intervenors then move to a thread-bare recitation of what they describe as the "legal standard," without acknowledging that the Court must accept all material allegations in the Complaint as true. Instead, Intervenors ask the Court to decide this case on the merits at the pleading stage after rewriting the relevant statutes to encompass requirements omitted by Congress. Intervenors heavily rely on their rendition of the purpose of the Civil Rights Act of 1960 ("CRA"), which the text of the statute does not support, and case law that has only addressed private actions to enforce the National Voter Registration Act ("NVRA"), which is palpably distinct from the case at bar where the United States Attorney General has lawfully requested voting records. Accordingly, and for the reasons that follow, this Court should decline Intervenors' invitation and deny their motion to dismiss in its entirety.

## <u>LEGAL STANDARDS</u>

When considering a motion to dismiss, a court must read the complaint in the light most favorable to the non-moving party and accept all material allegations in the complaint as true. *See Sanders v. Kennedy*, 794 F.2d 478, 481 (9th Cir. 1986).

---

[1] The United States has set out a detailed background of this litigation previously. *See* Mem. of Law in Opp. to Mot. To Intervene by NAACP et al. and League of Women Voters of Cal. ("Pl.'s Opp. Br."), ECF 27 at 7-11

The court's inquiry is confined to the allegations in the complaint and construed in the light most favorable to the plaintiff. *See Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008). A motion to dismiss must be denied if the plaintiff's complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In evaluating whether a complaint states a plausible claim for relief, a court relies on its "'judicial experience and common sense' to determine whether the factual allegations, which are assumed to be true, 'plausibly give rise to entitlement to relief.'" *Landers v. Quality Commc'ns., Inc.*, 771 F.3d 638, 641 (9th Cir. 2014) (quoting *Iqbal,* 556 U.S. at 679). A motion to dismiss is viewed with disfavor and is rarely granted. *See Ernst & Haas Mgmt. Co. v. Hiscox, Inc.*, 23 F.4th 1195, 1199 (9th Cir. 2022).

## ARGUMENT

The three claims brought by the United States under the CRA, the Help America Vote Act ("HAVA"), and the NVRA provide statutory authority for obtaining records from the Defendants to enforce Federal voter list maintenance requirements. The clear text of the CRA, HAVA, and NVRA, and interpretative case law require that accepting all the allegations in the Complaint as true, the United States asserts both a cognizable legal theory and has pled sufficient facts to support that theory. Accordingly, Intervenors' Motions to Dismiss should be denied. The United States incorporates all arguments made in its Opposition to Defendants' Motion to Dismiss. *See* Pl's Opposition at Doc. 64 in response to Intervenors arguments. The United States primarily addresses new arguments asserted by Intervenors in this Opposition to Intervenors' Motions to Dismiss (Doc. 62-1 and

Doc. 67).

I.    **THE UNITED STATES HAS A VALID LEGAL CLAIM UNDER THE CIVIL RIGHTS ACT OF 1960.**

### A. The Plain Meaning of the CRA Warrants Production to the Attorney General.

Intervenors rely heavily on the legislative history of the CRA and ignore the fact that the Court should only consider the legislative intent if the plain meaning of the statute is ambiguous.

When interpreting statutes, the court's fundamental objective is to ascertain and carry out the Legislature's intent, and if the statute's meaning is plain on its face, then the court must give effect to that plain meaning as an expression of legislative intent. The CRA does not require racial discrimination for the production of election records. Section 301 of the CRA provides that "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a Federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…." 52 U.S.C. § 20701 (emphasis added). Section 303 authorizes the Attorney General of the United States to compel any person "having custody, possession, or control of such record or paper" to make "available for inspection, reproduction, and copying… by the Attorney General or [her] representative." 52 U.S.C. § 20703. Where, like here, "the language of an enactment is clear… the words employed are to be taken as the final expression of the meaning intended." *In re Dumont*, 581 F.3d 1104, 1111 (9th Cir. 2009) (quoting *United States v. Mo. Pac. R.R. Co.*, 278 U.S. 269, 278 (1929)). Intervenors' attempt to require a finding of discrimination for the Attorney General to inspect voting records is simply incorrect. (See further explanation in Pl.'s Opposition, Doc. 64 at 9-11).

**B. The CRA includes California's internally created statewide voter registration list.**

Intervenors spend much time arguing the meaning of the phrase "come into [his] possession" found in Section 301 of the CRA which more fully states:

> Every officer of election shall retain and preserve, for a period of twenty-two months from the date of any general, special, or primary election of which candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico are voted for, all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election….

52 U.S.C. § 20701. However, Intervenors miss the fact that the records and papers that come into the possession of the Secretary of State are from the voters who, in fact, register to vote. Plainly, the information retained and collected by Defendants is not "created" as the Intervenors argue but come into his possession through voters. For this reason, the CRA includes California's Statewide Voter Registration List, despite Intervenors' attempt to argue otherwise.

