EXHIBIT B

1   JEREMY D. SACKS, CA Bar No. 174839
    jeremy.sacks@stoel.com
2   STOEL RIVES LLP
    760 SW Ninth Avenue, Suite 3000
3   Portland, OR  97205
    Telephone:  503.224.3380
4
    MATTHEW D. SEGAL, CA Bar No. 190938
5   matthew.segal@stoel.com
    STOEL RIVES LLP
6   500 Capitol Mall
    Sacramento, CA 95814
7   Telephone:  916.447.0700
8   JOHN HILL, *pro hac vice* forthcoming
    jhill@citizensforethics.org
9   DONALD SHERMAN, *pro hac vice*
    forthcoming
10  dsherman@citizensforethics.org
    Citizens for Responsibility and Ethics in
11  Washington
    1331 F Street NW, Suite 900
12  Washington, DC 20004
    Telephone: 202.408.5565
13
14  *Attorneys for Amicus Curiae*
15
                   UNITED STATES DISTRICT COURT
16
                   CENTRAL DISTRICT OF CALIFORNIA
17
18
19  UNITED STATES OF AMERICA,               Case No. 2:25-CV-09149-DOC-ADS

20              Plaintiff,                   **BRIEF OF BIPARTISAN
                                             FORMER STATE SECRETARIES
21      v.                                   OF STATE AS AMICI CURIAE IN
                                             SUPPORT OF DEFENDANTS'**
22  SHIRLEY WEBER, in her official           **MOTION TO DISMISS (ECF 37)**
    capacity as Secretary of the State of
23  California and the STATE OF
    CALIFORNIA,
24
                Defendants.
25
26
27
28  BRIEF OF BIPARTISAN FORMER
    STATE SECRETARIES OF STATE                        2:25-CV-09149-DOC-ADS
    AS AMICI CURIAE IN SUPPORT OF
    DEFENDANTS' MOTION TO
    DISMISS (ECF 37)

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES.................................................................................2

INTEREST OF AMICI.......................................................................................9

I.      INTRODUCTION....................................................................................13

II.     ARGUMENT...........................................................................................14

        A.      The states, not the federal government, are charged with
                administering federal elections. ...............................................14

                1.      The U.S. Constitution mandates the states' role in
                        regulating and administering elections. ......................14

                2.      The Constitution prioritizes the states' accountability to
                        voters........................................................................16

                3.      State officials' election expertise surpasses that of the
                        President.....................................................................17

                4.      The NVRA and HAVA confirm states' authority over
                        voter roll list maintenance. .......................................18

        B.      State voter files contain sensitive information that states must
                protect to ensure voters' privacy.............................................20

        C.      States have good reason to collect confidential information, but
                not share that information with third parties including federal
                agencies. ...................................................................................24

        D.      The Federal Privacy Act prohibits DOJ's conduct here. ...........28

III.    CONCLUSION........................................................................................32

APPENDIX I ....................................................................................................25

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF        -1-        2:25-CV-09149-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

1

## TABLE OF AUTHORITIES

2

**Cases**

3

4
*ACA Connects - Am.'s Commc'ns Ass'n v. Frey,*
  471 F. Supp. 3d 318 (D. Me. 2020)....................................................24

5

6
*Am. Civ. Rts. Union v. Phila. City Comm'rs,*
  872 F.3d 175 (3d Cir. 2017) ..............................................................20

7

8
*Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n,*
  576 U.S. 787 (2015) .....................................................................14, 15

9

10
*Arizona v. Inter Tribal Council of Ariz., Inc. ("ITCA"),*
  570 U.S. 1 (2013) ...........................................................16, 17, 18, 21

11
*Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar,*
  56 F.3d 791 (7th Cir. 1995) ...............................................................17

12

13
*BedRoc Ltd. v. United States,*
  541 U.S. 176 (2004) ...........................................................................19

14

15
*Bellitto v. Snipes,*
  935 F.3d 1192 (11th Cir. 2019)..........................................................20

16

17
*Bellville v. Town of Northboro,*
  375 F.3d 25 (1st Cir. 2004) ................................................................24

18

19
*Branti v. Finkel,*
  445 U.S. 507 (1980) ...........................................................................30

20

21
*Burrage v. United States,*
  571 U.S. 204 (2014) ...........................................................................19

22

23
*Bush v. Gore,*
  531 U.S. 98 (2000) ......................................................................16, 18

24
*California v. Trump,*
  786 F. Supp. 3d 359 (D. Mass. 2025)................................................16

25

26
*Chapman v. Houston Welfare Rts. Org.,*
  441 U.S. 600 (1979) ...........................................................................19

27

28

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -2-          2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

*In re Coleman*,
   208 F. Supp. 199 (S.D. Miss. 1962), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963) ............................................................. 25

*Davis v. Mich. Dep't. of Treasury*,
   489 U.S. 803 (1989) ........................................................................................ 20

*FDA v. Brown & Williamson Tobacco Corp.*,
   529 U.S. 120 (2000) ........................................................................................ 19

*Fish v. Kobach*,
   189 F. Supp. 3d 1107 (D. Kan. 2016) .......................................................... 21

*State ex rel. Gallion v. Rogers*,
   187 F. Supp 848 (M.D. Ala. 1960), *aff'd sub nom Dinkens v. Att'y Gen. of the U.S.*, 285 F.2d 430 (5th Cir. 1961) .............................................. 24

*Gonzalez v. Arizona*,
   677 F.3d 383 (9th Cir. 2012), *aff'd sub nom. ITCA*, 570 U.S. 1 (2013) .............................................................................................................. 17

*In re Gordon*,
   218 F. Supp. 826 (S.D. Miss. 1963) .............................................................. 25

*Harkless v. Brunner*,
   545 F.3d 445 (6th Cir. 2008) .......................................................................... 17

*League of United Latin Am. Citizens v. Exec. Off. of the President ("LULAC")*,
   780 F. Supp. 3d 135 (D.D.C. 2025) ........................................................ 16, 18

*League of United Latin Am. Citizens v. Exec. Off. of the President*,
   No. 1:25-cv-00946 (D.D.C. Apr. 24, 2025) .................................................. 10

*Libertarian Party of Va. v. Alcorn*,
   826 F.3d 708 (4th Cir. 2016) .......................................................................... 17

*McPherson v. Blacker*,
   146 U.S. 1 (1892) ............................................................................................ 16

*Moore v. Harper*,
   600 U.S. 1 (2023) ............................................................................................ 16

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -3-          2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

*Project Vote, Inc. v. Kemp*,
    208 F. Supp. 3d 1320 (N.D. Ga. 2016) ............................................................. 23

*Pub. Int. Legal Found., Inc. v. Bellows*,
    92 F.4th 36 (1st Cir. 2024) .................................................................... 23, 25

*Sandusky Cnty. Democratic Party v. Blackwell*,
    387 F.3d 565 (6th Cir. 2004) ............................................................ 20

*Smiley v. Holm*,
    285 U.S. 355 (1932) .......................................................................... 16

*Storer v. Brown*,
    415 U.S. 724 (1974) .......................................................................... 18

*Thornhill v. State of Alabama*,
    310 U.S. 88 (1940) ............................................................................ 22

*True the Vote v. Hosemann*,
    43 F. Supp. 3d 693 (S.D. Miss. 2014) ............................................ 23

*U.S. Term Limits, Inc. v. Thornton*,
    514 U.S. 779 (1995) .......................................................................... 16

*United States v. Bellows*,
    No. 1:25-cv-00468 (D. Me. Sept. 16, 2025) .................................. 32

*United States v. Benson*,
    No. 1:25-cv-01148 (W.D. Mich. Sept. 25, 2025) .......................... 32

*United States v. Board of Elections*,
    No. 1:25-cv-01338 (D. N.D.N.Y Sept. 25, 2025) .......................... 32

*United States v. Gradwell*,
    243 U.S. 476 (1917) .................................................................. 17, 18, 25

