GRAYCE ZELPHIN (SBN 279112)
gzelphin@aclunc.org
ANGELICA SALCEDA (SBN 296152)
asalceda@aclunc.org
ACLU FOUNDATION OF
NORTHERN CALIFORNIA
39 Drumm Street
San Francisco, CA 94111
(415) 621-2493

JULIA A. GOMEZ (SBN 316270)
jgomez@aclusocal.org
PETER ELIASBERG (SBN 89110)
peliasberg@aclusocal.org
ACLU FOUNDATION OF
SOUTHERN CALIFORNIA
1313 West 8th Street
Los Angeles, CA 90017
(213) 977-5232

Counsel for Intervenor-Defendant
League of Women Voters of California

*Additional counsel listed below*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　vs.<br><br>SHIRLEY N. WEBER, in her official capacity as Secretary of State of California, and the STATE OF CALIFORNIA<br><br>　　　　Defendants. | Case No.: 2:25-cv-09149-DOC-ADS<br><br>**LEAGUE OF WOMEN VOTERS OF CALIFORNIA'S REPLY IN SUPPORT OF MOTION TO DISMISS [Dkt. 67]**<br><br>DATE: December 4, 2025<br>TIME: 7:30 A.M.<br>COURTROOM: TBD<br>JUDGE: Hon. David O. Carter |

THERESA J. LEE (NY 5022769)*
tlee@aclu.org
SOPHIA LIN LAKIN (NY 5182076)*
slakin@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
125 Broad Street, 18th Floor
New York, NY 10004
(212) 549-2500

PATRICIA J. YAN (NY 5499173)*
pyan@aclu.org
AMERICAN CIVIL LIBERTIES
UNION FOUNDATION
915 15th Street NW
Washington, DC 20005
(202) 457-0800

**Application for admission pro hac vice pending*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................................... iii

TABLE OF AUTHORITIES ............................................................................. iv

INTRODUCTION ...............................................................................................1

ARGUMENT .......................................................................................................2

    I. THE UNITED STATES FAILS TO STATE A LEGAL CLAIM UNDER THE NVRA .......................................................................................2

    II. THE UNITED STATES FAILS TO STATE A LEGAL CLAIM UNDER TITLE III OF THE CRA ................................................................5

        A. Plaintiff has failed to comply with the statutory requirements for records requests under Title III of the CRA. .........................................6

        B. Any records disclosed under Title III of the CRA should be redacted to protect the constitutional rights of voters. .........................8

    III. THE UNITED STATES HAS WAIVED ANY OPPOSITION TO DISMISSAL OF ITS CLAIM UNDER HAVA ............................................9

CONCLUSION .................................................................................................10

CERTIFICATE OF COMPLIANCE .................................................................11

# TABLE OF AUTHORITIES

**Cases**

*Arizona v. Inter Tribal Council of Ariz., Inc.*,
  570 U.S. 1 (2013) ............................................................................................. 4

*Atlas Data Priv. Corp. v. We Inform, LLC*,
  No. CV 24-4037, 2025 WL 2444153 (D.N.J. Aug. 25, 2025) ........................... 8

*Bellitto v. Snipes*,
  935 F.3d 1192 (11th Cir. 2019) ........................................................................ 7

*Greidinger v. Davis*,
  988 F.2d 1344 (4th Cir. 1993) ...................................................................... 4, 5

*Kennedy v. Lynd*,
  306 F.2d 222 (5th Cir. 1962) ........................................................................ 6, 7

*Oklahoma v. Castro-Huerta*,
  597 U.S. 629 (2022) ......................................................................................... 4

*Project Vote, Inc. v. Kemp*,
  208 F. Supp. 3d 1320 (N.D. Ga. 2016) ........................................................ 2, 3

*Project Vote/Voting for Am., Inc. v. Long*,
  682 F.3d 331 (4th Cir. 2012) ........................................................................ 5, 8

*Pub. Int. Legal Found. v. Benson*,
  136 F.4th 613 (6th Cir. 2025) ........................................................................... 7

