| | |
|---|---|
| 1 | Lalitha D. Madduri (CA Bar No. 301236) |
| 2 | lmadduri@elias.law |
| | Jacob D. Shelly* (DC Bar No. 90010127) |
| 3 | jshelly@elias.law |
| 4 | Christopher D. Dodge* (DC Bar No. 90011587) |
| | cdodge@elias.law |
| 5 | **ELIAS LAW GROUP LLP** |
| 6 | 250 Massachusetts Ave. NW, Suite 400 |
| | Washington, DC 20001 |
| 7 | T: (202) 968-4652 |
| 8 | F: (202) 968-4498 |
| 9 | Tyler L. Bishop (CA Bar No. 337546) |
| 10 | tbishop@elias.law |
| | Walker McKusick* (WA Bar No. 63205) |
| 11 | wmckusick@elias.law |
| 12 | **ELIAS LAW GROUP LLP** |
| | 1700 Seventh Avenue, Suite 2100 |
| 13 | Seattle, WA 98101 |
| 14 | T: (206) 656-0177 |
| | F: (206) 656-0180 |
| 15 | |
| 16 | Omar Qureshi (CA Bar No. 323493) |
| | omar@qureshi.law |
| 17 | Max Schoening (CA Bar No. 324643) |
| 18 | max@qureshi.law |
| | **QURESHI LAW PC** |
| 19 | 700 Flower Street, Suite 1000 |
| 20 | Los Angeles, CA 90017 |
| | T: (213) 786-3478 |
| 21 | F: (213) 277-8989 |
| 22 | |
| | *Counsel for Intervenor-Defendants NAACP;* |
| 23 | *NAACP California-Hawaii State Conference;* |
| 24 | *and Services, Immigrant Rights and Education* |
| | *Network* |
| 25 | |
| 26 | * *Admitted pro hac vice* |
| 27 | |
| 28 | |

NAACP, NAACP-CA/HI, and SIREN's Reply in Support of Motion to Dismiss
Case No. 2:25-09149-DOC-ADS

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>    v.<br><br>SHIRLEY N. WEBER, in her official capacity as Secretary of State of California, et al.,<br><br>    Defendants. | Case No: 2:25-cv-09149-DOC-ADS<br><br>**NAACP, NAACP CALIFORNIA-HAWAII STATE CONFERENCE, AND SERVICES, IMMIGRANT RIGHTS AND EDUCATION NETWORK'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Hearing Date: Dec. 4, 2025<br><br>Time: 7:30 a.m.<br><br>Courtroom: TBD [Los Angeles] |

# **TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................... 1

ARGUMENT .................................................................................................................. 2

    I.    DOJ fails to state a claim under the CRA. ................................................... 2

         A.    The voter list DOJ seeks is not a record or paper that came into State Defendants' possession. ............................................................ 2

         B.    DOJ's demand lacks a proper basis and purpose. ............................ 4

    II.    DOJ fails to state a claim under the NVRA. ............................................... 6

    III.    DOJ fails to state a claim under HAVA. ..................................................... 9

CONCLUSION ............................................................................................................. 10

# INTRODUCTION

DOJ's response to Intervenors' motions to dismiss confirms that it cannot defend its intrusive request on any of the three statutory grounds it offers. None of the three statutes it invokes—the Civil Rights Act of 1960 (CRA), the National Voter Registration Act (NVRA), or the Help America Vote Act (HAVA)—allows DOJ to demand California's full, unredacted state voter registration file.

DOJ's claim under the CRA (Count One) fails as a matter of law because DOJ does not seek "records [or] papers which c[a]me into [the] possession" of California election officials. 52 U.S.C. § 20701. Rather, it seeks California's full, unredacted, statewide voter registration list—a document created by California's own election officials. DOJ has no answer for how this record "came into the possession" of California from some other source. It indisputably did not. DOJ attempts to overcome this statutory hurdle by arguing the list contains *information* that came into the State's possession from voters. But the CRA does not require States to turn over *information* in its possession that came from voters—Congress specifically limited the CRA to require inspection of certain "records" and "papers." Even if DOJ had sought such a record or paper, it still has not complied with the CRA's separate requirement to provide a sufficient basis and purpose for its demand. It has supplied no "basis" for its demand whatsoever, and it *concedes* that the "purpose" for its demand has nothing to do with enforcing any civil rights legislation—a concession that dooms its CRA claim.

