**SHIRLEY N. WEBER, Ph.D.** | SECRETARY OF STATE | STATE OF CALIFORNIA

LEGAL AFFAIRS OFFICE

1500 11th Street | Sacramento, CA 95814 | 916.695-1242 | www.sos.ca.gov

September 12, 2025

<u>Via Mail and Email</u>

Harmeet K. Dhillon, Assistant Attorney General
Michael E. Gates, Deputy Assistant Attorney General
Maureen S. Riordan, Acting Chief, Voting Section
Civil Rights Division
United States Department of Justice
950 Pennsylvania Ave. NW-4CON
Washington, DC 20530
Michael.Gates2@usdoj.gov
Maureen.Riordan2@usdoj.gov

Dear Ms. Dhillon, Mr. Gates, and Ms. Riordan:

This letter responds to the outstanding requests from your letters dated July 10 and August 13, 2025.  It also supplements the response I provided in my August 8, 2025, letter.

Your July 10 letter requested that I provide "a description of the steps that you have taken, and when those steps were taken, to ensure that the state's list maintenance program has been properly carried out in full compliance with the NVRA," including "both the actions taken by California officials as well as county officials."  The letter also requested "a list of the election officials who are responsible for implementing California's general program of voter registration list maintenance from November 2022 through receipt of this letter" and posed six questions, five of which concerned the U.S. Election Assistance Commission's 2024 Election Administration and Voting Survey (EAVS).  On August 8, I responded to questions two and five by producing documents responsive to those questions.  On August 29, I responded to your request for "a list of the election officials who are responsible for implementing California's general program of voter registration list maintenance from November 2022 through receipt of this letter."

On August 13, I received another letter from your office requesting, among other things, that I "provide all original and completed voter registration applications submitted to the State of California from December 1, 2023, through July 1, 2025."

Below are my responses to the U.S. Department of Justice's (DOJ) outstanding request.

I. **California's List Maintenance Program**

California has established a comprehensive list maintenance program that draws from multiple sources of data to identify voter registrations that may need updating or canceling while protecting eligible voters' access to the ballot. This list maintenance complies with every requirement of the NVRA.

Under California's system for administering elections, each county has primary responsibility for carrying out its list maintenance practices in accordance with California and federal law. California law requires counties to engage in numerous list maintenance activities, as detailed below. My office has also issued detailed written guidance and conducted in-person and webinar trainings for county elections officials on various list maintenance subjects, including six trainings since 2022.[1] Together, these California laws and the related guidance and training offered by my office constitute a general program that makes a reasonable effort to maintain accurate lists of eligible voters, and thus comports fully with Section 8(a)(4) of the NVRA.

As you know, the NVRA does not mandate that a State follow any particular method of identifying ineligible voters when it conducts its general program to make a reasonable effort to remove the names of ineligible voters from its rolls. In California, elections officials must follow the procedures for confirming registrants' addresses set forth in sections 2220 through 2226 of the Elections Code. These procedures are described in detail in Chapter 4 of California's NVRA Manual, entitled "Voter Registration Applications and Voter List Maintenance," which was linked in my August 8 letter, and again here: https://elections.cdn.sos.ca.gov/nvra/nvra-manual/chap-4.pdf. These procedures include:

- Sending voter notification cards to notify voters that they are registered and confirm the voters' address and information (Cal. Elec. Code §§ 2155, 2155.3);
- Confirming voters' residence prior to elections with pre-election residency confirmation postcards (Cal. Elec. Code § 2220) or an alternative procedure, such as:
    - the use of national change-of-address data from the U.S. Postal Service (Cal. Elec. Code § 2222);
    - the mailing of county voter information guides with address correction requests (Cal. Elec. Code § 2223); or
    - obtaining change-of-address data from a consumer credit reporting agency (Cal. Elec. Code § 2227);
- Sending address confirmation notices in response to information indicating that a registrant has moved (Cal. Elec. Code §§ 2155, 2225, 2226);

---

[1] Here is a limited sample of the materials my office generates as guidance and training materials: (1) VoteCal Guidance Documents (https://www.sos.ca.gov/elections/voter-registration/votecal-project/votecal-guidance-documents); (2) Training Resources for County Elections Officials (https://www.sos.ca.gov/elections/voter-registration/votecal-project/votecal-guidance-documents); and (3) General Publications and Resources (https://www.sos.ca.gov/elections/publications-and-resources).

