HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division

MAUREEN RIORDAN
Acting Chief, Voting Section
Civil Rights Division

BRITTANY E. BENNETT
ERIC NEFF
Trial Attorneys, Voting Section
Civil Rights Division

U.S. Department of Justice
4 Constitution Square
150 M Street, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: Brittany.Bennett@usdoj.gov

Attorneys for Plaintiff, UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>Plaintiff,<br><br>v.<br><br>SHIRLEY WEBER, in her official capacity as Secretary of State of the State of California, and the STATE OF CALIFORNIA,<br><br>Defendant(s). | CASE NO: 2:25-cv-09149<br><br>MEMORANDUM IN SUPPORT OF THE REQUEST FOR ORDER TO PRODUCE RECORDS PURSUANT TO 52 U.S.C. § 20701, *et seq*. |

**MEMORANDUM OF LAW**

## **TABLE OF CONTENTS**

I.    INTRODUCTION ...............................................................................5

II.   BACKGROUND ................................................................................6

  A.  Title III of the Civil Rights Act of 1960....................................6

  B.  The United States Seeks to Ensure California Is Complying with Federal Law……………………………………………..……8

III.  ARGUMENT…………………………………………………….11

  A. An Order to Produce Under the CRA Is Warranted……………...11

  B. A State's Claims to Protecting Privacy Interests Are Not a Basis to Withhold the Information Requested…………………………….14

  C. An Order to Produce is Appropriate, Necessary, and Grounded in Law……………………………………………………………...15

IV.   CONCLUSION……………………………………………………...17

# TABLE OF AUTHORITIES

**Cases**

*Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848 (M.D. Ala. 1960)……………………………………………………………………………6, 12

*Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013)…………………14

*Coleman v. Kennedy*, 313 F.2d 867 (5th Cir. 1963)…………………………..5, 8, 14

*Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025) ……………………………………………………………..14

*Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961)………………………..6

*Gonzalez v. Arizona*, 677 F.3d 383 (9th Cir. 2012)……………………………14, 15

*In re Gordon*, 218 F. Supp. 826 (S.D. Miss. 1963)……………………………..7, 17

*Kennedy v. Bruce*, 298 F.2d 860 (5th Cir. 1962)……………………………………7

*Kennedy v. Lynd*, 306 F.2d 222 (5th Cir. 1962)………………………………passim

*Smith v. City of Jackson*, 544 U.S. 228 (2005)……………………………………16

**Statutes**

52 U.S.C. § 20701………………………………………………………………passim

52 U.S.C. § 20703………………………………………………………………passim

52 U.S.C. § 20704…………………………………………………………………...10

52 U.S.C. § 20501……..…………………………………………………………......8

52 U.S.C. § 20507…………………………………………………………..8, 13, 15

52 U.S.C. § 21083………………………………………………………………passim

5 U.S.C. § 522a……………………………………………………………………10

## I. INTRODUCTION

Section 301 of Title III of the Civil Rights Act of 1960 ("CRA") imposes a "sweeping" obligation on election officials, *Kennedy v. Lynd*, 306 F.2d 222, 226 (5th Cir. 1962).[1] It provides, "Every officer of election shall retain and preserve, for a period of twenty-two months from the date of [a federal election] *all* records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such election…" 52 U.S.C. § 20701 (transferred from 42 U.S.C. § 1974)) (emphasis added).

Section 303 provides the Attorney General of the United States a correspondingly sweeping power to obtain Federal election records: "Any record or paper required by [52 U.S.C. § 20701] to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying … by the Attorney General or [her] representative…." 52 U.S.C. § 20703. The written demand need only "contain a statement of the basis and the purpose therefor." *Id.*; *Coleman v. Kennedy*, 313 F.2d 867, 868 (5th Cir. 1963) (per curiam).

On August 13, 2025, the Attorney General, through her representative, made a written demand to Secretary Weber to produce certain Federal election records covered by the CRA. *See* Compl. at ¶¶ 38-42, ECF 1. That written demand, which followed an earlier letter,[2] explained that the purpose was for enforcement of the list maintenance requirements of the National Voter Registration Act ("NVRA") and the

---

[1] Caselaw addressing the CRA in any depth is confined to courts within the Fifth Circuit in the early years following the CRA's enactment. Since then, courts have not had occasion to revisit the issue. The United States is unaware of any courts disagreeing with the Fifth Circuit's approach to the CRA.

