```
                    UNITED STATES DISTRICT COURT
                   CENTRAL DISTRICT OF CALIFORNIA
                   (SOUTHERN DIVISION - SANTA ANA)
                   (WESTERN DIVISION - LOS ANGELES)



UNITED STATES OF AMERICA,      ) CASE NO: 8:25-cv-01370-DOC-ADS
                               )
             Plaintiff,        )          CIVIL
                               )
    vs.                        )    Los Angeles, California
                               )
ROBERT PAGE, ET AL,            )  Wednesday, November 19, 2025
                               )    (9:07 a.m. to 9:45 a.m.)
             Defendants.       )
_____)
UNITED STATES OF AMERICA,      )
             Plaintiff,        ) CASE NO: 2:25-cv-09149-DOC-MAR
    vs.                        )
                               )          CIVIL
SHIRLEY WEBER, ET AL,          )
             Defendants.       )
_____)
```

MOTION TO STAY [DKT.NO.21]; STATUS CONFERENCE

MOTION TO STAY CASE PENDING LAPSE IN APPROPRIATIONS [DKT.NO.6];

NAACP; NAACP CALIFORNIA-HAWAII STATE CONFERENCE; AND SERVICES, IMMIGRANT RIGHTS AND EDUCATION NETWORK MOTION TO INTERVENE AS DEFENDANTS [DKT.NO.14];

MOTION TO INTERVENE [DKT.NO.24]

BEFORE THE HONORABLE DAVID O. CARTER, UNITED STATES DISTRICT JUDGE


APPEARANCES:            SEE PAGE 2

Court Reporter:         Recorded; CourtSmart

Courtroom Deputy:       Karlen Dubon

Transcribed by:         Exceptional Reporting Services, Inc.
                        P.O. Box 8365
                        Corpus Christi, TX 78468
                        361 949-2988
Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

**APPEARANCES**:

| For Plaintiff: | ERIC V. NEFF, ESQ.<br>U.S. Department of Justice<br>150 M St. NE, Suite 8-139<br>Washington, DC 20002<br>202-532-3628 |
|---|---|
| | AUSA JULIE A. HAMILL<br>U.S. Attorney's Office<br>300 N. Los Angeles, Suite 7516<br>Los Angeles, CA 90012<br>213-894-2464 |
| For Movants: | GRAYCE S.P. ZELPHIN, ESQ.<br>American Civil Liberties<br>Union of Northern California<br>39 Drumm Street<br>San Francisco, CA 94111<br>530-515-8978 |
| | CHRISTOPHER D. DODGE, ESQ.<br>Elias Law Group<br>250 Massachusetts Ave. NW<br>Suite 400<br>Washington, DC 20001<br>202-987-4928 |
| For Defendants: | MALCOLM A. BRUDIGAM, ESQ.<br>Office of the Attorney General<br>1300 I Street<br>Suite 125<br>Sacramento, CA 95814<br>916-210-7873 |
| | SUZANNE E. SHOAI, ESQ.<br>Orange County Counsel<br>P.O. Box 1379<br>Santa Ana, CA 92702<br>714-834-3300 |
| | ROBERT W. SETRAKIAN, ESQ.<br>California Department of Justice<br>300 S. Spring Street<br>Suite 1702<br>Los Angeles, CA 90013<br>213-269-6668 |

 1              **Los Angeles, CA; Wednesday, November 19, 2025; 9:07 a.m.**

 2                                  --oOo--

 3              **THE COURT:**  -- *versus Robert Page*.  And also the

 4    companion case *United States versus Shirley Weber*.

 5              You folks come on up.  Let's see if we can get you

 6    back to Washington, D.C. or across the country.  How's

 7    everybody this morning?  Good morning.

 8              **MR. NEFF:**  Good morning, Your Honor.

 9              **THE COURT:**  I would have called you at 7:30 this

10    morning, but we had some other matters that got delayed.

11              So first of all you have a fascinating case.  Are all

12    of you holding up okay to my hours?

13              **MR. NEFF:**  Yes, Your Honor.

14              **THE COURT:**  Good, good.  Okay.

15              And, counsel, once again would you make the

16    appearances on behalf of the United States of America, please.

17              **MR. NEFF:**  Eric Neff on behalf of the United States.

18              **THE COURT:**  And once again, where are you located?

19              **MR. NEFF:**  Washington, D.C.

20              **THE COURT:**  Okay.  We'll try to get you back to your

21    family I promise you.

22              **MS. HAMILL:**  Good morning, Your Honor, Julie Hamill

23    for the United States.  I'm located here.

24              **THE COURT:**  And you were here before.

25              **MS. HAMILL:**  Yes, Your Honor.

4

1          **THE COURT:**  Are you on the Page case?

2          **MS. HAMILL:**  Yes, Your Honor.