## II. THE UNITED STATES IS ENTITLED TO UNREDACTED INFORMATION UNDER THE NVRA.

While Defendants' Motion to Dismiss also claims that the NVRA does not permit unredacted information, and the United States relies on its Opposition filed at Doc. 64, the United States further responds to the assertions made by Intervenors to the extent this argument is presented in a different manner.

The United States is entitled to unredacted "copying" and "production" of Defendants' Federal election records.  Section 8(i)(1) of the NVRA states that:

> Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all

records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1). The statute invoked by the United States does not limit or permit the requested records or papers to redacted versions of the records as no such modifying language appears before the term "all records" or in the statute. *Id*.

By arguing that the United States is only entitled to redacted voter information, Intervenors essentially seek to enlarge or modify the governing statute to mean "redacted records." Intervenors also propose no limit to the redaction a state may choose to apply. In other words, Intervenors' position would render the relevant statutes meaningless and leave the Attorney General no meaningful way to investigate or enforce the Federal law pertaining to voter registration list maintenance.

Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters…" 52 U.S.C. § 20507(a)(4).  Using unredacted voter data will make sure that the matches used to determine deceased voters, for example, will be more accurate and complete. The Federal government also has an interest in making sure that only citizens vote.  Federal law prohibits non-citizen voting outright. 18 U.S.C. § 611.  The Attorney General needs to assess NVRA compliance by reviewing the full, unredacted statewide VRL and other records requested that would evidence Defendants' list maintenance program.  Indeed, the data the United States has requested is the same that twenty-five states and the District of Columbia (which does not include California) routinely share through the

1  Electronic Registration Information Center, ("ERIC"), to facilitate their compliance

2  with Federal list-maintenance requirements.[2]

3      While Intervenors (NAACP) rely heavily on a string of private action cases

4  including, *True the Vote v. Hosemann,[3]* to permit or require redaction of records

5  produced pursuant to the NVRA, the reliance is misplaced. *True the Vote* is readily

6  distinguishable from the present case as the plaintiff in that case was an organization

7  seeking unredacted voting records pursuant to the Public Disclosure provision of the

8  NVRA while the United States is seeking unredacted voter registration records

9  through the Attorney General, who is the *only* entity authorized to inspect these

10 documents. In fact, the court in *True the Vote* when addressing the NVRA request

11 made by the plaintiff, explained that:

12      …[p]laintiffs' interpretation would also conflict with, or render a nullity, other

13      related statutes. Under the Civil Rights Act of 1960 . . . State elections officers

14      are required to preserve '*all records* and papers which come into [their]

15      possession relating to any application, registration . . . or other act requisite to

16      voting in such election.'. Congress authorized *only the Attorney General* to

17      inspect these documents, but even [s]he may not disclose any record except

18      to Congress, other government agencies, or in a court proceeding or when

19      otherwise ordered to do so by a court.

20 *True the Vote*, 43 F. Supp. 3d at 734-35 (emphasis added) (citing 52 U.S.C. §§ 20701,

21 20703, 20704). In other words, the Attorney General is not just any requester, but

22 distinguishable from a private individual and specifically authorized under the law

23 to inspect voting records.

24

25

26 [2] *See* ERIC, ERIC Overview, *available at* https://ericstates.org/ (last visited Nov. 24,

27 2025).

28 [3] 43 F. Supp. 3d 693, 734-35 (S.D. Miss. 2014).

Intervenors' reliance on *Project Vote, Inc. v. Kemp*[4] is also misguided. The court in that case held that "If redaction of certain sensitive information is not permitted, Section 8(i) would effectively provide any individual unfettered access to sensitive information the Civil Rights Act of 1960 prevents even the Attorney General from disclosing." *Kemp*, 208 F. Supp. 3d at 1344. Tellingly, the court in that case plainly referenced the Attorney General as being unable to disclose the information, meaning she would have to obtain or otherwise *have* the information in order to be prevented from disclosing. The United States, through the Attorney General, is not *any individual*, or a private individual, but rather the only agency tasked with enforcing the requirements of the NVRA.

*Kemp* cites Section 11 of the NVRA, providing that "…the United States Attorney General 'may bring a civil action in an appropriate district court for such declaratory or injunctive relief as is necessary to carry out this chapter.'" *Id*. at 1326 (quoting 52 U.S.C. § 20510(a)). The court confirmed that "Congress authorized only the Attorney General to inspect these documents…" *Id.* (quoting *True the Vote,* 43 F. Supp. 3d at 734-35*).* [5] While Intervenors state that "the public inspection "does not grant the federal government special inspection rights beyond those available to the public."[6] They fail or ignore the fact that courts have consistently recognized and made the distinction between a private individual and the Attorney General.