*United States v. Oregon*,
    No. 6:25-cv-01666 (D. Or. Sept. 16, 2025) .................................. 32

*United States v. Pennsylvania*,
    No. 2:25-cv-01481 (W.D. Pa. Sept. 25, 2025) .............................. 32

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF    -4-    2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

*United States v. Scanlan*,
No. 1:25-cv-00371 (D. N.H. Sept. 25, 2025) ....................................................32

*United States v. Simon*,
No. 0:25-cv-03761 (D. Minn. Sept. 25, 2025) ..................................................32

**Statutes**

25 Pa. Cons. Stat. § 1207 ...............................................................................35

25 Pa. Cons. Stat. § 1325 ...............................................................................35

25 Pa. Cons. Stat. § 1403 ...............................................................................35

5 U.S.C. § 552a(a)(5) .....................................................................................31

5 U.S.C. § 552a(e)(1)-(12) ........................................................................30, 31

52 U.S.C. § 20507(i) .......................................................................................23

52 U.S.C. § 20507(a)(4) ..................................................................................20

52 U.S.C. § 20701-20706 ...............................................................................24

52 U.S.C. § 21083 ...........................................................................................23

52 U.S.C. § 21083(a)(1)(A) .............................................................................20

52 U.S.C. § 21083(a)(2)(A) .............................................................................20

52 U.S.C. § 21083(a)(4)(A) .............................................................................20

52 U.S.C. § 21803(a)(5)(A) .............................................................................21

Cal. Elec. Code § 2194(b)(1) ..........................................................................22

Civil Rights Act of 1960 ............................................................................24, 25

Colo. Rev. Stat. § 1-2-302 (8) .........................................................................35

Conn. Gen. Stat. § 9-50d(b) ............................................................................35

Help America Vote Act ...........................................................................passim

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -5-                2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

Minn. Stat. § 201.091 ...............................................................35

National Voter Registration Act ......................................................passim

Privacy Act of 1974 .........................................................................passim

**Rules**

L.R. 11-6.1 ...................................................................................34

**Constitutional Provisions**

First Amendment .......................................................................30, 31

U.S. Const. art. I, § 4, cl. 1 ...........................................................16

U.S. Const. art. II, § 1, cl. 2 ..........................................................16

U.S. Constitution ....................................................................10, 15

Elections Clause of the U.S. Constitution ...............................passim

Electors Clause of the U.S. Constitution ......................................16

**Other Authorities**

3 Records of the Federal Convention of 1784 p. 311 (Max Garrand ed.
    1911) ........................................................................................25

Brian E. Humphreys, *The Designation of Election Systems as Critical
    Infrastructure*, Congressional Research Service (updated Sept. 18,
    2019), https://www.congress.gov/crs-product/IF10677 ...................27

Congressional Research Service, *Federal Role in Voter Registration:
    The National Voter Registration Act of 1993 (NVRA) and
    Subsequent Developments* (updated Feb. 7, 2025)............................19

*Cyber Threat Snapshot*, House Committee on Homeland Security,
    https://perma.cc/R829-ZN25 (last visited Nov. 18, 2025)................27

Cybersecurity and Infrastructure Security Agency, *Election Security*,
    https://perma.cc/U6MC-F3C3 (last visited Nov. 18, 2025)...............27

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -6-                    2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

Devlin Barrett & Nick Corasaniti, *Trump Administration Quietly Seeks to Build National Voter Roll*, N.Y. TIMES (Sept. 9, 2025) ..................32

*Global Malicious Activity Targeting Elections Is Skyrocketing*, Resecurity (Feb. 12, 2024), https://perma.cc/KNV2-7EHP ............................27

Hon. Elaine Marshall, Secretary of State, North Carolina (June 28, 2017), https://perma.cc/J7TA-ALKV .................................................28

Lauren Feiner, *America's cybersecurity defenses are cracking*, The Verge (Nov. 10, 2025), https://perma.cc/XR9D-ZCRT ....................................27

Letter from Harmeet K. Dhillon to the Honorable Shirley N. Weber (Aug. 13, 2025), https://perma.cc/8PYJ-FK5V.........................................30

Letter from Sec'ys of State to A.G. Bondi and Sec'y Noem (Nov. 18, 2025), https://perma.cc/3U4N-PWXB ..........................................29

Matt Cohen & Zachary Roth, *DOJ Is Said to Plan to Contact All 50 States on Voting Systems*, Democracy Dkt. (July 29, 2025), https://perma.cc/H8HL-BDGU ...............................................................32

Minnesota Secretary of State, *Other States with Programs Like Safe at Home*, https://perma.cc/4YR5-HPMH (last visited Nov. 18, 2025) .................22

Miranda Nazzaro, *Thousands of civil servants' passwords exposed since early 2024, report says*, FedScoop (Oct. 15, 2025), https://fedscoop.com/thousands-of-civil-servants-passwords-exposed-since-early-2024-report-says/ ............................................................26

Mitch McConnell, *Trump Gives Democrats a Voting Gift,* Wall St. J. (Apr. 7, 2025) ........................................................................................20

National Association of Secretaries of State, Securing Elections Critical Infrastructure (2020), https://perma.cc/48MC-C49D; .........................27

Off. of Mgmt. & Budget Circular No. A-108, Federal Agency Responsibilities for Review, Reporting, and Publication under the Privacy Act at 7 (2016), https://perma.cc/QZZ3-EB67 ..............................31, 32

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -7-                    2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

Pam Fessler, *Dozens Of States Resist Trump Administration Voter Initiative*, NPR (last updated July 5, 2017), https://perma.cc/2AEE-AL4E..................................................................................................28, 29

S. Comm. on Gov't Operations and H.R. Comm. on Gov't Operations, 94th Cong., 2d Sess., Legislative History of the Privacy Act of 1974 - S. 3418 (Pub. L. No. 93-579), Source Book on Privacy at 168 (1976), https://perma.cc/DZ4J-Y2TE.........................................................30

State Legislatures, *Access to and Use of Voter Registration Lists,* https://www.ncsl.org/elections-and-campaigns/access-to-and-use-of-voter-registration-lists (updated July 17, 2025)............................................22

State Legislatures, *Access to and Use of Voter Registration Lists* (updated July 17, 2025), https://www.ncsl.org/elections-and-campaigns/access-to-and-use-of-voter-registration-lists....................................21

Tom Loftus, Grimes: *'Not enough bourbon' in Kentucky to make commission's voter data request seem sensible*, Courier J. (last updated July 1, 2017), https://perma.cc/QF7G-MV8G......................................28

U.S. DEP'T OF JUST., OVERVIEW OF THE PRIVACY ACT OF 1974 at 1 (2020 ed.), https://perma.cc/26QS-5WHE. ........................................29

U.S. Election Assistance Commission, *Availability of State Voter File and Confidential Information* (updated October 29, 2020), https://perma.cc/45W2-XGJZ ...........................................................22

U.S. GOV'T ACCOUNTABILITY OFF., GAO-24-107231, HIGH-RISK SERIES: URGENT ACTION NEEDED TO ADDRESS CRITICAL CYBERSECURITY CHALLENGES FACING THE NATION 1 (2024)............................26

*US Congressional Budget Office hit by cybersecurity incident*, Reuters (Nov. 7, 2025).................................................................................26

*US warns that hackers using F5 devices to target government networks*, Reuters (Oct. 15, 2025).......................................................26

William J. Clinton, Remarks on Signing the National Voter Registration Act of 1993 (May 20, 1993), https://perma.cc/AHT3-H4S8 ....................................................................................................21

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF           -8-           2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

## INTEREST OF AMICI

Amici are a bipartisan group of former state secretaries of state. As the District Court for the District of Columbia concluded in granting Amici leave to file a similar amicus brief in election-related litigation there, "[a]s former state election officials, [A]mici offer a unique perspective not presented by the parties. And their proposed brief is relevant and helpful." Minute Order, *League of United Latin Am. Citizens v. Exec. Off. of the President*, No. 1:25-cv-00946, (D.D.C. Apr. 24, 2025).