*Pub. Int. Legal Found., Inc. v. Bellows*,
  92 F.4th 36 (1st Cir. 2024) ..................................................................... 2, 4, 9

*Shakur v. Schriro*,
  514 F.3d 878 (9th Cir. 2008) ............................................................................ 9

*True the Vote v. Hosemann*,
  43 F. Supp. 3d 693 (S.D. Miss. 2014) .............................................................. 3

*United States v. Golden Valley Elec. Ass'n*,
  689 F.3d 1108 (9th Cir. 2012) .......................................................................... 6

*United States v. Harrell*,
    637 F.3d 1008 (9th Cir. 2011)...............................................................................6

*United States v. Powell*,
    379 U.S. 48 (1964) ................................................................................................5

*Vien-Phuong Thi Ho v. Recontrust Co.*,
    669 F. App'x 857 (9th Cir. 2016)..........................................................................9

*Whitman v. Am. Trucking Associations*,
    531 U.S. 457 (2001) ..............................................................................................4

**Statutes**

5 U.S.C. § 522a(a)......................................................................................................5

5 U.S.C. § 552a(b) .....................................................................................................8

5 U.S.C. § 552a(e)......................................................................................................9

5 U.S.C. § 552(b) ...................................................................................................5, 8

44 U.S.C. § 3501 ........................................................................................................8

52 U.S.C. § 20501......................................................................................................1

52 U.S.C. § 20501(b).................................................................................................3

52 U.S.C. § 20507(a) .................................................................................................2

52 U.S.C. § 20507(i)...............................................................................................2, 5

52 U.S.C. § 20701......................................................................................................1

52 U.S.C. § 20703..................................................................................................6, 7

52 U.S.C. § 20901......................................................................................................1

Cal. Elec. Code § 2194(b)..........................................................................................8

Cal. Elec. Code § 2193 ..............................................................................................7

Cal. Elec. Code § 2201 ..............................................................................................7

Cal. Elec. Code §§ 2205–2206 ..................................................................................7

Cal. Elec. Code § 2220–2227 ....................................................................................7

Cal. Gov't Code § 7924.000 ......................................................................................8

# INTRODUCTION

The text of The National Voter Registration Act ("NVRA"), 52 U.S.C. § 20501 *et seq*., the Help America Vote Act ("HAVA"), 52 U.S.C. § 20901 *et seq*., and Title III of the Civil Rights Act of 1960 ("CRA" or "Title III"), 52 U.S.C. § 20701 *et seq*., Congress's intent underlying these statutes, and the case law interpreting these statutes all compel the same conclusion: Plaintiff's complaint must be dismissed. The NVRA, HAVA, and CRA were each passed for the express purpose of ensuring that eligible Americans can participate in free, fair, and secure elections—protecting the cornerstone of America's democracy: the right of eligible citizens to vote. These statutes do not blindly permit the United States Attorney General to embark on fishing expeditions into voting records or facilitate massive voter-data collection by the federal government, as Plaintiff insists. Doing so would be counter to these statutes' purpose. There is no legal basis, and Plaintiff offers no legitimate justification, to support its sweeping demand for California's complete unredacted voter registration file and the sensitive personal information of every Californian included therein. Instead, through its Complaint, Plaintiff asks the federal judiciary to grant it permission to steamroll state and federal privacy laws and turn three of this nation's preeminent voting access statutes, NVRA, HAVA, and CRA on their heads, contorting them to sacrifice voter privacy protections and wrongly justify the federal government's immediate, unfettered access to voters' data. The statutes simply do not support this. Because the United States has failed to state a claim upon which the relief it has requested can be granted, the Court should grant Intervenor-Defendant League of Women Voters of California's (the "LWVC's") motion to dismiss.