As to the NVRA (Count Two), DOJ identifies nothing in the NVRA that provides DOJ with a record-inspection right greater than that held by the general public. And because states plainly may redact sensitive personal information before producing registration records for public inspection—as courts across the country have uniformly held—it follows that states may redact the same personal information before providing the records to DOJ. Put simply, because DOJ has not identified any right to unredacted records, its NVRA claim is legally insufficient to justify its demand for the entire statewide voter registration list.

1

Finally, DOJ's response largely neglects to mention HAVA (Count Three). The reason why is clear: HAVA's text says nothing at all about requiring States to produce documents for inspection to DOJ. Recognizing this, DOJ attempts to recast its HAVA claim as an allegation that California is not following that law's substantive requirements. But that is not the claim DOJ pled in the complaint, *see* Compl. ¶¶ 57–63, and in any event, it has offered no basis to infer that California is not engaged in proper list maintenance procedures.

At bottom, each of DOJ's statutory arguments attempt to force square pegs into round holes to no avail. None of the federal laws DOJ relies on authorize such a gross intrusion into the privacy rights of California voters.

## ARGUMENT

**I.    DOJ fails to state a claim under the CRA.**

**A.    The voter list DOJ seeks is not a record or paper that came into State Defendants' possession.**

DOJ's claim under Title III of the CRA argues that statute authorizes the Attorney General to demand *any* record or paper concerning voter registration in the possession of state election officials. *See, e.g.*, Compl. ¶ 10. But the CRA is much narrower than DOJ argues. Congress required state election officials to grant access in certain circumstances to only those "records and papers which *come into [their] possession* relating to any application, registration, payment of poll tax, or other act requisite to voting in such election." 52 U.S.C. § 20701 (emphasis added). As NAACP-SIREN Intervenors explained, it contradicts the plain language of the statute to suggest that a statewide voter registration list "come[s] into [the State's] possession" because the State itself *created* that record. *See* NAACP-SIREN Mot. at 13–16. Accordingly, an internally generated statewide database like California's voter registration list is not the sort of record or paper governed by Title III. *See id.* at 13; *see also* 52 U.S.C. § 20703 (limiting Attorney General to inspect records or papers "required by section 20701").

2

DOJ offers virtually no response to the CRA's plain text. *See* Opp'n at 10. The sum of its response—which cites no authority at all—is that the statewide voter registration list *contains information* the State receives from voters, thus entitling DOJ to the full, unredacted list. *See id.* (arguing "*information* retained and collected by Defendants" in the voter list comes into California's "possession through voters" (emphasis added)). But that attempted sleight of hand suffers from several problems. To start, the plain language of Title III only grants DOJ access to "papers and records"—not *information*—that comes into the State's possession. The term "information" appears nowhere in Title III. Rather, Congress consistently limited Title III's scope to "records and papers" that come into a State's possession, not any information whatsoever. 52 U.S.C. § 20701; *see also id.* §§ 20702, 20703 (using the term "records and papers"). The statewide voter registration list created by California itself is simply not such a paper or record—a fact that DOJ does not even dispute. Even if the list reflects *information* received from voters, that does not transform it into a *paper or record* that the State "received" or "acquired" from voters. *See* NAACP-SIREN Mot. at 13 (discussing the plain text meaning of "come into possession").

DOJ's argument therefore amounts, at best, to a claim to inspect the underlying "records or papers" used to compile the statewide voter registration list. But it has a problem there too—Congress placed a temporal limitation on the CRA, requiring only that election officials maintain applicable papers and records for twenty-two months. 52 U.S.C. § 20701. So DOJ is, at most, entitled to records or papers maintained during this limited period. It cannot circumvent this temporal restriction by demanding the entire statewide voter registration list, which contains registration information dating far beyond the twenty-two-month period post-dating the most recent federal election. Indeed, the CRA's time-restriction underscores the broader flaw with DOJ's theory—Title III does not permit access to any and all voter registration materials possessed by States. Rather, Congress enacted a calibrated scheme allowing access to certain kinds of records that must be maintained for a limited period. Notwithstanding DOJ's effort

3

to rewrite the statute, courts must "respect . . . Congress's prerogatives as policymaker" which "means carefully attending to the words it chose rather than replacing them with others" that DOJ might wish to be there. *Murphy v. Smith*, 583 U.S. 220, 224 (2018).