- Intra- or inter-county transfer of voter registrations, when appropriate (Cal. Elec. Code § 2155);
- Placing voter registration records on inactive status, when appropriate (Cal. Elec. Code §§ 2221, 2225); and
- Canceling voter registrations when all requirements of Section 8(d) of the NVRA (52 U.S.C. § 20507(d)(2)) have been satisfied (Cal. Elec. Code §§ 2225, 2226).

As required by California law, county elections officials check new and updated registrations against a number of data points to determine their accuracy. This process includes steps to reconcile voter-to-voter duplicates, as discussed more fully in response to question two below. Voter registration records are also reviewed and updated regularly based on data from the California Department of Corrections and Rehabilitation (CDCR), California Department of Public Health (CDPH), Department of Motor Vehicles (DMV), and Employment Development Department (EDD). The process for canceling voter registrations due to death is also further discussed below in response to question three.

With respect to changes of address, my office provides the full voter registration database to the EDD on a monthly basis to compare against its National Change of Address (NCOA) database. EDD is the sole licensed provider of the NCOA database for the State. In return, EDD marks the voters that may have moved and provides this data to my office, which is processed into VoteCal, the federally mandated and compliant statewide voter registration database. Notices of potential address changes are then sent to county election officials for final determination. My office also receives daily change of address notifications from the DMV from registrants who update their address records with DMV about changes of address made at DMV. VoteCal identifies potential changes of address and automatically sends notices to county election officials for final determination.

In its recent correspondence, your office has cited its authority to enforce the NVRA in connection with its document and data requests. However, your office has not identified any aspect of California's list maintenance program that fails to comply with the NVRA, nor is there any basis for such an allegation. California's robust list maintenance program fully complies with the requirements of federal law.

**II.   Response to Specific Inquires**

This section responds to the six questions raised in your July 10 letter, including supplementing the responses I provided in response to questions two and five in my August 8 letter.

    a. *Question 1 – EAVS Question A3d*

Question one from your July 10 letter states:

> In the EAVS data for Question A3d, California had 2,178,551 voters (15.6 percent) with duplicate registrations. However, seven counties failed to provide

> data regarding duplicate registrations. Please provide a list of all duplicate registration records in Imperial, Los Angeles, Napa, Nevada, San Bernardino, Siskiyou, and Stanislaus counties.

As an initial matter, Napa responded to EAVS Question A3d with 9,760. The remaining six counties responded with "data not available."

As the EAC makes clear in their guidance on completing the survey, "[i]f your state or jurisdiction does not track data for an item, then you may select 'Data not available' as your response. There are instructions throughout the survey that provide helpful advice and examples for when to use the 'Does not apply' and 'Data not available' responses." *Guide to Using the Data Collection Templates*, 2024 Election Administration and Voting Survey (Nov. 5, 2024), available at https://eavsportal.com/Downloads/2024/2024%20EAVS%20Data%20Template%20User%20Guide.pdf. Accordingly, I understand that these six counties did not provide data in response to these questions because they did not track that information during the EAVS reporting period.

    b. *Question 2 – EAVS Question A12h*

Question two from your July 10 letter stated:

> No data was listed in the EAVS survey for Question A12h for California regarding duplicate registrants who were removed from the statewide voter registration database. Please provide a list of all duplicate registrants who were removed from the statewide voter registration list including the date(s) of removal. If they were merged or linked with another record, please provide that information. Please explain California's process for determining duplicates and what happens to the duplicate registrations.

In my August 8 letter, my office produced various documents that were responsive to your question regarding duplicates. As those documents reflect, California has no list of duplicate registrants that were removed because all duplicates were merged. California provided this information in response to Question 21 of the EAC's 2024 Election Administration Policy Survey. This practice of merging duplicates is consistent with almost three quarters of the Nation's states, as found in the 2024 EAVS Comprehensive Report (EAVS Report). EAVS Report, at 154 ("In response to a 2024 Policy Survey item that covered this topic, 73.2% of states reported merging records when a duplicate is found in their system.").

The merging process occurs as follows: VoteCal, California's federally compliant statewide voter registration database, automatically runs voter-to-voter duplicate checks on new registrations and updates to existing voter registrations. If a potential match (for example, the same registrant, registered twice with different addresses) is determined, VoteCal notifies relevant county elections officials for a potential match final determination. If the county elections official determines that the records are a match based upon a variety of data points, the

records are merged, and the most recent information is applied to the voter's record. These steps are outlined in Section 2.2 in the Guidance: EMS Messages linked in my August 8 letter.