[2] *See* Section II.B., *infra*, for discussion of the previous letter.

Help America Vote Act ("HAVA"). *Id.* Secretary Weber refused to produce the requested Federal election records. *Id.* at ¶¶ 43-44. This litigation followed. *Id.* at ¶ 45.

Pursuant to Section 305 of the CRA, the United States moves for an order requiring Secretary Weber and California to produce the Federal election records identified in the written demand. *See Alabama ex rel. Gallion v. Rogers*, 187 F. Supp. 848, 855-56 (M.D. Ala. 1960), *aff'd and adopted in full sub nom. Dinkens v. Attorney General*, 285 F.2d 430 (5th Cir. 1961) (per curiam). The CRA displaces the Federal Rules of Civil Procedure by creating a "special statutory proceeding." *Lynd*, 306 F.2d at 225. "All that is required is a simple statement by the Attorney General" after making a written demand for Federal election records and papers covered by the statute, explaining that the person against whom an order is sought has failed or refused to make the requested records "'available for inspection, reproduction, and copying…'" *Id.* at 226 (quoting 52 U.S.C. § 20703). The United States has satisfied those requirements. Accordingly, the United States respectfully requests that the Court issue an order requiring Defendants to produce the Federal election records described in its written demand.

## II.   BACKGROUND

### A.   Title III of the Civil Rights Act of 1960.

Under Section 301 of the CRA, every "officer of election" must "retain and preserve … all records and papers which come into his possession relating to any … act requisite to voting in [a Federal] election" for a period of twenty-two months from that election, 52 U.S.C. § 20701. Section 303 of the CRA provides, "Any record or paper required by section 301 to be retained and preserved shall, upon demand in writing by the Attorney General or [her] representative directed to the person having custody, possession, or control of such record or paper, be made available for inspection, reproduction, and copying at the principal office of such custodian by the

Attorney General or [her] representative….” 52 U.S.C. § 20703. The written demand "shall contain a statement of the basis and the purpose therefor." *Id.*

If an officer of election refuses to comply with the CRA's command, the Act requires "a special statutory proceeding in which the courts play a limited, albeit vital, role" in assisting the Attorney General's investigative powers. *Lynd*, 306 F.2d at 225. The Attorney General or her representative may request a Federal court to issue an order directing the officer of election to produce the demanded records, akin to "a traditional order to show cause, or to produce in aid of an order of an administrative agency." *Id.*

The special proceeding is "summary" in "nature" and neither "plenary [n]or adversary." *In re Gordon*, 218 F. Supp. 826, 826-27 (S.D. Miss. 1963); *see Kennedy v. Bruce*, 298 F.2d 860, 863 (5th Cir. 1962) (noting that this procedure "does not amount to the filing of a suit of any kind"). "All that is required is a simple statement by the Attorney General that after a … written demand" for Federal election records covered by Section 301 of the CRA (52 U.S.C. § 20701), "the person against whom an order for production is sought … has failed or refused to make such papers 'available for inspection, reproduction, and copying ….'" *Lynd*, 306 F.2d at 226 (quoting 52 U.S.C. § 20703). The court does not entertain "any other procedural device or maneuver—either before or during any hearing of the application—to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand." *Id.* (quoting 52 U.S.C. § 20703). Rather, "[t]he Court, with expedition, should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.*

Those matters, though, are "severely limited." *Id.* The court may adjudicate only: (1) "whether the written demand has been made"; and (2) "whether the custodians against whom orders are sought have been given reasonable notice of the

7

*United States of America v. Shirley Weber, et al.*
Motion to Compel Production

pendency of the proceeding." *Id.* Neither "the factual foundation for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose' contained in the written demand" nor "the scope of the order to produce" is open for review. *Id.*; *see Coleman*, 313 F.2d at 868. As the Fifth Circuit has explained, "No showing even of a prima facie case of a violation of Federal law need be made." *Id.* (citation omitted). Instead, "[i]f, after issuance of an order to produce, a genuine dispute subsequently arises as to whether or not any specified particular paper or record comes within [52 U.S.C. § 20701's] broad statutory classification," that issue may be decided by the court. *Lynd*, 306 F.2d at 226.