3          **THE COURT:**  All right.  And so Julie Hamill.  And

4     where are you located, Washington, D.C. also?

5          **MS. HAMILL:**  I'm located here, Your Honor.

6          **THE COURT:**  Local.

7          **MS. HAMILL:**  Yes.

8          **THE COURT:**  All right.  Nice to have you here.

9          Who's Eric Neff?

10         **MR. NEFF:**  That's me, Your Honor.

11         **THE COURT:**  And who's Maureen Riordan?

12         **MR. NEFF:**  That is our senior counsel.

13         **THE COURT:**  Okay.  I'm going to refer to Page as the

14    county case.  Would that be acceptable for all parties?

15         **MR. NEFF:**  Yes, Your Honor.

16         **THE COURT:**  Who's here on behalf of the United States

17    versus Shirley Weber?

18         **MR. NEFF:**  I am, Your Honor.

19         **THE COURT:**  Okay.  So you're doing double duty.  And,

20    Julie Hamill, are you here also on that case?

21         **MS. HAMILL:**  Yes, Your Honor.

22         **THE COURT:**  Okay.  And now counsel on behalf of the

23    defendant and let's start with Robert Page, the voter registrar

24    of Orange County.

25         **MS. SHOAI:**  Good morning, Your Honor, Deputy County

1   Counsel, Susann Shoai on behalf of the defendant Robert Page.

2          **THE COURT:**  All right.  And you're Susann Shoai; is

3   that correct?

4          **MS. SHOAI:**  Correct.

5          **THE COURT:**  And who else is appearing today?

6          **MS. SHOAI:**  I'm all there is.

7          **THE COURT:**  Oh, by yourself?  All right.

8          **MS. SHOAI:**  For Mr. Page.

9          **THE COURT:**  Daniel Richards?

10         **MS. SHOAI:**  He's not here today, but he is also.

11         **THE COURT:**  Okay.  That's fine.  And Robert William

12  Setrakian?

13         **MR. SETRAKIAN:**  Good morning, Your Honor, Deputy

14  Attorney General Robert William Setrakian and I'm here for

15  defendant Shirley Weber.

16         **THE COURT:**  Are you -- well I also have you listed

17  under Page, but that's not correct, is it?

18         **MR. SETRAKIAN:**  That's not correct, apologies.

19         **THE COURT:**  Let me turn to Shirley Weber and who's

20  appearing then once again on the Weber case, which I'll call

21  the state case.

22         **MR. BRUDIGAM:**  Good morning, Your Honor, Deputy

23  Attorney General Malcolm Brudigam on behalf of the state

24  defendants.

25         **THE COURT:**  Okay.

1          **MR. SETRAKIAN:**  Yes, Deputy Attorney General Robert

2    William Setrakian also for the state defendant.

3          **THE COURT:**  And are you both from Washington, D.C.?

4          **MR. BRUDIGAM:**  I'm located in Sacramento, Your Honor.

5          **THE COURT:**  Just about as far.  Just joking.

6          **MR. SETRAKIAN:**  And I'm located in Los Angeles.

7          **THE COURT:**  Okay.  So you're okay.  And you're

8    located?

9          **MS. SHOAI:**  In Orange County.

10          **THE COURT:**  Okay.  Now, the intervenors, there are

11    numerous requests for intervention we've got across the

12    country.  I've lost track of them, but on behalf of the NAACP.

13    They were here on the last occasion.

14          **MR. DODGE:**  That's correct, Your Honor, Christopher

15    Dodge on behalf of the NAACP and SIREN, which is the immigrants

16    organization.

17          **THE COURT:**  Okay.  And you represent both; is that

18    correct?

19          **MR. DODGE:**  That's correct, Your Honor.

20          **THE COURT:**  As well as the immigrants organization.

21          **MR. DODGE:**  That's correct.

22          **THE COURT:**  And the League of Women Voters?

23          **MS. ZELPHIN:**  That would be me, Your Honor.  I'm

24    Grace Zelphin from the ACLU of Northern California here on

25    behalf of the proposed intervenors, the League.

1          **THE COURT:**  All right.  Ever since this case was

2   filed and each of you cause some local international headlines

3   or national headlines, we've been trying to resolve the matter.

4   And on the county case, which is Page, where there's an

5   allegation of voter fraud, including your last counsel, Michael

6   Gates, who I believe is the Assistant DOJ who flew out, about a

7   dog voting on a couple of occasions.

8          He'd originally asked this Court for a stay because

9   it was anticipated that the United States would also file a

10  broader case that would encompass all of California.  And I'm

11  going to refer to that as the State matter, which is the Weber

12  matter.

13         I think that we've all agreed, or at least this Court

14  believes that it's important to resolve this matter as quickly

15  as possible because this case has to go to the Ninth Circuit

16  and probably will go to the Supreme Court.  And you've asked

17  for a stay on the county case, Page, and we've had a frank

18  discussion probably because you want to truncate discovery.