Providing data to the United States is different than providing data to a private party. When the United States receives that data, it must comply with the Privacy Act, which is why the United States can be provided unredacted data whereas private

---

[4] 208 F. Supp. 3d 1320 (N.D. Ga. 2016).

[5] Intervenors' reliance on *Pub. Interest Legal Found., Inc. v. N.C. State Bd. of Elections*, 996 F.3d 257, 261 (4th Cir. 2021) fails for these same reasons. The distinction is a private plaintiff versus enforcement by the Attorney General of the United States.

[6] Intervenors' Motion to Dismiss, Doc. 62-1 at 8.

parties cannot. The Privacy Act's plain language confirms that it applies only to Federal "agencies" as defined in 5 U.S.C. § 552a(a)(1). The voter information that the Department is collecting for enforcement of the NVRA and HAVA is maintained consistent with Privacy Act protections as explained in the Civil Rights Division's Privacy Policy.[7]  The records in the system of records are kept under the authority of 44 U.S.C. § 3101 and in the ordinary course of fulfilling the responsibility assigned to the Civil Rights Division under the provisions of 28 C.F.R. §§ 0.50, 0.51.[8]

Intervenors also rely on *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697 (E.D. Va. 2010), aff'd, 682 F.3d 331 (4th Cir. 2012), however, that case is an action brought pursuant to the private right of action provision of the NVRA and not data provided to the federal government. Further, the court in *Project Vote* held that:

> There is no indication in the statute that entire voter registration applications should be kept confidential. Therefore, insofar as it appears, to some degree at least, Congress has already considered the effect on the statute's purposes

---

[7] *See* https://civilrights.justice.gov/privacy-policy#:~:text=Our%20Statutes-,Privacy%20Act%20Statement,the%20scope%20of%20our%20jurisdiction.

[8] The United States has stated the purpose for its demand for records in the letters sent to Defendants and in its Complaint, and the purpose is to enforce the list maintenance provisions of the NVRA and HAVA. *See* Compl. at ¶ 46-63. The news articles cited by Intervenors on alternative uses for the data are baseless, and this concern has also already been addressed by the fact that the full list of routine uses by the United States for this collection of information can be found in the systems of records notices ("SORN") titled, JUSTICE/CRT – 001, "Central Civil Rights Division Index File and Associated Records," 68 Fed. Reg. 47610-01, 611 (Aug. 11, 2003); 70 Fed. Reg. 43904-01 (July 29, 2005); and 82 Fed. Reg. 24147-01 (May 25, 2017).  (*See* Pl.'s Brief Doc. 64, p. 23-24).

of disclosing certain information to the public, as it relates to voter registration records, and keeping other information confidential, the court is not inclined to engage in an act of conjecture by concluding that the public disclosure of other information relating to voter registration would necessarily upset the purposes of the statute.

*Project Vote*, 752 F. Supp. 2d at 710. While the court did find that social security numbers could be redacted, it also held that "an applicant's SSN should be redacted before *public exposure* of the application." *Id*. at 712(emphasis added). The present case does not involve public exposure of data but is about allowing an agency authorized under Federal law to inspect all records. (See Pl.'s further explanation regarding privacy at Doc. 64 at 21-22).

To the extent Intervenors aver constitutional burdens resulting from disclosure of sensitive information included in voting records,[9] the United States points the Court to the full explanation of the excerpt provided by Intervenors (League of Women, Doc. 67 at 11) held by the 4th Circuit Court of Appeals in *Project Vote*:

Finally, appellants' proffered privacy concerns do not necessitate reversal of the district court's decision. In support of their argument to the contrary, appellants point to *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993), in which we held that a statute that conditions voting on public release of a voter's Social Security number "creates an intolerable burden on that right as protected by the First and Fourteenth Amendments"… *Greidinger* is inapposite here, however, because the district court did not require public disclosure of Social Security numbers, which the court recognized "are uniquely sensitive and vulnerable to abuse"… The district court expressly concluded that Section 8(i)(1) "grants the plaintiff access to completed voter

---

[9] HAVA specifies that the "last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974" (5 U.S.C. § 552a note); 52 U.S.C. § 21083(c).

registration applications with the voters' SSNs redacted for inspection and photocopying"… Plaintiff has never requested completed applications with unredacted Social Security numbers and does not object to the district court's redaction requirement. Accordingly, there is no danger that this uniquely sensitive information will be compromised by Section 8(i)(1)'s public disclosure requirement.

*Project Vote*, 682 F.3d 331, 339 (4th Cir. 2012) (quoting *Project Vote,* 752 F. Supp. 2d 697; *Greidinger v. Davis*, 988 F.2d 1344 (4th Cir. 1993)). In other words, the public disclosure of sensitive information such as social security numbers of voters was not at issue in that case, nor is it in this case. Therefore, no such constitutional burden exists.