Although Amici may not always have agreed about what constitutes the best election policies, Amici nonetheless share a common commitment to ensuring that elections are free and fair, and Amici are unified in their understanding of states' pivotal role in enacting and executing election laws, as set forth in the U.S. Constitution. Amici are:

**Mary Estill Buchanan, Former Secretary of State for the State of Colorado** – The Colorado Secretary of State is an elected member of the Executive Branch of Colorado's state government. The Secretary of State serves as the chief executive of an office that oversees and administers many laws, including the Colorado Election Code, Voter Registration Laws, and Campaign Finance Laws.

Secretary Buchanan was a public servant in Colorado for many years and a tireless advocate for democracy and women in public service. Most relevant here, Buchanan served two terms as Colorado's Secretary of State—from 1974 to 1983—as a Republican. When she took office, she was the first woman to hold that office in Colorado. During her tenure, Buchanan was the only Republican in statewide office, working across the aisle to ensure efficient, effective administration of Colorado's elections. As Secretary, Buchanan advocated for and implemented reforms to improve transparency for elections and public office.

BRIEF OF BIPARTISAN FORMER STATE SECRETARIES OF STATE AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (ECF 37)

-9-                2:25-CV-09149-DOC-ADS

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

151092850.7 0099880-01587

1    **Miles Rapoport, Former Secretary of State for the State of Connecticut** –
2    The Secretary of State of Connecticut is the Commissioner of Elections for the
3    State. The Secretary is charged with administering, interpreting, and implementing
4    election laws and ensuring fair and impartial elections. The Elections and Voting
5    Division of the office administers, interprets, and implements all state and federal
6    laws pertaining to elections, primaries, nominating procedures, and the acquisition
7    and exercise of voting rights.

8    Secretary Rapoport was elected Secretary of the State as a Democrat in 1995
9    and served until 1998, leading multiple initiatives to expand voting and election
10   participation. Before that, Rapoport served five terms in the Connecticut House of
11   Representatives, from 1984 to 1994, chairing the Committee on Elections.  Since
12   2021 he has served as the Executive Director of 100% Democracy, an initiative
13   committed to promoting a more representative democracy. He is the co-author, with
14   *Washington Post* columnist E.J. Dionne, of *100% Democracy: The Case for*
15   *Universal Voting,* published in March 2022 by the New Press.

16   **Joan Anderson Growe**, **Former Secretary of State for the State of**
17   **Minnesota** – The Secretary of State of Minnesota is an elected constitutional
18   officer serving in the state's executive branch. One of the office's primary
19   responsibilities is overseeing statewide elections and operating the statewide voter
20   registration system.

21   Secretary Growe served first in the Minnesota House of Representatives
22   before being elected as Minnesota Secretary of State as a Democrat. When she was
23   elected, Growe became the first woman to be elected to a Minnesota statewide
24   office without having been first appointed. During her six-term tenure, Growe was
25   tireless in her advocacy of voter participation, and, for most of her tenure,
26   Minnesota led the nation in voter turnout.

27

28   BRIEF OF BIPARTISAN FORMER
     STATE SECRETARIES OF STATE
     AS AMICI CURIAE IN SUPPORT OF          -10-          2:25-CV-09149-DOC-ADS
     DEFENDANTS' MOTION TO
     DISMISS (ECF 37)
     151092850.7 0099880-01587

1    **John Gale, Former Secretary of State for the State of Nebraska** – The

2    Secretary of State serves as Nebraska's chief election officer. Working with

3    election officials in the state's 93 counties, the Elections Division oversees election

4    law, the conduct of elections in the state, election tabulation equipment and the state

5    voter registration system.

6        Secretary Gale served as Nebraska Secretary of State from December 2000

7    until 2019, winning election to the office as a Republican four times. While in

8    office he significantly improved Nebraska's election process, including

9    implementing major election improvements in Nebraska to meet the requirements

10   of the federal Help America Vote Act. Gale promoted efforts to increase voter

11   participation, resulting in Nebraska setting new turnout records in both the 2004

12   and 2008 presidential elections. He also served several terms on the Executive

13   Committee for the National Association of Secretaries of State (NASS), multiple

14   terms as Chair of the International Relations Committee, and as Chair of the

15   Business Services Committee. Gale also served terms on both the Standards Board

16   and the Technical Guidelines Development Committee of the U.S. Elections

17   Assistance Commission.

18   **Phil Keisling, Former Secretary of State for the State of Oregon** – The

19   Oregon Secretary of State is an elected constitutional officer within the executive

20   branch of the state government. One of the Secretary's chief roles is to oversee the

21   state's election system, to maximize voter participation, and to protect ballot

22   security.

23       Secretary Keisling's career over four decades has included stints in the

24   worlds of journalism, elective politics, the private sector, and academia. In 1991,

25   Keisling was appointed Oregon Secretary of State by Governor Barbara Roberts.

26   He was then elected and re-elected as a Democrat to this statewide position. During

27

28   BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF                    -11-                    2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)

1  his tenure, he helped lead the successful effort to make Oregon the nation's first
2  state to conduct all elections only by mail. Keisling is also the chair of the board of
3  directors of the National Vote At Home Institute, a nonpartisan, 501(c)(3) nonprofit
4  organization that works to increase voters' access to, use of, and confidence in
5  mailed-out ballots.

6      **Kathy Boockvar, Former Secretary of the Commonwealth of**
7  **Pennsylvania** – The Secretary of the Commonwealth is the chief state election
8  official in Pennsylvania and leads the Pennsylvania Department of State. The
9  Department of State is responsible for ensuring the security, integrity, and
10 accessibility of the electoral process in Pennsylvania, by overseeing free, fair, and
11 accurate elections.

12      Secretary Boockvar served as the Secretary of the Commonwealth from 2019
13 until 2021, and before that as Senior Advisor on election security, under Governor
14 Tom Wolf (D). Boockvar was also co-chair of NASS's Elections Committee from
15 2019 to 2020, and a NASS Representative on the Election Infrastructure Subsector
16 Government Coordinating Council (EIS-GCC), a collaboration among federal,
17 state, and local officials. During her tenure, Boockvar co-chaired Pennsylvania's
18 Inter-Agency Election Security and Preparedness Workgroup, strengthened election
19 security and voting rights measures across the state, and oversaw secure and
20 accessible elections amid a global pandemic, marked by unparalleled transparency
21 and voter participation. In prior years, Boockvar served as a poll worker and as a
22 voting-rights attorney for a national civil rights organization and has been dedicated
23 to public service throughout her career. After serving as Secretary, Boockvar
24 became Vice President of Election Operations for the Center for Internet Security,
25 and she is currently President of Athena Strategies, continuing work to strengthen
26 election security and amplify understanding and civil discourse about elections.
27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF           -12-           2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

**Sam Reed, Former Secretary of State for the State of Washington** – The Secretary of State of Washington is the state's chief elections officer. The Secretary of State serves as an elected constitutional officer with rule-making authority. The duties of the office included maintaining the statewide voter registration database, overseeing state and local elections, certifying the results of state primaries and general elections, filing and verifying statewide initiatives and referendums, and producing and distributing the state voters' pamphlet and election-notice legal advertising.

Secretary Reed served the citizens of Washington for over three decades in elected public office. At the age of 28, Reed was appointed assistant Secretary of State, and was chosen by Governor Dan Evans to head the Governor's Advisory Council on Urban Affairs. Reed was elected as a Republican to serve as Washington's fourteenth Secretary of State in 2000—a title which he held until his retirement in January 2013. His many accomplishments included major election reform, including a new statewide voter registration system that prevents opportunity for fraud.