# ARGUMENT

## I. THE UNITED STATES FAILS TO STATE A LEGAL CLAIM UNDER THE NVRA

Plaintiff's Complaint demands data beyond the scope of relief that the NVRA authorizes. Compl. ¶¶ 12–21, 34, 50–56 [Dkt. 1]. What the United States wants—access to particular statutorily-protected sensitive voter information—is unnecessary to ensure California is conducting "a general program that makes a reasonable effort to remove the names of ineligible voters" and lies beyond the statute's reach. *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1325 (N.D. Ga. 2016) (citing 52 U.S.C. § 20507(a)(3)-(4)); *id.* at 1345 (holding that personal information like social security numbers and birth dates "is not relevant . . . to determine whether the State improperly removed or did not add individuals to the voter roll"); *id.* at 1344 ("Section 8(i) requires the disclosure of individual voter registration records, but it does not require the disclosure of sensitive information that implicates special privacy concerns"); *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) ("nothing in the text of the NVRA prohibits the appropriate redaction of uniquely or highly sensitive personal information in the Voter File"). The NVRA claim must therefore be dismissed.

Plaintiff fails to counter consistent NVRA case law that recognizes redactions of sensitive voter information are appropriate. Instead, it argues that those cases are distinguishable because they involve private actions, offering no textual analysis of the statute and no reasoning to support a distinction between private requesters and the Attorney General. Opp'n to Defs.' MTD at 7, 12-14 [Dkt. 63]; Opp'n to Intervenors' MTD at 12-14 [Dkt. 81]. Nor could it. The NVRA's public disclosure provision requires states to make records "available for public inspection." 52 U.S.C. § 20507(i). It contains no reference whatsoever to the identity of the requester. To support its argument, the United States cherry-picks quotes from cases discussing the CRA's Attorney General inspection provision.

Opp'n to Intervenors' MTD at 12-13 [Dkt. 81]. But none of these quotes support the argument that the Attorney General has broader access under the NVRA. In *Kemp*, the court cited the CRA precisely to make the opposite point: other federal statutes, including the CRA, also "recognize the confidentiality of certain voter information." 208 F. Supp. 3d at 1344; *see also True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 734-35 (S.D. Miss. 2014) (noting that an interpretation allowing NVRA requesters access to unredacted voter records "flies in the face of" the CRA, which requires the Attorney General to keep such records confidential). The court then concluded that "[a]llowing disclosure [under the NVRA] of unredacted voter applications is inconsistent [] with Congress's concern for individual privacy evidenced in Federal statutes" and that "it is illogical that in enacting the NVRA, Congress intended to erode Federal and State law protecting against the disclosure of private, personal information." *Kemp*, 208 F. Supp. 3d at 1344-45.

The United States also argues that Intervenor-Defendants seek to expand the text of the NVRA by adding a redaction provision. Opp'n to Intervenors' MTD at 11 [Dkt. 81]. That misstates both Intervenor-Defendant LWVC's position and the case law. Courts have recognized the distinction between making a record available—which the NVRA requires and the State has agreed to do—and redacting limited, discrete confidential information within those records—which multiple, preexisting federal and state laws mandate. *Hosemann*, 43 F. Supp. 3d at 733-34. The Plaintiff cites no authority suggesting that Congress intended otherwise protected information to lose its protection once a citizen registers to vote. To the contrary, such a reading would undermine a central purpose of the NVRA: to "increase the number of eligible citizens who register to vote in elections." 52 U.S.C. § 20501(b)(1). Properly read, the NVRA mandates disclosure, but did not silently repeal parallel state and federal privacy protections. *See Kemp*, 208 F. Supp. 3d at 1345 (holding Congress did not intend to undermine state privacy laws and citing Georgia's public records law exemptions as an

example); *Whitman v. Am. Trucking Associations*, 531 U.S. 457, 468 (2001) (Congress "does not . . . hide elephants in mouseholes"); *see also Bellows*, 92 F. 4th at 55-56 (federal privacy and voter intimidation statutes must be "read in tandem with the NVRA" to "address the privacy concerns posed by public disclosure of the Voter File"). Indeed, the United States itself recognizes the continuing force of privacy law, admitting that the federal Privacy Act applies to its own conduct. Opp'n to Intervenors' MTD at 13-14 [Dkt. 81]. The same principle applies here: state privacy laws may shape the scope of disclosure without enlarging—or contradicting—the text of the NVRA.