At bottom, DOJ's demand for California's full, unredacted statewide voter registration list cannot be squared with the CRA's text. DOJ has no answer for the fact that the phrase "records and papers which come into . . . possession" of state election officials plainly does not encompass records and papers *created* by state election officials. Its request for such materials therefore fails as a matter of law.

### B.   DOJ's demand lacks a proper basis and purpose.

The CRA's text imposes another limitation that DOJ gives short shrift—it requires DOJ to give a "statement of the basis and the purpose" of its demand. But DOJ did not plead any basis for believing California has violated any federal civil rights law—or any federal law, for that matter. *See* NAACP-SIREN Mot. at 17. That immediately distinguishes this case from the authorities DOJ cites, in each of which DOJ provided an explicit statement of "basis" and "purpose" as required by Title III. *See Kennedy v. Lynd*, 306 F.2d 222, 229 n.6 (5th Cir. 1962) (quoting demand letter's basis and purpose); *Kennedy v. Bruce*, 298 F.2d 860, (5th Cir. 1962) (same); *In re Coleman*, 208 F. Supp. 199, 199–200 (S.D. Miss. 1962) (same). DOJ's failure to provide a coherent or consistent "basis" for its intrusive request here is fatal.[1]

In any event, DOJ has also confirmed that it lacks a proper "purpose" for its request. It concedes that the alleged purpose of its demand—to assess California's voter list maintenance—is far removed from the civil rights concerns motivating the CRA's enactment, *see* Opp'n at 9, which further dooms its claim. As DOJ's cited cases show, its Title III authority is limited to pursuing *civil rights investigations*. *See Lynd*, 306 F.2d at 228; *Bruce*, 298 F.2d at 861; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir.

---

[1] DOJ's response to the State's motion to dismiss attempts to manufacture an after-the-fact basis for its request. But, as the State details, DOJ's tardy basis is both implausible and inconsistent with its prior correspondence. *See* State Reply at 3–4.

4

1963); *Ala. ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 851 (M.D. Ala. 1960); *United States v. Ass'n of Citizens Councils of La.*, 187 F. Supp. 846, 847 (W.D. La. 1960). DOJ does not cite any authority for the proposition that Title III may be used in other types of investigations, whether HAVA, NVRA, or otherwise.

DOJ's answer is to read the term "purpose" in a vacuum to mean *any purpose*, even if wholly divorced from the surrounding context of the CRA or civil rights law generally. But "the meaning of a word cannot be determined in isolation," as DOJ urges. *Yates v. United States*, 574 U.S. 528, 537 (2015) (quoting *Deal v. United States*, 508 U.S. 129, 132 (1993)). "It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." *Home Depot U.S.A., Inc. v. Jackson*, 587 U.S. 435, 441 (2019) (quoting *Davis v. Mich. Dep't of Treasury*, 489 U.S. 803, 809 (1989)). Even where a statutory term "standing alone[] is broad," such terms "cannot be construed in a vacuum." *Id.* (quoting *Davis*, 489 U.S. at 809). Rather, "reasonable statutory interpretation must account for both 'the specific context in which . . . language is used' and 'the broader context of the statute as a whole.'" *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302, 321 (2014) (quoting *Robinson v. Shell Oil Co.,* 519 U.S. 337, 341 (1997)); *see also United States v. Mo. Pacific R.R. Co.*, 278 U.S. 269, 278 (1929) ("the reasons for and the significant circumstances leading up to the enactment may be noticed in confirmation of the meaning conveyed by the words used"). That statutory context is particularly critical where courts are asked to determine "whether Congress in fact meant to confer the power the agency has asserted." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022).