### c. Question 3 – EAVS Question QA12c

Question three from your July 10 letter stated:

> In the EAVS data for Question QA12c, California had 378,349 voters (11.9 percent) removed because of death, which was well below the national average. Please provide a list of all registrations that were canceled because of death. Please explain California's process for determining who is deceased and removing them from the voter roll and when that occurs.

As required by California law, county elections official must cancel a voter's registration record upon their death. Cal. Elec. Code §§ 2201(a)(5), 2205. This requirement is implemented through our VoteCal database. My office receives a weekly data file from CDPH, which is processed through VoteCal and generates "Potential Deceased Match" messages. These messages are then automatically sent to the county's Election Management System (EMS) where the potential deceased voter's record resides.

Upon receipt of the "Potential Deceased Match" message, the county must review the voter record and the associated deceased record and compare date of birth, name, and any other information included to help verify a match. If the county verifies the match, a new EMS message, "Deceased to Voter Pre-Cancellation," is sent to the county to start the pre-cancellation process. This process requires county elections officials to notify the possibly deceased individuals 15 to 30 days before canceling their registration. That action triggers VoteCal to send another message to the EMS, "Deceased Voter Cancellation." If no response is received within 15 days of sending the pre-cancellation notice, the county must respond to the "Deceased Voter Cancellation" message on or after the 16th day of the pre-cancellation period and confirm the cancellation.

In regard to your request for a list of all registrations that were canceled due to death, my office can make this list available for public inspection, consistent with Section 8(i) of the NVRA, at my office during regular business hours whenever DOJ makes an appointment.

### d. Question 4 – EAVS Questions A10a-A10f

Question four from your July 10 letter stated: "Confirmation Notice data was missing in the EAVS survey for Questions A10a through A10f for several counties in California. Please provide the data for each county in California for Questions A10a through A10f."

Twelve counties answered "data not available" or "valid skip" in response to A10a through A10f. These questions concern specific data related to confirmation notices mailed to registered voters, such as whether a notice was returned along with the specific reason it was returned.

As the EAC makes clear in their guidance on completing the survey, "[i]f your state or jurisdiction does not track data for an item, then you may select 'Data not available' as your response. There are instructions throughout the survey that provide helpful advice and examples for when to use the 'Does not apply' and 'Data not available' responses." *Guide to Using the Data Collection Templates*, 2024 Election Administration and Voting Survey (Nov. 5, 2024), available at https://eavsportal.com/Downloads/2024/2024%20EAVS%20Data%20Template%20User%20Guide.pdf. Accordingly, I understand that these 12 counties did not provide data in response to these questions because they did not track that information during the EAVS reporting period.

    e. *Question 5 – EAVS Report Change In Inactive Voters*

Question five from your July 10 letter stated that "[t]he 2022 EAVS report contained 4,984,314 inactive voters, while the 2024 report contained 2,883,995. Please explain the reason for the change in the number of inactive registrations for these years."

In my August 8 letter, my office produced various documents that were responsive to your question regarding the change in the number of inactive registrations between the 2022 EAVS report and the 2024 EAVS report.

A change in the number of inactive voters may have various causes, including increased participation in elections resulting in voters being removed from the inactive list, reregistration by voters with updated address information, or the cancellation of previously-inactive registrations. Additionally, another possible explanation is that the decrease in the number of inactive voters between 2022 and 2024 resulted from amendments to state law made to conform to the United States Supreme Court's 2018 decision regarding the cancellation of voter registrations under the NVRA, *Husted v. A. Philip Randolph Inst.*, 584 U.S. 756 (2018).