### B. The Attorney General is compelling Federal election records under the CRA to assess California's NVRA and HAVA compliance.

On July 10, 2025, the Attorney General, acting through her representatives at the Department of Justice ("Department"), sent a letter to Secretary Weber, an officer of election, regarding California's compliance with Federal list maintenance requirements. Ex. 1, Dep't Ltr. to Sec'y Weber dated July 10, 2025 ("July 10 Letter"). The NVRA and HAVA have list maintenance requirements "to protect the integrity of the electoral process." 52 U.S.C. § 20501(b)(3). The statutes impose certain recordkeeping duties and require reasonable efforts to maintain lists of eligible voters for Federal elections. *See* 52 U.S.C. §§ 20507(a)(4)(A)-(B), 20507(i)(1), 21083(a)(1)(A). The U.S. Election Assistance Commission's biennial Election Administration and Voting Survey ("EAVS") report released in June 2025 ("2024 EAVS Report") revealed several anomalies in California's voter registration data that are inconsistent with reasonable list maintenance efforts. *See* Compl. ¶¶ 32-34, ECF 1 (summarizing California's responses). The Department requested information regarding those responses. *See* Ex. 1, July 10 Letter.

The July 10 Letter requested, among other information and documents, a list of the election officials responsible for implementing California's general program of voter registration list maintenance from November 2022 through receipt of the

1  letter. It also asked for a description of the list maintenance steps taken and when
2  those steps were taken to assess compliance with the NVRA. Finally, pursuant to
3  Section 8(i) of the NVRA, the letter requested a current electronic copy of
4  California's computerized statewide voter registration list ("SVRL"), which is
5  required by HAVA. Ex. 1, July 10 Letter at 1.
6      On July 22, 2025, Defendants answered the July 10 Letter by requesting
7  ninety days to respond. Ex. 2. The Department replied that most of the requested
8  information should be readily available. Ex. 3. Nonetheless, the Department agreed
9  as a professional courtesy to give Secretary Weber until August 29, 2025 to respond
10 to all other requests and records that may not have been readily accessible. *Id.*
11     On August 8, 2025, Secretary Weber sent a letter to the Department refusing
12 to produce the SVRL, stating, "We are unable to comply with your request for an
13 electronic copy of an entirely 'unredacted statewide voter registration list…'
14 California law prohibits making available for public inspection or disclosing
15 electronically an entirely 'unredacted' voter file." Ex. 4, Sec'y Weber Ltr. to the
16 Dep't dated Aug. 8, 2025 at 1. Instead, Secretary Weber wrote that the Department
17 "may inspect a copy of our *redacted* voter registration database during regular
18 business hours by making an appointment with [Secretary Weber's] office. Public
19 inspection satisfies our legal obligations under the NVRA and ensures that this office
20 complies with legal protections for voter registration data under California law." *Id.*
21 at 2 (emphasis added).
22     On August 13, 2025, the Department made a written demand for the Federal
23 election records in California's SVRL pursuant to Section 303 of the CRA. Ex. 5,
24 Dep't Ltr. to Sec'y Weber dated Aug. 13, 2025 ("August 13 Letter"). The demand
25 reiterated that the electronic SVRL must be produced within seven days and contain
26 "*all fields*, which includes either the registrant's full name, date of birth, residential
27 address, his or her state driver's license number or the last four digits of the
28 registrant's social security number as required by HAVA." *Id.* at 3 n.2 (emphasis in

original). It also demanded that Secretary Weber "provide all original and completed voter registration applications submitted to the State of California from December 1, 2023, through July 1, 2025," *id.* at 3, consistent with the CRA's twenty-two month period following each Federal election. *See* 52 U.S.C. § 20701. The August 13 Letter stated the demand was made pursuant to the CRA to assess California's compliance with the list maintenance provisions of the NVRA and HAVA, given the concerns that the Department had outlined in its July 10 Letter.

The Department made clear in the August 13 Letter that the Attorney General and her representatives would comply with Federal privacy laws applicable to the demanded Federal election records. For example, the Department pointed out that in addition to the Privacy Act, the CRA provides:

> Unless otherwise ordered by a court of the United States, neither the Attorney General nor any employee of the Department of Justice, nor any other representative of the Attorney General, shall disclose any record or paper produced pursuant to this chapter, or any reproduction or copy, except to Congress and any committee thereof, governmental agencies, and in the presentation of any case or proceeding before any court or grand jury.