19  Now you can't say that, but it's pretty evident.

20         And the State case seems to have much more

21  significance for the Ninth Circuit to examine whatever decision

22  this Court makes because whatever decision I made it's going up

23  on appeal and I think to the Supreme Court.  They may even take

24  this on cert.

25         So I want you to describe the Page case to me, the

1    county case.  And then I want a response on Page.  And if

2    you're still asking for a stay, so counsel, on behalf of the

3    county case first before we get to the state case, because this

4    involves voter rights.

5           **MR. NEFF:**  Thank you, Your Honor.  I do think the

6    county case sort of is subservient to the state case and the

7    state case is what's going to get reviewed first.  What I would

8    say in the big picture is that they both bring up the same

9    issue.

10          **THE COURT:**  Yeah, they do.

11          **MR. NEFF:**  We're just asking for the same thing, but

12    from different officials.  And so essentially it really

13    shouldn't matter.

14          **THE COURT:**  But before when Mr. Gates, and apparently

15    he was in contact with Bondi, was pressing for discovery on the

16    state case, believing that Orange County had been lax in terms

17    of persons who were voting or should have been removed from the

18    rolls.  Main Justice wanted to continue on with that case and

19    he was quite candid with the Court, which I appreciate.

20    Because it would open up discovery in the county case.

21          The county had taken the position at that time that

22    they wanted the county case stayed to -- well, it would shut

23    down discovery.  What's your position on the state case?  Are

24    you asking for a stay and agreeing with the county so that the

25    state case proceeds first?  Are you -- so what is your position

1    today?

2        **MR. NEFF:**  To some extent, I would posit, Your Honor,

3    you're asking me to speculate as to what their position is, but

4    I will try.

5        **THE COURT:**  Well, they were pretty blunt last time

6    about what their position was and --

7        **MR. NEFF:**  And I do apologize.

8        **THE COURT:**  -- they want to stay --

9        **MR. NEFF:**  I wasn't here for that and I'm now --

10       **THE COURT:**  Well, that's okay.  You're responsible,

11   we've got transcripts.  You're the Government.

12       **MR. NEFF:**  The -- but the crux of it would be I think

13   it's fair to say the United States would like to have seen more

14   cooperation, not just from these election officials, but

15   country-wide election officials.  And -- but, however, that

16   hasn't been forthcoming.  We think the law is very clear.  And

17   I believe the general country-wide attitude of lack of

18   cooperation has led to all jurisdictions essentially saying, we

19   want to see a court order.  And I will say from colleague to

20   colleague, I understand that position.  I think that's largely

21   what this comes down to.

22       **THE COURT:**  So are you acquiescing to a stay on the

23   country stay or is your position that you're proceeding forward

24   and you'd like discovery?  And you can make a call to Bondi if

25   you want to, I don't care, you can call the Attorney General.

10

1          **MR. NEFF:**  Yes, we're --

2          **THE COURT:**  Gates was calling her.

3          **MR. NEFF:**  -- happy to withdraw the motion to stay.

4    And we're happy to litigate that if Your Honor finds it ripe,

5    but I just think at this point it does make sense to allow the

6    -- just get a ruling on the state case and that that would be

7    dispositive for the county case.

8          **THE COURT:**  Because the state's going to sweep -- I

9    mean, from San Francisco to Los Angeles.

10          **MR. NEFF:**  Correct.

11          **THE COURT:**  It's going to be probably the more

12    dispositive case and certainly we'll get to the Supreme Court a

13    little bit quicker.

14          You had agreed to a stay before, this was the desire

15    on the county's part.  Are you still agreeing to a stay?

16          **MS. SHOAI:**  Yes, Your Honor.  We think a stay would

17    be prudent to allow the state case to go forward first.

18          **THE COURT:**  Okay.  And I'm just going to kid you,

19    how's our dog doing voting?  Just joking.

20          **MS. SHOAI:**  Your Honor, I do want to --

21          **THE COURT:**  It captured a lot of headlines, but you

22    know, originally the complaint was there were about 17 people

23    that you could verify in that case, some dead, some removed,

24    some not.  And then the precedent with a dog having voted a

25    number of occasions which probably titillated the public but

11

1    it's not the main vehicle to get this up to the Supreme Court,

2    or minimally the Ninth Circuit.

3              So a stay is stipulated to by all parties?

4              **MS. SHOAI:**  Yes, Your Honor.

5              **THE COURT:**  Counsel, stay stipulated?  Make sure you

6    check with Bondi.  Calls going back and forth were made.

7              **MR. NEFF:**  Yes, Your Honor.

8              **THE COURT:**  Okay.  Then I'm going to grant a stay on

9    the county case, but on this condition.  Now, you have to move

10   on the state case and there's been a lot of delay waiting for

11   the government to then file with the state and you haven't had

12   a chance until recently to respond, so we've been patient.