Ultimately, denying the Department, and thus the Attorney General, access to comprehensive voter registration data is contrary to the plain meaning of the relevant statutes and impedes its oversight responsibilities under Federal law. The NVRA was designed not only to protect access to voter registration but also to ensure transparency and accountability in how states manage voter rolls. Providing the Department with full access to relevant voter data is essential to upholding the integrity of the electoral system.

### III. THE NVRA PREEMPTS CALIFORNIA LAW.

State law must give way to federal law in at least two circumstances. The States are precluded from regulating conduct in a field that Congress, acting within its proper authority, has determined must be regulated by its exclusive governance. The intent to displace state law altogether can be inferred from a framework of regulation so pervasive that Congress left no room for the States to supplement it, or where there is a federal interest so dominant that the federal system will be assumed to preclude enforcement of state laws on the same subject. State laws are preempted when they conflict with federal law. This includes cases where compliance with both

federal and state regulations is a physical impossibility, and those instances where the challenged state law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress. *See Arizona v. United States*, 567 U.S. 387, 399 (2012).

The Elections Clause of the United States Constitution, U.S. Const. art. I, § 4, cl. 1, provides that the times, places, and manner of holding elections for Senators and Representatives shall be prescribed in each State by the legislature thereof, but the Congress may at any time by law make or alter such regulations, except as to the places of choosing Senators. The Clause empowers Congress to preempt state regulations governing the "Times, Places and Manner" of holding congressional elections. *See Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 8 (2013).

Because Congress has the power to make or alter state election regulations, the "the reasonable assumption is that the statutory text accurately communicates the scope of Congress's pre-emptive intent." *Id.*, 570 U.S. at 14. Similarly, the "assumption that Congress is reluctant to pre-empt does not hold when Congress acts" under the Elections Clause. *Id.* at 14; *see also Harkless v. Brunner*, 545 F.3d 445, 455 (6th Cir. 2008) (The rule "that Congress must be explicit when it encroaches in areas traditionally within a state's core governmental functions [ ] does not apply when Congress acts under the Elections Clause, as it did in enacting the NVRA." (citations omitted)).

The National Voter Registration Act (NVRA) requires states to provide broad access to voter-registration list-maintenance records and gives the U.S. Attorney General primary authority to enforce the Act. Section 8(i)(1) mandates that each state "shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters," subject only to two narrow exceptions. 52 U.S.C. § 20507(i)(1). The disclosure mandate within the NVRA covers the SVRL. Moreover,

the SVRL provided by California to the United States is protected by privacy laws which the United States is required to comply.

For these reasons, California privacy and confidentiality laws are preempted by the NVRA and Intervenors' Motions to Dismiss must be denied.

## CONCLUSION

For the foregoing reasons, the United States respectfully requests that the Court deny the Motions to Dismiss filed by Intervenors (Doc. 62 and Doc. 67).


DATED: November 26, 2025                    Respectfully submitted,

                                            HARMEET K. DHILLON
                                            Assistant Attorney General
                                            Civil Rights Division


                                            /s/  *Brittany E. Bennett*
                                            MAUREEN RIORDAN
                                            Senior Counsel, Voting Section
                                            BRITTANY E. BENNETT
                                            ERIC NEFF
                                            Trial Attorneys, Voting Section
                                            Civil Rights Division
                                            U.S. Department of Justice
                                            4 Constitution Square
                                            150 M Street NE, Room 8.141
                                            Washington, D.C. 20002
                                            Telephone: (202) 704-5430
                                            Email: brittany.bennett@usdoj.gov

1  |  **<u>CERTIFICATE OF SERVICE</u>**

2  |     I hereby certify that on November 26, 2025, a true and correct copy of the

3  |  foregoing document was served via the Court's ECF system to all counsel of record.

4

5  |                 <u>/s/ *Brittany E. Bennett*</u>

6  |                 Brittany E. Bennett

7  |                 Trial Attorney, Voting Section

               Civil Rights Division

8  |                 U.S. Department of Justice

9  |                 4 Constitution Square

               150 M Street NE, Room 8.141

10  |                 Washington, D.C. 20002

11  |                 Telephone: (202) 704-5430

               Email: brittany.bennett@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## **CERTIFICATE OF COMPLIANCE**

2       *The undersigned, counsel of record for Plaintiff, certifies that this brief*

3   *contains 3,960 words, and complies with the word limit of L.R. 11-6.1.*

4

5                               /s/ *Brittany E. Bennett*

6                               Brittany E. Bennett

7                               Trial Attorney, Voting Section

                            Civil Rights Division

8                               U.S. Department of Justice

9                               4 Constitution Square

                            150 M Street NE, Room 8.141

10                              Washington, D.C. 20002

11                              Telephone: (202) 704-5430

                            Email: brittany.bennett@usdoj.gov

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28