## I. INTRODUCTION

Amici—a bipartisan group of former secretaries of state—faithfully oversaw elections across the "laboratories" of electoral democracy—the states. *Ariz. State Legislature v. Ariz. Indep. Redistricting Comm'n*, 576 U.S. 787, 817 (2015). In their roles, Amici witnessed firsthand the Framers' wisdom in giving states authority to enact election laws and administer elections, as set forth in the Elections Clause of the U.S. Constitution. That is because, as the Supreme Court recognized in reaffirming the states' role under the Elections Clause, "[d]eference to state lawmaking allows local policies more sensitive to the diverse needs of a heterogeneous society, permits innovation and experimentation, enables greater

BRIEF OF BIPARTISAN FORMER STATE SECRETARIES OF STATE AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (ECF 37)    -13-    2:25-CV-09149-DOC-ADS

151092850.7 0099880-01587

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

1  citizen involvement in democratic processes, and makes government more

2  responsive by putting the States in competition for a mobile citizenry." *Id.* at 817

3  (cleaned up).

4      In this action, the United States seeks an order directing the Secretary of

5  State of California and the State of California to turnover to the U.S Department of

6  Justice a computerized voter registration list of nearly 23 million registered voters,

7  inclusive of "all fields." Compl. at 16, ¶ 5. That action would upend our

8  constitutional framework by interfering with California's management of its voter

9  registration system and protection of sensitive voter information, including driver's

10 license and social security numbers. The Government's demand is contrary to the

11 federalism and separation of powers principles codified in the Constitution's

12 Elections Clause and contrary to federal law.

13     Amici, therefore, submit this brief to protect these fundamental

14 Constitutional principles and to ensure the integrity of California's voter

15 registration records. Amici respectfully request that the Court grant Defendants'

16 motion to dismiss.

## II.  ARGUMENT

**A.    The states, not the federal government, are charged with administering federal elections.**

**1.    The U.S. Constitution mandates the states' role in regulating and administering elections.**

22     The Constitution explicitly gives states, not the federal government, the

23 primary responsibility to enact election laws and administer elections. The

24 **Elections Clause** establishes: "The Times, Places and Manner of holding Elections

25 for Senators and Representatives, shall be prescribed *in each State by the*

26 *Legislature thereof*; but the Congress may at any time by Law make or alter such

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF        -14-        2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

1    Regulations, except as to the Places of chusing Senators." U.S. Const. art. I, § 4, cl.

2    1 (emphasis added).[1]

3          The Constitution thus empowers the states with "sweeping" authority to

4    enact election laws, subject only to other provisions of the Constitution and

5    preemption by Congress. *League of United Latin Am. Citizens v. Exec. Off. of the*

6    *President ("LULAC")*, 780 F. Supp. 3d 135, 158 (D.D.C. 2025). The Elections

7    Clause's "substantive scope is broad. 'Times, Places, and Manner,' . . . are

8    '*comprehensive* words,' which 'embrace authority to provide a *complete* code for

9    congressional elections. . . .'" *Arizona v. Inter Tribal Council of Ariz., Inc.*

10   *("ITCA")*, 570 U.S. 1, 8-9 (2013) (emphasis added) (quoting *Smiley v. Holm*, 285

11   U.S. 355, 366 (1932)) (emphasis added); *California v. Trump*, 786 F. Supp. 3d 359,

12   372 (D. Mass. 2025) (same). The Elections Clause therefore "has two functions. [1]

13   Upon the States it imposes the duty ('shall be prescribed') to prescribe the time,

14   place, and manner of electing Representatives and Senators; [and 2] upon Congress

15   it confers the power to alter those regulations or supplant them altogether." *Arizona*,

16   570 U.S. at 8 (citing *U.S. Term Limits*, 514 U.S. at 804-05); *see also Moore v.*

17   *Harper*, 600 U.S. 1, 29 (2023) (states hold "constitutional duty to craft the rules

18   governing federal elections."). "In other words, only Congress has the power to

19   adjust state election rules." *California*, 786 F. Supp. 3d at 379.[2]

20         In addition to assigning states the primary responsibility to regulate elections,

21   the current regime enacted pursuant to the Elections Clause also makes states

---

[1] A state's "duty" under the Elections Clause "parallels the duty" described in the separate but related Electors Clause, U.S. Const. art. II, § 1, cl. 2. *See U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 804-05 (1995).

[2] Similarly, the Electors Clause empowers state legislatures—not the President or the federal government—to determine the rules for appointing electors. The state's power under the Elector's Clause is "plenary" within constitutional limits. *Bush v. Gore*, 531 U.S. 98, 104 (2000). "Congress is empowered to determine the time of choosing the electors and the day on which they are to give their votes . . .; but otherwise the power and jurisdiction of the state is exclusive[.]" *McPherson v. Blacker*, 146 U.S. 1, 35 (1892).

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -15-          2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

responsible for administering federal elections. The Elections Clause "places the burden of administering federal elections on the states." *Ass'n of Cmty. Orgs. for Reform Now (ACORN) v. Edgar*, 56 F.3d 791, 796 (7th Cir. 1995); *Harkless v. Brunner*, 545 F.3d 445, 454 (6th Cir. 2008); *accord Gonzalez v. Arizona*, 677 F.3d 383, 391 (9th Cir. 2012) ("[A] state's role in the creation and implementation of federal election procedures . . . is to administer the elections through its own procedures."), *aff'd sub nom. ITCA*, 570 U.S. 1 (2013); *ITCA*, 570 U.S. at 41 (Alito, J., dissenting) (stating Elections Clause "reserve[es] to the States default responsibility for administering federal elections . . . .").

In sum, it is "clearly established" that the Constitution "leave[s] the conduct of [federal elections] to state laws, administered by state officers," subject only to Congress' power "to regulate such elections . . . by positive and clear statutes." *United States v. Gradwell*, 243 U.S. 476, 485 (1917).

### 2. The Constitution prioritizes the states' accountability to voters.

The Elections Clause reflects the Framers' view that, given state officials' accountability and proximity to local needs, states are well-situated to regulate and administer federal elections, subject only to Congressional preemption. "All other things being equal, it is generally better for states to administer elections. . . . [L]ocal administration . . . allows for greater individual input and accountability; a distant bureaucracy is in danger of appearing out of reach and out of touch." *Libertarian Party of Va. v. Alcorn*, 826 F.3d 708, 715-16 (4th Cir. 2016). As James Madison explained, "[i]t was found necessary to leave the regulation of [federal elections], in the first place, to the state governments, as being best acquainted with the situation of the people." 3 Records of the Federal Convention of 1787, p. 312 (Max Farrand ed. 1911); *Gradwell*, 243 U.S. at 484; *ITCA*, 570 U.S. at 41 (Alito, J., dissenting). Even ardent federalist Alexander Hamilton conceded that, because the

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -16-          2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

1   states are closer to the people, state regulation of federal elections is "in ordinary

2   cases . . . both more convenient and more satisfactory." The Federalist No. 59,

3   p. 360 (Alexander Hamilton) (Clinton Rossiter ed. 1961); *accord Gradwell*, 243

4   U.S. at 484-85; *ITCA*, 570 U.S. at 41 (Alito, J., dissenting); *LULAC*, 780 F. Supp.

5   3d at 159. And although the Constitution allows Congress to act as a check on a

6   runaway state legislature's regulation of elections, nowhere does it authorize the

7   President to do so without clear authorization from the legislative branch. *See*

8   *generally Gradwell*, 243 U.S. at 484–85. There is no such authorization here.

9   In fact, as discussed below, Congress has prohibited the federal government's

10  attempted actions here.