For this reason, the United States is also wrong to maintain that California's voter-privacy safeguards are preempted by the NVRA. Opp'n to Intervenors' MTD at 16-18 [Dkt. 81]. While a state law that fully prevented the disclosure of voter records would be at least partially preempted by the NVRA, *see Bellows*, 92 F.4th at 55-56, that is not what is at issue here. For California, there is no conflict between the NVRA and the state law because the NVRA does not require the production of unredacted documents in the first instance. *See id.* (holding that a state ban on the publication of the voter file interfered with the NVRA's public disclosure provision, but noting that redactions of sensitive voter information are consistent with the NVRA); *Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1, 9 (2013) (holding that the NVRA preempts state election law only insofar as the two are inconsistent). Put simply, a desire for unredacted voter records, untethered from any law, does not translate into a federal mandate. *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 642 (2022) ("The Supremacy Clause cannot 'be deployed' 'to elevate abstract and unenacted legislative desires above state law'") (citation omitted).

Finally, Plaintiff does not dispute that reading the NVRA to require disclosure of Social Security numbers would "create[] an intolerable burden" on the right to vote. Opp'n to Intervenors' MTD at 15-16 [Dkt. 81] (quoting *Greidinger v. Davis*, 988 F.2d 1344, 1355 (4th Cir. 1993)). It nevertheless tries to

limit that reasoning to Social Security numbers. *Greidinger*—cited in *Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331 (4th Cir. 2012) [hereinafter *"Project Vote"*]—did not strike down a law that conditioned voting on the release of Social Security numbers merely because they are Social Security numbers. 988 F.2d 1344. Rather, the court recognized that requiring disclosure of such individual identifiers would violate privacy interests protected under statutes like the Privacy Act and the Freedom of Information Act ("FOIA"). *Id*. at 1353-54. The Privacy Act and FOIA, like California's voter privacy law, also protect other universal personal identifiers, including driver's license and state ID numbers. 5 U.S.C. § 522a(a)(4) (defining "record" under the Privacy Act to include an "identifying number, symbol, or other identifying particular assigned to the individual"); 5 U.S.C. § 552(b)(6) (exempting from disclosure "information of a personal nature where disclosure would constitute a clearly unwarranted invasion of personal privacy"). Forcing disclosure of either such types of identifiers would thus impose the same "intolerable burden" on the right to vote that the *Project Vote* and *Greidinger* courts recognized. *Project Vote*, 682 F.3d at 339; *Greidinger*, 988 F.2d at 1355. That the Attorney General is the requester does not change the statute nor the analysis: the NVRA's **public** disclosure provision, 52 U.S.C. § 20507(i)(1), applies equally to the public and the Attorney General.

## II. THE UNITED STATES FAILS TO STATE A LEGAL CLAIM UNDER TITLE III OF THE CRA

Nothing in Title III creates a special, truncated proceeding or shields the Attorney General's demand from ordinary judicial scrutiny. Indeed, in a closely analogous statutory scheme, the Supreme Court held that a similarly worded enforcement statute required courts to apply standard civil procedures and to ensure statutory prerequisites were satisfied. *See United States v. Powell*, 379 U.S. 48, 57-58 & n.18 (1964). Under current binding law, the Court must evaluate whether Plaintiff complied with Title III—including whether it has followed procedural

requirements (like making a proper demand with its basis and purpose) and whether the evidence sought is relevant and material to its investigation. *See United States v. Golden Valley Elec. Ass'n*, 689 F.3d 1108, 1113 (9th Cir. 2012). Plaintiff's reliance on a single, outdated and out of circuit case, *Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962), to overstep all judicial process is misguided. Plaintiff also misrepresents that case. Indeed, *Lynd* is insightful for other purposes, including that the "statement of the basis and purpose" is a requirement for any such request and that "basis" and "purpose" are distinct requirements under the statute. *Lynd* at 229 n.6. Plaintiff's assertion that its Title III demand is above judicial process, Opp'n to Defs.' MTD [Dkt. 81] at 11-12, is simply wrong.