These principles require reading the term "purpose" in the specific context of the CRA—a law Congress enacted "to secure a more effective protection of the right to vote." *Gallion*, 187 F. Supp. at 853; *see also* H.R. Rep. No. 86-956, at 7 (1960) (explaining Congress enacted Title III to aid DOJ "during any investigation it may

5

conduct on complaints of a denial to vote because of race").[2] DOJ's reading eschews this essential statutory context, ripping the term "purpose" from its statutory mooring, all in an unfounded effort to claim that the CRA permits blanket inspection of state voter files for any conceivable purpose. This Court should reject such an unprecedented effort, which would dramatically expand the carefully calibrated inspection authority Congress granted DOJ through the CRA and grossly intrude upon a matter the Constitution assigns to the States.

## II. DOJ fails to state a claim under the NVRA.

DOJ's argument under the NVRA again conflicts with the plain language of the statute. The NVRA provides only for "public inspection" of documents, 52 U.S.C. § 20507(i)(1), which necessarily contemplates the redaction of sensitive personal information that is inappropriate for public viewing. DOJ does not advance any argument that the public has an NVRA right to inspect the driver's license numbers, social security numbers, and full dates of birth of all registered voters in California. Instead, DOJ argues that the NVRA contains an implicit authorization for special *private inspection* of records by the Attorney General. It does not.

*First*, DOJ proposes that redaction cannot be warranted because the NVRA does not mention redaction. Opp'n at 11. But as Intervenors already explained, this has it backwards; courts have recognized that "nothing in the text of the NVRA *prohibits* the appropriate redaction" of sensitive information, particularly where state law explicitly protects such information from public disclosure. *Pub. Int. Legal Found., Inc. v. Bellows*, 92 F.4th 36, 56 (1st Cir. 2024) (emphasis added). Notably, the NVRA provides that the records subject to disclosure "shall include lists of the *names* and *addresses* of all persons to whom [certain state notices] are sent, and information concerning *whether*

---

[2] DOJ argues that is improper to rely upon the CRA's legislative history, Opp'n at 9, yet does just that in its response to the State's motion to dismiss. Opp'n to State Mot. at 10 (quoting "one of the principal spokesmen for the bill"). In any event, the Court does not need to rely upon legislative history here—statutory context is enough.

*or not each such person has responded to the notice* as of the date that inspection of the records is made." 52 U.S.C. § 20507(i)(2) (emphasis added). Because the NVRA does not even require state voter files to include birthdates, driver's license numbers, or social security digits in the records subject to inspection, it cannot compel the production of these fields.

*Second*, DOJ suggests that its demand is warranted by the NVRA's requirement that each state "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters." Opp'n at 11 (quoting 52 U.S.C § 20507(a)(4)). But DOJ lacks any authority connecting that general instruction to a right held by it or the public to access sensitive personal information. And whether the federal government has an interest in enforcing the federal ban on non-citizen voting, *see id.*, is irrelevant—DOJ still requires (and still lacks) statutory authorization to pursue that interest by accessing California's data.

*Third*, DOJ trumpets the voluntary decision of some states to share voter data through the Electronic Registration Information Center ("ERIC"). *Id.* at 11–12. But a state's *voluntary* action does not enlarge the NVRA's *mandatory* public inspection rules. In any event, California does not participate in ERIC, further corroborating its treatment of voter data as highly sensitive. Even if it did, ERIC guarantees limited access to and careful handling of voter data that DOJ has not matched.[3]

Next, DOJ tries unsuccessfully to distinguish the extensive and uniform authority holding that the NVRA permits sensible redaction of information made available for public inspection. *See id.* at 12–16. It is no distinction, for example, that the record-requesters in various cases permitting redaction were members of the general public because, again, the NVRA speaks only of "public inspection," with no separate or privileged procedures for inspection by the federal government. 52 U.S.C. § 20507(i)(1). While it is true that *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 734–

---

[3] *See* Tech. & Security Overview, ERIC, https://ericstates.org/security.