As you know, the NVRA prohibits canceling a voter's registration for failing to vote but allows removal if a registrant has changed residences, albeit only after a qualifying notice has been sent and certain conditions are thereafter satisfied. 52 U.S.C. § 20507(b)(2), (d)(1)(B). A qualifying notice can be sent in response to information indicating that the registrant has moved out of state or has moved and left no forwarding address. Cal. Elec. Code §§ 2221(a)(1), 2225(c). In addition, the voter registration status for these registrants is updated to inactive. Cal. Elec. Code §§ 2221(a)(1), 2225(f). At that point, if an inactive registrant fails to return the address confirmation notice, does not offer or appear to vote in any election within the next two federal general election cycles following the mailing of that notice, and does not notify a county elections official of continued residency within California, the county elections official must cancel the voter's registration record. Elec. Code §§ 2225(c), 2226(b); 52 U.S.C. §§ 21083(a)(4)(A), 20507(a)(4), (d)(3); *Husted*, 584 U.S. at 767. These procedures, codified in Elections Code sections 2222 through 2226, are described in greater detail in the previously

mentioned Chapter 4 of California's NVRA Manual, entitled "Voter Registration Applications and Voter List Maintenance."

Previously, Elections Code section 2226 was permissive, allowing—but not requiring—removal once section 8(d)(1)(B) requirements had been met. This reflects the California Legislature's prior understanding that such removals were permitted, but not mandatory, under the NVRA. In *Husted*, the Supreme Court clarified that cancellation is mandatory under federal law. 584 U.S. at 767. As of January 1, 2020, Elections Code section 2226, as amended, requires the cancellation of registrations once all section 8(d)(1)(B) prerequisites have been satisfied. Cal Stats. 2019, ch. 262, § 6. Thus, the difference in inactive voters between the 2022 and 2024 EAVS may reflect an increase in removal of inactive voters pursuant to changes in state law to comply with the United States Supreme Court's *Husted* decision.

  f. *Question 6 – Non-Citizenship Cancellations*

Question six from your July 10 letter requested "[a] list of all registrations, including date of birth, driver's license number, and last four digits of Social Security Number, that were canceled due to non-citizenship of the registrant."

Under California law, local elections officials shall cancel a voter's registration "[u]pon proof that the person is otherwise ineligible to vote." Cal. Elec. Code § 2201(a)(8). VoteCal does not track whether a cancellation of a registrant's record by county elections officials was specifically due to their finding that the registrant was not a citizen. Accordingly, my office has no responsive records to this request.

### III. DOJ Has Not Established Its Legal Authority to Request All Original and Completed Voter Registration Applications

In your August 13 letter, you requested that I "provide all original and completed voter registration applications submitted to the State of California from December 1, 2023, through July 1, 2025, to the Justice Department by September 12, 2025." Your letter does not identify any authority for this sweeping request. To the extent you are relying on the Civil Rights Act of 1960 (CRA), that statute fails to support this request.

To make a valid request, the CRA requires that the Attorney General provide "a statement of the basis and the purpose" of the demand. 52 U.S.C. § 20703. The only asserted *purpose* in your August 13 letter is "to assist in [DOJ's] determination of whether California's list maintenance program complies with the NVRA." But evaluating California's compliance with the NVRA's requirement that each State conduct a general program that makes a reasonable effort at removing ineligible voters due to a change in address or death is far afield from the CRA's aim. The CRA was enacted to facilitate civil rights investigations related to the denial of the right to vote, but you readily admit that you are not seeking voter registration applications for this reason. You have also failed to state any *basis* for your demand. And you have not identified any suspected violation of the NVRA or HAVA, much less one to which the requested voter

registration applications would be relevant. No legitimate purpose is apparent for this burdensome and voluminous request. Accordingly, your purported reliance on the CRA does not establish the legal authority to demand the requested voter registration records, and my office will not be making them available for your inspection.

Your request for further documents containing sensitive information of Californians suggests that your aim is to create a system of records of California voters, which is subject to the Privacy Act of 1974. I note that your office still has not answered the questions that I posed in my August 21 letter to ensure that DOJ is following federal law and that the data of California voters receives the full protections entitled by law.

In addition, it appears that your request for voter registration applications (and for the California voter file) is governed by the e-Government Act of 2002, which requires the DOJ to complete a privacy impact assessment prior to collecting this type of information about individuals. *See* Pub. L. 107-347, 116 Stat. 2899, § 208. If you contend that your request complies with this Act, please explain the basis for that position.

As California's Chief Elections Officer, I am committed to complying with both state and federal law to ensure that eligible voters' rights to register and vote are protected. Hopefully, the thorough explanation of our list maintenance practices and detailed responses to your questions provided in this letter assuage any concerns your office may have about California's list maintenance program.

Respectfully,

/s/ Shirley N. Weber

Shirley N. Weber, Ph.D.
California Secretary of State