Ex. 5, August 13 Letter at 2–3. (quoting 52 U.S.C. § 20704).

The August 13 Letter further explained, "HAVA specifies that the 'last 4 digits of a social security number . . . shall not be considered a social security number for purposes of section 7 of the Privacy Act of 1974…'" *Id.* at 3 (citing note to 5 U.S.C. § 522(a) and 52 U.S.C. § 21083(c)). In addition, the letter noted that any prohibition of disclosure of a motor vehicle record contained in the Driver's License Protection Act, codified at 18 U.S.C. § 2721(b)(1), is exempted when the disclosure is for use by a government agency, such as the Department, that is carrying out its enforcement functions. *Id.* To facilitate Secretary Weber's safe transmission of the Federal election records, the Department provided instructions to use encrypted email or to send via the Department's secure file-sharing system. *Id.*

On August 21, 2025, Secretary Weber responded and refused to produce the requested Federal election records. Ex. 6. On August 29, 2025, and September 12, 2025, Secretary Weber provided minimal responses to the Department's inquiries about gaps in California's responses to the EAVS survey. Exs. 7-8. Secretary Weber again refused to produce the Federal election records identified by the Department in the July 10 Letter and the August 13 Letter. *See id.*

### III.    ARGUMENT

**A.    The United States is entitled to an Order to Produce under the CRA.**

An order for production of documents under the CRA is appropriate when the United States files a "simple statement" describing its written demand for inspection, reproduction, and copying, and explaining that the officer of election to whom it was directed has "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Lynd*, 306 F.2d at 226 (citation omitted). The written demand must include "a statement of the basis and the purpose therefor." 52 U.S.C. § 20703.

The Department's July 10 Letter and August 13 Letter satisfy these requirements by: (1) making a written demand for inspection, reproduction, and copying of Federal election records, including the SVRL and records of voter registration application within twenty-two months of a Federal election; (2) directing that demand to Secretary Weber, an officer of election as defined by Section 306 of the CRA;[3] (3) stating that the purpose of the demand is "to assist in our determination

---

[3] Section 306 provides:

> As used in this title, the term ''officer of election'' means any person who, under color of any Federal, State, Commonwealth, or local law, statute, ordinance, regulation, authority, custom, or usage, performs or

of whether California's list maintenance program complies with the NVRA," Ex. 5, August 13 Letter at 3; and (4) stating the basis for the request is data that California reported in its response to the EAVS survey that was included in the biennial 2024 EAVS Report and was inconsistent with the reasonable list maintenance required by HAVA and the NVRA. Ex. 1, July 10 Letter at 2; *see also* Ex. 5, August 13 at 3 (reaffirming the required CRA statement of the basis and the purpose "in this correspondence").

Secretary Weber's attempt to limit the Attorney General to inspection of a copy of California's "redacted voter registration database," Ex. 4 at 2, is insufficient to meet the CRA's requirements. Officers of election have no discretion to limit the Federal election records or papers or the content of those records made available to the Attorney General. *See* 52 U.S.C. § 20703; *see also* 52 U.S.C. § 20701 (referring to "all records and papers"). Nor do they have discretion to limit the Attorney General solely to inspection, contrary to the statutory requirement of "inspection, reproduction, and copying." 52 U.S.C. § 20703; *see also Gallion*, 187 F. Supp. At 855-56 (granting "the application for an order to require the *production* of records for inspection, reproduction, and copying") (emphasis added). The United States has discussed this point at length previously. *See* United States' Opp. to Mot. to Dismiss at 9-11, 14-17, ECF 63.

---

is authorized to perform any function, duty, or task in connection with any application, registration, payment of poll tax, or other act requisite to voting in any general, special, or primary election at which votes are cast for candidates for the office of President, Vice President, presidential elector, Member of the Senate, Member of the House of Representatives, or Resident Commissioner from the Commonwealth of Puerto Rico.