13             Now, you asked for a stay from this Court last week

14   because the federal government had shut down.  Now, I had a

15   little bit of fun with you.  Not you, because you're kind of in

16   between, so I have wonderful counsel in my court.

17             So let me kid you a little bit but not because when

18   I'm smiling it's dangerous, the judiciary didn't leave when

19   they weren't getting paid.  Karlin didn't get paid.  My clerks

20   didn't get paid.  The staff didn't get paid.

21             The executive branch and maybe the legislative branch

22   got into a situation where the government closed.  And when you

23   asked for that continuance, I denied it, but I'm working with

24   you.  The problem is you're not going back to Washington, D.C.

25   until we complete the briefing.  Because I'm denying a request

1    to simply put this matter over, when the executive and

2    legislative branch has chosen to close and you shouldn't have

3    been on vacation, I don't mean you personally.  You should have

4    been working without pay as all of the benches of the

5    government were working, so I don't have a lot of mercy about

6    that.  But I'm kind.  I'll work with you.

7              How are you doing on this continuous and perpetual

8    briefing that you'll be here with me until we complete?  Where

9    are you on at it because you're not going back to D.C. until we

10   complete it.

11             **MR. NEFF:**  I'm at the Court's service, Your Honor.

12             **THE COURT:**  Well, you are.  Yes, you are.  How are we

13   doing?

14             **MR. NEFF:**  Well, we had filed our response.

15             **THE COURT:**  Good.

16             **MR. NEFF:**  We filed that I believe last night.

17             **THE COURT:**  Last night, okay.  Are you satisfied with

18   the response?  Do you need any more time because I'm here all

19   the time.

20             **MR. NEFF:**  We are satisfied.

21             **THE COURT:**  Okay, good.  And is there going to be a

22   reply?

23             **MR. BRUDIGAM:**  Yes, Your Honor.  We --

24             **THE COURT:**  And when will that reply take place?

25             **MR. BRUDIGAM:**  Seven days from yesterday, so Tuesday,

1  next Tuesday.

2          **THE COURT:**  Nope, nope.  Here we are.  We're ready.

3  I was clear before, this case needs to be decided on behalf of

4  the voters.  A decision has to be made.  It has to get to the

5  Ninth Circuit.  And there's been too much delay already.  So

6  are we coming back tomorrow or Friday, Monday?  When are we

7  coming back?

8          **MR. BRUDIGAM:**  For the hearing on our motion to --

9          **THE COURT:**  Your reply.  Yeah, I'm going to push this

10 case now.  We've been dawdling around waiting for the county

11 and now the state and I'm very clear about this.  This case is

12 going to get decided now one way or the other.

13         **MR. BRUDIGAM:**  Whenever Your Honor would like to set

14 a hearing.

15         **THE COURT:**  I'm here all the time.  You tell me,

16 because you're here with me.

17         **MR. BRUDIGAM:**  I guess next Tuesday if we could.

18         **THE COURT:**  Sure, next Tuesday is fine.  That gives

19 you a chance to go back to D.C. and come back.

20         **MR. BRUDIGAM:**  Just what I wanted, Your Honor.

21         **THE COURT:**  But I'm ordering you back here.  I'm not

22 now trusting that this will be done.  There's been far too much

23 delay on this.  Let's get the briefing done, okay?  So next

24 Tuesday, the order back into session.

25         Where are you flying into?  I can sit in either

14

```
1   Orange County as a courtesy to you or I can sit in Los Angeles.

2   I'm both places?

3           MR. BRUDIGAM:  Preference for Los Angeles but --

4           THE COURT:  Counsel, your preference?  Where's the

5   easiest place for you to fly into, counsel, on behalf of the

6   Government?  Counsel, is it easier for you to fly into Los

7   Angeles because I can drive to L.A.

8           MR. NEFF:  It actually makes no difference to me,

9   Your Honor.

10          THE COURT:  Then let's make it Los Angeles for the

11  convenience of everybody, okay?

12          MR. NEFF:  Okay.

13          THE COURT:  And what time, 7:30 okay?

14          MR. NEFF:  Yes.

15          THE COURT:  7:30?

16          MR. BRUDIGAM:  Sure.

17          THE COURT:  Okay.  All right.  Now, do you have any

18  questions of the Court?

19          MR. BRUDIGAM:  Yes, Your Honor.  So our reply, just

20  get it to you as soon as we can?

21          THE COURT:  Absolutely.  If you do it tomorrow, I'll

22  call you back into session.  In other words, I'm not trying to

23  hold you.  If you get your briefing done Thursday or Friday,

24  notify me and we'll get you going.  Okay?

25          MR. BRUDIGAM:  Okay.
```

1          **THE COURT:**  As far as further delay, because the

2    government is shut down, that was not caused by the judiciary

3    and that's a tremendous detriment to the voters.  They just

4    don't know what to do right now, in terms of these allegations

5    of voter fraud, okay.  Okay?