11          **3.     State officials' election expertise surpasses that of the President.**

12          In practice, the Elections Clause creates a regime in which state officials, like

13  Amici, possess unique expertise in local election procedures that the federal

14  government, and in particular the President, simply does not have. "[T]here must be

15  a substantial regulation of elections if they are to be fair and honest and if some sort

16  of order, rather than chaos, is to accompany the democratic processes." *Storer v.*

17  *Brown*, 415 U.S. 724, 730 (1974). Unlike the federal government, states have

18  "comprehensive, and in many respects complex, election codes regulating in most

19  substantial ways, with respect to both federal and state elections, the time, place,

20  and manner of holding primary and general elections, the registration and

21  qualifications of voters, and the selection and qualification of candidates." *Id.*

22  Consequently, state and local officials like Amici—*i.e.*, those charged with

23  developing and enforcing those comprehensive election codes—possess the

24  "expertise" necessary to implement such a complex system. *Bush v. Gore*, 531 U.S.

25  98, 109 (2000).

26

27

28

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -17-          2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

1

2

### 4.    The NVRA and HAVA confirm states' authority over voter roll list maintenance.

3       Congress and the President recognized this truth when they adopted the

4   National Voter Registration Act ("NVRA") and the Help America Vote Act

5   ("HAVA"). The NVRA was enacted in 1993 to help increase voter registration by,

6   among other things, requiring states to offer voter registration opportunities when

7   individuals apply for or renew a driver's license. *See, e.g.*, Congressional Research

8   Service, *Federal Role in Voter Registration: The National Voter Registration Act of*

9   *1993 (NVRA) and Subsequent Developments* (updated Feb. 7, 2025). HAVA was

10  enacted in 2002 to help states modernize their election systems in response to

11  voting problems in the 2000 presidential election. *Id*. Both statutes reaffirmed the

12  states' authority over election management. The NVRA and HAVA provide federal

13  assistance to state election officials, but they do not limit the states' plenary

14  authority over election management.

15      Under both the NVRA and HAVA, the states—not federal agencies—are

16  responsible for voter roll list maintenance. In interpreting the NVRA and HAVA,

17  the courts must "interpret the words of these statutes in light of the purposes

18  Congress sought to serve." *Chapman v. Houston Welfare Rts. Org.*, 441 U.S. 600,

19  608 (1979); *see also Burrage v. United States*, 571 U.S. 204, 218 (2014) ("The role

20  of this Court is to apply the statute as it is written—even if we think some other

21  approach might accord with good policy." (citation omitted)). Specifically, a court's

22  "inquiry begins with the statutory text, and ends there as well if the text is

23  unambiguous." *BedRoc Ltd. v. United States*, 541 U.S. 176, 183 (2004). "It is a

24  'fundamental canon of statutory construction that the words of a statute must be

25  read in their context and with a view to their place in the overall statutory scheme.'"

26  *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000) (quoting

27

28

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF        -18-                    2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

1   *Davis v. Mich. Dep't. of Treasury*, 489 U.S. 803, 809 (1989)). Here, the text of both

2   the NVRA and HAVA is unequivocal: *States* are responsible for voter roll list

3   maintenance. Specifically, the NVRA, 52 U.S.C. § 20507(a)(4), provides that "each

4   ***State*** shall ... conduct a general program that makes a reasonable effort to remove

5   the names of ineligible voters from the official lists of eligible voters...." (emphasis

6   added). The NVRA's "text unambiguously mandates that the *states* maintain a

7   'general program that makes a reasonable effort to remove the names of ineligible

8   voters from the official lists of eligible voters by reason of' only two things: death

9   or change of address." *Bellitto v. Snipes*, 935 F.3d 1192, 1200 (11th Cir. 2019)

10  (emphasis added) (quoting 52 U.S.C. § 20507(a)(4)).

11      The same is true regarding HAVA, which repeatedly requires states to

12  define, maintain, and administer voter lists. *See* 52 U.S.C. §§ 21083(a)(1)(A);

13  21083(a)(4)(A); *see also Am. Civ. Rts. Union v. Phila. City Comm'rs*, 872 F.3d

14  175, 181 (3d Cir. 2017) ("Similar to the NVRA, the HAVA requires *states* to

15  'perform list maintenance' of the computerized voting rolls." (emphasis added))

16  (quoting 52 U.S.C. § 21083(a)(2)(A)).

17      Because the text of the NVRA and HAVA makes clear that states are

18  charged with voter roll list maintenance, any interpretation to the contrary must be

19  rejected. Further, "[n]owhere in the language or structure of HAVA as a whole is

20  there any indication that the Congress intended to strip from the States their

21  traditional responsibility to administer elections . . . ." *Sandusky Cnty. Democratic*

22  *Party v. Blackwell*, 387 F.3d 565, 576 (6th Cir. 2004).[3] The NVRA, which

23

24  _____

   [3] As Senator Mitch McConnell explained earlier this year: "[D]elegation of
    authority over election administration is crystal clear. Elections may have national
25  consequences but the power to conduct them rests in state capitols." Mitch
    McConnell, *Trump Gives Democrats a Voting Gift,* Wall St. J. (Apr. 7, 2025),
26  https://archive.ph/30TWq ("When we wrote the Help America Vote Act, we took
    care to reinforce—not undermine—the limits of federal involvement in America's
27  elections.").

28  BRIEF OF BIPARTISAN FORMER
    STATE SECRETARIES OF STATE
    AS AMICI CURIAE IN SUPPORT OF          -19-                2:25-CV-09149-DOC-ADS
    DEFENDANTS' MOTION TO
    DISMISS (ECF 37)
    151092850.7 0099880-01587

1    primarily achieves its objectives by "creating national registration requirements for

2    federal elections," *Fish v. Kobach*, 189 F. Supp. 3d 1107, 1113 (D. Kan. 2016),

3    likewise authorizes, and relies on, the states to implement and facilitate its

4    provisions. Specifically, the very "purpose of the federal [voter registration] form is

5    *not* to supplant the States' authority in this area but to facilitate interstate voter

6    registration drives." *ITCA*, 570 U.S. at 46 (Alito, J., dissenting) (emphasis added);

7    William J. Clinton, Remarks on Signing the National Voter Registration Act of

8    1993 (May 20, 1993), https://perma.cc/AHT3-H4S8 (describing NVRA's

9    "implementation by States").

10       In short, through the NVRA and HAVA, Congress granted *states,* not the

11   federal government, authority to administer voter roll lists. This Court must give

12   full effect to Congress' intent.

13   **B.    State voter files contain sensitive information that states must protect to**

14   **ensure voters' privacy.**

15       There is no question that each state's voter files contain sensitive nonpublic

16   information about voters, which states have both a right and an obligation to

17   protect. Federal law requires that every voter registration application for registration

18   in a federal election contain *at least* the voter's driver's license ("DL") number, the

19   last four digits of the voter's social security number ("SSN"), or other unique

20   identifying information. 52 U.S.C. § 21083(a)(5)(A). In addition, voter files

21   commonly include additional nonpublic information about voters beyond what is

22   federally mandated, such as addresses, phone numbers, birth dates, and full SSNs.

23   *See, e.g.* National Conference of State Legislatures, *Access to and Use of Voter*

24   *Registration Lists* (updated July 17, 2025), https://www.ncsl.org/elections-and-

25   campaigns/access-to-and-use-of-voter-registration-lists (aggregating information

26   about the contents of state voter rolls). This information is generally not publicly

27

28   BRIEF OF BIPARTISAN FORMER
     STATE SECRETARIES OF STATE
     AS AMICI CURIAE IN SUPPORT OF          -20-                2:25-CV-09149-DOC-ADS
     DEFENDANTS' MOTION TO
     DISMISS (ECF 37)
     151092850.7 0099880-01587

available; states have an interest in protecting such information from disclosure. *See, e.g.*, *Thornhill v. State of Alabama*, 310 U.S. 88, 105, (1940) ("[T]he duty of the State" to protect privacy of its residents "cannot be doubted").

In fact, many states have enacted statutes either prohibiting disclosure of confidential information contained in the voter file or limiting the use of such information, including four of the states from which Amici hail. *See* Appx. 1.[4] Most relevant here, California law explicitly establishes that "the California driver's license number, the California identification card number, [and] the social security number, and . . . are confidential and shall not be disclosed to any person." Cal. Elec. Code § 2194(b)(1). Requiring disclosure of confidential information contained in the voter file would thus violate not only voters' privacy rights; it could also violate state privacy laws.