### A. Plaintiff has failed to comply with the statutory requirements for records requests under Title III of the CRA.

In its opposition, Plaintiff fails to address the fact that it has not provided a statement of "the basis and the purpose" that supports its request for the full unredacted voter file. 52 U.S.C. § 20703. Plaintiff's unrestricted interpretation of Title III would give the Attorney General unfettered investigatory authority, demanding *any* records, no matter how tangential, into *any* possible violation of *any* federal law, however unfounded or obscure. Such an interpretation would render Title III's "basis and purpose" requirement meaningless, underscoring the impropriety of Plaintiff's insisted reading. *See United States v. Harrell*, 637 F.3d 1008, 1011 (9th Cir. 2011) (courts "must 'make every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous'" (internal citation and alteration omitted)). If merely listing any supposed purpose was sufficient to satisfy the demands of the statute, there would have been no reason for Congress to include this as a requirement under the statutory scheme. Instead, Title III requires the Attorney General to articulate both "the basis and the purpose" to support the demand. 52 U.S.C. § 20703. Plaintiff provides neither. Even assuming (which this Court should not)

1  that the Attorney General can invoke Title III on a purpose and basis that is
2  divorced from protecting individuals' rights to register and vote—Plaintiff's
3  purported basis and purpose here fail to meet statutory requirements. First, Plaintiff
4  cannot credibly argue that it satisfied the statutory text by providing a statement of
5  "the basis and the purpose" along with the request to California. 52 U.S.C. § 20703.
6  And indeed, Plaintiff never even makes such an allegation in the Complaint. *See*
7  *generally* Compl. [Dkt. 1].

8        Second, Plaintiff's post hoc claimed purpose for its CRA request—assessing
9  the State's list maintenance efforts—is incompatible with the sweep of the
10 requested information. The State's compliance with the NVRA and HAVA is
11 assessed by reviewing the State's procedures—not by examining the private
12 information of individual registrants at a single snapshot in time. *See, e.g.*, *Pub. Int.*
13 *Legal Found. v. Benson*, 136 F.4th 613, 624-25 (6th Cir. 2025); *Bellitto v. Snipes*,
14 935 F.3d 1192, 1205 (11th Cir. 2019). California has already demonstrated that its
15 procedures comply with federal law. *See* Cal. Elec. Code §§ 2193, 2201, 2205–06,
16 2220–27; related regulations and guidance; Brudigam Decl. Exs. 4, 8 [Dkt. 37-2].
17 Plaintiff, by contrast, has not alleged a single deficiency in California's list-
18 maintenance practices. Compl. ¶¶ 53, 63.

19       Plaintiff's asserted "basis"—questions about California's EAVS
20 responses—is equally unmoored. Plaintiff never identified this supposed basis
21 when requesting the data, and its July 10 letter never referenced Title III. Brudigam
22 Decl. Ex. 1 [Dkt. 37-2]. The issues Plaintiff raised have nothing to do with
23 protected personal identifiers like Social Security and driver's license numbers.
24 Plaintiff fails to explain how any perceived gaps in EAVS reporting justify a
25 demand for unredacted records of 23 million voters. Despite this mismatch,
26 Plaintiff asserts that its basis is "not open to judicial review." Opp. to Defs.' MTD
27 14 [Dkt. 63] (citing *Lynd*, 306 F.2d at 226). But Title III requires the basis—not
28

7

merely "a basis"—and that basis must be real, articulated, and tethered to the records demanded. Plaintiff has met none of these requirements.

## B. Any records disclosed under Title III of the CRA should be redacted to protect the constitutional rights of voters.