7

35 (S.D. Miss. 2014), and *Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1344 (N.D. Ga. 2016), recognized in passing that *the CRA* authorizes inspection by the Attorney General in certain circumstances, those circumstances do not exist here, as explained above, *supra* § I.[4] And DOJ cites *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697 (E.D. Va. 2010), *aff'd*, 682 F.3d 331 (4th Cir. 2012), for the proposition that the *entirety* of a state's voter registration records need not be kept confidential, Opp'n at 14 (citing 752 F. Supp. 2d at 710), but no party has argued otherwise. The issue is whether *some* especially sensitive voter registration fields may be kept confidential by state election officials. *Project Vote* confirmed that they may. *See* 752 F. Supp. 2d at 712.

Finally, DOJ argues that the NVRA preempts California law. *See* Opp'n at 16–18. But as the State explained in its motion to dismiss, there is no conflict between California's privacy protections and the NVRA. *See* State Mot. Dismiss at 14–16, ECF No. 37-1. DOJ never responded to those arguments in its opposition to the State's motion, as the State noted in its reply brief. *See* State Reply in Supp. of Mot. Dismiss at 6, ECF No. 78. DOJ's response to the Intervenors' motion repeats that omission, failing to explain how California's privacy protections are irreconcilable with the NVRA's limited public inspection rules. Indeed, beyond a boilerplate explication of preemption principles, DOJ fails to offer *any* analysis about whether Congress meant to displace state privacy laws—like California's—when enacting the NVRA. Because state privacy laws and the NVRA can and do operate harmoniously—as extensive authority permitting redaction under the NVRA confirms, *see* NAACP-SIREN Mot. at 9–10 (collecting authority)—there is no preemption.

---

[4] DOJ misleadingly represents that *Kemp* read the NVRA to vest the Attorney General with enhanced enforcement rights. *See* Opp'n at 13 (citing *Kemp*, 208 F. Supp. 3d at 1326). *Kemp* rightly noted that the NVRA "provides two coequal enforcement methods." 208 F. Supp. 3d at 1326. Without further comment, the court then identified the Attorney General's enforcement right (which DOJ cites) and the private right of action (which DOJ ignores). There is no basis to read *Kemp* as suggesting the Attorney General has special enforcement rights under the NVRA—and thus no reason to aggrandize her record inspection rights—relative to those held by the general public.

8

### III. DOJ fails to state a claim under HAVA.

DOJ fails to offer any response to NAACP-SIREN Intervenors' motion to dismiss the HAVA claim (Count Three)—purporting to merely incorporate by reference "all arguments" in its opposition to the State's motion. Opp'n at 8. Nothing in either of DOJ's briefs shore up this claim.

*First*, recognizing that there is literally nothing in the text of HAVA that permits DOJ to bring a claim to compel a State to "provide . . . all fields" of its "unredacted" voter registration list, DOJ attempts to improperly convert the claim it pleaded into a claim alleging a substantive HAVA violation. *See* Opp'n to State Mot. at 19–20 (arguing that DOJ plausibly alleged that California's "list maintenance program is inconsistent with the reasonable efforts required by HAVA" (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))). But that cannot be squared with the Complaint, which alleges only that California violated HAVA *by failing to turn over its unredacted voter list*, and accordingly requests relief in the form of an order compelling production of that list to DOJ. Compl. ¶¶ 60-62 & Prayer for Relief; *see, e.g., AK Futures v. LCF Labs*, No. 8:21-cv-02121, 2022 WL 2784409, at *5 (C.D. Cal. June 24, 2022) (explaining that the Federal Rules do not permit a plaintiff to amend pleadings in "briefs filed . . . in opposition to a defendant's motion to dismiss" (quoting *Schneider v. Cal. Dep't of Corrs.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998))). In other words, the Complaint alleges California is violating a non-existent disclosure requirement in HAVA; *not* that it is falling short of its substantive obligations under HAVA. Indeed, the Complaint—the allegations of which must be taken as true, as DOJ itself insists—states that DOJ is *unable* to determine whether the State complies with the substantive provisions of HAVA at all. Compl. ¶ 60. The Court should not countenance DOJ's attempted rewrite of its HAVA claim. *Schneider*, 151 F.3d at 1197 n.1.[5]

---

[5] DOJ's claim that it is entitled to the final relief it seeks in this case—California's full and unredacted voter lists, *see* Opp'n to State Mot. at 13, as part of discovery for its purported substantive HAVA claim—fails for the same reasons.