52 U.S.C. § 20706.

Moreover, a redacted copy would undermine the investigative purposes of Section 303 of the CRA. The Attorney General cannot assess compliance with HAVA and the NVRA without the full, unredacted SVRL and other requested Federal election records pertaining to California's list maintenance efforts. HAVA prohibits a state from processing a voter registration application without the applicant's driver's license number, where an applicant has a current and valid driver's license, or, for other applicants, the last four digits of the applicant's social security number; for those lacking both identification numbers, the state must assign a unique HAVA identifier. *See* 52 U.S.C. §§ 21083(a)(5)(A)(i)-(ii). Without the unredacted data including those identification numbers, the United States cannot evaluate the state's compliance with HAVA.

Similarly, HAVA requires list maintenance to "be conducted in a manner that ensures" the elimination of duplicate names from the statewide list. 52 U.S.C. § 21083(a)(2)(B)(iii). Unredacted voter files, including the three identification numbers described above, are needed to determine if the state has a reasonable program of identifying and removing duplicate voter registrations. That is why twenty-five states and the District of Columbia (not including California) participate in the Electronic Registration Information Center ("ERIC") and routinely share that data with one another. *See* United States' Opp. to Mot. to Dismiss at 16-17, 26, ECF 63.

The same unredacted Federal election records, including the SVRL, are needed to assess California's compliance with the NVRA. Section 8(a)(4) of the NVRA requires each state to "conduct a general program that makes a reasonable effort to remove the names of ineligible voters from the official lists of eligible voters…" 52 U.S.C. § 20507(a)(4). For example, use of unredacted voter data ensures that matches to identify deceased voters are more accurate and complete.

Secretary Weber has rejected the United States's written demand pursuant to the CRA to produce California's statewide VRL and other Federal election records.

Consequently, the United States respectfully requests that this Court issue an Order requiring Secretary Weber and the State of California to immediately produce those records through a secure method. *See Lynd*, 306 F.2d at 226; *Coleman*, 313 F.2d at 868.

**B.    The CRA does not permit Defendants to withhold Federal elections because of privacy concerns.**

Defendants have refused to produce the Federal election records demanded by the Attorney General under the CRA because they contend that California's privacy laws are controlling. The Supremacy Clause of the Constitution says otherwise. It is a basic tenet of our Federal system that when Federal and state law conflict, the federal law governs. *See* U.S. Const. art. VI. As this Circuit has explained, if a Federal election law like the NVRA and state law "do not operate harmoniously in a single procedural scheme for federal voter registration, then Congress has exercised its power to 'alter' the state's regulation, and that regulation is superseded." *Gonzalez v. Arizona*, 677 F.3d 383, 394 (9th Cir. 2012) (en banc), *aff'd sub nom. Arizona v. Inter Tribal Council of Ariz., Inc.*, 570 U.S. 1 (2013).

A South Carolina court recently confronted the same argument from an individual voter seeking to enjoin state officials from cooperating with the Department. Addressing Federal preemption over state statutes governing privacy, the court explained, "Federal law likely requires the Election Commission to provide the requested information to DOJ, and while DOJ has also pointed to the National Voter Registration Act and the Help America Vote Act, Title III [of the Civil Rights Act] alone is sufficient to reach that conclusion." *Crook v. S.C. Election Comm'n*, No. 2025-CP-40-06539 (Richland Cty. Comm. Pleas Oct. 1, 2025), attached to the Declaration of Maureen Riordon as Ex. 9, at 10. The court noted, "Title III requires that, for 22 months after a federal election, a state election official 'retain and preserve' 'all records and papers which come into his possession relating to any application, registration, payment of poll tax, or other act requisite to voting in such

election.' 52 U.S.C. § 20701." *Id.* at 10-11. The court reasoned,

> Title III has long been understood to "encompass[], among other things, voting registration records," *McIntyre v. Morgan*, 624 F. Supp. 658, 664 (S.D. Ind. 1985), which is not surprising given the scope of the statutory text. And since HAVA's enactment two decades ago, registration records must include either "the applicant's driver's license number" or "the last four digits of the applicant's social security number." 52 U.S.C. § 21083(a)(5)(A). The Attorney General (or his representative) may demand in writing "[a]ny record or paper" that a state election official must keep under § 20701. *Id.* § 20703. That demand must simply "contain a statement of the basis and the purpose therefor." *Id.*

*Id.* at 11. As a result, the court found, "DOJ's request for South Carolina's voter registration list fits comfortably within this legal framework" and denied the voter's request to enjoin the state's production of its list to the Department. *Id.* at 11-12. For those reasons, *id.*, and the reasons previously briefed by the United States, *see* United States' Opp. to Mot. to Dismiss at 23-29, ECF 63, any state-law privacy right to the contrary is preempted by the CRA's broad grant of access to the Attorney General. *See* 52 U.S.C. § 20703; *Gonzalez*, 677 F.3d at 394. Consequently, the Attorney General is entitled to the Federal election records she has demanded from California under the CRA, notwithstanding any conflicting state privacy laws.