6          All right.  Then, counsel, any other questions?

7          **MR. BRUDIGAM:**  No, Your Honor.

8          **THE COURT:**  Counsel?

9          **MR. NEFF:**  No, Your Honor.

10         **THE COURT:**  So I'll set it for Tuesday at 7:30.  Now,

11   let's take the intervenors for just a moment.  Let me hear

12   first from the --

13         **MS. ZELPHIN:**  The League of Women Voters.

14         **THE COURT:**  League of Women Voters.  Come on up for

15   just a moment.  It's a pleasure to meet you again and identify

16   yourself again for the record.  And the question I'm going to

17   have eventually if I let you intervene is, am I going to have

18   contradiction between the intervenors?  Often times, I'd only

19   let one intervenor come into a case, Shayla Meyers here with LA

20   Alliance, she was the only -- you don't know here, but she was

21   the only intervenor I allowed in that case, although there were

22   numerous intervenors.  Why and what's your interest in this

23   case to intervene?

24         **MS. ZELPHIN:**  Your Honor, so I represent the League

25   of Women Voters and as we laid out in our briefs --

1          **THE COURT:**  No, no, I want to hear it now on the

2    record.

3          **MS. ZELPHIN:**  Okay.  The interest of the League

4    includes both the privacy and security of the voter's data of

5    the 7,000 members of the League of Women Voters.  So their

6    personal data is one of their interests, as well as their

7    mission to ensure that every voter has the opportunity to

8    register and vote and folks are registered.  So really

9    increasing engagement with the voting process.

10          And third, the League is very involved in advocacy in

11    increasing voter data privacy, as well as securing folks'

12    rights to vote.  In that capacity, there's been a lot of state

13    policies that the League has championed and pushed

14    successfully, which would be infringed in this case should the

15    plaintiff succeed.

16          And, you know, to the point of whether existing

17    parties adequately represent the League's interests, we would

18    argue they really do not.  While we anticipate and are very

19    happy that a lot of the arguments being made by both the state

20    defendants and the other intervenors here are very strong and

21    we agree that the motion for dismissal will likely be granted

22    on the merits here.

23          There are a couple of differences in legal position

24    that the League has that we feel are very important for us to

25    raise.  For example, while we agree that the NDI here, the

1    public disclosure requirements under 8(i) which actions are

2    permitted, we would argue that electronic voter rolls are

3    necessary because we, you know, request similar records often

4    to ensure that folks are not purged from voter rolls

5    unnecessarily.

6         **THE COURT:**  Without granting your request to

7    intervene at the present time, and with the Court staying the

8    county case by stipulation of both counsel, but proceeding with

9    the statewide case concerning these voter issues, is that

10   harmful to your position?  And have you sought to intervene on

11   the county case or are you seeking to intervene on the state

12   case or both?

13        **MS. ZELPHIN:**  We have moved to intervene on both,

14   Your Honor.

15        **THE COURT:**  Okay.  Now, having moved on both, is

16   there any detriment to you in me staying the county case and

17   proceeding with the state case?

18        **MS. ZELPHIN:**  No, Your Honor.  I think that, you

19   know, as counsel stipulated most, if not all of the issues that

20   are being litigated in the Page case are encompassed in the

21   Weber litigation.  And as intervenors, we felt it very

22   important to ensure that the League's interests were

23   represented if there wasn't a stay.  So if Page is going

24   forward first, we wanted to ensure that those interests were

25   represented.  If Weber goes first, as it will under the

1    stipulation, we want to ensure that the League's interests are

2    represented in the Weber case.

3             THE COURT:  Thank you very much.  Let me hear from

4    your colleague on behalf of the NAACP and the immigration

5    rights groups.  And would you identify yourself once again for

6    the record.

7             MR. DODGE:  Good morning, Your Honor, Christopher

8    Dodge on behalf of the NAACP and SIREN.

9             My clients have a very strong interest in this case.

10   They represent communities that oftentimes have the greatest

11   difficulty accessing the ballot box, black Americans, immigrant

12   communities, people of color.  And, you know, what the Justice

13   Department is trying to do here by collecting a nationwide

14   voter registration database will have the effect of making it

15   more difficult for the communities that my clients represent to

16   be able to engage in the political process, to feel comfortable

17   registering to vote here in California, without concern that

18   their private information will at the drop of a hat be turned

19   over to the Justice Department.

20            So those are the stakes here for us.  You know, we

21   collectively represent over 12,000 members here in California

22   who are very concerned about their personal data being given

23   over to the Justice Department.

24            And we certainly agree with Your Honor that the state

25   case here is where the action is, it's where the legal issues

1   are going to be resolved.  And that's where we've intervened.