In addition, forty-four states and the District of Columbia have either an address confidentiality program ("ACP") or a "Safe at Home" law that provides additional confidentiality protections for certain groups of voters, such as victims of domestic violence, sexual assault, stalking, and other crimes. *See, e.g.*, *supra* note 4 (providing examples of protected groups); *see also* Minnesota Secretary of State, *Other States with Programs Like Safe at Home*, https://perma.cc/4YR5-HPMH (last visited Nov. 18, 2025) (listing states that have created ACPs or enacted Safe at Home laws). These voter groups are at elevated risk of harassment, violence, and other harms if the confidential information in their voter files is disclosed, and

---

[4] National Conference of State Legislatures, *Access to and Use of Voter Registration Lists,* https://www.ncsl.org/elections-and-campaigns/access-to-and-use-of-voter-registration-lists (updated July 17, 2025); *see also* U.S. Election Assistance Commission, *Availability of State Voter File and Confidential Information* (updated October 29, 2020), https://perma.cc/45W2-XGJZ.

BRIEF OF BIPARTISAN FORMER STATE SECRETARIES OF STATE AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (ECF 37)    -21-    2:25-CV-09149-DOC-ADS

151092850.7 0099880-01587

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

states have a heightened interest in protecting their citizens from these harms by keeping confidential voter information private.

Moreover, there is nothing in the NVRA or HAVA that supersedes—or even conflicts with—these state confidentiality rules. The NVRA's public disclosure provision contains no mention of confidential information and no requirement that such information be disclosed. *See* 52 U.S.C. § 20507(i) (public disclosure provision of NVRA, which contains no mention of production of voters' confidential information). To the contrary, several jurisdictions have expressly recognized that states can refuse to turn over confidential information contained in the voter file without running afoul of the NVRA. *See, e.g.*, *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("[N]othing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File."); *see also True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 736 (S.D. Miss. 2014) ("[T]he Public Disclosure Provision [of the NVRA] . . . does not, as a general proposition, prohibit a State from protecting voter registrants' SSNs and birthdates as highly personal and sensitive information."); *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016) (NVRA "does not require the disclosure of sensitive information that implicates special privacy concerns.").

Nor does HAVA conflict with state confidentiality rules. That statute does not even contain a public disclosure requirement, let alone a requirement that state agencies turn over confidential voter information to the federal government. *See generally* 52 U.S.C. § 21083 (no disclosure requirement). Thus, states can comply with their obligations under the NVRA and HAVA without acceding to federal demands for confidential information and indeed they must do so when state law requires it.

BRIEF OF BIPARTISAN FORMER STATE SECRETARIES OF STATE AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (ECF 37)

-22-

2:25-CV-09149-DOC-ADS

151092850.7 0099880-01587

1    Similarly, states need not disclose confidential information about their voters

2    to comply with the Civil Rights Act of 1960 ("CRA"). The CRA allows the United

3    States Attorney General to request inspection of state voter rolls for the purpose of

4    investigating "alleged discriminatory practices." *State ex rel. Gallion v. Rogers*, 187

5    F. Supp 848, 854 (M.D. Ala. 1960), *aff'd sub nom Dinkens v. Att'y Gen. of the U.S.,*

6    285 F.2d 430 (5th Cir. 1961); *see also* 52 U.S.C. §§ 20701, 20703 (retention and

7    inspection provisions of the CRA). But the federal government does not allege any

8    discriminatory practices here. And even assuming the Attorney General can request

9    inspection of voter rolls in these circumstances, there is no reason to believe that

10   states cannot comply with the CRA's inspection provision while also protecting the

11   confidentiality of sensitive voter information. Nothing in the text of the CRA's

12   records provisions preempts state privacy protections and preemption is not

13   implied. *See generally* 52 U.S.C. §§ 20701-20706 (no mention of preemption).

14   There is "a strong presumption against implied federal preemption of state law,"

15   which is strongest "in fields of traditional state regulation." *ACA Connects - Am.'s*

16   *Commc'ns Ass'n v. Frey*, 471 F. Supp. 3d 318, 325 (D. Me. 2020) (citation

17   omitted). "Privacy regulation is just such a field." *Id.*; *see also Bellville v. Town of*

18   *Northboro*, 375 F.3d 25, 31 (1st Cir. 2004) ("The states, of course, are free to

19   accord their citizens rights beyond those guaranteed by federal law."). There is no

20   statutory or case law authority suggesting that a state cannot take appropriate steps

21   to protect confidential information about its residents while also complying with the

22   CRA.

23       Indeed, the CRA and voter confidentiality protections are not contradictory

24   and are properly read in harmony. The purpose of the CRA was to allow the

25   Attorney General to investigate the alleged disenfranchisement of voters based on

26   race. *Gallion*, 187 F. Supp at 854. It does not give federal officials an unfettered

27

28   BRIEF OF BIPARTISAN FORMER
     STATE SECRETARIES OF STATE
     AS AMICI CURIAE IN SUPPORT OF          -23-                    2:25-CV-09149-DOC-ADS
     DEFENDANTS' MOTION TO
     DISMISS (ECF 37)
     151092850.7 0099880-01587

right of access to confidential information about voters in general. *In re Gordon*, 218 F. Supp. 826, 827 (S.D. Miss. 1963) (It is "a mistaken view to assume that [an] investigation of [state voting] records is an unlimited discovery device which may be employed and used without restraint"); *see also In re Coleman*, 208 F. Supp. 199, 201 (S.D. Miss. 1962) (recognizing exception to inspection right "when the purpose is speculative, or from idle curiosity"), *aff'd sub nom. Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963). States can comply with the CRA while also protecting confidential voter information as courts have repeatedly recognized in other contexts. *See, e.g. Pub. Int. Legal Found., Inc.*, 92 F.4th at 56 (allowing redaction of sensitive personal information in voter file when complying with disclosure requirements of NVRA). This principle applies in this context as well, allowing states to comply with appropriate inspection requests by the Attorney General while also redacting or withholding confidential information in the voter file in accordance with state privacy rules.

## C.    States have good reason to collect confidential information, but not share that information with third parties including federal agencies.

As described above, because states administer elections, state law governs the circumstances and authorized officials who must collect voters' confidential information as part of the voter registration process. But it does not follow that just because *states* possess voters' confidential information, the federal government is authorized to access it, nor that voters want that information shared with any other third parties, including the federal government.

As the founders recognized, state governments are "best acquainted with the situation of the people, subject to the control of the general government, in order to enable it to produce uniformity and prevent its own dissolution." *Gradwell*, 243 U.S. at 484 (quoting 3 Records of the Federal Convention of 1784 p. 311 (Max

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -24-               2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

Garrand ed. 1911)). And there are also practical concerns with states sharing and the federal government aggregating sensitive voter information. There always is a risk that electronically stored data could be hacked, breached, or stolen. But each time data is shared, that risk necessarily increases, both during the transfer process and because each custodian of records adds an additional target.

Here, the federal government's efforts to create a national voter roll for the first time therefore compound the risk of exposing private voter information. Moreover, the federal government is an especially attractive target for hackers, particularly for those working on behalf of nation-states. Federal agencies reported over 30,000 security incidents in fiscal year 2022 alone. U.S. Gov't Accountability Off., GAO-24-107231, High-Risk Series: Urgent Action Needed to Address Critical Cybersecurity Challenges Facing the Nation 1 (2024). The threat of such attacks is only growing. *See US warns that hackers using F5 devices to target government networks*, Reuters (Oct. 15, 2025), https://perma.cc/E8E2-ZEGX; *see also* Miranda Nazzaro, *Thousands of civil servants' passwords exposed since early 2024, report says*, FedScoop (Oct. 15, 2025), https://fedscoop.com/thousands-of-civil-servants-passwords-exposed-since-early-2024-report-says/ ("A new report . . . is challenging the idea that federal institutions are more secure than local governments against cybersecurity threats."). Indeed, just last month, the U.S. Congressional Budget Office was breached by hackers. *US Congressional Budget Office hit by cybersecurity incident*, Reuters (Nov. 7, 2025), https://perma.cc/Y64D-JMQN/.