Nothing in Title III of the CRA requires States to disclose sensitive personal information to the federal government. Even if Plaintiff made a valid demand under Title III with a statutorily sufficient statement of its basis and purpose, the sensitive personal information it seeks would remain protected by California and federal law from disclosure—even to the federal government. As with the NVRA, there is no conflict between the state and federal schemes—California's Election Code, Cal. Elec. Code § 2194(b)(1); Cal. Gov't Code § 7924.000(b)-(c), and the CRA both seek to protect individual voters' right to vote. *See Atlas Data Priv. Corp. v. We Inform, LLC*, No. CV 24-4037, 2025 WL 2444153 at *2-3 (D.N.J. Aug. 25, 2025) (finding state law limiting disclosure of personal information not preempted by the NVRA). Furthermore, at the time the CRA was enacted, the records subject to disclosure to the Attorney General were not required to contain Social Security numbers or other sensitive identifying data, voter data could not be electronically transferred, compounded, or shared, and the Attorney General was not yet subject to the Privacy Act of 1974. The current reality is that the vulnerability of electronic data, particularly sensitive personal identifiers, cannot be overlooked or compromised without a very compelling reason, which both federal law and state law recognize. *See, e.g.*, 5 U.S.C. § 552(b)(6) (exempting private records from FOIA disclosure); 5 U.S.C. § 552a(b) (establishing protections for personal information held by the federal government); E-Government Act § 208, 44 U.S.C. § 3501 note (purpose of law to "ensure sufficient protections for the privacy of personal information . . ."); Cal. Elec. Code § 2194(b)(1). For this reason, courts have struck the correct balance, allowing for redactions to ensure voters' privacy protection and safety, while allowing for less sensitive data to be reviewed where

8

necessary. *See, e.g.*, *Project Vote*, 682 F.3d at 339; *Bellows*, 92 F.4th at 56. In attempting to counter arguments about its failure to comply with federal privacy law, Plaintiff gives the game away: citing an internal policy about data collected directly from individuals. *See* Opp. to Intervenors' MTD at 14 n.7 [Dkt. 81] (indicating the policy applies to "the information you provide through this form"). Here, the information being sought is *not* being sought directly from the individuals whose data is at issue but from the State of California, underscoring both the inapplicability of Plaintiff's cited policy and its failure to comply with the Privacy Act, which makes clear that federal agencies "shall . . . collect information to the greatest extent practicable directly from the subject individual," 5 U.S.C. § 552a(e)(2).

Here, Plaintiff provides no justification that warrants release of every Californian voter's sensitive personal data. The balance between election oversight and avoiding unnecessary violations of individuals' privacy must be met. At the very least, this means Plaintiff's demand for *unredacted* sensitive voter data pursuant to Title III of the CRA must fail.

### III. THE UNITED STATES HAS WAIVED ANY OPPOSITION TO DISMISSAL OF ITS CLAIM UNDER HAVA

In opposition, the United States offers nothing to counter Intervenor's motion to dismiss its HAVA claim. As such, this claim must fail. *See Vien-Phuong Thi Ho v. Recontrust Co.*, 669 F. App'x 857, 859 (9th Cir. 2016) ("litigants waive arguments by failing to raise them in an opposition to a motion to dismiss" (citing *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008)). Nothing in the HAVA provisions cited in the Complaint allows the release of millions of voters' sensitive personal information, including driver's license numbers, state identification numbers, or Social Security numbers. Nor does the United States explain why any such personal identifiers would be relevant to assess California's compliance with HAVA.

1  Unable to ground its demands in the statute Congress enacted, the United
2  States instead relies on broad assertions unmoored from statutory text. But this
3  Court cannot rewrite HAVA to supply the authority the United States wishes it had.
4  As such, Plaintiff's HAVA claims fail as a matter of law and must be dismissed.

## CONCLUSION

6  The Court should grant Intervenor-Defendant League of Women Voters of
7  California's motion to dismiss, [Dkt. 67], pursuant to Federal Rule of Civil
8  Procedure 12(b)(6).

10  Dated: December 1, 2025         Respectfully submitted,

/s/ *Grayce Zelphin*

Grayce Zelphin
ACLU Foundation of Northern California
*Counsel for Intervenor-Defendant League of Women Voters of California*

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for Defendant-Intervenor the League of Women Voters of California, certifies that this brief contains 3033 words, which complies with the page limit set by Section 6 under "Judge's Procedures" on Judge Carter's courtroom website, https://apps.cacd.uscourts.gov/Jps/honorable-david-o-carter, and with L.R. 11-6.1.

Dated: December 1, 2025            Respectfully submitted,

/s/ Grayce Zelphin

Grayce Zelphin
ACLU Foundation of Northern California
*Counsel for Defendant-Intervenor League of Women Voters of California*