9

*Second*, even if DOJ could shoehorn a substantive HAVA list-maintenance claim into Count Three, the allegations do not come close to plausibly alleging that California is violating its obligations under HAVA. *Contra* Opp'n to State Mot. at 19–20. DOJ references so-called "anomalies" in the State's voter registration data—specifically, "duplicate registrations," a lag in the removal of deceased voters, and swings in the number of "inactive voters." Opp'n to State Mot. at 20 (internally referencing pages 12-13). But the NVRA—not HAVA—governs states' responsibility to remove ineligible names from voter rolls. *See* Compl. ¶ 62 (citing 52 U.S.C. § 21083); *see also Gonzalez v. Arizona*, 677 F.3d 383, 402 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. ITCA*, 570 U.S. 1 (2013) (explaining "the NVRA regulates voter registration, whereas HAVA is concerned with updating election technologies and other election-day issues at polling places"); *Bellitto v. Snipes*, 935 F.3d 1192, 1202 (11th Cir. 2019) ("Nothing in HAVA broadens the scope of the NVRA's list-maintenance obligations."). And, even as to the NVRA, lags in the removal of individuals in any given jurisdiction fail to raise any inference of wrongdoing—Congress expressly contemplated that not all potentially ineligible voters would be immediately removed from the rolls in its carefully "crafted" compromise of "limit[ing] purging efforts . . . while at the same time ensuring that voter rolls remain accurate." *Bellitto*, 935 F.3d at 1201; *see also RNC v. Benson*, 754 F. Supp. 3d 773, 791 (W.D. Mich. 2024) (dismissing NVRA claim premised solely upon allegedly high registration rates where plaintiff did not allege any "breakdown" in state's removal program), *aff'd,* No. 24-1985, 2025 WL 2731704 (6th Cir. Sept. 25, 2025). DOJ never explains how its allegations plausibly allege that California is violating the substantive requirements of HAVA, nor how or why HAVA requires the state to turn over its full and unredacted voter rolls. Count Three should thus be dismissed.

## CONCLUSION

NAACP-SIREN Intervenors request that this Court grant their Motion to Dismiss.

|  |  |
|---|---|
| Dated: December 1, 2025 | Respectfully submitted,<br>*/s/ Lalitha D. Madduri*<br>Lalitha D. Madduri (CA Bar No. 301236)<br>Jacob D. Shelly* (DC Bar No. 90010127)<br>Christopher D. Dodge* (DC Bar No. 90011587)<br>**ELIAS LAW GROUP LLP**<br>250 Massachusetts Ave. NW, Suite 400<br>Washington, DC 20001<br>T: (202) 968-4652<br>F: (202) 968-4498<br>lmadduri@elias.law<br>jshelly@elias.law<br>cdodge@elias.law<br><br>Tyler L. Bishop (CA Bar No. 337546)<br>Walker McKusick* (WA Bar No. 63205)<br>**ELIAS LAW GROUP LLP**<br>1700 Seventh Avenue, Suite 2100<br>Seattle, WA 98101<br>T: (206) 656-0177<br>tbishop@elias.law<br>wmckusick@elias.law<br><br>Omar Qureshi (CA Bar No. 323493)<br>Max Schoening (CA Bar No. 324643)<br>**QURESHI LAW PC**<br>700 Flower Street, Suite 1000<br>Los Angeles, CA 90017<br>T: (213) 600-6096<br>omar@qureshi.law<br>max@qureshi.law<br><br>*Counsel for Proposed Intervenor-Defendants NAACP; NAACP California-Hawaii State Conference; and Services,* |

11

*and Immigrant Rights and Education Network*
*\* Admitted pro hac vice*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Proposed Intervenor-Defendants NAACP, NAACP-CA/HI, and SIREN certifies that the foregoing reply complies with the type-volume limitation of Local Rule 11-6.1.

Dated: December 1, 2025                /s / *Lalitha D. Madduri*
                                       Lalitha D. Madduri