### C. The Attorney General is entitled to relief under the CRA's summary proceeding for obtaining Federal election records.

The CRA displaces the Federal Rules of Civil Procedure and creates a "special statutory proceeding" under which Secretary Weber, as an officer of election for California, must produce the voter-registration lists and other Federal election records demanded by the Attorney General.[4] *Lynd*, 306 F.2d at 225. The court in

---

[4] Although this Motion for an Order to Show Cause is made under the CRA, the United States notes that the NVRA includes a similar requirement for production of Federal election records. *See* 52 U.S.C. §§ 20507, 20510(a). "[W]hen Congress uses

*Lynd* reasoned that a special proceeding was necessary to obtain Federal election records because no other procedural device or maneuver was available:

> There is no place for a motion for a bill of particulars or for a more definite statement under F.R.Civ.P. 12(e), 28 U.S.C.A. There is no place for any other procedural device or maneuver— either before or during any hearing of the application— to ascertain the factual support for, or the sufficiency of, the Attorney General's 'statement of the basis and the purpose therefor' as set forth in the written demand. [52 U.S.C. § 20703]. Thus with respect to the reasons why the Attorney General considers the records essential, there is no place, either as a part of pleadings, discovery, or trial, for interrogatories under F.R.Civ.P. 33, oral depositions of a party under F.R.Civ.P. 26(a), 30, production of documents under F.R.Civ.P. 34, or request for admissions as to facts or genuineness of documents or other things under F.R.Civ.P. 36, 37.

*Id.* at 226.

The "special statutory proceeding" of these statutes is "a summary proceeding." *Id.* at 225-26. To institute this proceeding, the United States need only file a "simple statement" describing its written demand for the Federal election records and explaining that Secretary Weber, acting as an officer of election for California, "failed or refused to make such papers 'available for inspection, reproduction, and copying.'" *Id.* at 226 (citation omitted). Accordingly, the Court "should grant the relief sought or, if the respondent-custodian opposes the grant of such relief, the matter should be set down without delay for suitable hearing on the matters open for determination." *Id.* The Attorney General's right to reproduction and copying of Federal election records is not dependent upon any other showing. *Id.* Therefore, the United States respectfully requests that this Court issue an Order

---

the same language in two statutes having similar purposes … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes." *Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion).

directing Secretary Weber and California to produce the Federal election records described in the Attorney General's written demand.

### IV. CONCLUSION

For the foregoing reasons, the United States requests that this Court enter an Order directing Defendants to comply with the Attorney General's request for all Federal election records described in its July 10 Letter and August 13 Letter. Those records should be provided electronically to the United States within fifteen days, or within such time as this Court deems reasonable. *See Gordon*, 218 F. Supp. at 827 (deeming "fifteen days [a]s a reasonable time"). For the Court's convenience, a proposed form of order is provided along with this Motion.

Dated: December 1, 2025            Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General
Civil Rights Division


/s/ Maureen Riordan
MAUREEN S. RIORDAN
Acting Chief, Voting Section
Civil Rights Division
BRITTANY E. BENNETT
ERIC NEFF
Trial Attorneys, Voting Section
Civil Rights Division
4 Constitution Square
150 M Street, Room 8.141
Washington, D.C. 20002
brittany.bennett@usdoj.gov
Tel. (202) 704-5430
Attorneys for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on December 1, 2025, a true and correct copy of the foregoing document was served via the Court's ECF system to all counsel of record.

/s/ *Brittany E. Bennett*
Brittany E. Bennett
Trial Attorney, Voting Section
Civil Rights Division
U.S. Department of Justice
4 Constitution Square
150 M Street NE, Room 8.141
Washington, D.C. 20002
Telephone: (202) 704-5430
Email: brittany.bennett@usdoj.gov