2   And to that end, on Monday evening after the first hearing

3   here, we filed a proposed motion to dismiss, where we raised

4   some distinct arguments from the State, as to why we do not

5   believe the Justice Department is entitled to these records.

6          That motion to dismiss is not formally on the docket,

7   because we have not been granted intervention yet.  We filed it

8   under a motion for leave, but that motion is ready to go.  It

9   can be adjudicated at the Tuesday hearing Your Honor has set,

10  you know, obviously we would give plaintiff an opportunity to

11  respond to that motion and the distinct arguments we raised in

12  it.  But we agree that this case can be resolved quickly on

13  Rule 12(b) briefing and that's why we've submitted a proposed

14  motion to dismiss.

15         **THE COURT:**  If the Court grants intervention on

16  behalf of the League of Women Voters or the NAACP and by the

17  way there are other entities seeking to intervene who filed

18  papers with the court, so you're part of that process, have you

19  moved to intervene on both the county case and the state case?

20         **MR. DODGE:**  We've moved to intervene solely in the

21  state case, Your Honor.  Because as I think many of the parties

22  here agree, we think that is the best vehicle for resolving

23  this fundamental legal question of does the Justice Department

24  get these records or not.

25         **THE COURT:**  Okay.  So why don't both of you come to

1    the lectern for just a moment.  Counsel, is there any objection

2    by the United States Government for intervention by the League

3    of Women Voters and the NAACP, as well as the immigration

4    groups?  And if so, what is your objection.

5           **MR. NEFF:**  Yes.

6           **THE COURT:**  What's your objection?

7           **MR. NEFF:**  The objection is that they are not proper

8    intervenors under the law and that they -- for the same reasons

9    that they're not proper intervenors under the law they would

10   only serve in this case to delay and not add to the issues that

11   are being litigated here.

12          **THE COURT:**  And under the law, why wouldn't they be

13   proper intervenors?

14          **MR. NEFF:**  Well, Your Honor, under Rule of Civil

15   Procedure 24, they can either be mandatory intervenors or they

16   can be permissive intervenors.

17          **THE COURT:**  Permissive.

18          **MR. NEFF:**  Under mandatory they're required to --

19   there are four prongs, one of them is procedural and three are

20   substantive.  They don't meet any of the three substantive

21   reasons.

22          **THE COURT:**  And permissive, counsel?

23          **MR. NEFF:**  Permissive, it's many of the same

24   arguments, because permissive essentially goes down to do they

25   have an independent ground to be in this litigation and

1  essentially all their arguments boil down to speculation and

2  they -- this -- they can't overcome what is a presumption that

3  the Government is going to represent the very interests that

4  they identify.

5      We're -- as we mentioned in our briefing, they seem

6  perfectly appropriate to file as an amicus in this type of

7  litigation and they're free to -- and we would agree that Your

8  Honor would be perfectly reasonable to allow them to do so.

9  But they simply can't state an interest, a cognizable legal

10 interest in this litigation.

11     **THE COURT:**  Counsel?

12     **MR. BRUDIGAM:**  The state defendants do not oppose

13 intervention, Your Honor.

14     **THE COURT:**  Counsel?

15     **MS. SHOAI:**  On the Page matter, we also do not oppose

16 intervention.

17     **THE COURT:**  How would intervention help this Court

18 versus amicus briefs?  Because I expect that I'm going to get

19 literally nationwide amicus briefs if I allow that, because the

20 voter rights here issue in California are going to extend, that

21 decision is going to extend nationwide at least by -- well,

22 it's going to have a nationwide impact.

23     So if you're allowed to file amicus briefs, are you

24 concerned that you get mixed up with dozens of amicus briefs

25 that come to court without an ability to represent your

22

1    positions here?  And the second question is, am I going to be

2    subject to delay because if I let you intervene, I would let

3    you of course brief and we're already into the briefing

4    schedule because I've held a continuous session now to get this

5    filing done by the Government.

6             MS. ZELPHIN:  To your first point, Your Honor, you

7    know, I have great faith that this Court will read all of the

8    amicus briefs and consider those.  However, under Rule 24(a) we

9    believe that the League has special interests that it needs to

10   represent in this matter throughout the litigation.  You know,

11   as Your Honor has indicated there's a high chance this will go

12   to appeals and throughout and we want to ensure that the

13   arguments that are made are consistent with, you know, the

14   interest of the League and the League's interests remain

15   preserved all the way through, not just on an amicus basis.

16            And to your other question, Your Honor, at least for

17   --

18            THE COURT:  On the briefing schedule.  In other

19   words, am I --

20            MS. ZELPHIN:  Yes.  The proposed intervenors have no

21   incentive to delay the briefing in this case.  We would ask

22   Your Honor really that we can file a very short, maybe five

23   page reply brief with the State Attorneys, not an additional

24   motion --

25            THE COURT:  But under due process then I give the

1   same opportunity for the Government to respond.  In other

2   words, coming in a reply brief it may resolve your issue, but

3   that would be unfair to the Government not to be able to

4   respond.