In addition to federal targets being particularly sought after by hackers, the Department of Homeland Security designates election infrastructure as "critical infrastructure," which "recognizes that the United States' election infrastructure is of such vital importance to the American way of life that its incapacitation or

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -25-          2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

destruction would have a devastating effect on the country." Cybersecurity and Infrastructure Security Agency, *Election Security*, https://perma.cc/U6MC-F3C3 (last visited Nov. 18, 2025). In making that designation, DHS "cited cyberattacks on American systems as potentially more sophisticated and dangerous than ever, and elections as a primary target of cyber criminals." White Paper delivered to National Association of Secretaries of State, Securing Elections Critical Infrastructure (2020), https://perma.cc/48MC-C49D; *see also* Brian E. Humphreys, *The Designation of Election Systems as Critical Infrastructure*, Congressional Research Service (updated Sept. 18, 2019), https://www.congress.gov/crs-product/IF10677.

Unsurprisingly, even since that designation, critical infrastructure remains squarely in the crosshairs of hackers. In 2024, roughly 70% of all cyberattacks involved critical infrastructure. Chairman Andrew R. Garbarino, *Cyber Threat Snapshot*, House Committee on Homeland Security, https://perma.cc/R829-ZN25 (last visited Nov. 18, 2025). That trend maps onto increased cyber attacks on election systems globally. *Global Malicious Activity Targeting Elections Is Skyrocketing*, Resecurity (Feb. 12, 2024), https://perma.cc/KNV2-7EHP. And concerns about the security of American election infrastructure are even more pronounced now after the federal government recently downsized and cut funding for the Cybersecurity and Infrastructure Security Agency (CISA), which is tasked with protecting—among other things—election infrastructure. *See* Lauren Feiner, *America's cybersecurity defenses are cracking*, The Verge (Nov. 10, 2025), https://perma.cc/XR9D-ZCRT. Experts, including current Arizona Secretary of State Adrian Fontes, are sounding the alarm that changes during the current administration are further weakening the country's already strained cyber election protection apparatus. *Id.* As a result, by trying to force multiple states to send their otherwise disparate sets of sensitive voter

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF            -26-            2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

information all to the same repository at the DOJ, the federal government is only making the bullseye brighter for bad actors, at a time when the federal government is at the same time removing obstacles between hackers and their targets.

The concerns do not end there. The federal government has a long and checkered history of infringing on individuals' privacy rights, including concerning confidential voter information. In 2017, the Presidential Advisory Commission on Election Integrity—similarly in pursuit of vague allegations of election vulnerabilities and voter fraud—sent letters to state election officials across the country seeking all publicly available voter roll data, including all registrants' full first and last names, middle names or initials, addresses, dates of birth, political party, last four digits of Social Security numbers if available, voter history from 2006 onward, information regarding any felony convictions, voter registration in another state, and military status. Letter from Kris W. Kobach, Vice Chair, PACEI, to Hon. Elaine Marshall, Secretary of State, North Carolina (June 28, 2017), https://perma.cc/J7TA-ALKV. State officials—sometimes colorfully—expressed grave concerns. Kentucky Secretary of State Alison Lundergan Grimes said there was "not enough bourbon here in Kentucky to make this request seem sensible. . . . Not on my watch are we going to be releasing sensitive information that relate to the privacy of individuals." Tom Loftus, Grimes: *'Not enough bourbon' in Kentucky to make commission's voter data request seem sensible*, Courier J. (last updated July 1, 2017), https://perma.cc/QF7G-MV8G. She explained, "I'm not going to risk sensitive information for 3.2 million Kentuckians getting in the wrong hands, into the public domain and possibly for the wrong reasons, to keep people away from the ballot box." Pam Fessler, *Dozens Of States Resist Trump Administration Voter Initiative*, NPR (last updated July 5, 2017), https://perma.cc/2AEE-AL4E. Mississippi Secretary of State Delbert Hosemann

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF            -27-            2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

1  emphasized that states "conduct[] our own electoral processes," and suggested "[the

2  Commission] can go jump in the Gulf of Mexico and Mississippi is a great State to

3  launch from." *Id.*

4          The same concerns about sharing voters' sensitive and confidential

5  information with the government apply with equal force now, as to states'

6  justifications for choosing not to do so. Indeed, in a recent letter to Attorney

7  General Pam Bondi and Homeland Security Secretary Kristi Noem, secretaries of

8  state from Arizona, California, Colorado, Maine, Minnesota, Nevada, New Mexico,

9  Oregon, Vermont and Washington—all of which oversee elections in their states—

10 demanded answers on how private voter data was being used by the federal

11 government. Letter from Sec'ys of State to A.G. Bondi and Sec'y Noem (Nov. 18,

12 2025), https://perma.cc/3U4N-PWXB. The secretaries noted, among other

13 concerns, that their states' voter registration lists include sensitive voter

14 information, including dates of birth, state driver's license numbers, and the last

15 four digits of Social Security numbers. *Id.*

16 **D.    The Federal Privacy Act prohibits DOJ's conduct here.**

17         For precisely the sort of reasons described by the secretaries above, the

18 Privacy Act of 1974 places limits on a state's ability to share sensitive information

19 with federal agencies. Congress passed the Privacy Act in response to the

20 Watergate and Counterintelligence Program (COINTELPRO) scandals, which

21 exposed the dangers of unchecked government domestic surveillance and data

22 collection. The Privacy Act was designed to place "limits upon what the

23 Government can know about each of its citizens." U.S. DEP'T OF JUST., OVERVIEW

24 OF THE PRIVACY ACT OF 1974 at 1 (2020 ed.), https://perma.cc/26QS-5WHE.

25 Accordingly, the Privacy Act "sought to restore trust in government and to address

26 what at the time was seen as an existential threat to American democracy." *Id.*

27

28

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF          -28-          2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

To that end, the Privacy Act sought to prevent the federal government from creating "formal or de facto national data banks" or "centralized Federal information systems" that would consolidate sensitive personal data of Americans stored at separate agencies. S. Comm. on Gov't Operations and H.R. Comm. on Gov't Operations, 94th Cong., 2d Sess., Legislative History of the Privacy Act of 1974 – S. 3418 (Pub. L. No. 93-579), Source Book on Privacy at 168 (1976), https://perma.cc/DZ4J-Y2TE. Congress established robust safeguards against such "interagency computer data banks" to make it "legally impossible for the Federal Government in the future to put together anything resembling a '1984' personal dossier on a citizen," and to ensure "proper regard for individual privacy, the confidentiality of data, and the security of the system." *Id.* at 884, 217.

DOJ's actions here contravene many of the Privacy Act's requirements. First, the Privacy Act forbids collecting or maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a(e)(7).[5] Here, DOJ's letter to California explicitly requests "all fields" from California's electronic Voter Registration List. Letter from Harmeet K. Dhillon to the Honorable Shirley N. Weber (Aug. 13, 2025), https://perma.cc/8PYJ-FK5V. By requesting all fields, DOJ is seeking, for example, each voter's party registration, which is one way in which an individual exercises rights guaranteed by the First Amendment. *See Branti v. Finkel*, 445 U.S. 507, 519 (1980) (holding

---

[5] Although § 552a(e)(7) includes an exception for collecting records "pertinent to and within the scope of an authorized law enforcement activity," nothing in DOJ's complaint or letter to California identifies such a specific "authorized law enforcement activity." To the contrary, DOJ's letter to California makes clear the federal government is seeking "to assess the State's compliance with the statewide VRL maintenance provisions of the National Voter Registration Act." Letter from Harmeet K. Dhillon to the Honorable Shirley N. Weber (Aug. 13, 2025), https://perma.cc/8PYJ-FK5V.