5           MS. ZELPHIN:  Well, I would take the directions of

6   Your Honor in terms of minimizing paper that Your Honor

7   receives, but also preserving our interest.

8           THE COURT:  What are your thoughts, counsel?

9           MR. DODGE:  Your Honor, we're in a unique position in

10  that we've already filed our motion to dismiss, so we'll cause

11  no delay.  You have our arguments.

12          And I think going to the point about, you know, why

13  we have a unique interest in the case, I will note that we

14  raised arguments in our motion to dismiss that the State,

15  although we agree with all of their arguments, did not raise.

16          And so I think our participation would add

17  additional, potentially dispositive arguments here as to why

18  the Justice Department's request must fail.  Again, those

19  arguments are now on the record here.  We agree that the

20  Justice Department should have time to respond to them, but

21  that is more than possible given the Tuesday hearing, they can

22  respond in due course.

23          And, you know, we could either forego a reply on that

24  and just address it at the hearing or file a very short reply

25  on the unique arguments that we raise.

24

1          **THE COURT:**  All right.  First, I'm trying to count

2    the days of us finally receiving the Government's briefing.

3    Upon reflection, due process is not accomplished because you

4    have seven days to file a response.  So therefore, I think it's

5    unwise on me or on my part now to bring you back upon

6    reflection next Tuesday.

7          What I'm worried most about though is continuing

8    delay, permissibly I think you have strong grounds for

9    intervention, I'm not sure mandatorily you do.  So if I

10   indicated to you tentatively subject to a final decision by

11   this Court that I'll write over the weekend, that I was going

12   to let you -- that I'm inclined to allow you to intervene on

13   behalf of the NAACP, the immigration rights group and the

14   League of Women Voters.

15         What I need then is some kind of briefing schedule

16   that both of you could meet and I'm wondering if you'd like to

17   just before I call the next matter, which is going to take some

18   time, just talk to each other about how we work that out in

19   fairness, and then I'm not going to bring you back next

20   Tuesday, I'm just going to rely upon the fact that your

21   response is due in seven days.

22         But now we have a different problem.  If I allow

23   intervention, what we really need now is that due process on

24   both sides.  I'm not going to allow you to simply come in as

25   the League and file a brief without a response from the

1  Government, and I don't know then if there's going to be a

2  response or surreply to that.  So why don't you just have a

3  little conference for a moment in the back, because otherwise

4  you'll be coming back this afternoon.  I don't want to do that.

5  So don't leave the court, just have a little conference and

6  work this out for me because I'm inclined to allow you to

7  intervene.  Okay?

8       **(Pause)**

9            **THE COURT:**  And, counsel, to help you along with

10  this, my only struggle is about mandatory intervention.  This

11  isn't a close call for the Court concerning permissive

12  intervention.  So to move this along, this Court's granting the

13  motion to intervene by the proposed intervenors, the NAACP, the

14  NAACP California, Hawaii State Conference Services, the

15  Immigration Rights and Education Network and the League of

16  Women Voters of California.

17            Under Rule 24(a) of the Federal Rules of Civil

18  Procedure a timely motion to intervene must be granted, where

19  the movant alleges first a significant protectable interest

20  relating to the subject matter of the lawsuit.

21            Second, that the disposition of the action will, as a

22  practical matter, impair or impede its ability to protect that

23  interest.  And, third, that the interest will be inadequately

24  represented by the parties to the action.

25            In this matter, intervenors have now appeared after

1    filing briefing with the Court on two different occasions.

2    They've made timely motions and collectively represent

3    thousands of people who are concerned that their sensitive

4    personal voting information will be turned over to the federal

5    government.

6              Intervenors have been doing the work to ensure all

7    eligible voters are able to access the polls and participate in

8    the political process.  The bedrock of American democracy is

9    worth protecting.  Intervenors have represented that they serve

10   some of the most marginalized among us who fear retaliation for

11   their political beliefs.  And our country has come a long way

12   in ensuring every American has the ability to advocate their

13   beliefs by casting a ballot, regardless of race, gender, or

14   national origin.

15             The intervenors represent this struggle as such, and

16   the Court now grants the motions to intervene by all proposed

17   intervenors and I'm going to grant permissive intervention,

18   counsel, in this matter.

19             **MR. DODGE:**  Thank you, Your Honor.

20             **MS. ZELPHIN:**  Thank you, Your Honor.

21             **THE COURT:**  Now, if that furthers your discussion

22   maybe then that helps in terms of some of the delays.

23             **MR. DODGE:**  I think we have an agreed upon schedule,

24   Your Honor, that will permit the Court to hear argument the

25   week after Thanksgiving.