BRIEF OF BIPARTISAN FORMER STATE SECRETARIES OF STATE AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (ECF 37)     -29-     2:25-CV-09149-DOC-ADS

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

151092850.7 0099880-01587

political party affiliation is protected under the First Amendment). The request thus violates the Privacy Act.

Second, the Privacy Act imposes procedural guardrails on what agencies must do prior to establishing a "system of records," defined as "a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual." 5 U.S.C. § 552a(a)(5). Any time the federal government "maintain[s], collect[s], use[s], or disseminate[s]" such, records, it *must* abide by notice-and-comment requirements and safeguards against data misuse, and follow information-security mandates. *Id.* at § 552a(e)(1)–(12). Critically, when an agency establishes or revises any system of records, it must "publish in the Federal Register . . . a notice of the existence and character of the system of records," *id.* § 552a(e)(4), called a System of Records Notice ("SORN"). And at least thirty days *prior* to such publication, an agency must publish a "notice of any new use or intended use of the information in the system, and provide an opportunity for interested persons to submit written data, views, or arguments to the agency." *Id.* § 552a(e)(11).

Issuance of a SORN is not mere window-dressing. SORNs "shall include" nine categories of information. *Id.* § 552a(e)(4). These crucial details provide much needed transparency about how the federal government is both protecting the information in the system of records and how it intends to use the information. And publishing a SORN is mandatory. Guidance issued contemporaneously with the Privacy Act is unequivocal: "*In no circumstance* may an agency use a new or significantly modified routine use as the basis for a disclosure fewer than 30 days following *Federal Register* publication." Off. of Mgmt. & Budget Circular No. A-108, Federal Agency Responsibilities for Review, Reporting, and Publication under

BRIEF OF BIPARTISAN FORMER STATE SECRETARIES OF STATE AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (ECF 37)
151092850.7 0099880-01587

-30-

2:25-CV-09149-DOC-ADS

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

the Privacy Act at 7 (2016), https://perma.cc/QZZ3-EB67 (emphases added).

Moreover, agencies "shall" not only solicit but also review any "public comments

on a published SORN" to "determine whether any changes to the SORN are

necessary." *Id.* The "requirement for agencies to publish a SORN allows the

Federal Government to accomplish one of the basic objectives of the Privacy Act—

fostering agency accountability through public notice." *Id.* at 5.

Here, DOJ has not published a SORN nor any other notice describing how it

intends to use the state voter roll data it is attempting to collect. Failure to issue

such a notice is, itself, a violation of the Privacy Act. This lack of transparency also

raises serious privacy concerns for California voters, who entrusted their personal

information to the state—not to the federal government. And this significant

privacy concern is not confined to California. The has publicly stated that it intends

to seek voter roll records from all fifty states. Matt Cohen & Zachary Roth, *DOJ Is

Said to Plan to Contact All 50 States on Voting Systems*, Democracy Dkt. (July 29,

2025), https://perma.cc/H8HL-BDGU. Indeed, DOJ has already sued eight states

for declining to provide such data.[6] These actions are consistent with DOJ's broader

effort to build a "national voter roll." Devlin Barrett & Nick Corasaniti, *Trump

Administration Quietly Seeks to Build National Voter Roll*, N.Y. Times (Sept. 9,

2025), https://www.nytimes.com/2025/09/09/us/politics/trump-voter-registration-

data.html. But doing so contravenes the Privacy Act's prohibition on national data

banks and violates its transparency requirements. *See id.* ("The effort to essentially

---

[6] *United States v. Bellows*, No. 1:25-cv-00468 (D. Me. Sept. 16, 2025);
*United States v. Oregon*, No. 6:25-cv-01666 (D. Or. Sept. 16, 2025); *United States
v. Weber*, No. 2:25-cv-09149 (C.D. Cal. Sept. 25, 2025); *United States v. Benson*,
No. 1:25-cv-01148 (W.D. Mich. Sept. 25, 2025); *United States v. Simon*, No. 0:25-
cv-03761 (D. Minn. Sept. 25, 2025); *United States v. Board of Elections*, No. 1:25-
cv-01338 (D. N.D.N.Y Sept. 25, 2025); *United States v. Scanlan*, No. 1:25-cv-
00371 (D. N.H. Sept. 25, 2025); *United States v. Pennsylvania*, No. 2:25-cv-01481
(W.D. Pa. Sept. 25, 2025).

BRIEF OF BIPARTISAN FORMER
STATE SECRETARIES OF STATE
AS AMICI CURIAE IN SUPPORT OF                -31-                    2:25-CV-09149-DOC-ADS
DEFENDANTS' MOTION TO
DISMISS (ECF 37)
151092850.7 0099880-01587

establish a national voting database, involving more than 30 states, has elicited serious concerns among voting rights experts . . . . The initiative has proceeded . . . seeking data about individual voters across the country, including names and addresses, in a move that experts say may violate the law.").

### III. CONCLUSION

For the reasons stated above, Amici respectfully requests that the Court grant Defendants' motion to dismiss.

DATED:  November 26, 2025          STOEL RIVES LLP

*/s/ Matthew D. Segal*

JEREMY D. SACKS, CA Bar No. 174839
jeremy.sacks@stoel.com
MATTHEW D. SEGAL, CA Bar No. 190938
matthew.segal@stoel.com

*Attorneys for Amicus Curiae*

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER STATE SECRETARIES OF STATE AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (ECF 37)
151092850.7 0099880-01587

-32-          2:25-CV-09149-DOC-ADS

# CERTIFICATION OF COMPLIANCE

The undersigned, counsel of record for Amici Bipartisan Former State Secretaries of State Amici Curiae in Support of Defendants' Motion to Dismiss certifies that this brief contains 6973 words, which:

_x_ complies with the word limit of L.R. 11-6.1.

___ complies with the page limit set by Section 6 under "Judge's Procedures" on Judge Carter's courtroom website, https://apps.cacd.uscourts.gov/Jps/honorable-david-o-carter

DATED: November 26, 2025          STOEL RIVES LLP

*/s/ Matthew D. Segal*

JEREMY D. SACKS, CA Bar No. 174839
jeremy.sacks@stoel.com
MATTHEW D. SEGAL, CA Bar No. 190938
matthew.segal@stoel.com

*Attorneys for Amicus Curiae*

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

BRIEF OF BIPARTISAN FORMER STATE SECRETARIES OF STATE AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (ECF 37)
151092850.7 0099880-01587

-33-          2:25-CV-09149-DOC-ADS

# APPENDIX 1

## AMICI STATES' VOTER FILE AND CONFIDENTIAL INFORMATION LAWS

| State | Information Contained in the Voter File | Information That Is Confidential or Use-Restricted Under State Law | Statute |
|-------|------------------------------------------|-------------------------------------------------------------------|---------|
| Colorado | Full name, address, year of birth, political party, voting history, personal identifying information | Personal identifying information such as Social Security Number (SSN), Driver's License (DL) Number | Colo. Rev. Stat. § 1-2-302 (8) |
| Connecticut | Not specified | SSN, DL Number | Conn. Gen. Stat. § 9-50d(b) |
| Minnesota | Name, address, year of birth, voting history, phone number, voting district | DOB, SSN, DL number, ID number, military ID, passport number; additional use restrictions | Minn. Stat. § 201.091 |
| Pennsylvania | Name, address, date of birth, voting history, voting district | Digitized or electronic signatures and the agency through which a voter is registered; information in voter file may not be used for commercial or improper purposes | 25 Pa. Cons. Stat. §§ 1207, 1325, 1403 |

BRIEF OF BIPARTISAN FORMER STATE SECRETARIES OF STATE AS AMICI CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS (ECF 37)

STOEL RIVES LLP
ATTORNEYS AT LAW
PORTLAND

-34-

2:25-CV-09149-DOC-ADS

151092850.7 0099880-01587