1          **THE COURT:**  Okay.  What is that schedule?

2          **MR. DODGE:**  What we would propose is that by -- now

3    that our intervention has been granted, by which I mean the

4    NAACP and SIRENS, we would accept that the Court accept our

5    proposed motion to intervene and formally put it on the docket.

6          **THE COURT:**  We will.

7          **MR. DODGE:**  On behalf of the League of Women Voters I

8    can represent that they will file a brief tomorrow raising the

9    unique arguments they wish to raise.  The Government, the

10   Justice Department will then have until Wednesday, the 26th,

11   the day before Thanksgiving to file an opposition to

12   intervenor's arguments.

13         **THE COURT:**  Okay.

14         **MR. DODGE:**  And intervenors will then file any reply

15   that following Monday or Tuesday, the day after Thanksgiving

16   with a hearing to follow.

17         **THE COURT:**  All right.  Is this acceptable to the

18   United States Government or do you need to make a call to

19   Washington, D.C.

20         **MR. NEFF:**  No, that's fine.  I can represent that's

21   fine.  I just -- I'd prefer that we have --

22         **THE COURT:**  Well be sure because before Michael Gates

23   was here those calls flowed back and forth, although he was

24   Assistant DOJ.  Are you sure?

25         **MR. NEFF:**  I'll do it myself if I have to.

1          **THE COURT:**  Okay?  All right.  Stipulated then?

2          **MR. NEFF:**  Stipulated, though I would ask that we

3    just like have a clear day for the reply, I would just say that

4    following Monday like we just --

5          **MR. DODGE:**  The following Monday is fine, Your Honor.

6          **THE COURT:**  Okay.  Counsel, stipulated to?

7          **MR. BRUDIGAM:**  Yeah.  One small addition is that the

8    State's reply to the opposition that was filed yesterday will

9    be filed next Tuesday.

10          **MR. DODGE:**  So the Court should have full briefing by

11    the Monday following Thanksgiving.

12          **THE COURT:**  All right.  And then what day would I set

13    this for hearing on?

14          **MR. DODGE:**  Any day of that week is amenable to us,

15    Your Honor.

16          **THE COURT:**  Uh-huh.  And let me clearly state once

17    again because you're joining us and they've heard this before.

18    This case needs to be decided fairly but as quickly as

19    possible, because quite frankly we've got primaries coming up

20    and a decision by this Court will be the first step, because

21    the Ninth Circuit is going to have to look at whatever decision

22    I make and have some time.  And I can almost guarantee you the

23    United States Supreme Court is going to take this on cert.  I'm

24    pretty certain on that.

25          So how do we get this case, you know, fairly and

29

1    adequately decided by this Court in a timely fashion so we have

2    time that for review, because my great fear is that anymore

3    delay leaves our voters in a very difficult position concerning

4    voter information that the United States Government is

5    requesting.  Okay?

6              Now, if that's the case I don't need to bring you

7    back next Tuesday, right?

8              **MR. BRUDIGAM:**  Understood.

9              **THE COURT:**  That's good.

10             **MR. BRUDIGAM:**  Yes, Your Honor.

11             **THE COURT:**  Okay.  Will you then draft this for me

12   and put this in written form?  And would you like to return on

13   December 3rd or 4th and I'll have that as Los Angeles as a

14   courtesy.  I'm here almost every other day anyway, so.

15             **MR. DODGE:**  Do you know what days of the week those

16   are, Your Honor?

17             **MR. BRUDIGAM:**  Wednesday and Thursday.

18             **THE CLERK:**  Wednesday and Thursday.

19             **THE COURT:**  Wednesday and Thursday.  Which is better

20   for you?

21             **MR. NEFF:**  The United States prefers the 4th if we

22   can do that.

23             **THE COURT:**  The 4th?  Is that acceptable?

24             **MR. BRUDIGAM:**  That's acceptable, Your Honor.

25             **THE COURT:**  Okay.  Now if you're flying in, I still

30

1  need you here in the morning unfortunately.  So let's get

2  started at 7:30.  Okay?  Any other questions?

3          **MR. BRUDIGAM:**  No, Your Honor.

4          **THE COURT:**  You arrive on that day and then I'll do

5  my best to write and hand out a decision by the weekend, okay?

6          **MR. BRUDIGAM:**  Sounds good.

7          **THE COURT:**  We want to thank you very much for your

8  courtesy.  It's been a pleasure to see all of you.  I look

9  forward to the litigation.  Thank you very much, counsel.

10         **(Proceedings concluded at 9:43 a.m.)**

11                         * * * * *

12

13

14

15

16

17

18

19

20

21

22

23

24

25

### CERTIFICATION

      I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


_____                    **December 15, 2025**

      Signed                                                    Dated


*TONI HUDSON, TRANSCRIBER*

**EXCEPTIONAL REPORTING SERVICES, INC**